1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
SHAINA C. ST JOHN (Cal. Bar No. 292643)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2933
     Facsimile:   (213) 894-7819
     E-mail: Shaina.StJohn@usdoj.gov

Attorneys for Defendant
the United States of America

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| Martin VARGAS, as Successor in Interest of the Estate of Martin Vargas Arellano,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC,<br><br>        Defendants. | No. 5:23-cv-00380-JWH-SP<br><br>**THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[Memorandum of points and authorities, supporting declarations, and proposed order filed concurrently]<br><br>Hearing Date:  August 25, 2023<br>Hearing Time:  9:00 a.m.<br>Ctrm:         9D<br><br>Honorable John W. Holcomb<br>United States District Judge |

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2     PLEASE TAKE NOTICE that, on August 25, 2023 at 9:00 a.m., as soon thereafter

3 as they may be heard, Defendant the United States of America (the "United States") will,

4 and hereby does, move this Court for an order dismissing with prejudice the claims

5 asserted by the First Amended Complaint against the United States. This motion will be

6 made before the Honorable John W. Holcomb, United States District Magistrate Judge,

7 in the Ronald Reagan Federal Building and Courthouse located at 411 West Fourth

8 Street, Santa Ana, CA 92701.

9     The United States moves pursuant to Federal Rules of Civil Procedure 12(b)(1)

10 and 12(b)(6) to dismiss the Plaintiff's claims against the United States, which are all

11 asserted under the Federal Tort Claims Act (FTCA), on the following grounds:

12     1.  Plaintiff's negligence, negligent infliction of emotional distress ("NIED"), and

13         intentional infliction of emotional distress ("IIED") claims based on the care

14         and safekeeping of Martin Vargas Arellano ("Arellano") at the Adelanto

15         detention facility are barred by the contractor exclusion to FTCA liability. 28

16         U.S.C. § 2671.

17     2.  Plaintiff's negligence, NIED, and IIED claims based on the United States'

18         oversight of defendant the GEO Group, Inc., and Wellpath, LLC, and provision

19         of the Adelanto detention facility are barred by the discretionary-function

20         exception to FTCA liability. 28 U.S.C. § 2680(a).

21     3.  Plaintiff's negligence, NIED, IIED, and false imprisonment claims based on

22         Arellano's continued detention by the government pending removal fail to state

23         a claim upon which relief may be granted and are barred by the discretionary-

24         function exception.

25     4.  Plaintiff's negligence, NIED, and IIED claims based on the United States'

26         alleged failure to communicate with Arellano's legal representative regarding

27         Arellano fail to state a claim upon which relief may be granted.

28     5.  Plaintiff's wrongful death claim fails because it is derivative of Plaintiff's other

i

1    failed claims. Cal. Civ. Proc. Code § 377.60.

2         This motion is made upon this Notice, the attached Memorandum of Points and

3    Authorities, the attached supporting declarations, and all pleadings, records, and other

4    documents on file with the Court in this action, and upon such oral argument as may be

5    presented at the hearing of this motion.

6         This motion is made following the conference of counsel for the United States and

7    Plaintiff pursuant to Local Rule 7-3 which occurred on June 5, 2023.

8

9    Dated: June 29, 2023                    Respectfully submitted,

10                                           E. MARTIN ESTRADA
                                             United States Attorney
11                                           DAVID M. HARRIS
                                             Assistant United States Attorney
12                                           Chief, Civil Division
                                             JOANNE S. OSINOFF
13                                           Assistant United States Attorney
                                             Chief, Complex and Defensive Litigation Section
14

15                                                _/s/ Shaina C. St John_____
                                             SHAINA C. ST JOHN
16                                           Assistant United States Attorney

17                                           Attorneys for Defendant
                                             the United States of America
18

19

20

21

22

23

24

25

26

27

28

                                           ii

1

## **<u>TABLE OF CONTENTS</u>**

2    I.     INTRODUCTION ........................................................................................ 1

3    II.    FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

4           A.     April 2019 – April 2020: Arellano's Detention, Ordered Release,
                   Stay of That Release, and Stay of His Habeas Petition ................................. 3
5
6           B.     April 2020 – Present: Judicial Oversight of Adelanto in the *Roman*
                   Class Action ............................................................................................... 5

7           C.     March 2021 – Special Master's Investigation of Arellano's Death............. 6

8           D.     March 2023 - Present: Plaintiff's Instant Lawsuit .................................... 6

9    III.   PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES MUST BE
            DISMISSED ............................................................................................... 7
10
11          A.     The Contractor Exclusion Bars Plaintiff's Claims Based on
                   Arellano's Care and Safekeeping at Adelanto by GEO and Wellpath ........ 7

12          B.     The Discretionary-Function Exception Bars Plaintiff's Claims Based
                   on the United States' Oversight of GEO and Wellpath, and Selection
13                 of Adelanto as a Detention Facility ............................................................ 11

14          C.     Plaintiff's Claims Based on Arellano's Continued Detention Pending
                   His Removal Must Be Dismissed for Failure to State a Claim and Are
15                 Also Barred by the Discretionary-Function Exception............................... 15

16          D.     Plaintiff's Claims Based on the United States' Alleged Failure to
                   Communicate Regarding Arellano Must Be Dismissed for Failure to
17                 State a Claim ............................................................................................ 17

18          E.     Plaintiff's Wrongful Death Claim Must Be Dismissed Because It Is
                   Derivative of Plaintiff's Failed Claims and Plaintiff Lacks Standing ........ 18
19
20   IV.    CONCLUSION............................................................................................ 18

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Alinsky v. United States*,
415 F.3d 639 (7th Cir. 2005) ...........................................................................12

6

7
*Ard v. F.D.I.C.*,
770 F. Supp. 2d 1029 (C.D. Cal. 2011) ...........................................................12

8

9
*Arora v. United States*,
144 F. App'x 627 (9th Cir. 2005) ..................................................................9, 14

10

11
*Autery v. United States*,
424 F.3d 944 (9th Cir. 2005) .............................................................................8

