Stacy Tolchin
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer
*Email: Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
1200 18th Street NW Suite 700
Washington, DC 20036
Telephone: (202) 470-2082
Facsimile: (617) 227-5495

(*continued on next page*)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Martin VARGAS, as Successor in
Interest of the Estate of Martin
Vargas Arellano,

        Plaintiff,

    v.

UNITED STATES OF AMERICA; THE
GEO GROUP; and WELLPATH, LLC.

            Defendants.

Case No. 5:23-cv-00380-JWH-SP

Honorable Sheri Pym

**DISCOVERY MOTION**

**JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
DEFENDANT *THE GEO GROUP* TO
PROVIDE FURTHER RESPONSES TO
PLAINTIFF'S REQUESTS FOR
PRODUCTION OF DOCUMENTS AND
INTERROGATORIES**

**DECLARATIONS OF LABONI A. HOQ**

1

2

3

4

5

6

7

**AND SUSAN E. COLEMAN, AND EXHIBITS THERETO, FILED CONCURRENTLY**

Hearing Date: April 9, 2024
Hearing Time: 10:00 a.m.
Location: via court's posted Zoom webinar
Jury Pre-Trial Conference: November 22, 2024
Jury Trial Date: December 9, 2024
Discovery Cut-Off: July 26. 2024

8

9

10

11

12

13

Laboni A. Hoq
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    Introductory Statements ……………………………………………1

   A. Plaintiff's Introductory Statement ………………………………1

   B. Defendant's Introductory Statement………………………………..4

II.   Joint Specification of Disputes……………………………………... 6

   A. GEO's Spoliation of Emails Between 2019-2021, and Failure to Search ESI [RFP Nos. 11-19, 21, 28; Rog 21]………………………………………..5

   B. Documents Related to Investigations Into Vargas Arellano's Death [RFP No. 2]…………………………………………………………19

   C. Vargas Arellano's Medical Records In the Critical Period Leading to His Contracting Covid-19 and Thereafter, Including Complete Adelanto Infirmary Records [RFP No. 1, 11-14] ……………………………………..22

   D. Documents Related to Performance of GEO Staff Who Interfaced with Mr. Vargas Arellano Around the Time He Contracted Covid-19 [RFP No. 4]…………………………………………………………………...26

   E. Documents and Information Relating to Testing and Contact Tracing at Adelanto, Including Regarding How Mr. Vargas Arellano Contracted COVID-19 [Rog Nos. 5, 17; RFP Nos. 25-28]……………………………28

   F. Documents and Information Related to GEO, Wellpath and USA Staff Who Had Close Contact with Vargas Arellano and Who Also Tested Positive for Covid-19,  [Rog Nos. 11, 12, 14; RFP Nos. 24, 29, 30]…………………..33

   G. Documents Related to Defendants Compliance with COVID-19 policies and practices, as well as other detention standards relevant to this case….39

   H. Documents Relating to GEO's Contracts with USA and Wellpath Governing their Independent Covid-19 Obligations [RFP Nos. 8, 9]……..42

This Joint Stipulation is submitted by the undersigned parties pursuant to Local Rule 37-2 in connection with Plaintiff Martin Vargas' ("Plaintiff" or "Vargas") motion to compel Defendant The GEO Group, Inc. ("Defendant" or "GEO") to produce documents including electronically stored information and respond to interrogatories. In accordance with Local Rule 37-1, the parties have met and conferred in good faith to resolve this dispute but were unable to do so.

## III.    Introductory Statements

### A. Plaintiff's Introductory Statement

#### 1.    *Factual Background of the Case*

Plaintiff Martin Vargas is the eldest son of Martin Vargas Arellano, who tragically died after contracting COVID-19 in U.S. Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto") due to repeated failings by Defendant USA and its contractors GEO and Wellpath LLC ("Wellpath"). GEO runs operations at Adelanto, including providing health care for detainees through GEO's sub-contract with Wellpath. First Amended Complaint, Dkt. 39 at ¶¶16-17. Under the operative contracts, court orders, and governing law, Defendants were required to abide by COVID-19 mandates designed to forestall Vargas Arellano from contracting COVID-19, and his tragic and untimely death, which they failed to do.

#### a.    *Vargas Arellano's Immigration Detention in Contravention of Court Orders*

Vargas Arellano came to the U.S. when he was two. Dkt. 39 at ¶60. On May 15, 2013, ICE initiated removal proceedings. *Id*. at ¶61. He was assigned an attorney to represent him in the proceedings because he was a class member in *Franco-Gonzalez v. Holder* which mandates legal representation for mentally incompetent individuals. *Id*. Vargas Arellano suffered from chronic health conditions including high blood pressure, diabetes, cellulitis, liver disease, and severe psychiatric illness. Dkt. at ¶67.

Following the outbreak of COVID-19, ICE issued a series of mandates to manage and attempt to limit the spread of COVID-19 at immigration detention facilities. *Id*. at

1

¶¶21-22. Multiple class action lawsuits further obligated ICE to stem the spread of COVID-19 at detention facilities. Vargas was a class member in two such cases. First, *Fraihat v. ICE* mandated timely custody redetermination and release for class members, like Vargas Arellano, who were chronically ill and immunocompromised. *Id*. at ¶25. Second, *Roman v. Wolf*, required population reduction at Adelanto in response to the COVID-19 pandemic. *Id*. at ¶¶34-39. ICE delayed and then denied Vargas Arellano's release requests based on these orders, including shortly before he contracted COVID-19 and died from it on March 8, 2021. *Id*. at ¶71.

### b.  *Vargas Arellano's Illness and Death in Defendants' Custody and Care*

On December 10, 2020, Vargas Arellano tested positive for COVID-19. Dkt. 39 at ¶80. In the course of the *Roman* litigation, Defendant USA attested that Vargas Arellano contracted the disease from a Wellpath employee during a November 29, 2020 examination. *Id*. Defendant USA attested that this was his only known exposure to COVID-19. Declaration of Laboni Hoq ("Hoq Decl."), ¶ 22, Exhibit ("Ex.") L.[1]

Between December 11, 2020 and February 27, 2021, Vargas Arellano endured persistent COVID-19 symptoms and was  repeatedly hospitalized. *Id*. at ¶¶83–89. On or about February 19, 2021, when medical professionals determined that Vargas Arellano was at risk of "'sudden death' due to multiple ailments … in the wake of COVID-19 infection," ICE initiated plans to release him. Dkt. 39 at ¶89. However, by February 26, 2021, he suffered a stroke that caused brain death. *Id*. at ¶92. On March 5, 2021, ICE "released" him purportedly on his own recognizance while in the hospital, even though he was brain dead. *Id*. at ¶93. On March 8, 2021, he passed away due to complications from COVID-19. *Id*.at ¶94. ICE failed to inform Plaintiff or Vargas Arellano's attorney of his "release" or death. *Id*.

Plaintiff files this action for the loss of his father Mr. Vargas Arellano, alleging

---

[1] Hereinafter, all references to Exhibits are to those attached to the concurrently filed declaration of Laboni Hoq, unless otherwise stated.

claims for violations of the Federal Tort Claims Act against Defendant United States of America (Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and False Arrest/Imprisonment and Wrongful Death), as well as against GEO and Wellpath for Violation of Detention Standards (Cal. Gov. Code § 7320), Negligence, Negligent Infliction of Emotional Distress, and Wrongful Death.

**2.** ***Summary of Discovery Disputes***:

Plaintiff seeks a Court Order requiring Defendant GEO to timely supplement and amend its discovery responses to ensure Plaintiff receives critical information central to this case to which it is entitled: relevant communications, Electronically Stored Information ("ESI"), and other information related to how Vargas Arellano contracted COVID-19 despite the myriad mandated precautions. GEO has never denied that Plaintiff is entitled to this information, but instead has delayed providing it, and has also admitted destroying critical email evidence for a three-year period central to the case without justification.

On June 6, 2023, Plaintiff served on GEO his first set of Requests For Production of Documents ("RFPs" Nos. 1 to 23) and Interrogatories ("Rogs" Nos. 1 to 10). Hoq Decl. ¶3. On October 30, 2023, Plaintiff served on GEO his second set of RFPs, Nos. 24 to 32, and Rogs, Nos. 11 to 21. *Id.* ¶5. Plaintiff afforded GEO extensions to respond to each of these sets of discovery. *Id.* ¶¶3, 5. Between October 9, 2023 and February 13, 2024, upon reviewing GEO's responses to these RFPs and Rogs, Plaintiff engaged in lengthy meet and confer efforts with GEO spanning *four months*, detailing the deficiencies with its discovery responses in five separate correspondence. *Id.* ¶¶8-15, at Exs. A-E.

At the parties Rule 37-1 conference on October 19, 2023, to address the deficiencies Plaintiff identified with GEO's responses to his first set of RFPs and Rogs, GEO claimed that it would address the deficiencies. Ex. B. However, despite sending GEO three additional letters reminding it of its commitments and discovery obligations, making clear Plaintiff would file this motion if GEO failed to address them, now four months later GEO has failed to do so. At the parties' February 9, 2024 Rule 37-1 conference to address the

deficiencies with GEO's responses to Plaintiff's second set of RFPs and Rogs, which Plaintiff previously documented in a January 4, 2024 letter, Ex. C, GEO refused to substantively engage on the issues. Hoq Decl. ¶¶14-15 & Ex. E.

Plaintiff is now in urgent need of the discovery at issue, which is essential for his upcoming depositions, and to otherwise timely prosecute the case.  The discovery cut-off in this case is set for July 26, 2024, leaving Plaintiff limited time to do so. Dkt. 63 (Scheduling Order). Given GEO's history of evading its discovery obligations, including by failing to meet its own commitments to supplement its responses and prolonging the discovery process, Plaintiff cannot further wait for GEO to voluntarily comply with its discovery obligations. Plaintiff therefore requests that the Court issue an order requiring GEO to produce additional documents and information, and provide amended written responses to Plaintiff's RFPs and Rogs, along the lines requested here.

**B.    Defendant's Introductory Statement**

**1.    Factual Background**

In this case, Plaintiff sues three separate entities – ICE, Wellpath, and GEO – for the death of Martin Vargas from COVID-19 in March 2021 (following his hospitalization beginning in December 2020). Decedent indisputably had co-morbidities that put him at risk of an unfavorable outcome from the virus. Guidance from the CDC – and resulting ICE Pandemic Response Requirements (PRR) – changed significantly over the first year of the pandemic. From initially believing the virus could be transmitted by contact with germs (*i.e.* on surfaces), scientists later found that the virus was transmitted through close contact and respiratory droplets.

