Stacy Tolchin
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer
*Email: Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
National Immigration Project of the National Lawyers Guild (NIPNLG)
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
Telephone: (202) 470-2082
Facsimile: (617) 227-5495

(*continued on next page*)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin VARGAS, as Successor in Interest of the Estate of Martin Vargas Arellano,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC.<br><br>             Defendants. | Case No. 5:23-cv-00380-JWH-SP<br><br>Honorable Sheri Pym<br><br>**DISCOVERY MOTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT WELLPATH'S FURTHER RESPONSES TO PLAINTIFF'S REQUSTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES (SET ONE) AND RESPONSES TO PLAINTIFF'S REQUSTS FOR PRODUCTION OF DOCUMENTS AND** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTERROGATORIES (SET TWO)**

**DECLARATION OF STACY TOLCHIN, AND EXHIBITS THERETO FILED CONCURRENTLY**

Hearing Date: April 9, 2024
Hearing Time: 10:00 a.m.
Location: via court's posted Zoom webinar
Jury Pre-Trial Conference: November 22, 2024
Jury Trial Date: December 9, 2024
Discovery Cut-Off: July 26, 2024

Laboni A. Hoq
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on April 9, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th St., Riverside, CA 92501, Courtroom 4, 3rd Floor, via Zoom webinar, in the courtroom of the Honorable Sheri Pym, via the Court's posted Zoom webinar, Plaintiff will and hereby does move the Court pursuant to Fed. R. Civ. Proc. 37 and Local Rule 37 *et seq.* for an order compelling Defendant Wellpath, Inc. to further respond to Plaintiff's Request for Production of Documents("RFP"), Sets One and Two, and Plaintiff's Interrogatories ("Rog"), Sets One and Two, including by producing responses related to Mr. Vargas Arellano's Medical and Death Records (RFP Nos. 1-2 and 19 (Set One), Rog. No. 5-7 and 9 (Set One); Communications Relating to Mr. Vargas Arellano (RFP Nos. 11-14 (Set One); and Responses to Plaintiff's October 30, 2023 Second Set of Interrogatories [ROG Nos. 10-17] and Second Set of Request for Production of Documents [RFP Nos. 24-32]. Plaintiff requests that the Court order sanctions for Defendant Wellpath's failure to cooperate in the preparation of the Joint Stipulation under Local Rule 37-2.2, and order that it pay Plaintiff $11,100 for the fees associated with the filing of this motion. *See* Local Rule 37-4; Fed. R. Civ. P. 37(a)(5)(A).

Plaintiff has met the pre-filing conference of counsel and his portion of the preparation of joint stipulation requirements contained in Federal Rule of Civil Procedure 37 and Local Rule 37 *et al. See* Declaration of Stacy Tolchin, ("Tolchin Decl.") ¶¶ 9, 16, 20. Defendant Wellpath has failed to timely respond within seven days after the receipt of the draft joint stipulation. Tolchin Dec. ¶ 20.

This Motion is based on this Notice of Motion and Motion, the Tolchin Declaration and attached Exhibits, and upon such other matters as may be presented to the Court at the time of the hearing.

| 1 | March 6, 2024 | By:  /s/ *Stacy Tolchin* |

Stacy Tolchin
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer
*Email: Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
1200 18th Street NW Suite 700
Washington, DC 20036Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq
*Email:* laboni@hoqlaw.com
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff
MARTIN VARGAS

iii

TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 1

      A.    Vargas Arellano's Immigration Detention in Contravention of Court
            Orders ........................................................................................... 2

      B.    Vargas Arellano's Illness and Death in Defendants' Custody and
            Care ............................................................................................... 2

III.  RELEVANT PROCEDURAL HISTORY ................................................ 3

IV.   ARGUMENT ........................................................................................... 4

      A.    The Court Should Order Wellpath to Respond to Requests Related to
            Mr. Vargas Arellano's Medical and Death Records: RFP Nos. 1-2, 19
            (Set One), Rog. Nos. 5-7, 9 (Set One) ......................................... 5

            1.    Mr. Vargas Arellano's Medical Records (RFP No. 1, Rog. No.
                  9) ........................................................................................... 8

            2.    Identity of Wellpath Employee Who Transmitted COVID-19
                  to Mr. Vargas Arellano (Rog No. 6) .................................... 9

            3.    Investigations into Mr. Vargas Arellano's Death (RFP No. 2,
                  Rog No. 7) ............................................................................ 9

            4.    COVID-19 Testing and Contact Tracing Records: (RFP No.
                  19, Rog. No. 5) ..................................................................... 10

      B.    THE COURT SHOULD ORDER THAT WELLPATH PRODUCE
            COMMUNICATIONS RELATING TO MR. VARGAS
            ARELLANO (RFP Nos. 11-14) ..................................................... 11

      C.    THE COURT SHOULD ORDER THAT WELLPATH RESPOND
            TO PLAINTIFF'S OCTOBER 30, 2023 SECOND SET OF
            INTERROGATORIES [ROG NOS. 10-17] AND SECOND SET OF
            REQUEST FOR PRODUCTION OF DOCUMENTS [RFP NOS. 24-
            32] ................................................................................................. 15

      D.    THE COURT SHOULD ORDER WELLPSATH TO PAY
            PLAINTIFF's REASONABLE EXPENSES IN THE FORM OF
            ATTORNEY'S FEES DUE TO WELLPATH'S FAILURE TO
            ABIDE BY ITS DISCOVERY OBLIGATIONS ........................... 18