12

13
*Begay v. United States*,
768 F.2d 1059 (9th Cir. 1985) .........................................................................11

14

15
*Bernal v. United States*,
2017 WL 7833611 (C.D. Cal. Sept. 21, 2017) .................................................15

16

17
*Bethae v. United States*,
465 F. Supp. 2d 575 (D.S.C. 2006) .............................................................10, 14

18

19
*Carrillo v. United States*,
5 F.3d 1302 (9th Cir. 1993) .............................................................................8, 9

20

21
*Chadd v. United States*,
794 F.3d 1104 (9th Cir. 2015) .................................................................7, 11, 13

22

23
*Dichter-Mad Family Partners, LLP v. United States*,
709 F.3d 749 (9th Cir. 2013) ...........................................................................14

24

25
*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) .........................................................................14

26

27
*Esogbue v. Dep't of Homeland Sec.*,
2008 WL 754722 (E.D. La. Mar. 18, 2008) .....................................................10

28

*Flammia v. United States*,
   739 F.2d 202 (5th Cir. 1984) ...................................................................... 16

*Guile v. United States*,
   422 F.3d 221 (5th Cir. 2005) ...................................................................... 12

*Hagy v. United States*,
   976 F. Supp. 1373 (W.D. Wash. 1997) ...................................................... 12

*Harper v. Lockheed Martin Energy Sys., Inc.*,
   73 F. Supp. 2d 917 (E.D. Tenn. 1999) ........................................................ 12

*Hines v. United States*,
   60 F.3d 1442 (9th Cir. 1995) ........................................................................ 8

*In re Consol. U.S. Atmospheric Testing Litig.*,
   820 F.2d 982 (9th Cir. 1987) ...................................................................... 12

*Johnson v. United States*,
   2006 WL 572312 (E.D. Va. Mar. 7, 2006) ....................................... 9, 10, 14

*Kennewick Irr. Dist. v. United States*,
   880 F.2d 1018 ............................................................................................. 13

*Layton v. United States*,
   984 F.2d 1496 (8th Cir. 1993) .................................................................... 12

*Letnes v. United States*,
   820 F.2d 1517 (9th Cir. 1987) ...................................................................... 8

*Logue v. United States*,
   412 U.S. 521 (1973) ................................................................................. 8, 10

*Miller v. United States*,
   163 F.3d 591 (9th Cir. 1998) ...................................................................... 13

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) ...................................................................... 16

*Monroe v. U.S. Marshals*,
   101 F.3d 706 (9th Cir. 1996) ........................................................................ 9

*Nielsen v. Preap*,
    139 S.Ct. 954 (Mar. 19, 2019) ......................................................................... 15

*Parsons v. United States*,
    811 F. Supp. 1411 (E.D. Cal. 1992) ............................................................... 13

*Perera v. Jennings*,
    598 F. Supp. 3d 736 (N.D. Cal. 2022) ..................................................... 15, 16

*Perera v. Kaiser*,
    No. 22-15898, 2022 WL 17587149 (9th Cir. Sept. 21, 2022) ............... 15, 16

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020) ............................................................................ 5

*Roman v. Wolf*,
    2020 WL 5797918 (C.D. Cal. Sept. 29, 2020) ............................................... 5

*Terbush v. United States*,
    516 F.3d 1125 (9th Cir. 2008) ....................................................................... 12

*United States v. Gaubert*,
    499 U.S. 315 (1991) ................................................................................. 11, 13

*United States v. Mitchell*,
    445 U.S. 535 (1980) ......................................................................................... 7

*United States v. Orleans*,
    425 U.S. 807 (1976) ......................................................................................... 8

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
    467 U.S. 797 (1984) ................................................................... 7, 11, 12, 14

*United States v. Sherwood*,
    312 U.S. 584 (1941) ......................................................................................... 7

*Vallier v. Jet Propulsion*,
    Lab., 120 F. Supp. 2d 887 (C.D. Cal. 2000) ................................................. 12

*Weissich v. United States*,
    4 F.3d 810 (9th Cir. 1993) .............................................................................. 16

**STATE CASES**

*Christensen v. Superior Ct.*,
  54 Cal. 3d 868 (1991) ............................................................. 18

*Coon v. Joseph*,
  192 Cal. App. 3d 1269 (Cal. Ct. App. 1987) ......................... 17

*Davidson v. City of Westminster*,
  32 Cal. 3d 197 (1982) ............................................................. 18

**FEDERAL STATUTES**

8 U.S.C. § 1226(c) ......................................................... 2, 3, 15

28 U.S.C. § 2671 ............................................................. i, 1, 2, 8

28 U.S.C. § 2680 ...................................................... i, 2, 8, 11, 13

28 U.S.C. § 1346 ................................................................ 1, 7, 17

**STATE STATUTES**

Cal. Civ. Proc. Code § 377.60 ................................................. ii, 3

**FEDERAL RULES**

Fed. R. Civ. P. 23(b)(2) ............................................................. 4

Fed. R. Civ. P. 12(b)(1) .............................................................. i

 Fed. R. Civ. P. 12(b)(6) ............................................................. i

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   INTRODUCTION**

3

This case arises from the death of Martin Vargas Arellano, an immigration

4

detainee who was housed at the Adelanto ICE Processing Center ("Adelanto").

5

Arellano's son, Plaintiff Martin Vargas ("Plaintiff"), brings this suit as the asserted

6

successor-in-interest of Arellano's estate. Adelanto is a detention center owned and

7

operated by defendant GEO Group. GEO subcontracted with defendant Wellpath, LLC

8

to provide medical services to Adelanto detainees until mid-October 2021. *See*

9

Declaration of Daniel Pomplun ("Pomplun Decl.") ¶¶ 2, 5, 7, 9-10, 12 & Exs. A-C.

10

Plaintiff has sued GEO and Wellpath, blaming them for his father's March 2021 death

11

from COVID-19 complications.