Plaintiff's counsel has propounded numerous and wide-ranging discovery requests on this case, despite prior factual findings and extensive discovery on many of the same issues in *Roman v. Wolf.* Indeed, in that class-action COVID litigation (to which GEO was not a party, was denied intervention in the case, and does not have access to the discovery), it was determined that a Wellpath medical staff person infected decedent. Dkt. 39 at ¶80. It is not clear why and how Plaintiff intends to re-litigate this factual finding. Many of

Plaintiff's discovery requests also significantly overlap between the parties, creating cumulative, harassing, and burdensome obligations on all Defendants. Moreover, GEO has been producing documents on a rolling basis, continuing as documents are received.

### 2.    Summary of Discovery Disputes

Defendant GEO has responded in good faith to the discovery requests and is not hiding any documents or information. Due to the fact that GEO was not a party to the *Roman v. Wolf* litigation, the court denied GEO's attempt to intervene in the case, and the documents were subject to a protective order, GEO does not have access to any of those depositions (even of their own staff) or the documents. Further, Plaintiff does not seem to believe that emails are not retained in perpetuity and are automatically deleted at the local level after six months unless otherwise saved. Defense counsel has now been provided with ESI from the corporate level and is in the process of de-duplicating, filtering privileged attorney-client communications, and reviewing the emails and other ESI for responsiveness.  For example, there were other detainees with the last name "Arrellano" at the facility in 2020-2021, and the emails regarding detainees with the last name "Arrellano" who are not Vargas Arrellano are not responsive nor relevant.

Defense counsel has met and conferred with Plaintiff's counsel several times, and has agreed to provide documents, which have been produced in a rolling manner as they are obtained from the Adelanto Facility and/or GEO corporate. On the last conference, which was advertised as a meet and confer, Defense counsel was informed that Plaintiff would be filing a motion to compel (and thus did not actually intend to confer). Defense counsel suggested that the deadline for a motion to compel be extended in order to attempt to resolve the outstanding issues, but Plaintiff refused. *See* Coleman Decl.  The conference was ended only because Plaintiffs' counsel made it clear that no actual productive discussions would occur, but they needed only to "check the box" that they had met and conferred prior to filing their motion to compel.  This conference was not held in good faith to actually confer and attempt resolution of any issues.  *See id.*

## II.    Joint Specification of Disputes

1

2

## A. GEO's Spoliation of Emails Between 2019-2021, and Failure to Search ESI [RFP Nos. 11-19, 21, 28; Rog 21]

3

4

**RFP No. 11**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and USA RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

5

6

7

8

9

**Response to RFP No. 11**: Objection. This request is overly broad, unduly burdensome, and assumes without foundation that GEO cared for sick detainees when it contracted with Wellpath to provide that care. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

10

11

12

**RFP No. 12**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and WELLPATH RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

13

14

15

16

**Response to RFP No. 12**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

17

18

19

20

21

**RFP No. 13**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between any of YOUR employees, administrators, agents, contractors, attorneys, accountants, representatives, and any other person or entity acting or purporting to act on YOUR behalf, other than USA or WELLPATH, RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

22

23

24

25

**Response to RFP No. 13**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

26

27

28

**RFP No. 14**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and any third parties, including VARGAS ARELLANO'S attorneys or family members RELATED TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**Response to RFP No. 14**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any (and those submitted by family members or attorneys if applicable) and responses thereto.

**RFP No. 15**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and USA RELATING TO VARGAS ARELLANO'S custody determinations, including but not limited to any requests for his release from ICE custody.

**Response to RFP No. 15**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto.

**RFP No. 16**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and WELLPATH RELATING TO VARGAS ARELLANO'S custody determinations, including but not limited to any requests for his release from ICE custody.

**Response to RFP No. 16**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto.

**RFP No. 17**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between any of YOUR employees, administrators, agents, contractors, attorneys, accountants, representatives, and any other person or entity acting or purporting to act on YOUR behalf, and any other PERSON, other than USA or WELLPATH, RELATING TO VARGAS ARELLANO'S custody determinations, including but not limited to any requests for his release from ICE custody.

**Response to RFP No. 17**: Objection. This request is overly broad, unduly

burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto.

**RFP No. 18**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and any third parties, including VARGAS ARELLANO'S attorneys or family members RELATED TO VARGAS ARELLANO'S custody determinations, including but not limited to any requests for his release from ICE custody.

**Response to RFP No. 18**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto.

**RFP No. 19**: All DOCUMENTS including COMMUNICATIONS RELATING TO DETENTION STANDARDS, including but not limited to compliance with those DETENTION STANDARDS; all complaints lodged against YOU, USA or WELLPATH for violating the DETENTION STANDARDS; any training provided to any PERSON, including YOU, USA and/or WELLPATH, RELATED TO the DETENTION STANDARDS; and any warnings, reprimands and disciplinary action taken against any PERSON related to the DETENTION STANDARDS.

**Response to RFP No. 19**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto. To the extent Plaintiff seeks documents related to other detainees and training/discipline for persons unrelated to decedent's care, this request is vastly overbroad and not reasonably related to the discovery of admissible evidence.

**RFP No. 21**: All DOCUMENTS RELATING TO any complaints about detention conditions at ADELANTO from January 2020 to the present, including COMMUNICATIONS about those complaints, investigations into those complaints, and any reports of those investigations.

8

**Response to RFP No. 21**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant provides decedent's detainee file, which would include his grievances if any related to detention conditions and responses thereto. To the extent Plaintiff seeks documents related to other detainees and training/discipline for persons unrelated to decedent's care, this request is vastly overbroad and not reasonably related to the discovery of admissible evidence.

**RFP No. 28**: All DOCUMENTS that IDENTIFY all individuals, including but not limited to YOU, WELLPATH, USA and other detainees, who YOU have reason to believe came into physical contact with VARGAS ARELLANO between November 4, 2020 and December 10, 2020 and who tested positive for Covid-19 in November or December 2020.

**Response to RFP No. 28**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to contact tracing of their employees and detainees, and the USA has custody and control of information related to contact tracing of ICE employees. Defendant further objects that this is believed to have been done during the Roman v. Wolf litigation, although GEO was not a party to that litigation and does not have access to those documents. The request also calls for speculation as to who "you have reason to believe came into physical contact" with decedent. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to contact tracing related to Vargas Arrellano in GEO's custody and control (if any).

**Rog. No. 21**: IDENTIFY what Personal Protective Equipment ("PPE") was actually used by anyone physically present at ADELANTO, including detainees as well as GEO, USA, and WELLPATH employees/agents, prior to their coming into contact with VARGAS ARELLANO from November 4, 2020 to December 10, 2020.

**Response to Rog. No. 21**: Objection. Wellpath has custody and control of information related to PPE worn their employees, many of whom are medical staff, and the USA has custody and control of information related to PPE worn by ICE employees. This request is also overly broad, calls for speculation, and is unduly burdensome. Without waiving these objections, Defendant responds

9

as follows: Defendant cannot state what PPE was actually used by anyone specific at ADF from November 4, 2020, to December 10, 2020, without reviewing surveillance video, which is no longer retained due to the time period. However, depending on the status of decedent Vargas Arrellano at that time, such as whether he was in a medical dorm and/or isolation area for infected persons, protocol would dictate what type of PPE would be expected. At a minimum, GEO staff would have worn masks if they were in close contact with Vargas Arrellano.

### a.  Plaintiff's Contentions and Points and Authorities

### i.  GEO's Destruction of Relevant Emails

In response to each of these RFPs, GEO takes the position that it "has not retained emails from 2019-2021." *See* Responses to RFP Nos. 11-19, 21. These emails are highly relevant to this case, as they are one of the few sources of objective evidence demonstrating whether and to what extent Defendants had been complying with mandated COVID-19 protocols in the period leading up to the time Vargas Arellano contracted and died from COVID-19 in March 8, 2021. Despite GEO's obligation to preserve this highly relevant ESI communication, it has completely failed to justify its destruction, warranting appropriate sanctions for its spoliation of critical evidence. *See* Fed. R. Civ. P. 37(e)(1) ("upon finding prejudice to another party from loss of [ESI] information, [Court] may order measures no greater than necessary to cure the prejudice");[2] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) (outlining three-part test, and upholding adverse inference sanctions for spoliation of emails).

---

[2] Fed. R. Civ. P. 37(e)(1) states in full, "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."

There is no question that GEO's admitted destruction of emails between 2019 and 2021 – the period leading up to and including Vargas Arellano's death – prejudices Plaintiff, warranting Court intervention. *See* Fed. R. Civ. P. 37(e)(1). "The prejudice inquiry looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Apple*, 888 F. Supp. 2d at 993 (citations and quotations omitted). Here, there would have been countless email communication between and among GEO staff, as well as its co-Defendants and third parties, related to the measures they took to contain the spread of COVID-19 leading up to the time Vargas Arellano contracted COVID-19 in December 2020. As just one example, there appear to be email communication between GEO and ICE's Officer in Charge at Adelanto Gabriel Valdez about GEO's plan to "start universal COVID-19 testing the next day, May 20, 2020, of all detainees and staff," which ICE "blocked" for reasons the Court determined were "objectively unreasonable and in callous disregard" for  the constitutional right rights of all detainees. *Roman v. Wolf*, No. EDCV2000768TJHPVCX, 2020 WL 5797918, at *3 (C.D. Cal. Sept. 29, 2020), aff'd in part, vacated in part, remanded, 977 F.3d 935 (9th Cir. 2020). Plaintiff obtained an email documenting this exchange between GEO and ICE. Hoq Decl. ¶32. If GEO forwarded ICE's response to internal GEO staff, and GEO staff had internal email discussions about whether GEO would comply with ICE's reckless position that detainees should not be tested for COVID-19, Plaintiff would be deprived of this critical information. Such emails are central to Plaintiff's ability to prove up his claims of GEO's violations of Detention Standards, Negligence, Negligent Infliction of Emotional Distress and Wrongful Death. Even though Plaintiff "may ever know the contents of any destroyed [GEO] emails, the fact that the emails of key [GEO] witnesses were among those destroyed permits the reasonable inference that [Plaintiff] was prejudiced by [GEO's] spoliation." *Id*. Given GEO's representation that it destroyed the 2019-2021 emails, and the likelihood that they "cannot be restored or replaced through additional discovery," the Court should issue an order to cure the resulting prejudice to Plaintiff.  Fed. R. Civ. P. 37(e).