V.    CONCLUSION ....................................................................................... 19

iv

TABLE OF AUTHORITIES

**<u>FEDERAL CASES</u>**

*Herbalife Int'l of Am., Inc. v. Kamel*, No. CV216982MWFPVCX, 2023 WL
6193006, at *7 (C.D. Cal. July 20, 2023)................................................. 19

*Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, No. 2:22-CV-07434-
DSF-JC, 2024 WL 650434, at *4 (C.D. Cal. Jan. 4, 2024).............................. 5, 19

*Perez v. City of Fontana*, No. EDCV191623DMGKKX, 2023 WL 4768732, at *3
(C.D. Cal. Feb. 8, 2023). ........................................................................ 19

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.
1992) 18

**<u>RULES</u>**

Federal Rule of Civil Procedure 37 ...........................................................passim

Local Rule 37-1 to 37-4 ..........................................................................passim

## I.   INTRODUCTION

Plaintiff Martin Vargas moves this Court for an order pursuant to Fed. R. Civ. Proc. 37 and Local Rule 37 *et seq.* for an order compelling Defendant Wellpath, Inc. to further respond to Plaintiff's Request for Production of Documents ("RFP"), Sets One and Two, and Plaintiff's Interrogatories ("Rog"), Sets One and Two, including by producing responses related to Mr. Vargas Arellano's Medical and Death Records (RFP Nos. 1-2, 1 (Set One), Rog. Nos. 5-7 and 9 (Set One); Communications Relating to Mr. Vargas Arellano (RFP Nos. 11-14); and Responses to Plaintiff's October 30, 2023 Second Set of Interrogatories [ROG Nos. 10-17] and Second Set of Request for Production of Documents [RFP Nos. 24-32].

Due to Wellpath's failure to cooperate in the discovery process, Plaintiff also requests that Wellpath be ordered to pay Plaintiff attorneys' fees of $11,100, as reasonable expenses incurred in bringing this Motion pursuant to Rule 37(a)(5)(A). *See* Local Rule 37-4.

## II.   STATEMENT OF FACTS

Plaintiff Martin Vargas is the eldest son of Martin Vargas Arellano, who tragically died after contracting COVID-19 in U.S. Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto") due to repeated failings by Defendant USA ("USA") and its contractors Defendants the Geo Group, Inc. ("GEO") and Wellpath. ICE contracts with GEO to run operations at Adelanto, and also provides health care for detained people at Adelanto through GEO's sub-contract with Wellpath. Dkt. 39 at ¶12. Under the operative contracts, court orders, and governing law, each of the Defendants were required to abide by COVID-19 mandates designed to forestall Vargas Arellano from contracting COVID-19, and his tragic and untimely death, which they failed to do.

**A.     Vargas Arellano's Immigration Detention in Contravention of Court Orders**

Vargas Arellano came to the U.S. when he was two. Dkt. 39 at ¶60. On May 15, 2013, ICE initiated removal proceedings. *Id*. at ¶61. He was assigned an attorney to represent him in the proceedings because he was a class member in *Franco-Gonzalez v. Holder,* which mandates legal representation for mentally incompetent individuals. *Id*. Vargas Arellano suffered from chronic health conditions including high blood pressure, diabetes, cellulitis, liver disease, and severe psychiatric illness. Dkt. At ¶67.

Following the outbreak of COVID-19, ICE issued a series of mandates to manage and attempt to limit the spread of COVID-19 at immigration detention facilities.  *Id*. at ¶¶21-22. Multiple class action lawsuits further obligated ICE to stem the spread of COVID-19 at detention facilities. Vargas was a class member in two such cases. First, *Fraihat v. ICE* mandated timely custody redetermination and release for class members, like Vargas Arellano, who were chronically ill and immunocompromised. *Id*. at ¶25. Second, *Roman v. Wolf*, required population reduction at Adelanto in response to the COVID-19 pandemic. *Id*. at ¶¶34-39. ICE delayed and then denied Vargas Arellano's release requests based on these orders, including shortly before he contracted COVID-19 and died from it on March 8, 2021. *Id*. at ¶71.

**B.     Vargas Arellano's Illness and Death in Defendants' Custody and Care**

On December 10, 2020, Vargas Arellano tested positive for COVID-19. Dkt. 39 at ¶80. In the course of the *Roman* litigation, Defendant USA attested that Vargas Arellano contracted the disease from a Wellpath employee during a November 29, 2020 examination. *Id*. Defendant USA attested that this was his only known exposure to COVID-19. Declaration of Stacy Tolchin ("Tolchin Decl."), ¶ 22, Exhibit ("Ex.") J.[1]

---

[1] Hereinafter, all references to Exhibits are to those attached to the concurrently filed declaration of Stacy Tolchin.

Between December 11, 2020 and February 27, 2021, Vargas Arellano endured persistent COVID-19 symptoms and was repeatedly hospitalized. *Id.* at ¶¶83–89. On or about February 19, 2021, when medical professionals determined that Vargas Arellano was at risk of "'sudden death' due to multiple ailments … in the wake of COVID-19 infection," ICE initiated plans to release him. Dkt. 39 at ¶89. However, by February 26, 2021, he suffered a stroke that caused brain death. *Id*. at ¶92. On March 5, 2021, ICE "released" him purportedly on his own recognizance while in the hospital, even though he was brain dead. *Id*. at ¶93. On March 8, 2021, he passed away due to complications from COVID-19. *Id.*at ¶94. ICE failed to inform Plaintiff or Vargas Arellano's attorney of his "release" or death. *Id*.