12

In addition, however, Plaintiff *also* has sued the United States, seeking to hold it

13

liable for Arellano's death pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C

14

§§ 1346(b), 2671–80. Because Plaintiff's First Amended Complaint ("FAC") [Dkt. 39]

15

fails to plead actionable claims against the United States for negligence, negligent

16

infliction of emotional distress ("NIED"), intentional infliction of emotional distress

17

("IIED"), false arrest/imprisonment, and wrongful death, those claims must be

18

dismissed, leaving Plaintiff's claims against GEO and Wellpath to proceed in this

19

lawsuit.

20

Plaintiff's **first** liability theory challenges the quality of Arellano's medical care at

21

Adelanto, alleging that it was defective. But at all times while he was detained, he was

22

under the direct care and control of GEO and Wellpath pursuant to a subcontract

23

between GEO and the City of Adelanto (April 2019-June 2019),[1] a contract between

24

GEO and the United States (June 2019-present), and a subcontract between GEO and

25

Wellpath. Because the FTCA's waiver of sovereign immunity does not permit the United

26

States to be held liable for the acts or omissions of its contractors or sub-contractors,

27

_____

28

[1] ICE contracted with the City of Adelanto for the management and operation of
Adelanto and the City, in turn, subcontracted with GEO. *See* Pomplun Decl. ¶ 2.

1    Plaintiff's claims against the United States based on allegedly deficient medical care

2    must be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 2671.

3        Plaintiff's **second** theory against the United States is that it negligently oversaw

4    the operations of GEO and Wellpath, and failed to select detention facilities sufficient to

5    meet Arellano's unique medical needs. The Court does not have jurisdiction over

6    Plaintiff's claims challenging the United States' oversight of GEO and selection of

7    Adelanto because those decisions squarely fall within the discretionary function

8    exception to FTCA liability. 28 U.S.C. § 2680(a). Courts have been clear that the

9    selection and monitoring of local detention facilities involves such discretionary

10   judgment. Accordingly, Plaintiff's claims based on the United States' exercise of

11   discretionary judgment in selecting GEO and contracting for detention at its Adelanto

12   facility must be dismissed.

13       Plaintiffs' **third** theory against the United States is that Arellano was wrongfully

14   detained and should have been released. But Plaintiff's allegations likewise fail as a

15   matter of law. Arellano's detention pending his removal was mandatory because he was

16   a removable alien with a long criminal history, including convictions for possession of

17   controlled substances and domestic violence. *See* 8 U.S.C. § 1226(c). The only order

18   providing for his release was judicially stayed because Arellano became a member of the

19   mandatory class in *Roman v. Wolf*, 5:20-cv-00768-TJH-PVC, addressing COVID-19

20   conditions at Adelanto. Thus, Plaintiff's claims based on Arellano's continued detention

21   fail. Moreover, if the United States had retained discretion over whether to release

22   Arellano, the discretionary function exception bars claims that contest the exercise of

23   such discretion. 28 U.S.C. § 2680(a).

24       Plaintiff's **fourth** theory is a novel attempt to found negligence, NIED, and IIED

25   tort claims on the United States' failure to communicate with Arellano's designated

26   representative about his declining health before his death. Plaintiff fails to identify a duty

27   under California tort law that would make a private person liable for negligence under

28   these circumstances—there is no general obligation to inform third parties, and indeed

even if there were, Arellano was under the direct medical care of GEO and Wellpath, not the United States. Thus, any alleged failure to communicate about Arellano's medical condition or hospitalization cannot state a valid tort claim against the United States. Plaintiff also fails to state a cognizable IIED claim because Arellano was not emotionally distressed by a failure to communicate about his death. Plaintiff's NIED claim likewise fails because Plaintiff does not allege he witnessed the wrongs at the time they were occurring (as California law requires for NIED claims).

**Fifth and finally,** because Plaintiff's wrongful death claim is premised on Plaintiff's other defective tort claims, it fails. Moreover, Plaintiff lacks standing. Cal. Civ. Proc. Code § 377.60.

Accordingly, Plaintiff's claims against the United States are defective. Furthermore, because Plaintiff cannot resolve the jurisdictional defects by amendment, the FAC should be dismissed with prejudice as to the United States, leaving GEO and Wellpath as the defendants in the lawsuit.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    April 2019 – April 2020: Arellano's Detention, Ordered Release, Stay of That Release, and Stay of His Habeas Petition

In April 2019, following his arrest and incarceration for failure to register as a sex offender, ICE took Arellano into mandatory detention based on his long criminal history, including convictions for possession of controlled substances and domestic violence. *See* Dkt. 39 [FAC] ¶ 63; Declaration of Gil O. Montes ("Montes Decl."), ¶¶ 9-12 & Ex. D; 8 U.S.C. §§ 1226(c)(10); INA §§ 212(a)(2), 236(c)(1)(A), 236(c)(1)(B), 237(a)(2)(A)(iii)(F).

On March 30, 2020, Arellano and several other detainees filed a habeas petition in the Central District of California, *Vargas Arellano v. Wolf*, No. 5:20-cv-00813-TJH-JEM ("*Arellano* Habeas Petition"). On April 2, 2020, this Court issued an order [*Arellano* Habeas Petition Dkt. 35] granting Arellano's motion for a TRO and requiring that he be released to the Echo Park Community Center on April 3, 2020. On April 3, 2020,

3

1    however, Arellano's counsel informed the Court that there was no space for Arellano at

2    that location. Accordingly, this Court issued an "ORDER STAYING RELEASE" on

3    April 3, 2020 [*Arellano* Habeas Petition Dkt. 41] providing that because "there [wa]s no

4    longer space available for [him] at the" identified post-release location, the Court stayed

5    the TRO and ordered that Arellano "*shall* not be released until the Court approves his

6    new post-release plan." (emphasis added).

7         On April 13, April 15, and April 22, 2020, Arellano's counsel filed supplemental

8    declarations relating to his TRO application. [*Arellano* Habeas Petition Dkts. 46, 58, 65].

9    His counsel did not move to lift the TRO stay, however, and the Court did not approve a

10   new post-release plan.