Plaintiff also meets the three-part test justifying spoliation sanctions courts apply in this Circuit, including "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple*, 888 F. Supp. 2d at 989–90 (N.D. Cal. 2012) (citations omitted). "The 'culpable state of mind' includes negligence." *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10CV2133-GPC WVG, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013).

First, GEO clearly "had an obligation to preserve the emails in question at the time GEO destroyed them." *Apple* at 98. Specifically, the "Performance Work Standards" of GEO's contract with USA to operate the Adelanto detention facility require that "[a]ll records related to contract performance shall be retained in a retrievable format for three years." Ex. O. GEO understood this language to mean that "all records regarding the performance of the [Adelanto center] will be retained in a retrievable format for three years." Ex. P. Emails regarding GEO's performance under the contract – including its compliance with COVID-19 protocols, among other topics responsive to Plaintiff's discovery requests – would be subject to this record's retention requirement. In light of this contract language, GEO's bald assertion that it destroyed emails for the three-year period between 2019-2021 appears indefensible.

Moreover, GEO had separate obligations to preserve the 2019-2021 emails in connection with the multiple lawsuits challenging ICE's failure to adequately protect detainees from COVID-19 exposure. *Zubulake,* 220 F.R.D. at 216-218. Here, as ICE's contractor operating the Adelanto Detention Center, GEO should have been preserving documents related to *Roman v Wolf*, which has been challenging ICE's failure to adequately protect detainees from COVID-19 exposure, and which resulted in the Special Master investigation related to Vargas Arellano's death caused by COVID-19. *Roman,* No. 5:20-cv-00768. The *Roman* case was filed on April 13, 2020, and GEO repeatedly sought to intervene in that case, including as early as June 3, 2021. *Id*. at Dkts. 1 and 1142.

GEO should have been preserving records related to Mr. Vargas Arellano *at least* since the filing of that case, if not earlier. *Zubulake*, 220 F.R.D. at 218 ("[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1070 (N.D.Cal.2006) (even if the accused party had a "long standing polic[y]" of deleting emails, it was "required to cease deleting emails once the duty to preserve attached").

Further, GEO's own document retention policy provides independent evidence that it should have been preserving the 2019 to 2021 emails in question. Importantly, according to the policy: ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ Ex. J at pp. 5-6. As Plaintiff pointed out to GEO, to demonstrate compliance with the policy, GEO would be required to produce this "████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████

Here, GEO has failed to produce any evidence that the 2019-2021 emails were destroyed pursuant to the requirements of its records retention and management policies, despite Plaintiff's repeated requests that it produce this information. *See* Exs. A-C. On October 9, 2023, Plaintiff wrote GEO and specifically requested that "[i]n the event GEO claims the 2019-2021 emails were destroyed subject to this Policy" that GEO "provide [Plaintiff] all of this supporting documentation establishing that GEO's destruction of emails followed the specified procedures set forth in the Policy." *Id*. at Ex. A. Plaintiff repeated this request in a November 22, 2023, and a January 4, 2024 letter to GEO. *Id*. at

Exs. B, C. To date, GEO has failed to do so, resulting in the conclusion that its destruction of the 2019 to 2021 emails did not comply with the policy, and constitutes sanctionable spoliation.

Consistent with the Document Retention Policy, documents produced by GEO demonstrate its awareness that it should not have destroyed documents relevant to this case as of April 20, 2021. On April 19, 2021, GEO received a document preservation letter from Plaintiff's counsel Stacy Tolchin, which was sent by overnight mail, asking that GEO preserve information relevant to this case. *Id*. at Ex. G.  In an April 23, 2021 memo, GEO acknowledged receipt of that letter, and GEO's Legal Review Coordinator, Judy Donato issued a memo to James Janecka, the GEO Adelanto Facility Administrator with copy to Joanne Crowder, GEO Administrative Secretary, identifying information potentially relevant to this case.  *Id*. at Ex. H. In that memo Ms. Donato specifically directed that, "If you do find records to send, please send them to my attention in PDF format, if possible." *Id*. These documents make clear that no email destruction should have taken place as of April 21, 2021 when GEO received Plaintiff's litigation hold letter, including any of 2019-2021 emails that may have been in any queue to be destroyed subject to any prior approved destruction request. Despite this preservation directive from GEO's Legal Review Coordinator to relevant GEO witnesses in this case, James Janecka and Joanne Crowder, GEO has failed to produce their responses to the memo, by email or otherwise, providing the information requested.

*Second*, regarding whether the emails were destroyed "with a culpable state of mind," Plaintiff need only establish GEO's conduct was negligent. *Cottle*, 2013 WL 2244333, at 14.  Where, as here, Plaintiff has shown GEO had a duty to preserve the 2019-2021 emails, including as set forth in its document retention policy and the Donato memo, GEO's negligence is established. *Cottle* at 15.

*Third*, as discussed in the context of the prejudice Plaintiff suffers as a result of GEO's destruction of the 2019 to 2021 emails, there is no question that the emails are relevant to Plaintiff's claims in this case, including on the question of whether GEO

violated detention standards, acted negligently toward Plaintiff's father and thereby
contributed to his death. "In the Ninth Circuit, spoliation of evidence raises a presumption
that the destroyed evidence goes to the merits of the case, and further, that such evidence
was adverse to the party that destroyed it." *Dong Ah Tire & Rubber Co., Ltd. V. Glasforms*,
Inc., No. C 06–3359 JF, 2009 WL 1949124, at *10 (N.D.Cal. July 2, 2009). GEO has
provided nothing to rebut this presumption, nor could it credibly do so. For example,
GEO's document retention policy clearly states that no documents should be destroyed
without prior approval, and also identifies an email address where destruction requests
should be sent. Ex. J at 5-6 (citing the email address: records@geogroup.com). GEO's
apparent destruction of any email to this address related to this case is but one example of
a relevant document that justifies sanctions here.

### ii.  GEO's Destruction of Relevant Video Surveillance Tapes

Similarly, in response to RFP 28 and Rog 21, seeking information about whether
GEO, Wellpath and USA staff utilized the required Personal Protective Equipment
("PPE") at Adelanto to protect against the spread of COVID-19, both as a general matter
and as applied to their close contact with Vargas Arellano, GEO responds that it has also
destroyed relevant video surveillance tapes responsive to these requests. These video
surveillance tapes would have also been subject to GEO's document retention policy, and
GEO's failure to preserve them constitutes spoliation for the reasons discussed above.
Indeed, despite Plaintiff's specific request that GEO "provide facts and circumstances
justifying its destruction of the highly video surveillance tapes," Ex. C, GEO has failed to
do so.

### iii.  GEO's Failure to Conduct an ESI Search for Documents Other Than Emails

While RFPs 1-19 and 21 seek emails between 2019 and 2021, they also seek other
documents and ESI (including emails *after* 2021) that GEO has failed to search for, let
alone produce. For example, in addition to "communications," RFP 19 and 21 seek
documents related to "detention standards," "compliance" with those standards,

"complaints" and "investigations" into those complaints, "warnings," "reprimands," and "disciplinary actions." As early as October 9, 2023 Plaintiff asked GEO to conduct a comprehensive ESI search to locate this and other responsive information. Ex. A. To facilitate the ESI search, Plaintiff provided GEO with ESI search terms, custodians, and other parameters to locate responsive information. *Id*. To date, GEO has failed to conduct the necessary ESI search.

### b. GEO's Contentions and Points and Authorities

Defendant GEO did not willfully destroy evidence, as alleged by Plaintiff's counsel. Instead, emails "drop off" the local servers in the course of business after a certain period (six months), according to the Email Retention Policy. When Vargas died, his medical and custody records were maintained, and it is likely that emails and voluminous other documents were produced in the *Roman v Wolf* litigation (and thus "retained"); however, GEO cannot access those files at the Facility level. As Plaintiff's contentions prove, they have also sought the same documents from ICE - - and received many documents. ICE is the custodian of any documents collected during the *Roman v. Wolf* discovery process.

GEO counsel has now learned that there are emails/ESI retained at the corporate level, and .PST files have been downloaded to Logikull for review.  These will be produced as soon as possible to Plaintiffs' counsel, on a rolling basis beginning today, after filtering for duplicates, attorney-client privilege, and reviewing for responsiveness and any necessary redactions. Thus, no documents / ESI/ or emails have been "destroyed" or "spoliated" as Plaintiff's counsel contend.  This first production of ESI will be bates-stamped GEO-06694 to GEO-07570, and will continue as the ESI is reviewed.

Further, ICE is also the custodian of documents about whether GEO has complied with its Statement of Work and other detention standards. To search for all documents related to compliance, detention standards, complaints, reprimands, warnings, disciplinary action, and investigations goes FAR beyond the relevant scope of this litigation. Given the state of scientific knowledge about COVID at the time decedent was hospitalized in December 2020, and the fact that Wellpath provided him medical care at the facility, it is

16

1   unlikely that any GEO staff were reprimanded or disciplined  - or that if they were, it

2   would have any connection whatsoever to decedent.  GEO has already confirmed in

3   discovery responses that no GEO staff who interacted with Plaintiff (based on a list of

4   staff persons provided by Plaintiff's counsel, which they obtained from another Defendant

5   via their *Roman v. Wolf* files) were reprimanded or otherwise disciplined for failure to

6   comply with COVID protocols. *See* Coleman Decl.

7          With regard to video, the Facility pulls video after an incident – such as a use of

8   force or a riot. If not specifically retrieved and saved, the hard drives are recorded over.

9   *See* Coleman Decl. To save months of surveillance video – based on the possibility that

10  someone might later allege PPE or other masks were not worn, for example – is

11  unreasonable and did not occur. It also begs the question of what the relevance would be

12  here.  Although Plaintiff's counsel contend it would be relevant to "whether GEO,

13  Wellpath and USA staff utilized the required Personal Protective Equipment ("PPE") at

14  Adelanto to protect against the spread of COVID-19, both as a general matter and as

15  applied to their close contact with Vargas Arellano," this ignores the Special Master's

16  <u>finding</u> in *Roman* that a Wellpath nurse transmitted COVID to decedent.  Further, it is well

17  known that compliance among detainees in wearing masks is difficult to enforce, and even

18  if every staff person was observed wearing masks, decedent still could have easily been

19  exposed to the virus by other detainees.