Plaintiff filed this action for the loss of his father Mr. Vargas Arellano, alleging claims for violations of the Federal Tort Claims Act against Defendant United States of America (Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and False Arrest/Imprisonment and Wrongful Death), as well as against GEO and Wellpath for Violation of Detention Standards (Cal. Gov. Code § 7320), Negligence, Negligent Infliction of Emotional Distress, and Wrongful Death.

## III. RELEVANT PROCEDURAL HISTORY

The operative complaint in this case was filed on May 23, 2023. Dkt. # 39.

On June 2, 2023, Plaintiff served on Wellpath his first set of Requests For Production of Documents ("RFPs" Nos. 1 to 23  Tolchin Dec. ¶ 3.  On June 16, 2023 Plaintiff served his first set of Interrogatories ("Rogs" Nos. 1 to 9). Tolchin Dec. ¶ 3. Wellpath submitted a response on August 3, 2023.   Tolchin Dec. ¶ 4.  On October 30, 2023 Plaintiff served on Wellpath his second set of RFPs,  Nos. 24 to 32, and Rogs, Nos. 10 to 17. *Id*. ¶ 7.

On November 29, 2023, Plaintiff granted Wellpath a two-week extension to serve responses to Plaintiff's Requests for Interrogatories and RFPs (Set Two). Tolchin Dec. ¶

3

12. Plaintiff granted this extension on the condition that Wellpath fully respond to Plaintiff's discovery correspondences, including an October 25, 2023 letter, regarding their deficient responses to Set One with reasonable deadlines as to when it will complete its production of outstanding discovery with respect to Set One. On December 1, Wellpath informed plaintiff that it would be providing "substantial responses" to that request by December 15, 2023.

Wellpath never followed up. Wellpath also failed to provide any responses to Set Two, which were due on December 18, 2023. Between October 25, 2023 and February 7, 2024, upon receiving Wellpath's responses to Plaintiff's first set of RFPs and Rogs, Plaintiff engaged in lengthy efforts to meet and confer with Wellpath, detailing the deficiencies with its discovery responses (and lack of responses regarding Plaintiff's second set of RFPs and Rogs) in two letters. *Id*. ¶ 14-15, Exhs. E-F.

For its part, while Wellpath claimed on February 5, 2024, December 1, and November 14, 2023 that it would address the discovery deficiencies Plaintiff identified related to his first set of RFPs and Rogs, and respond to Plaintiff's second set of RFPs and Rogs. Tolchin Decl. ¶ ¶ 9, 12,16. Wellpath has failed to do so.  *Id*. ¶ 16.

Last, Plaintiff sought to resolve this dispute throughout the procedures set forth in Local Rule 37-2.2.  On January 27, 2024, Plaintiff sent Wellpath a letter requesting a Rule 37-1 conference and a conference was held on February 5, 2024. Tolchin Dec. ¶ 15, Exh. F.  On February 27, 2024, Plaintiff sent a draft stipulation pursuant to Local Rule 37-2.2, requesting a response by March 5, 2024.  *Id*. ¶ 20, Exh. J. No response was received within the seven day time period. *Id*. ¶ 20.  As such, Plaintiff moves to compel Wellpath's response to the pending discovery requests pursuant to Local Rule 37-2.4; *Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, No. 2:22-CV-07434-DSF-JC, 2024 WL 650434, at *4 (C.D. Cal. Jan. 4, 2024).

## IV.    ARGUMENT

Through this Motion, Plaintiff seeks a Court Order requiring Defendant Wellpath

to timely respond and amend its discovery responses to ensure Plaintiff receives critical information central to this case to which he is entitled: relevant communications, Electronically Stored Information ("ESI"), and other documents and information related to how Vargas Arellano contracted COVID-19 despite the myriad of precautions Defendants were required to take to forestall this result, which led to his untimely death. Wellpath has never seriously denied that Plaintiff is entitled to this information, but instead has delayed providing it, and has entirely failed to respond to some of Plaintiff's discovery requests.

Plaintiff is now in urgent need of the discovery at issue, to use at upcoming depositions and to otherwise timely prosecute the case.  Given Wellpath's history of evading its discovery obligations, including by failing to meet its own commitments to supplement its responses and prolonging the discovery process, Plaintiff cannot further wait for Wellpath to voluntarily comply with its discovery obligations. The discovery cut-off in this case is set for July 26, 2024, leaving Plaintiff limited time to do so.  Dkt. 63 (Scheduling Order). Plaintiff therefore requests that the Court issue an order requiring Wellpath to produce additional documents and information, and provide written responses to Plaintiff's RFPs and Rogs, along the lines requested here, as well as order granting Plaintiff reasonable expenses in the form of attorneys' fees incurred in making this motion in light of Wellpath's failure to abide by its discovery obligations.  *See* L.R. 37-4.

**A.    The Court Should Order Wellpath to Respond to Requests Related to Mr. Vargas Arellano's Medical and Death Records: RFP Nos. 1-2, 19 (Set One), Rog. Nos. 5-7, 9 (Set One)**

Plaintiff propounded the following requests related to Mr. Vargas Arellano's medical and death records, and Wellpath has failed to adequately respond.