11        On April 23, 2020, the Court provisionally certified a class action for Adelanto

12   detainees seeking release due to COVID-19 risk in the case of *Hernandez Roman v.*

13   *Wolf*, No. 5:20-cv-00768-TJH-PVC ("*Roman*"). *See Roman* Dkt. 52. The Court also

14   issued a preliminary injunction requiring various COVID-19 control measures to be

15   implemented at Adelanto. *See Roman* Dkt. 55. On April 27, 2020, the Court issued a

16   Stay Order providing that Arellano's individual habeas petition was stayed because he

17   was "a member of the provisionally certified class in *Roman*" and "[a]s a class action

18   certified under Fed. R. Civ. P. 23(b)(2), *Roman* is a mandatory, no opt out class action."[2]

19   *Arellano* Habeas Petition, Dkt. 67.

20        On May 8, 2020, Arellano's counsel asked to lift that stay. *Arellano* Habeas

21   Petition Dkt. 68. On June 2, 2020, however, the Court denied Arellano's request to lift

22   the stay. *Arellano* Habeas Petition Dkt. 73. No further request to lift the stay was filed.

23   Arellano remained subject to the same procedures for seeking relief (including individual

24   release) via the *Roman* case that applied for all Adelanto detainees.

25

26   _____

27   [2] The Stay Order provided that "pursuant to the Preliminary Injunction issued in *Roman*,
     Petitioner shall remain released pending a final resolution of *Roman* or further order of
     the Court." Petitioner had not been released, however, because the Court's prior order

28   [*Arellano* Habeas Petition Dkt. 41] had barred that until the Court approved a new
     release plan for him, which it never did.

1
2

       **B.**      **April 2020 – Present: Judicial Oversight of Adelanto in the *Roman***
                                    **Class Action**

3
4
5

On April 23, 2020, as discussed above, the Court issued a preliminary injunction compelling the reduction of the population at Adelanto, a status report to be filed daily, and many additional conditions. *See Roman* Dkt. 55; FAC ¶ 35.

6
7
8
9
10
11
12
13

On September 29, 2020, the Court issued a modified preliminary injunction order which required the government to file an Adelanto population reduction plan, refuse any new or transfer detainees, test detainees weekly for COVID-19, file a weekly census of Adelanto detainees, stop using certain disinfectants, implement social distancing and mask requirements for detainees, staff, and visitors, and provide cleaning supplies and assistance to those requiring aid. *See Roman v. Wolf*, No. EDCV 20-00768 TJH (PVCx), 2020 WL 5797918, at *6 (C.D. Cal. Sept. 29, 2020), *aff'd in part, vacated in part, remanded,* 977 F.3d 935 (9th Cir. 2020).

14
15
16
17
18
19
20

On October 13, 2020, the Ninth Circuit affirmed the preliminary injunction and the population reduction requirement, but vacated certain provisions requiring "specific measures to be implemented at Adelanto" including the requirement "that specific areas be cleaned 'by a professionally trained cleaning staff,' rather than by detainees or facility employees with a mix of duties," cautioning that certain provisions of the preliminary injunction "wade into facility administration at a granular level …." *Roman v. Wolf*, 977 F.3d 935, 945–46 (9th Cir. 2020).

21
22
23
24
25
26
27
28

On October 15, 2020, the court ordered the population of Adelanto further reduced to 475 detainees and specified criteria for isolating and quarantining detainees, among other requirements. *Roman* Dkt. 686, at pp. 13-14. Three of the court's four criteria for determining which detainees to release required that the detainee not be subject to a mandatory detention order (criteria #1 and #2) or have a felony criminal conviction (criteria #3). *See id.*, p. 10. The court also specified that "[t]he Government shall not release any detainee whose most recent COVID-19 test was positive, who is suspected of being COVID-19 positive, or is in isolation or quarantine housing, until that detainee

tests negative on a subsequent test and is symptom free." *Id.*, p. 11. The court "allow[ed] Adelanto's ***medical staff*** to weigh the benefits and detriments of each type of testing … and to choose the method of testing that the ***medical staff*** deems to be the most appropriate and beneficial" and warned that "[i]f the testing protocols [were] selected by Adelanto's detention staff [GEO], as opposed to its medical staff [Wellpath], the Court … expect[ed] to hear from the Petitioners-Plaintiffs and/or the Government very quickly." *See id.*, p. 14 (emphasis in original).

### C.    March 2021 – Special Master's Investigation of Arellano's Death

On March 19, 2021, counsel for the *Roman* Petitioners-Plaintiffs filed a notice of death of class member Martin Vargas Arellano. *Roman* Dkt. 1030. This Court required the government to file a written response to the notice. *Roman* Dkt. 1031. After receiving that response, the Court ordered the matter referred to a Special Master for investigation. *Roman* Dkt. 1039.On July 16, 2021, the Special Master issued his report. *Roman* Dkt. 1220.

### D.    March 2023 - Present: Plaintiff's Instant Lawsuit

On March 7, 2023, Plaintiff brought claims on behalf of Arellano's estate against GEO, Wellpath, and the United States for negligence, IIED, and false imprisonment (*see* Dkt. 1) and amended on May 23, 2023, to add NIED and wrongful death claims by the estate. *See* Dkt. 39.

Plaintiff alleges that the United States was negligent and negligently inflicted emotional distress on Arellano by failing to (1) release Arellano "despite his risk of serious illness or death" or "after he contracted COVID-19;" (2) "properly oversee facilities and staff;" (3) "shield [Arellano] from contracting COVID-19;" (4) "provide facilities and care sufficient to meet [Arellano's] medical needs;" and (5) "communicate with [Arellano's] designated representative regarding his illness and transfer to hospital." FAC ¶¶ 106(a)-(f), 116(a)-(f). Plaintiff largely reasserts the same conclusory allegations in support of his IIED claim, claiming the United States (1) "committed outrageous conduct" by failing to "take steps to shield [Arellano] from contracting COVID-19" or

6

"release him despite multiple requests" and his health issues; (2) detained Arellano "under conditions in which the facilities and level of care were not adequate to meet his medical needs[;]" and (3) "acted in bad faith by actively concealing the seriousness of [Arellano's] condition and death from his counsel and 'releasing' him on his deathbed …." *Id.* ¶¶ 128-130. Plaintiff asserts his false imprisonment claim in a similarly conclusory fashion, alleging that the United States "intentionally imprisoned Plaintiff [SIC] without lawful privilege and without Plaintiff's [SIC] consent." *Id.* ¶ 138. Plaintiff's wrongful death claim is premised solely on Arellano's death being a direct and proximate cause of Plaintiff's other claims. *Id.* ¶ 166.