20         This case is not a class action, nor is it a referendum on the facility's care and

21  operations during COVID; it is a wrongful death suit concerning one man. Discovery

22  should not be expanded into the onerous scope that Plaintiff's counsel envisions. Further,

23  Defense counsel has received the Email/ESI search results but needs to review them in

24  Logikull and will produce all non-privileged responsive documents on a rolling basis.

25         **c.  Proposed Resolutions During the Rule 37-1 Conferences and Related**

26              **Correspondence**

27              **i.  Plaintiff's Proposed Resolution and Request for Relief**

28  At the parties Rule 37-1 conference addressing these RFPs, GEO agreed to provide

17

Plaintiff with information about the circumstances in which it destroyed the emails in question within a month, but to date has failed to do so. Ex. B. For the reasons discussed above, the matter is now ripe for Court intervention. *See* Fed. R. Civ. P. 37(e).

In a separate Rule 37-1 conference on February 9, 2024, Plaintiff attempted to resolve disputes with GEO's responses to RFP 28 and Rog 21 related to GEO's destruction of video surveillance tapes. Prior to the conference, Plaintiff documented the deficiencies with GEO's responses, but GEO provided no substantive written response. Ex. C. At the February 9 Rule 37-1 conference,  GEO's counsel refused to substantively engage with Plaintiff on these requests, stating that if Plaintiff plans to file a motion to compel that she is "not doing this and there is nothing to discuss." Hoq Decl. ¶14. Plaintiff reminded GEO's counsel that GEO's further production of responsive information could at least help narrow the issues in dispute, but GEO's counsel refused to discuss this possibility and abruptly ended the Zoom conference.  *Id.*

In light of GEO's unjustified destruction of emails between 2019 and 2021, and video surveillance tapes identifying Defendants' compliance with COVID-19 protocols in the month leading up to Vargas Arellano's positive COVID-19 test, as well as its failure to conduct an adequate ESI search, Plaintiff seeks an order from the Court related to RFP Nos. 1-19, 21, 28 and Rog 21, finding:

(1)     that GEO has failed to take reasonable steps to preserve ESI in anticipation of this litigation, which cannot be restored or replaced through additional discovery, that Plaintiff was prejudiced by GEO's actions, and as a result the trier of fact can make an adverse inference against GEO that the destroyed information is unfavorable to GEO's position in the litigation in determining the outcome of the case, and GEO cannot put on evidence to overcome this inference at any stage of these proceedings; or in the alternative, that GEO be required to show cause why the Court should not issue such an order, and

(2) that GEO be required to conduct an ESI search using the search parameters referenced in Plaintiff's October 9, 2023 correspondence. Ex. A.

### ii.  GEO's Proposed Resolution

18

Defendant denies that any documents were unjustifiably destroyed. They could have been and likely were preserved and produced in the *Roman v. Wolf* case. Defense counsel has not been able to find out anything about "the circumstances in which [GEO] destroyed the local emails [assuming responsive materials ever existed]," instead, it is believed that the emails were either no longer saved (i.e. "dropped off" the local server) in the normal course of business (6 months) if not specifically saved, pursuant to the Email Retention Policy or that they were produced/preserved in *Roman v. Wolf*.  Defendant proposes that this Court order access to the relevant documents in the *Roman* litigation to resolve this issue. Further, given that Defendant has now obtained ESI/email .PST files from corporate headquarters and is beginning rolling production of these documents immediately, with the first production today (GEO-06694 – 07570), no other action is needed.

## B. Documents Related to Investigations Into Vargas Arellano's Death [RFP No. 2]

**RFP No. 2**: All DOCUMENTS RELATING TO the death of VARGAS-ARELLANO, including but not limited to COMMUNICATIONS between YOU and any other PERSON RELATED TO his death; any investigation into his death; any Office of Professional Responsibility reports RELATED TO his death; any action items, corrective action plans, or policy changes resulting from or RELATED TO his death; and statements from any PERSON, including but not limited to YOU, USA or WELLPATH RELATED TO his death.

**Response to RFP No. 2**: Objection. This request is overly broad, unduly burdensome, and includes custodians other than the responding party. It also assumes without foundation that there was an investigation and/or corrective action. Without waiving these objections, Defendant responds as follows: There are no responsive documents. Decedent was stable when he was transferred to the hospital, and he died at the hospital.

### 1. Plaintiff's Contentions and Points and Authorities

This response improperly evades the request, which seeks information central to this case, namely the facts and circumstances of Vargas Arellano's death.  Importantly, GEO does not object to the request on relevance grounds, nor could it.

19

1    Defendant's objections to this request are meritless, such that the Court should order

2    GEO to search for and produce responsive records, and amend its written response to RFP

3    2 based on the results of this search. For example, whether or not GEO believes Mr. Vargas

4    Arellano "was stable when he was transferred to the hospital, and he died at the hospital,"

5    GEO Response to RFP No. 2,  this does not absolve GEO of its obligation to search for

6    and produce responsive records related to his death.   Further, contrary to GEO's

7    objections, the request does not "assume" that there was an "investigation and/or

8    corrective action," *id*., related to Vargas Arellano's death. Rather, it asks that GEO search

9    for documents regarding "any" investigation or corrective action that was taken in

10   response to Vargas Arellano's death. In fact, the Special Master appointed in the *Roman*

11   case investigated the facts and circumstances related to Vargas Arellano's death, and

12   required corrective action in response to its findings.  Ex. Q. Regardless of whether GEO

13   was formally involved in that inquiry, GEO as USA's on-site contractor was likely was

14   significantly involved in USA's response to it. GEO is therefore obligated to search for

15   documents in its possession, custody and control related to the *Roman* Special Master

16   inquiry, and any other matters referenced in RFP No. 2.

17   Finally, despite GEO's response to RFP No. 2 that "[t]here are no responsive

18   documents," documents produced by GEO demonstrate otherwise. Specifically, as part of

19   its document production, GEO produced a document entitled Death Response Plan, dated

20   1/20/2023, *see* Hoq Decl. ¶23. Plaintiff asked GEO to produce prior versions of this Plan

21   that were in operation at times relevant to this case, but GEO has failed to produce any

22   such documents. *Id*. These prior versions of the Death Response Plan are highly relevant

23   here as they will shed light on whether GEO made changes to the Plan in response to

24   Vargas Arellano's death, lending credence to Plaintiff's allegations that the pre-existing

25   policies and practices were insufficient. The Court should order GEO to produce these

26   documents, including communications related to any reasons the plans were amended and

27   their application to the death of Mr. Vargas Arellano.

28   **2.  GEO's Contentions and Points and Authorities**

GEO responded to the inquiry: "There are no responsive documents." This means that there was no investigation done by the Office of Professional Responsibility or otherwise internally by GEO. There was no corrective action plan or policy change resulting from his Covid-19 death. Plaintiff takes issue with the subsequent statement about decedent's condition on transfer to the hospital, but it explains in part why no investigation was done. An Office of Professional Responsibility (OPR) investigation would be done only if GEO staff misconduct was alleged and/or suspected. Given the circumstances, of a detainee infected with COVID, with innumerable co-morbidities and health issues, and Plaintiff's repeated hospitalization during the few months before his death, GEO did not investigate nor did it suspect staff misconduct. While the *Roman v. Wolf* case had a Special Master appointed that looked into how decedent contracted COVID, that was in response to litigation. Any documents related to the Special Master's inquiry, and ICE's response to the inquiry, would be in the possession, custody and control of ICE. As noted earlier, GEO was not a party to *the Roman v. Wolf* litigation.

Defendant has no problem producing prior – or other - versions of the Death Response Plan, and produced another version on February 16, 2024. Defendant has now produced the 2020 and 2021 versions. However, the Death Response Plan policies are irrelevant here and these policies have not been revised as the result of Vargas' death at the hospital. These plans primarily relate to the emergency death of a detainee **on site** – not at the hospital – and the subsequent actions including by first responders, shift supervisors, and notifications thereafter. For an off-site death, such as at the hospital, staff are instructed to: "c. Do not interfere with the medical staff as they evaluate the individual; d. Notify the Facility." The policy requires ICE to handle all detainee death notifications and any press releases.

### 3. Proposed Resolution During the Meet and Confer Process

#### i. Plaintiff's Proposed Resolution

At the Parties Rule 37-1 conference of counsel on October 19, 2023, GEO agreed to produce the earlier versions of the Death Response Plan Plaintiff requested. To date, GEO has failed to do so. Exs. B, C.

### ii. GEO's Proposed Resolution

GEO has provided 2020 (GEO 06580-06587) and the 2021 (GEO 06501-06508) versions of the Death Response Plan. It is not clear what other versions they seek or how they would be relevant. As noted above, the Death Response Plan policies are irrelevant here and these policies have <u>not</u> been revised as the result of Vargas' death at the hospital from COVID and numerous other health conditions. These plans primarily relate to the emergency death of a detainee **on site** – not at the hospital – and the subsequent actions including by first responders, shift supervisors, and notifications thereafter. GEO has no problem providing other versions though they lack relevance.

### C. Vargas Arellano's Medical Records In the Critical Period Leading to His Contracting Covid-19 and Thereafter, Including Complete Adelanto Infirmary Records
### [RFP No. 1, 11-14]

<u>RFP No. 1</u>: All DOCUMENTS RELATING TO any medical conditions VARGAS-ARELLANO suffered while in YOUR care or custody, including but not limited to COMMUNICATIONS RELATED TO YOUR knowledge of his medical conditions and any treatment of those conditions by YOU, USA and/or WELLPATH.

<u>Response to RFP No. 1</u>: Objection. This request is overly broad, unduly burdensome, and includes custodians other than the responding party. Without waiving these objections, Defendant responds as follows: Defendant refers to decedent's medical file, which has already been produced.

<u>RFP No. 11</u>: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and USA RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

<u>Response to RFP No. 11</u>: Objection. This request is overly broad, unduly burdensome, and assumes without foundation that GEO cared for sick detainees when it contracted with Wellpath to provide that care. Without Without waiving

these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

**RFP No. 12**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and WELLPATH RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**Response to RFP No. 12**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

**RFP No. 13**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between any of YOUR employees, administrators, agents, contractors, attorneys, accountants, representatives, and any other person or entity acting or purporting to act on YOUR behalf, other than USA or WELLPATH, RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**Response to RFP No. 13**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any and responses thereto.

**RFP No. 14**: All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and any third parties, including VARGAS ARELLANO'S attorneys or family members RELATED TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**Response to RFP No. 14**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's medical file and detainee file, which would include his grievances if any (and those submitted by family members or attorneys if applicable) and responses thereto.