**REQUEST FOR PRODUCTION NO. 1**

5

All DOCUMENTS RELATING TO any medical conditions VARGAS-ARELLANO suffered while in YOUR care or custody, including but not limited to COMMUNICATIONS RELATED TO YOUR knowledge of his medical conditions and any treatment of those conditions by YOU, USA and/or GEO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**
Please see documents produced herewith at Bates numbers WELLPATH-MVA 000001 –WELLPATH-MVA 005897. Additional documentation may be in the possession, custody or control of other parties, including USA and GEO. Responding party further responds that to the extent "communications" are requested, responding party respectfully requests to meet and confer regarding the scope of the request, and to the extent ESI communications are requested (i.e. email) meeting and conferring is required to designate search terms, custodians and other parameters.

**REQUEST FOR PRODUCTION NO. 2:**
All DOCUMENTS RELATING TO the death of VARGAS-ARELLANO, including but not limited to COMMUNICATIONS between YOU and any other PERSON RELATED TO his death; any investigation into his death; any Office of Professional Responsibility reports RELATED TO his death; any action items, corrective action plans, or policy changes resulting from or RELATED TO his death; and statements from any PERSON, including but not limited to YOU, USA or GEO RELATED TO his death.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
Objection. This request potentially seeks documents in violation of the PSQIA at 42 U.S.C. § 299b-21, et seq. and 42 CFR 3.20, and the attorney-client privilege. Further objection that the request seeks documentation in the possession, custody or control of other parties, including USA and GEO. Without waiving stated objections and subject thereto, responding party responds as follows: Any non-privileged documentation responsive to this request will be produced at a reasonable time following the entry of the protective order in this case.

**REQUEST FOR PRODUCTION NO. 19:**
All DOCUMENTS including COMMUNICATIONS RELATING TO DETENTION STANDARDS, including but not limited to compliance with those DETENTION STANDARDS; all complaints lodged against YOU, USA or GEO for violating the DETENTION STANDARDS; any training provided to any PERSON, including YOU, USA and/or GEO, RELATED TO the DETENTION STANDARDS; and any warnings, reprimands and disciplinary action taken against

6

any PERSON related to the DETENTION STANDARDS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**
Objection. This request is vague and ambiguous as to the term "detention standards" as it is used in this context and directed to medical provider Wellpath. Further objection that the request is overly broad as to time and scope, and not proportional to the needs of this case. Absent narrowing of the request, and further definition, responding party is unable to respond.

**INTERROGATORY NO. 5:**
IDENTIFY all PERSONS with knowledge of how VARGAS ARELLANO may have contracted Covid-19 while at ADELANTO, e.g. based on access to the results of any contact tracing, including their employment position(s) and a summary of their knowledge of relevant facts.

**RESPONSE TO INTERROGATORY NO. 5**:
Responding party is presently unaware of how decedent contracted COVID-19, or whether it was contracted at Adelanto, by custody or medical staff or elsewhere decedent had visited, such as outside appointments. Responding party is currently investigating this issue and discovery has just begun. Responding party therefore specifically reserves the right to amend and/or supplement its' response herein as necessary.

**INTERROGATORY NO. 6:**
IDENTIFY the WELLPATH employee who treated VARGAS ARELLANO on or about November 29, 2020, and who is referenced in the SPECIAL MASTER REPORT as the individual who likely transmitted Covid-19 to VARGAS ARELLANO.

**RESPONSE TO INTERROGATORY NO. 6**:
On November 28, 2020 Mr. Vargas Arellano was treated by Hideyuki Sakata, M.D. and Tanya Willis, N.P. On December 1, 2020 Mr. Vargas Arellano was treated by Ruth Escareno, R.N. Responding party is not asserting these individuals "likely transmitted COVID-19 to Vargas Arellano."

**INTERROGATORY NO. 7:**
"Describe any investigation into the events and circumstances surrounding VARGAS ARELLANO'S death, including the findings of any such investigation, any disciplinary actions resulting from any such investigation including by IDENTIFYING those disciplined, and changes in YOUR policies and procedures

as a result of any investigation."

**RESPONSE TO INTERROGATORY NO. 7**:
Responding party is presently unaware of any investigation consistent with interrogatory 7. Investigation and discovery are ongoing and responding party specifically reserves the right to amend and/or supplement this response as necessary.

**INTERROGATORY NO. 9:**
IDENTIFY each of YOUR agents (e.g. employees or contractors) who had any knowledge, direct or indirect, about VARGAS ARELLANO'S medical conditions from November 1, 2020 to his death on March 8, 2021, including by providing their job descriptions and any certifications or licenses they held.

**RESPONSE TO INTERROGATORY NO. 9**:
In accord with FRCP Rule 33(d), responding party refers propounding party to Bates numbers WELLPATH-MVA 000001 – WELLPATH-MVA 005897. Discovery is continuing and these responses will be supplemented.