## III.   PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES MUST BE DISMISSED

### A.   The Contractor Exclusion Bars Plaintiff's Claims Based on Arellano's Care and Safekeeping at Adelanto by GEO and Wellpath

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Lawsuits against the United States must accordingly be dismissed for lack of subject matter jurisdiction unless the plaintiff can show a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The FTCA waives sovereign immunity with respect to tort liability "'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (quoting 28 U.S.C. § 1346(b)(1)). Nonetheless, the FTCA "'d[oes] not waive the sovereign immunity of the United States in all respects,'" for Congress "'was careful to except . . . several important classes of tort claims.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984) (hereinafter "*Varig Airlines*")). Among these are the contractor exclusion and discretionary-function exception.

7

1   28 U.S.C. §§ 2671, 2680(a).

2          The United States is not liable for the acts or omissions of a contractor or

3   sub-contractor unless the United States controls and supervises "'the detailed physical

4   performance and day to day operations of the contractor.'" *Autery v. United States*, 424

5   F.3d 944, 956 (9th Cir. 2005) (quoting *Hines v. United States*, 60 F.3d 1442, 1446 (9th

6   Cir. 1995), a*brogated on other grounds by United States v. Olson*, 546 U.S. 43 (2005)).

7   The central inquiry is the degree to which the United States controls "the primary

8   activity contracted for and not for the peripheral, administrative acts relating to such

9   activity." *Carrillo v. United States*, 5 F.3d 1302, 1305 (9th Cir. 1993).

10          "The United States may 'fix specific and precise conditions to implement federal

11   objectives' without becoming liable for an independent contractor's negligence." *Autery*,

12   424 F.3d at 957 (quoting *United States v. Orleans*, 425 U.S. 807, 816 (1976)); *see also*

13   *id.* ("Contractual provisions directing detailed performance generally do not abrogate the

14   contractor exception."). Similarly, the authority to "'compel compliance with federal

15   regulation does not change a contractor's personnel into federal employees,'" nor do

16   "'[d]etailed regulations and inspections'" or "'standards that are designed to secure

17   federal safety objectives.'" *Id.* (quoting *Letnes v. United States*, 820 F.2d 1517, 1519

18   (9th Cir. 1987) and *Hines*, 60 F.3d at 1447). Rather, the United States may be liable only

19   where it "direct[s] the actual *performance* of the contract" by supervising or directing

20   "day-to-day operations." *Id.* (emphasis in original).

21          In support of Plaintiff's negligence, NIED, and IIED claims, Plaintiff alleges that

22   the care and safekeeping of Arellano during his detention were deficient because they

23   failed to shield him from contracting COVID-19 and did not meet his unique medical

24   needs. FAC ¶¶ 106(a), (c) (negligence), 116(a), (c) (NIED), 112-113 (IIED). But as

25   Plaintiff admits (*see* FAC ¶¶ 19, 27), the United States does not direct the detailed

26   physical performance and day-to-day operations at Adelanto, and the FTCA does not

27   authorize imposing liability for the alleged negligence of federal contractors.

28          The Supreme Court marked this jurisdictional limit in *Logue v. United States*,

8

412 U.S. 521 (1973). There, a deputy United States marshal arrested a suspect on a federal bench warrant. *Id.* at 523. The deputy marshal transported the suspect to the Nueces County jail in Corpus Christi, Texas, "one of some 800 institutions operated by state and local governments that contract with the Federal Bureau of Prisons to provide for the safekeeping, care, and subsistence of federal prisoners." *Id.* While housed at the Nueces County jail, the suspect committed suicide, and his parents sued the United States for wrongful death under the FTCA. *Id.* at 522, 524. The Supreme Court held that the FTCA did not waive the United States' sovereign immunity for the alleged negligent care and safekeeping provided by the County. *Id.* at 530 ("The Court of Appeals' conclusion that the deputy marshal had no authority to control the activities of the sheriff's employees is supported by both the enabling statute [of the Bureau of Prisons] and the contract actually executed between the parties. We agree with its resultant holding that the sheriff's employees were employees of a 'contractor with the United States.'"). The Court held that absent a showing of distinct, direct negligence by federal employees involved in the decedent's care and safekeeping, no jurisdiction could lie under the FTCA. *Id.* at 532.[3]

*Johnson v. United* States, No. CIV.A. 4:05CV40, 2006 WL 572312 (E.D. Va. Mar. 7, 2006) is also illustrative. There, the United States Marshals arrested a suspect who later died at the Virginia Peninsula Regional Jail ("VPRJ") from prostate cancer. *Id.* at *1. The plaintiff's estate sued the United States, alleging that the federal government

---

[3] *See also, e.g.*, *Arora v. United States*, 144 F. App'x 627, 628 (9th Cir. 2005) (affirming the dismissal of the plaintiff's claim that he "received inadequate medical care while he was in federal custody" because the plaintiff "failed to provide any evidence that the government had authority over the daily operations of either the New River Valley Regional Jail or the Roanoke Memorial Hospital"); *Monroe v. U.S. Marshals*, 101 F.3d 706, 706 (9th Cir. 1996) (unpublished) (holding that "the district court correctly concluded that the jail is an independent contractor, and that the United States cannot be held liable for the negligence of jail employees" that caused the plaintiff to develop lupus); *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) (holding that the United States was not liable for the negligence of a pediatrician working under contract at Madigan Army Medical Center because "neither Madigan nor any other agency of the federal government had any control over [the contractor's] practice of medicine" or his "actions in diagnosing and treating patients").