### 1. Plaintiff's Contentions and Points and Authorities

These RFPs seek documents related to Vargas Arellano's detention conditions,

23

including his medical condition.  In response to this request, GEO states it has produced Vargas Arellano's "medical file" and his "detainee file."  As Plaintiff made clear to GEO in the meet and confer process, this response is incomplete in a number of ways. First, at the time Plaintiff shared its portion of this Joint Stipulation with GEO on February 15, 2024, the "medical file" is missing medical records from key time periods, including the time period ICE (Defendant USA) contends he contracted COVID-19, on or about November 29, 2020.  Hoq Decl. ¶17; Ex. L. Second, the response omits email and other communications GEO had with ICE, Wellpath, and third parties about Vargas Arellano's medical and detention conditions.  GEO has never contested its failure to produce these missing documents, nor has it rectified the deficiencies.

Regarding the missing medical records, of particular importance is a set of records from Vargas Arellano's stay at the Adelanto infirmary from November 28, 2020 to December 1, 2020.  It was during this infirmary stay that ICE represented to the *Roman* Special Master that Vargas Arellano contracted COVID-19 from a Wellpath nurse.  Ex. L. Despite repeated requests that GEO produce this particular set of infirmary records that would identify the Wellpath nurse who transmitted COVID-19 to Vargas Arellano, Exs. A-C, GEO has failed to do so. Without these underlying records, Plaintiff cannot verify ICE's claim regarding who is responsible for transmitting COVID-19 to Vargas Arellano, an issue central to liability in this case.

Further, while GEO purports to have produced Vargas Arellano's "medical file," it is clear that it not only failed to produce a complete file, it also did not produce Vargas Arellano's medical records "as they are kept in the usual course of business," or "label[ed] …to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E). Instead, it produced the medical records in a piecemeal fashion, out of date order. To rectify these deficiencies, Plaintiff asks that the Court order GEO to produce a complete set of Adelanto infirmary records for Vargas Arellano in date order, for the entire time he was in ICE custody. Since the infirmary records are kept electronically, this should be a straightforward query for GEO (or its contractor Wellpath) to run, and produce to Plaintiff

24

in short order.

Regarding GEO's failure to produce any communications related to Vargas Arellano's detention and medical conditions, GEO again claims it failed to produce these documents because it "has not retained emails from 2019-2021." As discussed above, GEO's destruction of this critical evidence without justification severely prejudices Plaintiff's ability to prove his claims, and warrants spoliation sanctions. *Apple*, 888 F. Supp. 2d at 989–95. Again, regardless of whether GEO's destruction of this information was the result of bad faith, the requested information is highly relevant to the claims in the case, particularly as to Plaintiff's Detention Standards and Negligence claims. *Zubulake*, 220 F.R.D. at 220 (showing of bad faith unnecessary to justify spoliation sanctions where relevance is established). Among other things, the requested communications would show whether GEO and the other Defendants were complying with appropriate COVID-19 protocols in the time leading up to Vargas Arellano contracting the disease, as well as how he was treated once he became COVID-19 positive.  For these reasons, to the extent GEO cannot "restore or replace" the requested communications at issue, the Court should order an appropriate adverse inference sanction. *See* Fed. R. Civ. P. 37(e); *Apple*, 888 F. Supp. 2d at 989–95. No lesser cure would remedy the prejudice Plaintiff suffers. *Id*.

### 2. GEO's Contentions and Points and Authorities

During the relevant time period, GEO contracted with Wellpath for medical care. GEO obtained the medical records from Wellpath and provided them to Plaintiff's counsel. GEO does not independently maintain or organize these records.

In terms of any ESI, please see *supra*. Plaintiff mistakenly assumes that there would be regular written communications about a detainee with Covid at the facility.  If there were, these communications would have been collected in *Roman v. Wolf*, or no longer exist. There has been no spoliation.

On February 16, 2024, after some searching for these records, GEO produced the infirmary records at issue from November 28, 2020 to December 1, 2020 (GEO 06591-GEO 06663).

### 3. Proposed Resolution During the Meet and Confer Process

#### i. Plaintiff's Proposed Resolution

At the Parties Rule 37-1 conference of counsel on October 19, 2023, GEO agreed to produce the missing medical records. Exs. B, C. However, to date, it has failed to do so. Hoq Decl. ¶11. GEO also agreed at the October 19 conference to provide information to justify the destruction of correspondence responsive to these requests, but also failed to do so. *Id*.

#### ii. GEO's Proposed Resolution

As noted above, GEO has located and produced decedent's infirmary records (GEO 06591-GEO 06663). Plaintiff's claim that these "missing records" have not been produced is erroneous. As to any ESI, please see *supra*. Plaintiff mistakenly assumes that there would be regular written communications about a detainee with Covid at the facility. If there were, these communications would have been collected in *Roman v. Wolf*, or no longer exist at the local level. There has been no spoliation or willful destruction of ESI. Further, as noted above, Defendant is in the process of reviewing ESI and producing these on a rolling basis beginning today.

### D. Documents Related to Performance of GEO Staff Who Interfaced with Mr. Vargas Arellano Around the Time He Contracted Covid-19 [RFP No. 4]

**RFP No. 4**: All training records, performance reviews, warnings, reprimands and other disciplinary records of any and all of YOUR, USA and/or WELLPATH personnel, employees, or contractors at ADELANTO that came in contact with or were responsible in any way for VARGAS ARELLANO (including those responsible for assessing or treating VARGAS ARELLANO or responsible for his wellbeing during detention).

**Response to RFP No. 4**: Objection. This request is overly broad as the time period is not limited, unduly burdensome, and includes custodians other than the responding party. It also potentially seeks confidential personnel documents. Without waiving these objections, Defendant responds as follows: Reviews, evaluations, training and other personnel records for Wellpath staff would be in Wellpath's custody and control and are not in GEO's custody and control.

26

Defendant has no knowledge of any disciplinary or corrective action taken against staff as a result of their interaction with decedent.

### 1. Plaintiff's Contentions and Points and Authorities

At the Parties Rule 37-1 conference on October 19, 2023, GEO acknowledged the deficiencies in its response to RFP No. 4, and agreed to among other things "search for … any write-up of any staff who failed to follow the protocols." Ex. B at 2. To facilitate this search, Plaintiff provided GEO with documents identifying its staff who had close contact with Vargas Arellano during the dates around the time ICE attested that he contracted COVID-19, whose files should have been searched for the requested information. *Id.* However, to date, GEO has failed to confirm it has conducted this search, let alone produce responsive records. The Court should order it to do so in short order.

### 2. GEO's Contentions and Points and Authorities

Defendant GEO has confirmed that no GEO staff who interacted with decedent (based on the list Plaintiff's counsel provided) were written up - ie. reprimanded or disciplined -- for failure to follow COVID protocols. GEO will supplement its response to reflect this information. There are no responsive documents because no staff were disciplined. As for training materials, Defendant has already provided these.

### 3. Proposed Resolution During the Meet and Confer Process

### i. Plaintiff's Proposed Resolution

Despite GEO's commitment at the Rule 37-1 conference, Ex. B, and despite Plaintiff's numerous letters following up on this commitment, Exs. B, C, GEO has failed to conduct the search and produce responsive documents.

### ii. GEO's Proposed Resolution

Defendant GEO has confirmed that no GEO staff who interacted with decedent (based on the list Plaintiff's counsel provided) were written up - ie. reprimanded or disciplined -- for failure to follow COVID protocols. GEO will supplement its response to reflect this information. There are no responsive documents because no staff were disciplined. As for training materials, Defendant has already provided these.

### E. Documents and Information Relating to Testing and Contact Tracing at Adelanto, Including Regarding How Mr. Vargas Arellano Contracted COVID-19
### [Rog Nos. 5, 17; RFP Nos. 25-28]

**Interrogatory No. 5**: IDENTIFY all PERSONS with knowledge of how VARGAS ARELLANO may have contracted Covid-19 while at ADELANTO, e.g. based on access to the results of any contact tracing, including their employment position(s) and a summary of their knowledge of relevant facts.

**Response to Interrogatory No. 5**: Objection. The request calls for a narrative, is vague and ambiguous and overbroad, and is unduly burdensome. Notwithstanding these objections, Defendant responds as follows: Per the receiver's report in Roman v. Wolf, it was a Wellpath employee. However, GEO does not have access to this information. GEO contracted with Wellpath for all medical services to detainees during the relevant time period.

**Rog. No. 17**: Describe all findings from any contact tracing conducted by any PERSON to determine how VARGAS ARELLANO contracted Covid-19, including but not limited to contact tracing of the individuals (both detainees as well as GEO, USA and WELLPATH employees/agents), who tested positive for Covid-19 who are referenced in the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in Roman v. Wolf, attached as Exh. B.

**Response to Rog. No. 17**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to testing of their employees and detainees, and the USA has custody and control of information related to testing of ICE employees. Further, GEO was not a party to the Roman v. Wolf litigation, does not have access to any of the documents therein, and has no way to determine the identities of persons listed on the Exhibit B document, which was not created by GEO. Defendant cannot answer this question due to the limitations noted above.

**RFP No. 25**: All DOCUMENTS RELATING TO any contract tracing YOU or any other PERSON, including USA and WELLPATH, conducted to assess how any individual physically present at ADELANTO could have contracted Covid-19, including but not limited to any policies, practices, protocols, guidelines, rules, training materials, instructional materials, syllabi, curricula, reporting, and other DOCUMENTS including but not limited to COMMUNICATIONS RELATING TO contract tracing.

28

**Response to RFP No. 25**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to contact tracing of their employees and detainees, and the USA has custody and control of information related to contact tracing of ICE employees. This request is also ambiguous and overly broad in that it does not specify a time period. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to contact tracing in GEO's custody and control.

**RFP No. 26**: All DOCUMENTS, including COMMUNICATIONS, RELATING TO any contract tracing conducted by any PERSON, including YOU, WELLPATH and USA, to assess how VARGAS ARELLANO contracted Covid-19 on or about December 10, 2020.

**Response to RFP No. 26**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to contact tracing of their employees and detainees, and the USA has custody and control of information related to contact tracing of ICE employees. Defendant further objects that this is believed to have been done during the Roman v. Wolf litigation, although GEO was not a party to that litigation and does not have access to those documents. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to contact tracing related to Vargas Arrellano in GEO's custody and control (if any). However, given that GEO was not a party to the Roman v. Wolf case, which reportedly involved contact tracing to determine how decedent Vargas Arrellano contracted COVID-19, it is not likely GEO will have any responsive documents.