These requests seek documents and information related to how Vargas Arellano contracted COVID-19 on or about December 10, 2020 and the events leading to his death on March 8, 2021. Although Wellpath produced some responsive documents, a number of specific sets of documents are missing. Plaintiff identified these missing documents to Wellpath during the course of the parties' meet and confer discussions, including as follows:

1.     **Mr. Vargas Arellano's Medical Records (RFP No. 1, Rog. No. 9)**

It was during a Wellpath infirmary stay from November 28, 2020 to December 1, 2020 that ICE represented to the *Roman* Special Master that Mr. Vargas Arellano contracted COVID-19 from a Wellpath employee. Tolchin Dec., Exh. H. To date, Wellpath has not produced all documents related to this infirmary stay, and each subsequent contact Mr. Vargas Arellano had with any Wellpath employee thereafter. While Defendant GEO has recently produced documents related to Mr. Vargas Arellano's November 28, 2020 to December 1, 2020 infirmary stay, Wellpath has an independent obligation to produce these documents, and all other responsive documents in its

8

possession, custody or control.  If the documents GEO produced constitute all responsive records in Wellpath's possession, custody or control, the Court should order Wellpath to amend its discovery responses to so state.  Further, Wellpath issued subpoenas for Mr. Vargas Arellano's medical records, but despite Plaintiff's repeated requests, it has not turned over any of the documents recovered by the subpoenas.  *Id.*, Exh. A at 5.

### 2.    Identity of Wellpath Employee Who Transmitted COVID-19 to Mr. Vargas Arellano (Rog No. 6)

As discussed, ICE represented to the Special Master in the Roman litigation that it was a "Wellpath employee" who transmitted COVID-19 to Mr. Vargas Arellano on November 29, 2020.  *Id.*, Exh. H.  In Rog No. 6, Plaintiff asks Wellpath to identify this Wellpath employee, but Wellpath fails to respond to this clear and direct query, despite its obvious personal knowledge of the information Plaintiff seeks. Instead, Wellpath provides a completely evasive response, including by identifying the Wellpath employees who treated Mr. Vargas Arellano on both November 28 and December 1, 2020, but not on November 29, 2020. During the parties' meet and confer discussion on November 14, 2023, Wellpath agreed to amend its response to Rog No. 6, and identify the Wellpath employee identified by ICE as having transmitted COVID-19 to Mr. Vargas Arellano.  To date, Wellpath has failed to do so.

### 3.    Investigations into Mr. Vargas Arellano's Death (RFP No. 2, Rog No. 7)

In response to Rog. No. 7, Wellpath stated that it is "presently unaware of any investigation consistent with [any investigation into the events and circumstances surrounding VARGAS ARELLANO'S death]." In fact, the Special Master appointed in the *Roman* case investigated the facts and circumstances related to Vargas Arellano's death, and required corrective action in response to its findings.  *Id*., Exh. J. It lacks credulity that Wellpath was not aware of this investigation, let alone the "findings of any

9

such investigation, any disciplinary actions resulting from any such investigation including … and changes in [Wellpath's] policies and procedures as a result of any investigation." *See* Rog. No. 7. Indeed, Wellpath contracted with GEO to provide healthcare serviced to Mr. Vargas Arellano, and would have been directly involved in responding to the Special Master inquiry.  Wellpath is therefore obligated to search for documents in its possession, custody and control related to the Roman Special Master inquiry, and any other matters referenced in RFP No. 2, and amend its response to Rog. No. 7.

During the parties' meet and confer discussion on November 14, 2023, Wellpath agreed to conduct a further investigation for this information and inform Plaintiff of its findings. *Id*., Exh. E.  To date, Wellpath has failed to follow through with its commitment, let alone comply with its obligation to fully and properly respond to RFP No. 2 and Rog. No. 7.

### 4.   COVID-19 Testing and Contact Tracing Records: (RFP No. 19, Rog. No. 5)

Despite its evasive response to RFP No. 19 and Rog. No. 5, at the parties November 14, 2023 conference, Wellpath agreed to produce COVID-19 testing records in its possession, custody and control, including for detainees, Wellpath staff, GEO staff, and/or USA staff.  Exh. E. It also agreed to produce information regarding contact tracing of its employees, including the Wellpath nurse Norma Penaloza, for who USA produced contact tracing information that appears to identify her as the individual who transmitted COVID-19 to Mr. Vargas Arellano. Tolchin Dec., Exh. A.  Despite repeated requests that Wellpath produce this information, and Wellpath's own commitments to do so, Wellpath has completely failed to meet its discovery obligations. *Id.*, Exhs. A, C, D, E.

At the parties November 14, 2023 Rule 37-1 conference related to Plaintiff's first set of RFPs and Rogs, Wellpath agreed to produce all of the above-referenced

documents and information, but to date has failed to comply. *Id.*, Exh. E. At the parties' second Rule 37-1 conference on February 5, 2023, Wellpath's counsel again acknowledged that it does not dispute Plaintiff's entitlement to Plaintiff's outstanding discovery requests. Tolchin Decl. ¶ 16. Wellpath recommitted at that time to produce its outstanding responses to Plaintiff. *Id.* However, to date, it has failed to do so.

**B.  THE COURT SHOULD ORDER THAT WELLPATH PRODUCE COMMUNICATIONS RELATING TO MR. VARGAS ARELLANO (RFP Nos. 11-14)**

Plaintiff propounded the following requests related to the production of communications related to Mr. Vargas Arellano, and Wellpath has failed to adequately respond.