9

1   "'wrongfully and negligently failed or refused to provide medical care'" to the decedent

2   and that he died "as a 'direct and proximate result' of the United States' breach of its

3   duty of care." *Id.* The court held that it lacked jurisdiction based on the contractor

4   exclusion. *Id.* at *2. The court reasoned that "the intergovernmental contract required the

5   VPRJ to provide general medical care to the federal prisoners in its custody as well as

6   provide trained jail staff for around the clock supervision including '24-hour emergency

7   medical care for prisoners.'" *Id.* at *4. Although the Marshals "retained the right to

8   perform 'periodic inspections' of the VPRJ facility, such inspections do not 'nullify the

9   general rule' that the United States is not responsible for the actions of an independent

10  contractor." *Id.*

11      The court in *Sanchez-Soriano v. United States* likewise held that the United States

12  could not be liable for the allegedly deficient care provided to a paraplegic ICE detainee

13  at a detention center operated by Pulaski County, Illinois. *See* No. 09–cv–500–JPG–

14  PMF, 2011 WL 6217063, at *1, *3-*4 (S.D. Ill. Aug. 2, 2011). The court reasoned that

15  "[t]he FTCA makes clear that a federal agency does not include any contractor with the

16  United States," and the intergovernmental service agreement between the United States

17  and Pulaski County "g[ave] responsibility for providing care for federal detainees to

18  Pulaski County." *Id.* at *4 (finding "no provision" in the intergovernmental service

19  agreement "giving federal employees authority to supervise daily operations at the

20  Tri-County facility").

21      Here, as in *Logue*, *Johnson*, *Sanchez-Soriano*, and other authorities,[4] Arellano's

22  day-to-day care at Adelanto was the dual responsibility of GEO and Wellpath.

23  Declaration of David Gomez ("Gomez Decl.") ¶¶ 2–5; Pomplun Decl. ¶¶ 2–13. Plaintiff

24  alleges as much. FAC ¶ 16 ("Defendant GEO is a private prison corporation,

---

26  [4] *See supra* n. 3; *see also, e.g.*, *Bethae v. United States*, 465 F. Supp. 2d 575, 580–81
27  (D.S.C. 2006) (holding that the United States could not be liable for the death of an
    asthmatic federal prisoner detained at the Darlington County Detention Center); *Esogbue
28  v. Dep't of Homeland Sec.*, No. 07-6843, 2008 WL 754722, at *6 (E.D. La. Mar. 18,
    2008) (holding that the United States could not be liable to an ICE detainee who lost his
    property at the Plaquemines Parish Detention Center).

1   headquartered in Boca Raton, Florida, that operates Adelanto …. Defendant GEO

2   contracts with Defendant ICE to provide detention and medical services at Adelanto.");

3   *id.* ¶ 19 ("ICE does not directly provide medical care to all detainees housed within ICE

4   detention centers. Instead, it contracts frequently with private medical contractors."); *id.*

5   ¶ 27 ("In February 2016, GEO stopped providing medical care at Adelanto and

6   contracted with Correct Care Solution, the corporate predecessor of Wellpath to provide

7   medical care at the facility.").

8       Plaintiff's negligence, NIED, and IIED claims against the United States premised

9   on the care and safekeeping of Arellano at Adelanto must accordingly be dismissed for

10  lack of subject matter jurisdiction pursuant to the contractor exclusion.

11  **B.  The Discretionary-Function Exception Bars Plaintiff's Claims Based on**

12  **the United States' Oversight of GEO and Wellpath, and Selection of**

13  **Adelanto as a Detention Facility**

14      The discretionary-function exception retains the United States' sovereign

15  immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to

16  exercise or perform a discretionary function or duty on the part of a federal agency or an

17  employee of the Government, whether or not the discretion involved be abused."

18  28 U.S.C. § 2680(a). This exception "'prevent[s] judicial 'second-guessing' of

19  legislative and administrative decisions grounded in social, economic, and political

20  policy through the medium of an action in tort.'" *Chadd*, 794 F.3d at 1108 (quoting

21  *Varig Airlines*, 467 U.S. at 814); *see Begay v. United States*, 768 F.2d 1059, 1064 (9th

22  Cir. 1985) ("[I]f judicial review would encroach upon this type of balancing done by an

23  agency, then the exception would apply."). The Supreme Court devised a two-step test

24  for applying the discretionary-function exception. *United States v. Gaubert*, 499 U.S.

25  315, 328–34 (1991).

26      First, a court considers whether the challenged conduct is "'discretionary in

27  nature,'" *i.e.*, if the acts or omissions alleged to be negligent involve "'an element of

28  judgment or choice.'" *Chadd*, 794 F.3d at 1108–09 (quoting *Gaubert*, 499 U.S. at 322).

11

1    If there is a statute, regulation, or policy that dictates "'*mandatory* and *specific* action,'"

2    the discretionary-function exception cannot apply because "'there can be no element of

3    discretion when an employee has no rightful option but to adhere to the directive.'" *Id.*

4    (quoting *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)) (emphasis

5    added).

6         Second, a court considers whether the challenged conduct "is of the type Congress

7    meant to protect" under the discretionary-function exception, *i.e.*, whether it "involves a

8    decision susceptible to social, economic, or political policy analysis." *Ard v. F.D.I.C.*,

9    770 F. Supp. 2d 1029, 1035 (C.D. Cal. 2011). It is well established that "[w]hen an

10   agency determines the extent to which it will supervise the safety procedures of private

11   individuals, it is exercising discretionary regulatory authority of the most basic kind."