**RFP No. 27**: All DOCUMENTS, including COMMUNICATIONS, RELATING TO any contact tracing of the individuals, both staff and detainees, who tested positive for Covid-19 who are referenced in the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in Roman v. Wolf, attached as Exhibit A.

**Response to RFP No. 27**: Objection. Wellpath has custody and control of information related to testing of their employees and detainees, and the USA has custody and control of information related to testing of ICE employees. Further, GEO was not a party to the Roman v. Wolf litigation, does not have access to any of the documents therein, and has no way to determine the identities of persons listed on the Exhibit A document, which was not created by GEO. This request cannot be answered by GEO.

**RFP No. 28**: All DOCUMENTS that IDENTIFY all individuals, including but not limited to YOU, WELLPATH, USA and other detainees, who YOU have reason to believe came into physical contact with VARGAS ARELLANO between November 4, 2020 and December 10, 2020 and who tested positive for Covid-19 in November or December 2020.

**Response to RFP No. 28**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to contact tracing of their employees and detainees, and the USA has custody and control of information related to contact tracing of ICE employees. Defendant further objects that this is believed to have been done during the Roman v. Wolf litigation, although GEO was not a party to that litigation and does not have access to those documents. The request also calls for speculation as to who "you have reason to believe came into physical contact" with decedent. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to contact tracing related to Vargas Arrellano in GEO's custody and control (if any).

## 1. Plaintiff's Contentions and Points and Authorities

These requests seek information about the core issue of how Mr. Vargas Arellano contracted COVID-19, despite the existence of various policies, practices, procedures and protocols Defendants were required to follow to avoid this result. As discussed, Defendant USA (through ICE) attested in an interrogatory response in the *Roman* litigation that Mr. Vargas Arellano contracted COVID-19 from a Wellpath employee on November 29, 2020. Ex. L. USA made this determination based on the results of contact tracing. *Id*. However, none of the Defendants have produced a full, unredacted set of documents encompassing the testing and contact tracing related to how and from who Mr. Vargas Arellano (and apparently other detainees) contracted COVID-19. Hoq Decl. ¶15.

While GEO claims it does not "have access to" contact tracing related to USA and Wellpath staff, it "has requested and will provide any responsive documents related to contact tracing in GEO's custody and control." *See* GEO Response to RFP Nos. 24, 25; *see also* GEO Responses to RFP Nos. 26, 28. At the parties Rule 37-1 conference on February 9, 2024, GEO maintained its claim that it does not have "access" to this information for USA and Wellpath staff, and failed to update Plaintiff on when it would

produce the contact tracing information related to GEO employees. Hoq Decl. ¶14-15 & Ex. E. On February 22, 2024, GEO produced various additional documents, including a document titled "IDENTIFY # Contact Tracing – Positive Cases – AIPC Staff." The document does not identify any staff names associated with the data. *Id*. ¶16.

GEO's delay in producing the full information Plaintiff requested is untenable, particularly in light of its track-record for failing to comply with its own commitments to supplement its discovery responses. *See* Hoq Decl. ¶¶3-16 & Exs. B-D.

Regarding GEO's claim that it has no access to contact tracing relating to Wellpath staff, this is plainly false. The operative "Master Service Agreement" GEO entered into with Wellpath gives GEO wide access to Wellpath's records related to its duties under the agreement, including as it relates to Wellpath "Personnel." Ex. M at 10. It states, "GEO and its Clients retain the right to review all credentials, licenses, peer reviews, internal and external compliance audits, and disciplinary actions upon providing reasonable notice to CCS [Wellpath's affiliated entity], excluding any information that may be subject to the attorney/client/work product privilege or similar legal privilege." *Id*. at section 11.b.ix. Contact tracing related to Wellpath staff, which was conducted in response to Defendants' own COVID-19 policies and practices, constitute "internal … compliance audits" and are clearly encompassed in this provision.

Further, GEO's discovery position is also contradicted by records produced by Defendant USA. USA produced 211 pages of documents that bear GEO bates stamps, indicating GEO produced them in another litigation. Hoq Decl. ¶27. Fourteen of those pages appear to contain contact tracing information related to registered nurses at Adelanto (presumably Wellpath nurses) between August of 2020 and December 2020. *Id*. These records are not complete, including because they are improperly redacted to withhold the names of witnesses relevant to this case. *Id*. For this reason, the Court should order that GEO produce supplemental and amended discovery responses to these discovery requests by no later than two weeks from the date of the Court's order on Plaintiff's instant motion to compel, including all responsive contract tracing documents in GEO's possession,

custody and control.

Regarding GEO's response to Rog No. 5, requesting that it identify individuals with knowledge of how Vargas Arellano contracted COVID-19, it again falsely claims that it "does not have access to this information." GEO makes similar representations in response to Rog. No. 17, and RFP Nos. 25-28, limiting any agreement to produce responsive information to that involving GEO staff only. These responses are improper, and the Court should require it to amend and supplement them for the reasons discussed above. In addition, GEO apparently responded to Rog. No. 5 without reviewing the contact tracing documents it claims it has "requested." *See* GEO Response to Rog Nos. 26, 28. To the extent the contract tracing documents in its possession, custody and control identify or reference individuals with knowledge of how Vargas Arellano contracted COVID-19, GEO should amend its response to Rog. No. 5 to reflect what those documents show, among other facts in GEO's possession, custody and control.

## 2. GEO's Contentions and Points and Authorities

Defendant has produced documents related to GEO staff positive test results and contact tracing (GEO 06664-06685) and screening of GEO's employees (GEO 06496-06577). The documents it provided for GEO positive test results and contact screening have randomized identifiers – rather than names – due to HIPPA issues. As for providing these documents for other entities, this is unreasonable. Wellpath conducted its own testing, tracing, and screening. While Plaintiff points to documents stamped with "GEO" that were produced by ICE, as evidence that GEO has access to Wellpath contact tracing and can therefore produce unredacted copies of the same documents, they do not point out where, how, why or when ICE obtained this information and/or documents; however, presumably it was in *Roman v. Wolf*. GEO does not have unredacted information for Wellpath staff. But Wellpath and ICE were both separately sued in that litigation – as well as this case, and they are the custodians of information related to their own employees. It is not reasonable to demand that GEO produce information from a case which it was not a party to (and indeed was denied intervention in) when the parties who were involved in

1    the litigation are also parties in this lawsuit.

2    ### 3.  Proposed Resolution During the Meet and Confer Process

3    #### i.  Plaintiff's Proposed Resolution

4    As discussed above, at the parties Rule 37-1 conference regarding these requests on

5    February 9, 2024, GEO refused to substantively engage on them. Hoq Decl. ¶14 & Ex. E.

6    For its part, Plaintiff memorialized its proposed resolution of the disputes as to these

7    requests in its January 4, 2024 letter, to which GEO has never responded.  Hoq Decl. ¶14.

8    #### ii.  GEO's Proposed Resolution

9    Defendant has produced documents related to GEO staff positive test results and

10   contact tracing (GEO 06664-06685) and screening of GEO's employees (GEO 06496-

11   06577).  The documents it provided for GEO positive test results and contact screening

12   have randomized identifiers – rather than names – due to HIPPA issues.  As for providing

13   these documents for other entities, this is unreasonable.  Wellpath conducted its own

14   testing, tracing, and screening.  While Plaintiff points to documents stamped with "GEO"

15   that were produced by ICE, as evidence that GEO has access to Wellpath contact tracing

16   and can therefore produce unredacted copies of the same documents, they do not point out

17   where, how, why or when ICE obtained this information and/or documents; however,

18   presumably it was in *Roman v. Wolf*.  GEO does not have unredacted information for

19   Wellpath staff.  But Wellpath and ICE were both separately sued in that litigation – as well

20   as this case, and they are the custodians of information related to their own employees.  It

21   is not reasonable to demand that GEO produce information from a case which it was not

22   a party to (and indeed was denied intervention in) when the parties who were involved in

23   the litigation are also parties in this lawsuit. Further, as noted in the declaration of counsel,

24   she did not refuse to meet and confer, but only ended the conference when Plaintiff's four

25   lawyers on the call made it clear they were filing a motion to compel and they were not

26   interested in any type of resolution.  *See* Coleman Decl.

27   ### F.  Documents and Information Related to GEO, Wellpath and USA Staff
         ### Who Had Close Contact with Vargas Arellano and Who Also Tested

28

33

Positive for Covid-19,
[Rog Nos. 11, 12, 14; RFP Nos. 24, 29, 30]

**Rog. No. 11**: IDENTIFY the first and last names of the officers who signed the documents attached here as Exhibit A, including by the date they observed VARGAS ARELLANO, including between November 4, 2020 and December 10, 2020.