**REQUEST FOR PRODUCTION NO. 11:**
All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and USA RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**
Objection. This request is vague and ambiguous as to the term "detention conditions." Responding party further responds that to the extent "communications" are requested, responding party respectfully requests to meet and confer regarding the scope of the request, and to the extent ESI communications are requested (i.e. email) meeting and conferring is required to designate search terms, custodians and other parameters. Without waiving stated objections and subject thereto, responding party responds that documents responsive to this request may also be found in responding party's response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 12:**
All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and GEO RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**
Objection. This request is vague and ambiguous as to the term "detention conditions." Responding party further responds that to the extent "communications"

11

are requested, responding party respectfully requests to meet and confer regarding the scope of the request, and to the extent ESI communications are requested (i.e. email) meeting and conferring is required to designate search terms, custodians and other parameters. Responsive documents may also be found in responding party's response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 13:**
All DOCUMENTS RELATING TO ANY COMMUNICATIONS between any of YOUR employees, administrators, agents, contractors, attorneys, accountants, representatives, and any other person or entity acting or purporting to act on YOUR behalf, other than USA or GEO, RELATING TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**
Please see response to Request for Production No. 1. Responding party further responds that to the extent "communications" are requested, responding party respectfully requests to meet and confer regarding the scope of the request, and to the extent ESI communications are requested (i.e. email) meeting and conferring is required to designate search terms, custodians and other parameters.

**REQUEST FOR PRODUCTION NO. 14:**
All DOCUMENTS RELATING TO ANY COMMUNICATIONS between YOU and any third parties, including VARGAS ARELLANO'S attorneys or family members RELATED TO VARGAS ARELLANO'S detention conditions, including but not limited to his medical conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**
Aside from what may be contained in medical records related to decedent produced herewith in response to Request for Production No. 1, responding party responds that to the extent additional "communications" are requested, responding party respectfully requests to meet and confer regarding the scope of the request, and to the extent ESI communications are requested (i.e. email) meeting and conferring is required to designate search terms, custodians and other parameters.

Following the parties' November 14, 2023 Rule 37-1 conference, Wellpath agreed to conduct an ESI search of its records in response to Plaintiff's discovery requests. Tolchin Dec., Exhs. C, D, E.  Between November 14 and 20, 2023, Plaintiff agreed to limit the ESI search terms as follows:

The following are the subset of terms from our initial list attached to our October 25, 2023 letter that we request that Wellpath utilize for this initial search (with the addition of 40, below). We also provide explanations for why these terms are relevant. Please use the formulations of the terms in our October 25 letter to capture shortened forms and other variations of the core terms.

1-2: variations of Mr. Vargas Arellano's name and his A#
3: the Special Master in the *Roman* case
4-5: ICE personnel Sergio Guzman and Gabriel Valdez, who documents show were significantly involved in Mr. Vargas-Arellano's medical case
16: Norma Penaloza - She is referenced on the contact tracing document attached to our October 25 letter.
17: Tanya Willis - She is referenced in Wellpath's Interrogatory responses as someone directly involved in Mr. Vargas-Arellano's case around the time USA purports he contracted Covid-19.
18: Ruth Escanero - same as above
27: Dr. Hideyuki Sakata - same as above
28: ICE Field Medical Coordinator Nicole Knight-Glass - Documents show she was involved in Mr. Vargas Arellano's medical case.
32: contact tracing
33: Covid w/10 of terms 1-2 and 32, above
40: Janeka w/10 of the terms 1-2 and 32, above - This is a new term not in our October 25 letter.  It is intended to capture communications involving GEO's Adelanto Facility Administrator related to this case.

**Search locations**:

1. Email Systems
2. Other electronic messaging systems
3. ESI shared drives

**Search custodians**:

Tanya Willis
Sakata Hideyuki MD
Coretta Porter
Ruth Escareno
Jonathan Garcia
Jessica Petersen
Allison Gore

Maria Leyva
Kimberly Monge
Angelina Zelleck
Maribel Plasencio
Angelina Chavarria
Vincent Warrington
Angela Gilmer (MH)
Samantha Vanscoy (MH)
Christopher Deulen (MH)
Eu Choo (MH)
Yasmin Robles-Gray
Tamer Fathy
Norma Penaloza
S. Puckett (MH)
M. Vasquez LVN

**Other physicians:**

Alex Ramos, MD
Richard Medrano MD
Wellpath Chief Compliance Officer

**Search timeframe**:
11/1/20 to the end of 2022.

On January 4, 2024, Plaintiff asked Wellpath to add Kimberlee Ford and Pedro Lopez as custodians for the ESI search.  Exh. E. At the parties' subsequent February 5, 2024 Rule 37-1 conference, Wellpath never declined to move forward with Plaintiff's proposed ESI search.  Tolchin Decl. ¶ 16. However, to date Wellpath has failed to carry out the search and produce responsive documents to Plaintiff. *Id.*

As discussed, the parties have negotiated the parameters of Wellpath's ESI search, and Wellpath committed to move forward with it.  However, since their February 5, 2024 conference, Wellpath has not offered any additional information regarding the results of the ESI search.  Tolchin Dec. ¶ 16.

### C.   THE COURT SHOULD ORDER THAT WELLPATH RESPOND TO PLAINTIFF'S OCTOBER 30, 2023 SECOND SET OF INTERROGATORIES [ROG NOS. 10-17] AND SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS [RFP NOS. 24-32]

Plaintiff propounded second sets of requests for production of documents and interrogatories to which Wellpath never responded. These set forth:

**INTERROGATORY NO. 10:**
IDENTIFY the first and last names of all individuals at ADELANTO (including both detainees, as well as GEO, WELLPATH, and USA employees/agents) who tested positive for Covid-19 between November 4 and December 14, 2020, including the date they tested positive, including but not limited to the individuals referenced in the "APC Daily Housing and Covid-19 Status Report" submitted to the Court in *Roman v. Wolf* (See, e.g., Exhibit A ("Exh. A"), attached hereto).