12   *Varig Airlines*, 467 U.S. at 819–20; *see In re Consol. U.S. Atmospheric Testing Litig.*,

13   820 F.2d 982, 995–96 (9th Cir. 1987) (holding that the failure to supervise a contractor's

14   compliance with safety procedures fell within the discretionary-function exception);

15   *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 914 (C.D. Cal. 2000) (finding that

16   the United States "delegated to Caltech the responsibility for waste disposal," and

17   holding that "the government's negligent supervision or even total failure to supervise

18   are discretionary decisions protected by the discretionary function exception"), *aff'd*, 23

19   F. App'x 803 (9th Cir. 2001).[5]

20   _____

21   [5] *See also, e.g., Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) ("[T]he
     discretionary function exemption protects the government from liability for claims
22   premised on the lack of training, oversight, or qualifications of air traffic controllers,
     since the government acted within its discretion to contract those responsibilities out to
23   Midwest."); *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a
     contractor's work, including the degree of oversight to exercise, is inherently a
24   discretionary function."); *Layton v. United States*, 984 F.2d 1496, 1502–03 (8th Cir.
     1993) (holding that claims against the Forest Service for failing to supervise a logging
25   contractor were barred by the discretionary-function exception); *Harper v. Lockheed
     Martin Energy Sys., Inc.*, 73 F. Supp. 2d 917, 922 (E.D. Tenn. 1999) (holding that "[t]he
26   United States' decision to utilize an independent contractor to insure safety at the
     incinerator, its decision on how to monitor [the contractor's] actions in complying with
27   various regulations, and the decision by [the United States] to either warn or to not warn
     the public about dangers from the emissions are all policy considerations"); *Hagy v.
28   United States*, 976 F. Supp. 1373, 1378–79 (W.D. Wash. 1997) (holding that the United

                                                                        *(footnote cont'd on next page)*

12

The Supreme Court has emphasized that the discretionary-function exception "is not confined to the policy or planning level" and extends "to the actions of Government agents" taken "in the course of day-to-day activities." *Gaubert*, 499 U.S. at 323, 324–25, 334. Further, "the decision giving rise to tort liability 'need not be *actually* grounded in policy considerations, but must be, by its nature, *susceptible* to a policy analysis.'" *Chadd*, 794 F.3d at 1109 (emphasis added) (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)). In other words, "'the focus of the inquiry is not on the agent's subjective intent'" in exercising discretion, but rather "'on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id.* (quoting *Gaubert*, 499 U.S. at 325). Likewise, it is irrelevant whether the actual conduct challenged in a particular case amounted to negligence. 28 U.S.C. § 2680(a); *Parsons v. United States*, 811 F. Supp. 1411, 1416 (E.D. Cal. 1992) ("'[N]egligence is simply irrelevant to the discretionary function inquiry' because § 2680(a) offers immunity 'whether or not the discretion involved be abused.'") (quoting *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029).

Plaintiff alleges that the United States negligently failed to: (1) oversee GEO and Wellpath in a particular manner that would have prevented Plaintiff's contraction of COVID-19; and (2) select detention facilities sufficient to meet Arellano's unique medical needs. FAC ¶¶ 106(c), (d) (negligence), 116 (c), (d) (NIED). Similarly, Plaintiff alleges that the United States intentionally inflicted emotional distress on Arellano by detaining him "under conditions in which the facilities … were not adequate to meet his medical needs." FAC ¶ 129. Each of these alleged acts is barred by the discretionary-function exception to FTCA liability.

At the first step of the discretionary-function inquiry, Plaintiff fails to identify any mandatory and specific requirement compelling the United States to oversee GEO or Wellpath in a particular different manner designed to prevent Arellano's contraction of

---

States' decision "to delegate safety and warning responsibilities to [an independent contractor] is the type of policy decision the discretionary function exception was designed to shield").

and death from COVID-19 or to provide a detention facility tailored to the alleged unique medical needs of any single detainee. Though Plaintiff alleges that the United States "failed to meet up to [ICE's Pandemic Response Requirements ("PRR")] and failed to follow the Centers for Disease Control and Prevention ('CDC')'s guidance on COVID-19 management in detention centers," (FAC ¶ 24) such conclusory averments are insufficient, particularly when they do not explain what the *United States* supposedly did wrong in this regard, as opposed to GEO. *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 776 (9th Cir. 2013) (per curiam) (holding that "[b]road allegations regarding undefined 'policies and practices' are insufficient" to overcome the discretionary-function exception); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (per curiam) (holding that "a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss"). Tellingly, Plaintiff fails to allege that ICE's PRR or the CDC's guidance impose any mandatory and specific requirements on the United States' oversight or selection of detention facilities that it failed to follow in selecting GEO.

As for the second step, it is well established that the selection and supervision of federal contractors involves discretionary judgments "of the most basic kind." *Varig Airlines*, 467 U.S. at 819–20; *see supra* pp. 13-14 & n. 5 (collecting authorities). Courts thus routinely hold that they lack jurisdiction over claims challenging the selection and monitoring of local detention facilities. *Arora v. United States*, 144 F. App'x 627, 628 (9th Cir. 2005); *Bethae*, 465 F. Supp. 2d at 583 (holding that "the decision of where to house an inmate is subject to public policy analysis"); *Sanchez-Soriano*, No. 09–cv–500–JPG–PMF, 2011 WL 6217063, at *4 (S.D. Ill. Aug. 2, 2011) (holding that "Sanchez-Soriano's claim that federal employees breached a duty of care by selecting Tri-County as the place for his detention is barred by the FTCA's discretionary function exception"); *Johnson*, No. CIV.A. 4:05CV40, 2006 WL 572312, at *6 (E.D. Va. Mar. 7, 2006) (holding that "after concluding that the decision to hire the [contractor] . . . was within the ambit of the discretionary function exception," any claim that the United

States was negligent in ensuring adequate medical care was not cognizable, as such allegations were "embraced by the overarching decision to engage" the federal contractor); *Bernal v. United States*, No. SACV 16–02262–CJC(KSx), 2017 WL 7833611, at *4 (C.D. Cal. Sept. 21, 2017) (dismissing FTCA claims for negligent hiring, supervision, or retention for lack of subject matter jurisdiction because "ICE's supervision and training of [Orange County Sheriff's Department] employees [overseeing day-to-day operations of a detention facility] falls within the discretionary function exception."). Accordingly, Plaintiff's negligence and NIED claims that the United States improperly supervised GEO's and Wellpath's operations of Adelanto and negligence, NIED, and IIED claims that the United States' selection of Adelanto as a detention facility was inadequate must be dismissed for lack of subject matter jurisdiction.