**Response to Rog. No 11**: Objection. This request calls for speculation given that the names are handwritten. The dates are equally available on the documents. Defendant has requested that the names be reviewed by a supervisor and compared to a staff roster if needed, and the full names will be provided once confirmed and received. However, based on the handwriting, the names currently appear to be as follows: Ex. A, GEO 00223: Monday 12/07/20, 3rd watch: J. Quintero; 1st watch: S. Ramirez; 2nd watch: M. Klein. Tuesday 12/08/20, 3rd watch: J. Quintero; 1st watch: S. Ramirez; 2nd watch: J. Hernandez. Wednesday 12/09/20, 3rd watch: Valle; 1st watch: T.Streider; 2nd watch T. Streider. Thursday 12/10/20, 3rd watch: V. Williams; 1st watch: T. Streider; 2nd watch: D. Lara. Ex. A, GEO 0224 – Saturday 12/05/20: 2nd watch: D. Lara. Sunday 12/06/20: 3rd watch: J. Quintero, 1st watch: T. Maipsa; 2nd watch: D. Lara. Ex. A, GEO 0225 – outside the time period requested above. Ex. A, GEO 0226: Thursday 12/10/20, 3rd watch: V. Williams, L. Rivera, K. Johnson. 1st watch: Estrada, S. Velasco, T. Hairston. 2nd watch: D. Lara, R. Bacon, J. Simieg. Ex. A, GEO 0227: Wednesday 12/09/20, 3rd watch: V. Williams. Ex. A, GEO 0228: Wednesday 12/09/20, 3rd watch: Valle. 1st watch: Estrada, S. Velasca, Alamache, R. _____. 2nd watch: Y. Scott. Ex. A, GEO 0229: Tuesday 12/08/20, 3rd watch: Valle. Ex. A, GEO 0230: Tuesday 12/08/20, 3rd watch: J. Quintero, V. Williams. 1st watch: S. Ramirez, S. Velasco. 2nd watch: K. J_____, _____. Ex. A, GEO 0231: Monday 12/07/20, 3rd watch: J. Quintero, L. _____. 1st watch: S. Ramirez, M. Hayes. 2nd watch: _____, R. Sindi, J. Quintero. Ex. A, GEO 0232: Sunday 12/06/20, 3rd watch: J. Quintero, _____. 1st watch: T. Hairston, A. Camacho, J. Ramirez. 2nd watch: D. Lara, R. Bacon, J. Quintero. Ex. A, GEO 0233: Saturday 12/05/20, 2nd watch: D. Lara, J. Quintero. Ex. A, GEO 0234: 11/30/20 – J. Quintero, T. Hairston. 12/01/20 – W. Dambski, S. Velasco, Norwood A. Ex. A, GEO 0235: 11/28/20 – D. Lara. 11/29/20 – J. Quintero, T. Hairston, R. Bacon. Ex. A, GEO 0236: 12/01/20 – 3rd watch: W. Dambski, Valle. 1st watch: S. Velasco, A. Camacho. 2nd watch: A. Norwood. Ex. A, GEO 0237: 11/29/20 – 3rd watch: R. Bacon, J. Quintaro, Guajardo.1st watch: T. Hairston, Arvetz?, Avila. 2nd watch: R. Bacon, R. Saudi?, J. Quintero. Ex. A, GEO 0238: 11/30/20 – 3 rd watch: J. Quintero, P. _____. 1st watch: T. Hairston, J. Quintero, A. Camacho. 2nd watch: M. Klein, W. Dambski. Ex. A, GEO 0239: 11/28/20 – 3rd watch: R. Bacon. 2nd watch: D. Lara, R. Bacon, J. Quintero.

**Rog. No. 12**: IDENTIFY the first and last names of all individuals at ADELANTO (including both detainees, as well as GEO, WELLPATH, and USA employees/agents) who tested positive for Covid-19 between November 4 and December 14, 2020, including the date they tested positive, including but not limited to the individuals referenced in the "APC Daily Housing and Covid-19 Status Report" submitted to the Court in Roman v. Wolf (See, e.g., Exhibit B ("Exh. B"), attached hereto).

**Response to Rog. No. 12**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to testing of their employees and detainees, and the USA has custody and control of information about ICE employees. Further, GEO was not a party to the Roman v. Wolf litigation, does not have access to any of the documents therein, and has no way to determine what statistics/information were included in Exhibit B. Without waiving these objections, Defendant responds as follows: Defendant has requested information for GEO employees who tested positive during this time, and will provide the list once obtained.

**Rog No. 14**: Describe VARGAS ARELLANO'S housing conditions from November 4, 2020 to December 10, 2020, including the location(s) where he was housed; the size in square feet of each unit he was housed in; whether, in each of those units, he was housed in his own cell or with others, and whether he was housed within six feet of others; where he consumed his meals and whether he did so within six feet of others; where he took showers and whether he did so within six feet of others; and where he accessed legal or educational materials (for e.g., law library) and whether he did so within six feet of others.

**Response to Rog. No. 14**: Objection. This request is compound, contains impermissible subparts, calls for a narrative, is overly broad and unduly burdensome. Further, while the housing assignments at ADF can be determined, detainees have some freedom about where to eat their meals (and whether they eat alone or with others), where to shower (within their unit), and where to sit in the law library, for example. Without waiving these objections, Defendant responds as follows: Defendant has requested a housing history for decedent Vargas Arrellano and will provide this information. As to the size of each unit, that requires separate investigation/determination following receipt of the history. It cannot be determined which specific shower decedent used in each unit, where specifically he ate and read, and whether he was in close proximity (6 feet or less) to others.

**RFP No. 24**: All DOCUMENTS that IDENTIFY anyone who was physically

35

present at ADELANTO, including GEO staff, WELLPATH staff, USA staff, and detainees, between November 4, 2020 and December 10, 2020 and who tested positive for Covid-19 on or within one week of this timeframe.

**Response to RFP No. 24**: Objection. This request seeks information outside the custody and control of the answering party. Wellpath has custody and control of information related to testing of their employees and detainees, and the USA has custody and control of information related to testing of ICE employees. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to GEO staff who were at the facility during this time period and tested positive for COVID.

**RFP No. 29**: All DOCUMENTS that IDENTIFY what Personal Protective Equipment ("PPE") YOU or any other PERSON, including WELLPATH or USA, required anyone physically present at ADELANTO to wear, including GEO staff, WELLPATH staff, and detainees, to prevent the spread of Covid-19 from November 4, 2020 to December 10, 2020.

**Response to RFP No. 29**: [GEO erroneously referenced as RFP No. 28] Objection. Wellpath has custody and control of information related to PPE requirements for their employees, many of whom are medical staff, and the USA has custody and control of information related to PPE for ICE employees. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to PPE requirements in GEO's custody and control.

**RFP No. 30**: All DOCUMENTS that IDENTIFY what Personal Protective Equipment ("PPE") was actually used by anyone physically present at ADELANTO, including GEO staff, WELLPATH staff, USA staff and detainees, prior to their coming into contact with VARGAS ARELLANO from November 4, 2020 to December 10, 2020.

**Response to RFP No. 30**: Objection. Wellpath has custody and control of information related to PPE requirements for their employees, many of whom are medical staff, and the USA has custody and control of information related to PPE for ICE employees. Defendant further objects that actual use of PPE was not tracked, such as on a log. Without waiving these objections, Defendant responds as follows: Defendant has requested and will provide any responsive documents related to PPE use in November-December 2020 in GEO's custody and control.

### 1. Plaintiff's Contentions and Points and Authorities

Despite its unsupported objections, GEO responded to these requests by agreeing to produce information about the identity of GEO staff who had close contact with Vargas Arellano at times relevant to this case, and who also tested positive for COVID-19. It also agreed to produce information about Vargas Arellano's housing conditions during this time period. However, now four months after it committed to do so, GEO has failed to supplement and amend its responses.  Plaintiff sent GEO a letter on January 4, 2024, reminding it of its commitment to do so, to which Plaintiff received no response.  Hoq Decl. ¶11 & Ex. C. At the Parties Rule 37-1 conference related to these requests on February 9, 2024, GEO refused to substantively engage as to whether or not it would correct its discovery deficiencies. Hoq Decl. ¶14 & Ex. E. A few days after the Rule 37-1 conference, GEO agreed to produce COVID-19 testing and contract tracing documents relating to its staff only, but GEO has yet to produce the full information Plaintiff requested.  Hoq Decl. ¶17.

Regarding Rog. No. 12 and RFP No. 24, relating to the identities of individuals at Adelanto who tested positive for COVID-19 around the same time as Vargas Arellano, GEO should also be required to produce responsive information related to USA and Wellpath staff in its possession, custody, and control. Ex. R at p. 109,  110-112, 115-118. GEO also represented to Plaintiff that Wellpath conducted all COVID-19 testing of all individuals at Adelanto, including of USA, Wellpath and GEO staff.  Ex. B.  As such, and because GEO has access to this information under its Master Service Agreement with Wellpath, GEO must produce it to Plaintiff here.  *Id*.; Ex. M

Regarding RFP Nos. 29-30, related to the PPE Defendants were required to wear at Adelanto and the PPE they actually wore prior to coming into contact with Vargas Arellano, GEO's written discovery responses state that it has agreed to produce this information at least as it its staff.  To date, it has failed to do so.  For the reasons discussed, to the extent GEO has possession, custody or control of responsive information as to Wellpath and USA staff, it should be required to produce that as well.

For all of these reasons, the Court should order that GEO produce supplemental and

37

amended discovery responses to Rog Nos. 11, 12, 14 and RFP Nos. 24, 29, and 30 within two weeks of the Court's order on this motion.

### 2. GEO's Contentions and Points and Authorities

Defendant has produced documents related to GEO staff positive test results and contact tracing (GEO 06664-06685) and screening of GEO's employees (GEO 06496-06577). Wellpath conducted its own testing, tracing, and screening. GEO does not have unredacted information for Wellpath staff. But Wellpath and ICE were both separately sued in this litigation, and they are the custodians of information related to their own employees. GEO suggests those custodians should be asked about their own employees, directly. Plaintiff's discovery requests ask for many items that cannot be ascertained – such as where decedent showered or ate lunch – when he would have had some options available and his choices would not have been noted. Similarly, the <u>actual</u> use of PPE by GEO staff is not logged; however, policies produced herein indicate GEO staff were required to wear masks. Medical staff interacting closely with detainees were required to wear full PPE (mask, gloves, gown).

### 3. Proposed Resolution During the Meet and Confer Process

#### i. Plaintiff's Proposed Resolution

As discussed above, at the parties Rule 37-1 conference regarding these requests on February 9, 2024, GEO refused to substantively engage on these requests. Hoq Decl. ¶14 & Ex. E. For its part, Plaintiff memorialized its proposed resolution of the disputes as to these requests in its January 4, 2024 letter, to which GEO has never responded. Hoq Decl. ¶11.

#### ii. GEO's Proposed Resolution

Defendant has produced documents related to GEO staff positive test results and contact tracing (GEO 06664-06685) and screening of GEO's employees (GEO 06496-06577). Wellpath conducted its own testing, tracing, and screening. GEO does not have unredacted information for Wellpath staff. But Wellpath and ICE were both separately sued in this litigation, and they are the custodians of information related to their own

employees.  GEO suggests those custodians should be asked about their own employees, directly. There is no responsive information (or documents) reflecting what PPE GEO staff actually wore on any given date.

### G. Documents Related to Defendants Compliance with COVID-19 policies and practices, as well as other detention standards relevant to this case

**RFP No. 19**: All DOCUMENTS including COMMUNICATIONS RELATING TO DETENTION STANDARDS, including but not limited to compliance with those DETENTION STANDARDS; all complaints lodged against YOU, USA or WELLPATH for violating the DETENTION STANDARDS; any training provided to any PERSON, including YOU, USA and/or WELLPATH, RELATED TO the DETENTION STANDARDS; and any warnings, reprimands and disciplinary action taken against any PERSON related to the DETENTION STANDARDS.