**INTERROGATORY NO. 11:**
IDENTIFY in which data category, if any, VARGAS ARELLANO was counted in the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in *Roman v. Wolf*, attached hereto as Exh. A.

**INTERROGATORY NO. 12:**
Describe what methods were used by any PERSON, including GEO, for Covid-19 contact tracing of the individuals at ADELANTO (including detainees, as well as GEO, WELLPATH, and USA employees/agents), who YOU knew had tested positive for Covid-19 or were suspected to have Covid-19, including but not limited to those who tested positive as reflected on the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in *Roman v. Wolf*, attached hereto as Exh. A.

**INTERROGATORY NO. 13:**
Describe all findings from any contact tracing conducted by any PERSON to determine how VARGAS ARELLANO contracted Covid-19, including but not limited to contact tracing of the individuals (both detainees as well as GEO, USA and WELLPATH employees/agents), who tested positive for Covid-19 who are referenced in the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in <u>Roman v. Wolf</u>, attached as Exh. A.

**INTERROGATORY NO. 14**:
IDENTIFY all individuals who may have had contact with VARGAS

15

ARELLANO from November 4, 2020 to December 10, 2020, who also tested positive for Covid-19 in November or December 2020, including but not limited to any WELLPATH employees/agents involved in overseeing VARGAS ARELLANO's healthcare.

**INTERROGATORY NO. 15:**
Describe what procedures and practices YOU had in place to ensure GEO, USA and/or WELLPATH staff who tested positive for Covid-19 did not transmit it to other individuals, including those who tested positive for Covid-19 as reflected on December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in *Roman v. Wolf*, attached hereto as Exh. A, including but not limited to whether they were required to stop reporting to work at ADELANTO; whether they were subject to contact tracing to determine how they contracted Covid-19; and what measures YOU took to ensure individuals they came into contact with at ADELANTO were tested, quarantined, and/or isolated for a period of time to limit further Covid-19 exposure to individuals at ADELANTO.

**INTERROGATORY NO. 16**:
IDENTIFY what Personal Protective Equipment ("PPE") anyone physically present at ADELANTO was required to wear, by YOU or any other PERSON including GEO and USA, to prevent the spread of Covid-19 from November 4, 2020 to December 10, 2020.

**INTERROGATORY NO. 17**:
IDENTIFY what Personal Protective Equipment ("PPE") was worn by any WELLPATH employee/agent when they came into contact with VARGAS ARELLANO from November 4, 2020 to December 10, 2020, including the name of the employee/agent, dates and times they came into contact with VARGAS ARELLANO and the specific PPE they were wearing at those dates and times (e.g. face mask and type, i.e. N-95, KN-95, etc.), face shield, goggles, gloves, gown, etc.)

**REQUEST FOR PRODUCTION NO. 24:**
All DOCUMENTS that IDENTIFY anyone who was physically present at ADELANTO, including GEO staff, WELLPATH staff, USA staff, and detainees, between November 4, 2020 and December 10, 2020 and who tested positive for Covid-19 on or within one week of this timeframe.

**REQUEST FOR PRODUCTION NO. 25:**
All DOCUMENTS RELATING TO any contact tracing YOU or any other PERSON, including USA and GEO, conducted to assess how any individual

16

physically present at ADELANTO could have contracted Covid-19, including but not limited to any policies, practices, protocols, guidelines, rules, training materials, instructional materials, syllabi, curricula, reporting, and other DOCUMENTS including but not limited to COMMUNICATIONS RELATING TO contact tracing.

**REQUEST FOR PRODUCTION NO. 26:**
All DOCUMENTS, including COMMUNICATIONS, RELATING TO any contact tracing conducted by any PERSON, including YOU, GEO and USA, to assess how VARGAS ARELLANO contracted Covid-19 on or about December 10, 2020.

**REQUEST FOR PRODUCTION NO. 27:**
All DOCUMENTS, including COMMUNICATIONS, RELATING TO any contact tracing of the individuals, both staff and detainees, who tested positive for Covid-19 who are referenced in the December 14, 2020 APC Daily Housing and Covid-19 Status Report submitted in Roman v. Wolf, attached as Exhibit A.

**REQUEST FOR PRODUCTION NO. 28:**
All DOCUMENTS that IDENTIFY all individuals, including but not limited to YOU, GEO, USA and other detainees, who YOU have reason to believe came into physical contact with VARGAS ARELLANO between November 4, 2020 and December 10, 2020 and who tested positive for Covid-19 in November or December 2020.

**REQUEST FOR PRODUCTION NO. 29:**
All DOCUMENTS that IDENTIFY what Personal Protective Equipment ("PPE") YOU or any other PERSON, including GEO or USA, required anyone physically present at ADELANTO to wear, including USA staff, GEO staff, WELLPATH staff, and detainees, to prevent the spread of Covid-19 from November 4, 2020 to December 10, 2020.