**C.** **Plaintiff's Claims Based on Arellano's Continued Detention Pending His Removal Must Be Dismissed for Failure to State a Claim and Are Also Barred by the Discretionary-Function Exception**

**1.** *Failure to State a Claim*

Plaintiff asserts that by failing to release Arellano from Adelanto before or after contracting COVID-19, the United States was negligent, negligently and intentionally inflicted emotional distress on Arellano, and falsely imprisoned Arellano. FAC ¶¶ 106(b), (e) (negligence), 116 (b), (e) (NIED), 112 (IIED), 121 (false imprisonment). But, as an aggravated felon, Arellano's detention was mandatory, and he *could not* be released absent a court order. 8 U.S.C. § 1226(c); *Nielsen v. Preap*, 139 S.Ct. 954, 966 (Mar. 19, 2019) (Section 1226(c)(1) "curb[s] the discretion to arrest: The Secretary must arrest those aliens guilty of a predicate offense. And subsection (c)(2) … cut[s] back the Secretary's discretion over the decision to release: The Secretary may not release aliens 'described in' subsection (c)(1)—that is, those guilty of a predicate offense."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) ("§ 1226(c) does not grant the Attorney General statutory authority to release individuals detained under on

15

his own accord ….[but] the Court does … have the power to grant petitions for *habeas corpus* raising as-applied constitutional challenges to that detention without a bond hearing."), *appeal dismissed sub nom. Perera v. Kaiser*, No. 22-15898, 2022 WL 17587149 (9th Cir. Sept. 21, 2022).

While Arellano's request for temporary restraining order was initially granted, that order was then immediately stayed before his release based on his counsel's disclosure that he did not have a suitable post-release location. Thereafter, the Court stayed Arellano's habeas petition because he was a member of the *Roman* class case and later denied his request to lift that stay. Thus, at no point after his initial detention in April 2019 was there a court order requiring Arellano's release that ICE failed to follow. Because ICE *could not* release Arellano absent such an order, ICE's failure to do so cannot constitute the basis of any liability.[6]

### 2.   *The Discretionary-Function Exception*

Even if Arellano's continued detention had been discretionary (which it was not), the United States' decision to not exercise that discretion to release him before or after his contraction of COVID-19 would be exempted under the discretionary-function exception. *See Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993) (discretionary-function exception shielded federal agency from FTCA liability for any negligence in supervising probationer); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, and … it falls within [the discretionary] exception."); *Flammia v. United States*, 739 F.2d 202, 203 (5th Cir. 1984) (affirming dismissal of FTCA claims pursuant to discretionary-function exception because "the INS has broad statutory discretion to parole into the United States foreign nationals (*including discretion to release foreign*

---

[6] Plaintiff also contends that by releasing Arellano on March 5, 2021, the government negligently and intentionally inflicted emotional distress on him. FAC ¶¶ 117, 130. However, Plaintiff alleges that Arellano had suffered "brain death" one week earlier, on February 26, 2021. FAC ¶ 7.

*nationals from detention*), even when they might otherwise be excludable.") (emphasis added). Thus, even if Arellano's continued detention had been discretionary, the United States' decision not to release him could not be the basis of Plaintiff's FTCA claims.

**D.      Plaintiff's Claims Based on the United States' Alleged Failure to Communicate Regarding Arellano Must Be Dismissed for Failure to State a Claim**

Plaintiff alleges that the United States negligently failed to disclose Arellano's health condition and hospitalization to his counsel. FAC ¶¶ 104(f) (negligence), 116 (f) (NIED). However, Plaintiff fails to identify any tort duty that required the United States to communicate a detainee's medical condition or hospitalization to the detainee's designated representative. Because the United States can only be liable for torts "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" (28 U.S.C. § 1346) and no such California law exists here, the United States' alleged failure to communicate cannot give rise to negligence liability. Accordingly, Plaintiff's negligence and NIED claims based on the United States' alleged failure to disclose Arellano's health condition and hospitalization must be dismissed.

Plaintiff also alleges IIED based on the United States' failure to communicate regarding Arellano's condition and death. FAC ¶ 130. Plaintiff's IIED claim based on an alleged failure to communicate about Arellano's death fails because the deceased Arellano could not have suffered emotional distress from the alleged conduct. Plaintiff's IIED claim based on failure to communicate regarding Arellano's condition also fails because Plaintiff failed to allege the United States acted intentionally or with reckless disregard of the probability of causing emotional distress, a requisite element of IIED. *Coon v. Joseph*, 192 Cal. App. 3d 1269, 1273 (Cal. Ct. App. 1987) ("Intentional infliction of emotional distress requires conduct which is *especially calculated to cause* and does cause the claimant mental distress of a very serious nature.") (emphasis in original). While Plaintiff alleges that the United States "actively conceal[ed]" Arellano's

17

condition (FAC ¶ 130), such conduct is not directed towards Arellano, as required. *See Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991) (To recover for IIED, "[t]he defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.' …. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.") (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982)). Thus, Plaintiff fails to plead a valid IIED claim based on any alleged failure to communicate.

**E.    Plaintiff's Wrongful Death Claim Must Be Dismissed Because It Is Derivative of Plaintiff's Failed Claims and Plaintiff Lacks Standing**

Plaintiff's wrongful death claim is premised on his other claims for "negligence, wrongful acts, conduct, and omissions" of the United States. Because each of Plaintiff's claims fails for the reasons above, Plaintiff's derivative wrongful death claim also fails.

**IV.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court dismiss Plaintiff's First Amended Complaint as to the United States with prejudice.

/ / /

/ / /

## <u>Certificate of Compliance under L.R. 11-6.2</u>

The undersigned, counsel of record for Defendant the United States of America certifies that this brief contains 6,196 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 29, 2023                    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

_/s/ Shaina C. St John_
SHAINA C. ST JOHN
Assistant United States Attorney

Attorneys for Defendant
the United States of America

19