**Response to RFP No. 19**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving these objections, Defendant responds as follows: Defendant has not retained emails from 2019-2021. Defendant refers to decedent's detainee file, which would include his grievances if any related to custody and responses thereto. To the extent Plaintiff seeks documents related to other detainees and training/discipline for persons unrelated to decedent's care, this request is vastly overbroad and not reasonably related to the discovery of admissible evidence.

### 1.  Plaintiff's Contentions and Points and Authorities

In his January 4, 2024 meet and confer letter, Plaintiff identified a number of specific documents responsive to RFP No. 19 that are missing from GEO's production. These documents include:

- Adelanto ICE Processing Center – Supervisor Shift Summaries (*see* Hoq Decl. ¶28): Defendant USA produced a few of these documents to Plaintiff in this litigation, but GEO maintains them. *Id*. Because they are highly relevant to this case, Plaintiff asked GEO to produce these documents for the period June 1, 2020 to December 31, 2021. Ex. C, E.

- Facility Entrance - Employee Wellness Screening Tool  (*see, e.g.,* Ex. N): A blank

copy of this document was produced by GEO.  GEO used the document to screen staff entering Adelanto for Covid-19 symptoms, document the screening, and potentially prevent staff from reporting to work if they had symptoms.  Because they are highly relevant to this case, Plaintiff asked GEO to produce completed versions of these screening documents for the period August 1, 2020 to December 31, 2020. Ex. C, E.

- Daily Movement Sheets (*see* Hoq Decl. ¶30) referencing Mr. Vargas Arellano: Defendant USA produced a few of these documents to Plaintiff in this litigation, but GEO likely maintains them. *Id.*  Because they are highly relevant to this case, Plaintiff asked GEO to produce a complete set of these documents referencing Vargas Arellano. Ex. C.  GEO never responded to this request.

- Deposition testimony of GEO employees taken in the *Roman* litigation, or any other proceedings, related to GEO's policies and protocols related to Covid-19, including but not limited to measures to contain the spread Covid-19 (e.g. related to PPE compliance, screening of symptomatic staff and detainees, testing to identify positive cases, and contact tracing). Plaintiff discussed these documents with GEO at their February 9, 2024 Rule 37-1 conference.  Hoq Decl. ¶15. GEO did not deny their existence or relevance, but instead claimed they could not access them from USA.  *Id*. & Ex. E. Plaintiff pointed out to GEO that Defendant Wellpath was able to obtain transcripts of its witnesses deposed in the *Roman* litigation, which it produced to Plaintiff in this litigation, indicating that GEO could do the same. Hoq Decl. ¶15. GEO had no response to this information. *Id.*

- All Covid-19 reporting related to the Adelanto Processing Center that GEO, Wellpath or USA provided to any government agency or in connection with any official proceeding for the period January 2020 to December 2020, including but not limited to reports of positive Covid-19 test results. Because these documents are highly relevant to this case, Plaintiff asked GEO to produce them. Ex. C.

In a February 13, 2023 email, GEO committed to producing certain of these

documents. Ex. E. GEO agreed to produce the Facility Entrance - Employee Wellness Screening Tool, and the COVID-19 reporting to government agencies for the period August 1, 2020 to December 31, 2020. *Id.* Plaintiff agreed to this time timeframe without waiving its right to seek these documents from a broader timeframe to the extent they are relevant. *Id.* GEO represented that it would produce these documents within the week. Ex. E. However, as of the date Plaintiff submitted this Joint Stipulation to GEO, it had yet to do so. Hoq Decl.¶28-30.

GEO also agreed to produce the Supervisor Shift Summaries, but the parties may be at an impasse regarding the time period for which GEO would produce these documents. GEO is willing to produce these documents for the period June 1, 2020 to March 8, 2021, the date Mr. Vargas Arellano died. Ex. E. Plaintiff explained he is entitled to these shift summaries at least through the end of 2021, because they would show any changes in Defendants' policies and practices after Mr. Vargas Arellano died, which is relevant to Plaintiff's negligence and violation of detention standards claims. *Id.* While GEO stated it would "ask[] the facility to provide me the shift summaries for [Plaintiff's] requested date range," *id.*, it has yet to commit to producing them to Plaintiff.

Regarding the deposition transcripts of GEO witnesses taken in the Roman litigation, at the Parties' February 9, 2024 Rule 37-1 conference, GEO took the unsupported position that it could not access these transcripts. Ex. E. Regarding the Daily Movement Sheets, GEO has never responded whether or not it will produce them.

The Court should order GEO to produce each set of these documents that are highly relevant to this case, within two weeks of the date of its order on this motion.

## 2. GEO's Contentions and Points and Authorities

Defendant has produced documents related to GEO staff positive test results and contact tracing (GEO 06664-06685) and screening of GEO's own employees (GEO 06496-06577). Wellpath conducted its own testing, tracing, and screening. Defendant also produced the daily movement records and housing information for decedent.

Adelanto has now completed copying (one page at a time) the shift supervisor

41

summaries (3 per day) for the time period sought, and they will be produced as soon as they are provided by corporate counsel to defense counsel. However, given that these shift summary reports primarily note the counts (of detainees) and the times of certain events, it is unlikely they will be pertinent to any issues in the litigation. GEO has repeatedly stated that is does not have access to - - nor custody, control, or possession - - of any of the *Roman v. Wolf* deposition transcripts, even for its own employees. GEO has no objection to ICE producing these depositions, however.

### 3. Proposed Resolution During the Meet and Confer Process

#### i. Plaintiff's Proposed Resolution

As discussed above, at the parties February 9, 2024 Rule 37-1 conference, GEO refused to substantively engage on this request. While it later agreed to produce a subset of the requested documents, and Plaintiff agreed to an initially limited timeframe for certain categories of documents, it has yet to produce them. Hoq Decl. ¶14-16 & Ex. E.

#### ii. Defendant's Proposed Resolution

Defendant has never refused to discuss these or any other requests. As to the shift supervisor summaries, these will be produced as soon as possible upon receipt, as noted above. However, they have little relevance to the issues herein. Further, as to any *Roman v. Wolf* deposition transcripts, GEO suggests these be obtained from a party to the litigation; GEO was not a party and does not have these documents, even for its own employees.

### H. Documents Relating to GEO's Contracts with USA and Wellpath Governing their Independent Covid-19 Obligations [RFP Nos. 8, 9]

**RFP No. 8**: All DOCUMENTS RELATING TO any CONTRACT between ICE and GEO and/or WELLPATH RELATING TO GEO's operation of ADELANTO, and any modifications to those including but not limited to GEO and/or WELLPATH'S duty

**Response to RFP No. 8**: Objection. This request is overly broad, unduly burdensome, and may seek documents in custody of other parties. Without waiving

these objections, Defendant responds as follows: A copy of the contract between ICE and GEO was provided with the USA's Motion to Dismiss. [DKT 50-2.] The contract between GEO and Wellpath is hereby produced.

**RFP No. 9**: All DOCUMENTS RELATING TO any CONTRACT between YOU and WELLPATH RELATING TO YOUR operation of ADELANTO, and any modifications to those including but not limited to YOUR duty of care toward sick detainees.

**Response to RFP No. 9**: Objection. This request is overly broad, unduly burdensome, and assumes without foundation that GEO cared for sick detainees when it contracted with Wellpath to provide that care. Without waiving these objections, Defendant responds as follows: Defendant refers to the contract between GEO and Wellpath, which has been produced.

### 4. Plaintiff's Contentions and Points and Authorities

At the Parties Rule 37-1 conference on October 19, 2023, GEO acknowledged the deficiencies in its response to RFP No. 8 and 9, and agreed to do the following:

- Regarding its contracts with Wellpath, GEO agreed to verify whether the contracts that Wellpath produced in this litigation constitutes all documents responsive to RFP No. 9;

- Regarding its contracts with USA, GEO agreed to produce certain portions of the contracts USA failed to include in its Motion to Dismiss filing, including the following:

(1) the Quality Assurance Surveillance Plan (QASP), listed as Attachment 2 to the contract;

(2) all Contract Discrepancy Reports (CDR);

(3) all Quality Assurance Surveillance Forms (QASF) for the relevant time period.

(4) From the ERO Covid-19 Pandemic Response Requirements (PRR) [GEO 00372-399]:

      (a) all annual inspection reports, and

      (b) all evidence of bi-weekly spot checks as required under the PRR at the Adelanto facility.

Ex. B at 2. However, to date, GEO has failed to produce this information. The Court should order it to do so within two weeks of its order in this Motion.

### 5. GEO's Contentions and Points and Authorities

Defense counsel has been valiantly trying to obtain these documents, and has no objection to producing them if they are in GEO's custody or control; however, the information requested should be limited to relevant time periods and pertinent information. For example, "all annual inspection reports" are not relevant to this case — except for 2020-2021. Similarly, evidence of bi-weekly spot checks should be limited to the same time period. It is not clear that contract discrepancy reports would be relevant at all, nor would QASF reports; however, GEO does not object to their production *if related to COVID protocols* for the same time period. Further, as noted elsewhere, it is likely that other parties to this litigation have been asked for (and may have provided) the same information/ documents.

### 6. Proposed Resolution During the Meet and Confer Process

#### i. Plaintiff's Proposed Resolution

Despite GEO's commitment at the Rule 37-1 conference on October 19, 2023 to produce these documents, and despite Plaintiff's numerous letters following up on this commitment, Exs. A-D, to date GEO has failed to produce them.

#### ii. GEO's Proposed Resolution

Defense counsel has been trying to obtain these documents, and has no objection to producing them if they are in GEO's custody or control; however, the information requested should be limited to relevant time periods and pertinent information. For example, "all annual inspection reports" are not relevant to this case other than 2020-2021. Similarly, evidence of bi-weekly spot checks should be limited to the same time period. It is not clear that contract discrepancy reports would be relevant at all, nor would QASF reports; however, GEO does not object to their production if related to COVID protocols for the same time period.

Moreover, to the extent Plaintiff's counsel are seeking the same information from

44

different parties in the litigation, they should be foreclosed from pursuing sanctions – or any other remedy – against a party if another party has already produced the documents.

February 26, 2024                    HOQ LAW APC


                                     By:  /s/ *Laboni Hoq* _____
                                          Laboni Hoq

                                     Attorneys for Plaintiff
                                     MARTIN VARGAS

February 27, 2024                    BURKE, WILLIAMS & SORENSEN, LLP


                                     By:  /S/ *Susan E. Coleman* _____
                                          Susan E. Coleman

                                     Attorneys for Defendant
                                     THE GEO GROUP, INC.