**REQUEST FOR PRODUCTION NO. 30:**
All DOCUMENTS that IDENTIFY what Personal Protective Equipment ("PPE") was actually used by anyone physically present at ADELANTO, including GEO staff, WELLPATH staff, USA staff and detainees, prior to their coming into contact with VARGAS ARELLANO from November 4, 2020 to December 10, 2020.

**REQUEST FOR PRODUCTION NO. 31:**
All DOCUMENTS, including COMMUNICATIONS YOU have had with any

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PERSON, including GEO and USA, RELATED TO any claim for indemnification or other compensation RELATED TO this case.

**REQUEST FOR PRODUCTION NO. 32:**
All DOCUMENTS YOU referenced or relied on in responding to Plaintiff's Interrogatories to Defendant Wellpath LLC (Set Two).

These Rogs and RFPs seek documents related to how Vargas Arellano contracted COVID-19, including Defendants' compliance with policies and protocols to stop the spread of COVID-19 *i.e.* through use of screening for COVID-19 symptoms, use of appropriate Personal Protective Equipment ("PPE"), as well as testing and contact tracing. Despite repeated requests that Wellpath produce information about screening, PPE, testing and contact tracing, Wellpath has completely failed to respond to RFP. Nos. 24-32 and Rog Nos. 10-17. The Court should order that Wellpath respond to these discovery requests within one week of its Order on Plaintiff's motion, and also order that Wellpath has waived any objections to these requests. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection").

Plaintiff provided Wellpath a two-week extension to respond to October 30, 2023 Plaintiffs ROGs and RFPs (Set Two), but no responses were submitted. Tolchin Dec., Exh. E. At the Parties Rule 37-1 conference of counsel on February 5, 2024, Wellpath agreed to respond to the Second set of ROGS and RFPs, but to date, nothing has been produced. Exh. E; Tolchin Decl. ¶¶ 9, 16.

**D.    THE COURT SHOULD ORDER WELLPSATH TO PAY PLAINTIFF's REASONABLE EXPENSES IN THE FORM OF ATTORNEY'S FEES DUE TO WELLPATH'S FAILURE TO ABIDE BY ITS DISCOVERY OBLIGATIONS**

Wellpath's failure to cooperate in the preparation of the Joint Stipulation under Local Rule 37-2.2 requires an order that it pay Plaintiff's reasonable expenses in the form of attorneys' fees. *See* Local Rule 37-4. *See Leprino Foods Co. v. Avani Outpatient*

18

*Surgical Ctr., Inc.*, No. 2:22-CV-07434-DSF-JC, 2024 WL 650434, at *5 (C.D. Cal. Jan. 4, 2024); *Herbalife Int'l of Am., Inc. v. Kamel*, No. CV216982MWFPVCX, 2023 WL 6193006, at *7 (C.D. Cal. July 20, 2023); *Perez v. City of Fontana*, No. EDCV191623DMGKKX, 2023 WL 4768732, at *3 (C.D. Cal. Feb. 8, 2023). The Court should order that Wellpath be sanctioned and pay Plaintiff $11,100 for the reasonable attorneys' fees he incurred in bringing this Motion, as set forth in the Tolchin Dec., ¶ 21. The requested rate of $925 an hour is reasonable based on counsel's 2001 graduation law school graduation date and decisions of this Court granting awards for similar rates. Tolchin Dec. ¶ 21; Exh. K.

## V.    CONCLUSION

For the above reasons, the Court should grant Plaintiff's motion and should order that Wellpath pay sanctions to Plaintiff in the amount of $11,100.

Dated: March 6, 2024

Respectfully submitted,

_By: S/ Stacy Tolchin_
STACY TOLCHIN

Stacy Tolchin
_Email: Stacy@Tolchinimmigration.com_
Megan Brewer
_Email:_
_Megan@Tolchinimmigration.com_
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe
_Email: khaled@nipnlg.org_
Matthew Vogel (admitted _pro hac vice_)
_Email: matt@nipnlg.org_
Amber Qureshi (admitted _pro hac vice_)
_Email: amber@nipnlg.org_
1200 18th Street NW Suite 700
Washington, DC 20036Telephone:
(202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq
_Email:_ laboni@hoqlaw.com
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Martin Vargas, certifies that this brief contains 6240 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 6, 2024                    By:    /s/ *Stacy Tolchin*
                                        Stacy Tolchin
                                        *Email: Stacy@Tolchinimmigration.com*
                                        Megan Brewer
                                        *Email: Megan@Tolchinimmigration.com*
                                        Law Offices of Stacy Tolchin
                                        776 E. Green St., Suite 210
                                        Pasadena, CA 91101
                                        Telephone: (213) 622-7450
                                        Facsimile: (213) 622-7233

                                        Khaled Alrabe
                                        *Email: khaled@nipnlg.org*
                                        Matthew Vogel (admitted *pro hac vice*)
                                        *Email: matt@nipnlg.org*
                                        Amber Qureshi (admitted *pro hac vice*)
                                        *Email: amber@nipnlg.org*
                                        1200 18th Street NW Suite 700
                                        Washington, DC 20036Telephone: (202) 470-2082
                                        Facsimile: (617) 227-5495

                                        Laboni A. Hoq
                                        *Email:* laboni@hoqlaw.com
                                        Hoq Law APC
                                        P.O. Box 753
                                        Pasadena, CA  91030
                                        Telephone: (213) 973-9004

                                        Attorneys for Plaintiff
                                         MARTIN VARGAS