E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
SHAINA C. ST JOHN (Cal. Bar No. 292643)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone:  (213) 894-2933
        Facsimile:   (213) 894-7819
        E-mail: Shaina.StJohn@usdoj.gov

Attorneys for Defendant
the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Martin VARGAS, as Successor in Interest of the Estate of Martin Vargas Arellano,<br><br>              Plaintiff,<br><br>              v.<br><br>UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC,<br><br>              Defendants. | No. 5:23-cv-00380-JWH-SP<br><br>**THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Memorandum of points and authorities, Declaration of Shaina C. St John, Request for Judicial Notice, and (Proposed) Order filed concurrently herewith.]<br><br>Hearing Date:    May 10, 2024<br>Hearing Time:    9:00 a.m.<br>Ctrm:               9D<br><br>Honorable John W. Holcomb<br>United States District Judge |

1

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2       PLEASE TAKE NOTICE that, on May 10, 2024 at 9:00 a.m., or as soon

3  thereafter as they may be heard, Defendant the United States of America (the "United

4  States") will, and hereby does, move this Court for an order dismissing with prejudice

5  the claims that Plaintiff's Second Amended Complaint ("SAC") [Dkt. 71] asserts against

6  the United States. This motion will be made before the Honorable John W. Holcomb,

7  United States District Judge, in Courtroom 9D of the Ronald Reagan Federal Building

8  and Courthouse located at 411 West Fourth Street, Santa Ana, CA 92701.

9       The United States moves pursuant to Federal Rules of Civil Procedure 12(b)(1),

10  12(b)(6), and 12(h)(3) to dismiss the SAC's claims against the United States, which are

11  all asserted under the Federal Tort Claims Act ("FTCA"), on the following grounds:

12      1.  The discretionary function exception to FTCA liability, 28 U.S.C. § 2680(a),

13          bars Plaintiff's claims against the United States based on Martin Vargas

14          Arellano's ("Arellano") continued detention by the government and bars

15          Plaintiff's claims based on the United States' oversight of defendant The GEO

16          Group, Inc. and Wellpath, LLC.

17      2.  Plaintiff's false imprisonment claims based on the United States' alleged

18          failure to comply with the preliminary injunction in *Fraihat v. U.S. Immigr. &*

19          *Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020) *rev'd and remanded*, 16

20          F.4th 613 (9th Cir. 2021) may not be collaterally raised before this Court.

21      3.  Plaintiff's claims based on the United States' alleged non-compliance with the

22          preliminary injunction issued in *Fraihat*, *Rodriguez v. Holder*, 2:07-cv-03239-

23          TJH-RNB (C.D. Cal. Aug. 6, 2013) ("*Rodriguez*") and *Franco-Gonzalez v.*

24          *Holder*, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) ("*Franco*") must also be

25          dismissed for failure to state a claim and because such claims remain subject to

26          the discretionary function exception to the FTCA.

27      4.  The contractor exclusion to FTCA liability, 28 U.S.C. § 2671, bars Plaintiff's

28          claims against the United States based on the care and safekeeping of Arellano

at the Adelanto detention facility owned and operated by defendant GEO.

5. The private analog requirement for FTCA claims and misrepresentation exception to FTCA liability, 28 U.S.C. § 2680(h), each independently bar Plaintiff's claims based on the United States' alleged failure to communicate Arellano's condition to his legal representative or next of kin.

6. Plaintiff's wrongful death claim fails because it is derivative of Plaintiff's other defective claims.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the attached supporting declarations, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel for the United States and Plaintiff pursuant to Local Rule 7-3 which occurred on March 22, 2024.

Dated: March 29, 2024                     Respectfully submitted,

                                          E. MARTIN ESTRADA
                                          United States Attorney
                                          DAVID M. HARRIS
                                          Assistant United States Attorney
                                          Chief, Civil Division
                                          JOANNE S. OSINOFF
                                          Assistant United States Attorney
                                          Chief, Complex and Defensive Litigation Section


                                          __/s/ Shaina C. St John_____
                                          SHAINA C. ST JOHN
                                          Assistant United States Attorney

                                          Attorneys for Defendant
                                          the United States of America

1

# **TABLE OF CONTENTS**

2   I.    INTRODUCTION AND SUMMARY ..................................................... 10

3   II.   BACKGROUND .................................................................................. 12

4   III.  PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES MUST BE
         DISMISSED. ...................................................................................... 14

5
6         A.   The Discretionary Function Exception Bars Plaintiff's Claims Based
              on Challenging Arellano's Continued Detention, and Also Bars
              Plaintiff's Claims Based on the United States' Oversight of Its
7             Contractors' Compliance ........................................................... 14

8         B.   Plaintiff's Attempt to Evade the Discretionary Function Exception by
              Citing Arellano's Need for a Bond Hearing Is Defective. .......................... 22
9
          C.   The Contractor Exclusion Bars Plaintiff's Claims Based on
10            Arellano's Care and Safekeeping at Adelanto by GEO and Wellpath. ...... 23

11        D.   The Private Analog Requirement and the Misrepresentation
              Exception Bar Plaintiff's Claims Based on the United States' Alleged
12            Failure to Communicate Arellano's Health Status. .................................. 26

13        E.   Plaintiff's Wrongful Death Claim Must Be Dismissed Because It Is
              Derivative of His Other Failed Tort Theories. ........................................ 29
14
     IV.  CONCLUSION .................................................................................... 29

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

<u>**Federal Cases**</u>                                                      <u>**Page(s)**</u>

*Abbey v. United States*,
  2023 WL 218960 (N.D. Cal. Jan. 17, 2023)........................................27, 29

*Alinsky v. United States*,
  415 F.3d 639 (7th Cir. 2005) ........................................................16

*Andrade v. United States*,
  845 F. App'x. 594 (9th Cir. 2021) ..................................................27

*Ard v. F.D.I.C.*,
  770 F. Supp. 2d 1029 (C.D. Cal. 2011) ...........................................15

*Autery v. United States*,
  424 F.3d 944 (9th Cir. 2005) ....................................................24, 25

*Begay v. United States*,
  768 F.2d 1059 (9th Cir. 1985) ......................................................15

*Carrillo v. United States*,
  5 F.3d 1302 (9th Cir. 1993) ........................................................24

*Chadd v. United States*,
  794 F.3d 1104 (9th Cir. 2015) ...........................................14, 15, 16

*City and Cnty. of San Francisco v. United States*,
  615 F.2d 498 (9th Cir. 1980) ......................................................27

*D.J.C.V. v. United States*,
  605 F. Supp. 3d 571 (S.D.N.Y. 2022) ............................................18

*Delta Savings Bank. v. U.S.*,
  265 F.3d 1017 (9th Cir. 2001) .....................................................23

*Dichter-Mad Fam. Partners, LLP v. United States*,
  707 F. Supp. 2d 1016 (C.D. Cal. 2010) ..........................................19

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) ................................................19, 27

*Dumais v. United States*,
  2023 WL 5237904 (D.N.H. Aug. 15, 2023)......................................27

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ........................................................................24

*Esquivel v. United States*,
   21 F.4th 565 (9th Cir. 2021) ........................................................................28

*Farmer v. United States*,
   2022 WL 3500363 (D.S.C. Aug. 18, 2022)..................................................22

*Flammia v. United States*,
   739 F.2d 202 (5th Cir. 1984) .......................................................................19

*Fraihat v. Barr*,
   790 F. App'x 120 (9th Cir. 2020) ................................................................23

*Fraihat v. U.S. Immigr. & Customs Enf't*
   445 F. Supp. 3d 709 (C.D. Cal. 2020) ........................................2, 11, 17, 18

*Fraihat v.U.S. Immigr. & Customs Enf't*,
   16 F.4th 613 (9th Cir. 2021) ........................................................................18

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   2022 WL 20212706 (C.D. Cal. Sept. 16, 2022) ..........................................18

*Franco-Gonzalez v. Holder*,
   2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) ..........................................2, 11

*Frigard v. United States*,
   862 F.2d 201 (9th Cir. 1988) .......................................................................26

*Guile v. United States*,
   422 F.3d 221 (5th Cir. 2005) .......................................................................16

*Hagy v. United States*,
   976 F. Supp. 1373 (W.D. Wash. 1997).........................................................16

*Harper v. Lockheed Martin Energy Sys., Inc.*,
   73 F. Supp. 2d 917 (E.D. Tenn. 1999)..........................................................16

*Hines v. United States*,
   60 F.3d 1442 (9th Cir. 1995) ..................................................................24, 25

*In re Consol. U.S. Atmospheric Testing Litig.*,
   820 F.2d 982 (9th Cir. 1987) .......................................................................15

6

*James & Elizabeth Console Fam. v. United States*,
   2023 WL 6120609 (S.D. Cal. Sept. 18, 2023)...............................................27

*JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*,
   224 F.3d 1260 (11th Cir. 2000) ...................................................................28

*Kennewick Irr. Dist. v. United States*,
   880 F.2d 1018 .................................................................................................16

*Kim v. United States*,
   940 F.3d 484 (9th Cir. 2019) .......................................................................28

*Kiniti v. Gonzales*,
   2008 WL 2388019 (S.D. Cal. June 6, 2008).............................................23

*Lawrence v. United States*,
   340 F.3d 952 (9th Cir. 2003) .......................................................................27

*Layton v. United States*,
   984 F.2d 1496 (8th Cir. 1993) .....................................................................16

*Leaf v. United States*,
   661 F.2d 740 (9th Cir. 1981) .......................................................................28

*Letnes v. United States*,
   820 F.2d 1517 (9th Cir. 1987) .....................................................................25

*Miller v. United States*,
   163 F.3d 591 (9th Cir. 1998) .......................................................................16

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) .......................................................................18

*Motton v. Bureau of Prisons*,
   2020 WL 8766062 (E.D. Tex. Nov. 12, 2020) ..........................................22

*Mt. Homes v. United States*,
   912 F.2d 352 (9th Cir. 1990) .......................................................................28

*Murillo v. United States Dep't of Justice*,
   2022 WL 16745333 (Nov. 7, 2022)..............................................................21

*Nichols v. United States*,
   2022 WL 989467 (5th Cir. Apr. 1, 2022) ...................................................22

*Nielsen v. Preap,*
    586 U.S. —, 139 S. Ct. 954 (2019)................................................................23

*Nurse v. United States,*
    226 F.3d 996 (9th Cir.2000) ................................................................21

*Parsons v. United States,*
    811 F. Supp. 1411 (E.D. Cal. 1992) ................................................16

*Pauly v. U.S. Dept. of,*
    *Agr.,* 348 F.3d 1143 (9th Cir. 2003) ................................................28

*Roman v. Wolf,*
    2020 WL 5797918 (C.D. Cal. Sept. 29, 2020) ..............................25

*Sabow v. United States,*
    93 F.3d 1445 (9th Cir.1996) ................................................................28

*Sanford v. United States,*
    2022 WL 1210717 (D.S.C. Apr. 25, 2022)......................................22

*Santiago v. United States,*
    2022 WL 790805 (W.D. Va. Mar. 14, 2022).............................21, 22

*Shinotsuka v. Fed. Corr. Inst. Terminal Island,*
    2023 WL 6812759 (C.D. Cal. Sept. 14, 2023) ..............................20

*Terbush v. United States,*
    516 F.3d 1125 (9th Cir. 2008) ................................................................15

*United States v. Gaubert,*
    499 U.S. 315 (1991)................................................................15, 16

*United States v. Muniz,*
    374 U.S. 150 (1963)................................................................26

*United States v. Neustadt,*
    366 U.S. 696 (1961)................................................................27

*United States v. Orleans,*
    425 U.S. 807 (1976)................................................................25

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),*
    467 U.S. 797 (1984)................................................................14, 15

*Vallier v. Jet Propulsion,*
  *Lab.*, 120 F. Supp. 2d 887 (C.D. Cal. 2000) ....................................................15

*Wood v. Standard Prod. Co.*,
  671 F.2d 825 (4th Cir. 1982) ........................................................................24

**Federal Statutes**

8 U.S.C. § 1226 ..................................................................................14, 22, 23

28 U.S.C. § 2671 ..................................................................................2, 12, 24

28 U.S.C. § 2680 ...........................................................................................passim

**Federal Regulations**

8 C.F.R. § 1003.19(e) ..................................................................................23

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION AND SUMMARY**

3

This case arises from the death of Martin Vargas Arellano, an immigration

4

detainee who was housed at the Adelanto ICE Processing Center owned and operated by

5

GEO. Arellano's son, Plaintiff Martin Vargas, sued GEO and its medical provider,

6

Wellpath, alleging that they failed to protect Arellano from COVID-19 at Adelanto.

7

But Plaintiff *also* asserted tort claims against the United States pursuant to the

8

Federal Tort Claims Act ("FTCA"), 28 U.S.C §§ 1346(b), 2671–80. The Court granted

9

the United States' motion to dismiss all but one of the First Amended Complaint's

10

claims against the United States. Dkt. 67. The Court held that it lacked jurisdiction over

11

Plaintiff's "claims based upon the allegations that … (1) [ICE] failed to shield Arellano

12

adequately from contracting COVID-19 … (2) [ICE] failed to provide facilities and care

13

sufficient to meet Arellano's medical needs[;]" (3) "ICE[] fail[ed] to oversee facilities

14

and staff properly[;]" (4) "ICE[] fail[ed] to release Arellano[;]" and (5) "the United

15

States[] fail[ed] to disclose Arellano's health condition and hospitalization to his

16

counsel." Dkt. 67 at 13-14, 19, 21. The Court also dismissed Plaintiff's wrongful death

17

claim failed because it was "premised on all of the claims that the Court … dismissed[.]"

18

*Id.* at 23. Plaintiff's IIED claim "centered on the United States' [alleged] concealment of

19

the seriousness of Arellano's condition and death" survived because "the United States

20

d[id] not sufficiently explain why Vargas ha[d] failed to state a claim …." *Id.* at 22.

21

Plaintiff has filed a Second Amended Complaint (SAC) [Dkt. 71], which

22

continues to assert claims against GEO and Wellpath, but again attempts to reassert tort

23

claims against the United States. Plaintiff's third attempt to plead actionable tort claims

24

against the United States fails again.

25

Plaintiff's **first** theory against the United States is the same as his prior FAC—that

26

ICE wrongfully detained Arellano despite his COVID-19 risk. But as the Court

27

previously found, Plaintiff's claims against the United States based on Arellano's

28

continued detention are barred by the discretionary function exception to FTCA liability.

1    Dkt. 67 at 19; 28 U.S.C. § 2680(a).

2            Plaintiff's **second** theory is that the United States lacked such discretion because it

3    was putatively *compelled* to release Arellano pursuant to injunctions issued in *Fraihat*,

4    *Rodriguez* and *Franco*.[1] This attempt to evade the discretionary function exception is

5    unavailing for multiple reasons. First, as a Rule 23(b)(2) class member, Arellano's

6    remedy for any alleged violation of the *Fraihat* preliminary injunction would have to be

7    raised there—not in another case. Furthermore, the Ninth Circuit subsequently vacated

8    the *Fraihat* injunction, finding it was overbroad. Moreover, none of these preliminary

9    injunctions required the United States to release Arellano—as their text makes quite

10   clear, and as the Court already found with respect to *Fraihat*. Dkt. 67 at 19. Finally, the

11   SAC concedes that Arellano received a custody redetermination and a bond hearing;

12   claiming that the United States should have decided to release Arellano in those

13   proceedings, does not overcome the discretionary function exception's application.

14           Plaintiff's **third** theory likewise attempts to sidestep the Court's finding that

15   Plaintiff's tort challenge to the United States' oversight of its contractors' compliance

16   with COVID-19 safety is barred by the discretionary function exception. Dkt. 67 at 14.

17   Plaintiff claims that the United States had mandatory oversight obligations over

18   Adelanto arising from its contractual obligations and policies, and is liable in tort for its

19   contractors' shortfalls. As before, however, Plaintiff failed to identify any mandatory and

20   specific requirement compelling the United States to exercise its oversight in any

21   particular or different manner that would have putatively prevented Arellano's death—

22   instead pointing generally to the fact that these contractors were subject to detention

23   standards that the United States could monitor. Thus, his "negligent oversight" claims

24   remain barred by the FTCA's discretionary function exception.

25           Plaintiff's **fourth** theory challenges the quality of the medical care that GEO

26

27   ───────────────

28   [1] *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020) *rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021); *Rodriguez v. Holder*, 2:07-cv-03239-TJH-RNB (C.D. Cal. Aug. 6, 2013); *Franco-Gonzalez v. Holder*, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013).

provided, alleging that GEO failed to shield Arellano from contracting COVID-19 at Adelanto and did not meet Arellano's unique medical needs. As against the United States, the Court already found such claims are barred by the contractor exclusion from FTCA liability. Dkt. 67 at 12-13; 28 U.S.C. § 2671. Plaintiff's allegation that the United States retained control over COVID-19 testing and social distancing at Adelanto fails because—as this Court discussed (Dkt. 67 at 5-6)—such COVID-19 procedures were supervised and controlled by the *Roman* Court before Arellano contracted COVID-19. Moreover, the *Roman* Special Master reported that the government had complied with the *Roman* Court's orders since he was appointed in October 2020, including its COVID-19 testing and social distancing requirements. Thus, Plaintiff's safekeeping and care claims remain barred by the contractor exclusion, as well as by the SAC's failure to state facts sufficient to state a plausible claim against the United States.

Plaintiff's **fifth** theory is that ICE allegedly concealed Arellano's illness, hospitalization, and death from his attorney, family, and next of kin. The Court previously found, however, it lacks jurisdiction over such claims because Plaintiff has failed to identify a private analog. Dkt. 67 at 19-21. And the Court also lacks jurisdiction over these claims because the FTCA's misrepresentation exception, 28 U.S.C. § 2680(h), bars tort claims against the United States based on the allegedly false or misleading statements (including by omission) made by federal employees.

**Finally,** because Plaintiff's own wrongful death claim is premised on his defective liability theories, it fails with them.

Because Plaintiff has already had three attempts to craft his claims against the United States and the defects in each claim cannot be resolved by further amendment, the SAC's claims against the United States should be dismissed without leave to amend, leaving GEO and Wellpath as the remaining defendants in the lawsuit.

## II.    BACKGROUND

The Court explained the relevant background pertaining to Arellano's detention, the applicable orders in *Roman* and *Fraihat*, the judicial oversight of Adelanto, and the

procedural history of this case in detail in its Order granting the United States' motion to dismiss the FAC. *See* Dkt. 67 at 2-9.

In response to that Order, which delineated the bars to his claims against the United States, Plaintiff filed the Second Amended Complaint. *See* Dkt. 71 [SAC] ¶ 1.

Like the FAC, the SAC alleges that the United States was negligent by failing to (1) "follow all required protocols, policies, procedures, and court-mandated orders to adequately shield him from contracting COVID-19;" (2) "adhere to the court-mandated procedures for [Arellano's] custody redetermination … under *Fraihat*;" (3) "to provide facilities and care sufficient to meet his medical needs; an individual with … Arellano's serious medical conditions could not be detained at … Adelanto … during the COVID-19 pandemic without placing him at unreasonable risk of physical harm;" (4) "adhere to its own policies and contractual obligations requiring it to implement oversight and compliance procedures over facilities and staff;" and (5) "act with reasonable diligence to communicate with … Arellano's designated representative and next of kin regarding his illness, transfer to hospital, and brain death." SAC ¶¶ 151(a)-(e), 161(a)-(e). He further alleges that the United States negligently inflicted emotion distress on Arellano by "actively concealing the seriousness of … Arellano's condition and death from his counsel and family, and 'releasing' him on his deathbed …." *Id.* ¶ 162.

Plaintiff's IIED claim is substantively unchanged from the FAC, and still asserts conclusory allegations that the United States (1) "committed outrageous conduct" by failing to "take steps to shield [Arellano] from contracting COVID-19" or "release him thereafter despite multiple requests" and knowing about his health issues; (2) detained Arellano "under conditions in which the facilities and level of care were not adequate to meet his medical needs[;]" and (3) "acted in bad faith by actively concealing the seriousness of [Arellano's] condition and death from his counsel and family, and 'releasing' him on his deathbed …." *Id.* ¶¶ 173-175.

Plaintiff makes similar conclusory statements in support of his false imprisonment claim against the United States. He alleges the United States violated the *Fraihat*

13

injunction by (1) "delay[ing Arellano's] detention decision for more than … seven days[;]" (2) "den[ying] … Arellano's release on October 29, 2020 and issu[ing] a blanket and cursory denial failing to provide an individualized determination justifying his continued detention[;]" and (3) not "consider[ing ] Arellano's release based on his vulnerable medical state …." *Id.* ¶¶ 184-186. He similarly alleges false imprisonment based on the United States' purported violation of the injunctions issued in *Rodriguez* and *Franco*, claiming Arellano was detained as a "mandatory [detainee under] … 8 U.S.C. § 1226(c)" when "he was detained for more than 180 days … rendering him eligible for release under 8 U.S.C. § 1226(a)." *Id.* ¶ 183.

Finally, Plaintiff's SAC asserts a wrongful death claim based on Arellano's death and the United States' alleged "intentional[] conceal[ment of] … Arellano's serious illness and death" from his counsel and family. *Id.* ¶¶ 217-218.

## III.   PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES MUST BE DISMISSED.

### A.   The Discretionary Function Exception Bars Plaintiff's Claims Based on Challenging Arellano's Continued Detention, and Also Bars Plaintiff's Claims Based on the United States' Oversight of Its Contractors' Compliance.

1.   The Discretionary Function Exception.

The discretionary function exception retains the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "'prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (hereinafter "*Varig Airlines*"));

14

1    *see Begay v. United States*, 768 F.2d 1059, 1064 (9th Cir. 1985) ("[I]f judicial review

2    would encroach upon this type of balancing done by an agency, then the exception

3    would apply.").

4         The Supreme Court devised a two-step test for applying the discretionary function

5    exception. *United States v. Gaubert*, 499 U.S. 315, 328–34 (1991).

6         First, a court considers whether the challenged conduct is "'discretionary in

7    nature,'" *i.e.*, if the challenged conduct involves "'an element of judgment or choice.'"

8    *Chadd*, 794 F.3d at 1109 (quoting *Gaubert*, 499 U.S. at 322). If there is a statute,

9    regulation, or policy that dictates "'*mandatory* and *specific* action,'" the discretionary

10   function exception cannot apply because "'there can be no element of discretion when an

11   employee has no rightful option but to adhere to the directive.'" *Id.* at 1109–10 (quoting

12   *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)) (emphasis added).

13        Second, a court considers whether the challenged conduct "is of the type Congress

14   meant to protect" under the discretionary function exception, *i.e.*, whether it "involves a

15   decision susceptible to social, economic, or political policy analysis." *Ard v. F.D.I.C.*,

16   770 F. Supp. 2d 1029, 1035 (C.D. Cal. 2011). It is well established that "[w]hen an

17   agency determines the extent to which it will supervise the safety procedures of private

18   individuals, it is exercising discretionary regulatory authority of the most basic kind."

19   *Varig Airlines*, 467 U.S. at 819–20; *see In re Consol. U.S. Atmospheric Testing Litig.*,

20   820 F.2d 982, 995–96 (9th Cir. 1987) ("failure to supervise [a] contractor's compliance

21   with the safety procedures and guidelines" fell within the discretionary function

22   exception); *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 914 (C.D. Cal. 2000)

23   *aff'd*, 23 F. App'x 803 (9th Cir. 2001) (finding that the United States "delegated to

24   Caltech the responsibility for waste disposal," and holding that "the government's

25   negligent supervision or even total failure to supervise are discretionary decisions

26

27

28

15

1    protected by the discretionary function exception").[2]

2           The Supreme Court has emphasized that the discretionary function exception "is

3    not confined to the policy or planning level" and extends to "the actions of Government

4    agents" taken "in the course of day-to-day activities." *Gaubert*, 499 U.S. at 323, 325,

5    334. Further, "the decision giving rise to tort liability 'need not be *actually* grounded in

6    policy considerations, but must be, by its nature, *susceptible* to a policy analysis.'"

7    *Chadd*, 794 F.3d at 1109 (emphasis added) (quoting *Miller v. United States*, 163 F.3d

8    591, 593 (9th Cir. 1998)). In other words, "'[t]he focus of the inquiry is not on the

9    agent's subjective intent'" in exercising discretion, but rather "'on the nature of the

10   actions taken and on whether they are susceptible to policy analysis.'" *Id.* (quoting

11   *Gaubert*, 499 U.S. at 325). Likewise, it is irrelevant whether the actual conduct

12   challenged in a particular case amounted to negligence. 28 U.S.C. § 2680(a); *Parsons v.*

13   *United States*, 811 F. Supp. 1411, 1416 (E.D. Cal. 1992) ("'[N]egligence is simply

14   irrelevant to the discretionary function inquiry' because § 2680(a) offers immunity

15   'whether or not the discretion involved be abused.'") (quoting *Kennewick Irr. Dist. v.*

16   *United States*, 880 F.2d 1018, 1029).

17

18

19

20   [2] *See also, e.g., Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) ("[T]he
21   discretionary function exemption protects the government from liability for claims
     premised on the lack of training, oversight, or qualifications of air traffic controllers,
22   since the government acted within its discretion to contract those responsibilities out to
     Midwest."); *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a
23   contractor's work, including the degree of oversight to exercise, is inherently a
     discretionary function."); *Layton v. United States*, 984 F.2d 1496, 1502–03 (8th Cir.
24   1993) (claims against the Forest Service for failing to supervise a logging contractor
     were barred by the discretionary function exception); *Harper v. Lockheed Martin Energy*
25   *Sys., Inc.*, 73 F. Supp. 2d 917, 922 (E.D. Tenn. 1999) ("The United States' decision to
     utilize an independent contractor to insure safety at the incinerator, its decision on how
26   to monitor [the independent contractor's] actions in complying with various regulations,
     and the decision by [the United States] to either warn or to not warn the public about
27   dangers from the emissions are all policy considerations."); *Hagy v. United States*, 976
     F. Supp. 1373, 1378–79 (W.D. Wash. 1997) (the United States' "decision to delegate
28   safety and warning responsibilities to [a contractor] is the type of policy decision the
     discretionary function exception was designed to shield").

1          2.   <u>The Discretionary Function Exception Bars Plaintiff's Claims Based</u>

2                 <u>on Arellano's Continued Detention.</u>

3        Like his FAC, Plaintiff's SAC alleges that the United States intentionally inflicted

4 emotional distress on Arellano by not releasing him after he made multiple requests for

5 release based on his health issues (SAC ¶ 173) and falsely imprisoned him by not

6 granting his release. *Id.* ¶¶ 183, 185, 187. Plaintiff also alleges that the timing of the

7 United States' release of Arellano—after he was gravely ill—negligently and

8 intentionally inflicted emotion distress on him. *Id.* ¶¶ 162, 175.

9        As this Court previously held, however, the discretionary function exception bars

10 such claims because "ICE ha[d] the discretion to release Arellano." Dkt. 67 at 18-19.

11 ICE was not compelled to release him earlier.

12       The SAC contends that the United States falsely imprisoned Arellano because the

13 United States (1) held Arellano's custody redetermination hearing more than a week

14 after the *Fraihat* order was issued; (2) then denied Arellano's release at that custody

15 redetermination hearing because it found he was a "Threat to Public Safety"; and (3) did

16 not "consider … Arellano's release based on his vulnerable state …." SAC ¶¶ 93, 184-

17 186. Similarly, the SAC claims that the United States was negligent and negligently

18 inflicted emotional distress on Arellano by not following unspecified "procedures for

19 custody redetermination" that were putatively required by the *Fraihat* injunction. SAC

20 ¶¶ 151(b) (negligence), 161(b) (NIED).

21       In reality, *Fraihat* was certified as a Rule 23(b)(2) class action. *See* 445 F. Supp.

22 3d at 740. There thus was no individual release order:

23           Plaintiffs do not seek any individualized determination by this Court of

24           whether they are entitled to release, and do not request a different injunction

25           for each class member. Rather, they ask the Court to determine whether

26           ICE's systematic actions, or failures to act, in response to COVID-19

27           amount to violations of the class members' constitutional or statutory rights.

28           As a result, the same injunction or declaratory judgment would provide

1    relief to all class members, or to none of them ….

2    *Id.* at 741. The Court noted that particularized decisions regarding release could instead

3    be sought in individual habeas petitions, but by contrast it was ordering something *non-*

4    *particularized*; "a comprehensive response to the pandemic." *Id.* at 739. In that respect,

5    the *Fraihat* respondents were just ordered to "make timely custody determinations for

6    detainees with Risk Factors, per the latest Docket Review Guidance."[3] *Id.* at 751.

7         The SAC attempts to evade the discretionary function exception's bar against

8    Plaintiff's FTCA claims by suggesting that the *Fraihat* preliminary injunction *divested*

9    the United States of discretion for deciding to release individual detainees in cases like

10   Arellano. As discussed, however, it did not. Arellano received a *Fraihat* redetermination,

11   as the SAC concedes, and his release was denied. He cannot establish that *Fraihat*

12   required his individual release and removed the United States' discretion, because

13   *Fraihat* did not require that, as this Court previously recognized. Dkt. 67 at 19.

14        Moreover, the Ninth Circuit later held the *Fraihat* preliminary injunction was

15   defective because it was overbroad, and so the district court vacated the injunction and

16   related orders. *See Fraihat*, 16 F.4th 613, 646–47 (9th Cir. 2021); *Fraihat*, 2022 WL

17   20212706, at *1 (C.D. Cal. Sept. 16, 2022).

18        Finally, the United States could not be subject to tort liability from such exercise

19   of discretion, regardless of whether it was "abused." *See* 28 U.S.C. § 2680(a); *see also*,

20   *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("the decision to detain a[

21   noncitizen] pending resolution of immigration proceedings … falls within [the

22   discretionary] exception."); *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 602

23   (S.D.N.Y. 2022) ("the detention of [detainee] both pending a decision on whether he

24   would have be removed … and following his 90-day removal period … met both prongs

25   of the DFE.").

26

27   ────────────────

28   [3] The COVID-19 Detained Docket Review Guidance was periodic guidance that ICE
     provided as to what factors should be considered when making release decisions. *See*
     *Fraihat*, 445 F. Supp. 3d at 721, 724.

Accordingly, Plaintiff's false imprisonment, negligence, and NIED claims based on an alleged violation of *Fraihat* are barred by the discretionary function exception, just as the Court previously held. Dkt. 67 at 19; *see also Flammia v. United States*, 739 F.2d 202, 204 (5th Cir. 1984) (affirming dismissal of FTCA claims pursuant to discretionary function exception because "the INS has broad statutory discretion to parole into the United States foreign nationals (*including discretion to release foreign nationals from detention*), even when they might otherwise be excludable.") (emphasis added).

### 3.   The Discretionary Function Exception Also Bars Plaintiff's Claims Based on the United States' Oversight of Its Contractors.

Like his FAC, Plaintiff's SAC alleges that the United States was negligent by not "implement[ing] oversight and compliance procedures over facilities and staff." SAC ¶¶ 151(d) (negligence), 161(d) (NIED). Recognizing that the Court already held these claims were barred by the discretionary function exception (Dkt. 67 at 14), Plaintiff now asserts these claims arise from the United States' "mandatory oversight obligations" and "compliance mechanisms" in "the PBNDS [Performance Based National Detention Standards], PRR [Pandemic Response Requirements], [and the United States'] contract with GEO …." SAC ¶¶ 65, 145; *see also id.* ¶¶ 151(d) (negligence), 161(d) (NIED). But Plaintiff does not identify anything[4] establishing a mandatory and specific requirement compelling the United States to oversee GEO's or Wellpath's compliance with detention standards in a particular manner that divested the United States of discretion. Plaintiff claims that under its contract with GEO, the United States "is responsible for ensuring that the requirements of the PBNDS are followed at … Adelanto." *Id.* ¶ 51; *see also id.* ¶

---

[4] Only those "obligations" alleged by Plaintiff are relevant to the Court's analysis because conclusory averments thereof are insufficient for purposes of analysis of the applicability of the discretionary function exception, particularly when—as here— Plaintiff fails to explain what the *United States* supposedly did wrong in this regard, as opposed to GEO or Wellpath. *Dichter-Mad Fam. Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1040 (C.D. Cal. 2010), *aff'd*, 709 F.3d 749 (9th Cir. 2013) (per curiam) ("[b]road allegations regarding undefined 'policies and practices' are insufficient" to overcome the discretionarye function exception); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (per curiam) ("a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss").

64. Unsurprisingly, however, Plaintiff fails to identify any specific manner in which the United States was required to discharge these oversight duties—instead pointing to the PBNDS standards with which the United States is allegedly required to oversee its contractors' compliance (*id.* ¶¶ 53-56) and stating in a conclusory fashion that the United States "is responsible for monitoring, assessing, recording, and reporting on the technical performance, including compliance with the PBNDS standards, of GEO on a day to day basis" and must "ensure that medical care at the facility meets detention standards." *Id.* ¶ 64. Plaintiff also fails to identify any manner in which the United States allegedly failed to comply with such general "oversight obligations."

Similarly, while he discusses the PRR at length, the only "obligation[]" Plaintiff identifies therein is a "bi-weekly spot check[]" that he claims would be documented in "Contract Discrepancy Reports." *Id.* ¶ 64. But Plaintiff acknowledges that "[a]t the time of … Arellano's COVID-19 illness and death, the PRR Version 5.0 was in effect." *Id.* ¶ 59. Under PRR Version 5.0, the spot checks were to be conducted "monthly" and ICE would "provide written notice to the facility" and "issue a Contract Discrepancy Report …." only "[u]pon identification of a deficiency." *See* Declaration of Shaina C. St John ¶ 2, Ex. A, at 7. Once again, Plaintiff fails to explain *how* the United States allegedly failed to comport with the PRR's spot check requirements. And while he claims that the United States "took no corrective action … against GEO's failure to follow the [identified] standards[,]" the SAC fails to identify what specific corrective action the United States was allegedly required to take or why that specific action was putatively non-discretionary. *See* SAC ¶ 65. Finally, the SAC also fails to plausibly allege how Arellano was harmed by any shortfall in such contractual reporting, particularly as the Adelanto facility was already under the *Roman* Special Master's (and the *Roman* Petitioners' counsel) close oversight when Arellano contracted COVID-19.

Thus, at the first step of the discretionary function inquiry, Plaintiff again has failed to establish any mandatory and specific requirements on the United States' oversight of GEO or Wellpath. *See Shinotsuka v. Fed. Corr. Inst. Terminal Island*, 2023

1   WL 6812759, at *3–*5 (C.D. Cal. Sept. 14, 2023) (discretionary function exception

2   barred FTCA claims for medical malpractice, negligence, wrongful death, and survival

3   where plaintiffs' complaint "offers several conclusory allegations that the Government

4   was required to take certain protective measures"—including that defendants "'were

5   supposed to rapidly test inmates for COVID-19, yet they failed to timely do that in many

6   instances'" and "'negligently failed to follow the policies and guidelines of the [BOP],

7   which mandated that Defendants and their employees take certain precautionary actions

8   in their response to COVID'"—"but fails to identify any federal statute, regulation, or

9   policy that mandated COVID-19 protocols" or "prescribe[ed] a course of conduct to

10  address the COVID-19 pandemic"); *Murillo v. United States Dep't of Justice*, 2022 WL

11  16745333, at *4, *8 (Nov. 7, 2022) (discretionary function exception barred inmate's

12  FTCA claim against BOP for failure to comply with COVID-19 policies and procedures

13  where plaintiff did not "identify any provision in the [BOP's Exposure Control Plan] that

14  prescribes a specific course of conduct that [the BOP] officials were required to follow

15  with respect to the COVID-19 pandemic or conditions in the COVID-19 unit[,]" "the

16  CDC Guidance is 'just that – guidance[,]'" and BOP's "COVID-19 Pandemic Response

17  Plan … setting forth certain operational modifications to be put in place at each BOP

18  facility" "d[id] not prescribe any mandatory, specific requirement with respect to the

19  COVID-19 pandemic") (quoting, in part, *Santiago v. United States*, 2022 WL 790805, at

20  *2 (W.D. Va. Mar. 14, 2022)).

21         Because, as this Court previously concluded, "it is well established that issues of

22  employee supervision 'fall squarely within the discretionary function exception'" (Dkt.

23  67 at 14 (quoting *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir.2000)), the second

24  step of the inquiry is unchanged. Accordingly, Plaintiff's claims based on the United

25  States' putatively negligent oversight of its contractors remains barred by the

26  discretionary function exception. *See Murillo*, 2022 WL 16745333, at *8 (Nov. 7, 2022)

27  ("Other federal courts concluded that the discretionary function exception barred FTCA

28

21

1    claims stemming from the COVID-19 pandemic.") (collecting cases).[5]

2        **B.    Plaintiff's Attempt to Evade the Discretionary Function Exception by**

3        **Citing Arellano's Need for a Bond Hearing Is Defective.**

4        Plaintiff also alleges that the United States wronged Arellano because he was held

5    as "mandatory [detainee under] … 8 U.S.C. § 1226(c)" but "was detained for more than

6    180 days … [and] eligible for release under 8 U.S.C. § 1226(a)" pursuant to *Rodriguez*

7    and *Franco*. *Id.* ¶ 183 (false imprisonment). But the SAC concedes that Arellano had a

8    bond hearing, and his release on bond was denied. Plaintiff alleges that in April 2019 the

9    United States "moved for a *Franco* bond redetermination hearing … noting that …

10   Arellano was eligible for release" and "acknowledg[ing] that … Arellano was not

11   subject to mandatory custody under 8 U.S.C. § 1226(c)." SAC ¶ 82; *see also*, Dkt. 55-1

12   at 9 (in April 2019 ICE sought a "hearing between September 24, 2019 [Arellano's 180th

13   day in custody] and October 9, 2019 [his 195th day in custody] … to consider

14   [Arellano]'s custody status in light of the *Franco-Gonzalez* … Injunction …."). Plaintiff

15   also admits that Arellano had another *Franco* bond hearing in February 2021. SAC ¶¶

16   96, 99.

17       Accordingly, Plaintiff fails to identify any supposed violation of the *Rodriguez* or

18   *Franco* injunctions. Nor does he explain why it would be redressable via tort claims in

19   this Court, rather than needing to be timely raised by Arellano's appointed counsel in

20   those other proceedings. Indeed, an FTCA claim must be founded on a duty applicable to

21   private persons (here, under California law), rather than upon alleged violation of a

22

23   [5] *See also*, *Farmer v. United States*, 2022 WL 3500363, at *5 (D.S.C. Aug. 18, 2022)
     (dismissing FTCA claim regarding prison's failure to follow statutory and CDC
24   guidelines with respect to COVID-19 under discretionary function exception); *Sanford v.*
     *United States*, 2022 WL 1210717 (D.S.C. Apr. 25, 2022) (same); *Santiago*, 2022 WL
25   790805 (concluding that the discretionary function exception barred the plaintiff's FTCA
     claim regarding BOP's handling of COVID-19); *Motton v. Bureau of Prisons*, 2020 WL
26   8766062 (E.D. Tex. Nov. 12, 2020) (same); *Nichols v. United States*, 2022 WL 989467,
     at *3 (5th Cir. Apr. 1, 2022) (concluding that the discretionary function exception
27   applied to prisoner's claim that the government "'failed to establish, maintain, and
     follow policies related to controlling infectious diseases and maintaining care, custody,
28   and control of [prisoners] and negligently maintained care, custody, and control of
     [him].'").

1   federal duty or federal law (as with a bond hearing). *See Delta Savings Bank. v. U.S.*,

2   265 F.3d 1017, 1024–26 (9th Cir. 2001) (rejecting attempt to assert FTCA claims based

3   on the United States' alleged violations of federal law).

4          Finally, Arellano had the means to, but did not, challenge his custody or bond

5   redeterminations. *See* Dkt. 55-1 at 6 ("You may request a review of this custody

6   determination by an immigration judge); 8 C.F.R. § 1003.19(e) ("After an initial bond

7   redetermination" detainee may "request … a subsequent bond redetermination" which

8   "shall be considered only upon showing" of materially changed circumstances "since the

9   prior bond redetermination."). And, even if Arellano had successfully challenged either

10  redetermination, that would not entitle him to *release*, but merely a new determination;

11  there is no jurisdiction for a District Court to impose specific bond decisions in that

12  process.[6] *See id.*

13      **C.    The Contractor Exclusion Bars Plaintiff's Claims Based on Arellano's**

14             **Care and Safekeeping at Adelanto by GEO and Wellpath.**

15         Plaintiff's SAC also attempts to assert tort claims based on the theory that the

16  United States failed to ensure that GEO was adequately managing COVID-19 risk at its

17  Adelanto facility. The SAC alleges in conclusory fashion that Arellano's care and

18  safekeeping of Arellano during detention were deficient because the United States did

19  not "follow all [unspecified] required protocols, policies, procedures and court-mandated

20  orders to adequately shield" Arellano from COVID-19. SAC ¶¶ 151(a) (negligence),

21  161(a) (NIED). Similarly, Plaintiff claims that the United States "did not take adequate

22

23  ─────────────────────

24  [6] "[T]he district court lack[s] jurisdiction to review the agency's denial of [Arellano's] release on bond based on its determination that [he] is a danger to the community." *Fraihat v. Barr*, 790 F. App'x 120, 121 (9th Cir. 2020) (relying on 8 U.S.C. § 1226(e)

25  and *Nielsen v. Preap*, 586 U.S. —, 139 S. Ct. 954, 962 (2019)); 8 U.S.C. § 1226 (e) ("The Attorney General's discretionary judgment regarding the application of [8 U.S.C.

26  § 1226] section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of

27  any alien or the grant, revocation, or denial of bond or parole."); *Kiniti v. Gonzales*, 2008 WL 2388019, at *3 (S.D. Cal. June 6, 2008) ("the decision to detain Petitioner pending

28  Ninth Circuit review was a discretionary decision made by the Attorney General, and thus this Court does not have jurisdiction to decide the merits of Petitioner's claim.").

1   steps to shield Mr. Vargas Arellano from contracting COVID-19." *Id.* ¶ 173 (IIED). He

2   further alleges that the facilities and care did not meet Arellano's unique medical needs

3   such that any detention would "plac[e] him at unreasonable risk of physical harm[.]" *Id.*

4   ¶¶ 151(c) (negligence), 161(c) (NIED), 174 (IIED). Recognizing that the Court already

5   found such claims are barred by the FTCA's contractor exclusion (Dkt. 67 at 13),

6   Plaintiff alleges that the United States "retained direct control at Adelanto … [over] the

7   level and degree of COVID-19 testing at the facility and the adequacy of social

8   distancing." *Id.* ¶ 146.[7]

9          Plaintiff's liability theory fails for multiple reasons.

10          ***First,*** the United States is not liable for the acts or omissions of a contractor or

11   sub-contractor, unless the United States controls and supervises "the detailed physical

12   performance and day to day operations of the contractor.'" *Autery v. United States*, 424

13   F.3d 944, 956 (9th Cir. 2005) (quoting *Hines v. United States*, 60 F.3d 1442, 1446 (9th

14   Cir. 1995), a*brogated on other grounds by United States v. Olson*, 546 U.S. 43 (2005));

15   28 U.S.C. § 2671. The central inquiry is the degree to which the United States controls

16   "'the primary activity contracted for and not for the peripheral, administrative acts

17   relating to such activity.'" *Carrillo v. United States*, 5 F.3d 1302, 1305 (9th Cir. 1993)

18   (quoting *Wood v. Standard Prod. Co.*, 671 F.2d 825, 832 (4th Cir. 1982)).

19          "The United States may 'fix specific and precise conditions to implement federal

20   objectives' without becoming liable for an independent contractor's negligence." *Autery*,

---

22   [7] Attempting to avoid the Court's holding that Plaintiff's care and safekeeping claims
23   "fail[] at the first step" of the *Edison* test (Dkt. 67 at 13), Plaintiff alleges that the
     "special relationship between jailer and prisoner …. applied … to jailers, *including*
     *private operators of prisons.*'" SAC ¶ 148 (emphasis in original). This does not impact
24   the Court's prior holding, however, because, as Plaintiff admits, "Adelanto is a *privately*
     *… operated* immigration detention center *operated by … GEO* …." *Id.* ¶ 2 (emphasis
25   added). Indeed, as explained in the United States' Reply in Support of Motion to Dismiss
     Plaintiff's FAC, the duty is delegable under California law and the special relationship is
26   formed between prisoner and the entity *actually* operating the facility such that "any
     special duty of care owed to Arellano was fully designated … to GEO." Dkt. 57 at 8-9;
27   *see also* SAC ¶ 149 (alleging that that duty of care applies to private contractors like
     GEO and citing to *Edison v. United States*, 822 F.3d 510, 522 n.7 (9th Cir. 2016)).

28

424 F.3d at 957 (quoting *United States v. Orleans*, 425 U.S. 807, 816 (1976)); *see also id.* at 957 ("Contractual provisions directing detailed performance generally do not abrogate the contractor exception."). Similarly, the authority to "'compel compliance with federal regulation does not change a contractor's personnel into federal employees,'" nor do "'[d]etailed regulations and inspections'" or "'standards that are designed to secure federal safety objectives.'" *Id.* (quoting *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987) and *Hines*, 60 F.3d at 1447). Rather, the United States may be liable only where it "direct[s] the actual *performance* of the contract" by supervising or directing "day-to-day operations." *Id.* (emphasis in original).

Here, the SAC fails to allege facts showing that the United States directed the actual performance of the contract by supervising the day-to-day operations. It simply alleges that the United States could do periodic inspections and reporting at the facility and had a right to enforce contractual compliance. That is not enough under the law.

***Second,*** Plaintiff's SAC fails to allege facts sufficient to establish that the United States breached a specific duty in this regard that caused Arellano injury. As discussed above, being able to compel compliance with a contract by enforcing its terms does not overcome the contractor exclusion. Similarly, being able to observe and report on a contract's performance is not enough. It does not constitute directing on a day-to-day basis how the contract is performed.

Indeed, while Plaintiff argues that the United States maintained some degree of control over testing and social distancing, before and when Arellano contracted COVID-19, Adelanto's testing and social distancing requirements were already controlled by the *Roman* Court's orders. In September 2020, the *Roman* "district court ordered ICE to begin weekly testing for COVID-19 for all detainees" (Dkt. 67 at 6) and ordered implementation of 6-foot social distancing requirements for Adelanto staff and detainees. *Roman v. Wolf*, 2020 WL 5797918, at *6 (C.D. Cal. Sept. 29, 2020). Later, in October 2020, the *Roman* district court issued a population reduction order (*see* Dkt. 67 at 6) and noted that "the most current order of the Court … requires weekly saturation COVD-19

testing for a period of 4 weeks followed by a re-assessment of the need for further saturation testing." *Roman* Dkt. 686 at 14. In October 2020, the *Roman* Court appointed a special master to "[m]onitor and enforce the Government's compliance with the Court's" orders. *See Roman* Dkt. 726. On November 18, 2020, the Special Master issued his first report in which he reported that the government had complied with the *Roman* Court's orders for social distancing and testing requirements. *Roman* Dkt. 818 at 2-5. Plaintiff's conclusory assertions that the government *could and should have done more* than the *Roman* Court had required in these respects does not identify a specific tort duty that the United States had under the FTCA, nor does it state facts showing that such a duty was violated by the United States in a manner that harmed Arellano.

Thus, the contractor exclusion bars Plaintiff's care and safekeeping claims against the United States, and Plaintiff's efforts to evade the Court's prior Order on this point are defective.

### D.   The Private Analog Requirement and the Misrepresentation Exception Bar Plaintiff's Claims Based on the United States' Alleged Failure to Communicate Arellano's Health Status.

Like the FAC, the SAC asserts claims against the United States based on its alleged failure to inform others about Arellano's health status. SAC ¶¶ 151(e), 161(e), 162, 175, 217. The Court previously dismissed Plaintiff's negligence claims in this regard because "Vargas fail[ed] to make [the requisite] showing" "[t]o establish subject matter jurisdiction under the FTCA … that 'a private individual under like circumstances would be liable under [California] state law.'" Dkt. 67 at 19-21 (quoting *United States v. Muniz*, 374 U.S. 150, 153 (1963) and relying on 28 U.S.C. § 1346(b)). Because the SAC still fails to identify the requisite private analog, such claims must again be dismissed.

Moreover, these claims against the United States are also barred by the misrepresentation exception to FTCA liability. The FTCA precludes claims against the United States "arising from misrepresentation [or] deceit." 28 U.S.C. § 2680(h). "The misrepresentation exception is broadly construed." *Frigard v. United States*, 862 F.2d

26

201, 202 (9th Cir. 1988). The exception applies to claims for both negligent and intentional misrepresentation. *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) ("The misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent, or intentional."); *United States v. Neustadt*, 366 U.S. 696, 702 (1961) ("2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation."). In the Ninth Circuit, the exception applies to misrepresentation or deceit claims that caused personal injuries. *See Abbey v. United States*, 2023 WL 218960, at *4 (N.D. Cal. Jan. 17, 2023) (intentional and negligent infliction of emotional distress, and wrongful death); *Andrade v. United States*, 845 F. App'x. 594, at *2 (9th Cir. 2021) (emotional distress).

In addition, the misrepresentation exception "covers both acts of affirmative misrepresentation and failure to warn." *Doe v. Holy See*, 557 F.3d at 1084 n.10. Thus, it bars claims based on either the misrepresentation or omission of information. *See Lawrence*, 340 F.3d at 958 (affirming dismissal of "claim … based on [government employees'] alleged failure to communicate certain information" because "the misrepresentation exception applied, and Plaintiff's FTCA claim is barred."); *Abbey*, 2023 WL 218960, at *2–*4 (N.D. Cal. Jan. 17, 2023) ("misrepresentation exception" barred claims where "[m]isrepresentation [wa]s at the heart of all of the claims" and "[t]he same holds for omissions" because "[a] 'negligent failure to inform,' namely an omission, 'is misrepresentation within the meaning of 28 U.S.C. § 2680(h)'") (quoting *City and Cnty. of San Francisco v. United States*, 615 F.2d 498, 505 (9th Cir. 1980)); *James & Elizabeth Console Fam. v. United States*, 2023 WL 6120609, at *5 (S.D. Cal. Sept. 18, 2023) (dismissing FTCA claims for "the tort of misrepresentation by omission" for "lack[ of] jurisdiction under 28 U.S.C. § 2680(h).")); *Dumais v. United States*, 2023 WL 5237904, at *5 (D.N.H. Aug. 15, 2023) ("Claims … that depend upon reliance on a government communication or non-communication are precisely what the misrepresentation exception prohibits.").

"The test in applying the misrepresentation exception is whether the essence of the

1  claim involves the government's failure to use due care in obtaining and communicating

2  information." *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1264 (11th

3  Cir. 2000). To determine whether the essence of a claim is for misrepresentation, the

4  Court focuses on "'the conduct upon which the claim is based,'" not the plaintiff's

5  characterization. *Pauly v. U.S. Dept. of Agr.*, 348 F.3d 1143, 1151 (9th Cir. 2003)

6  (quoting *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir.1996)); *see also Kim v.*

7  *United States*, 940 F.3d 484, 492-93 (9th Cir. 2019) (plaintiffs' claim was for

8  misrepresentation, not negligence, because the claim arose from alleged

9  misrepresentation about the safety of the campsite); *Mt. Homes v. United States*, 912

10  F.2d 352, 356 (9th Cir. 1990) (claim was barred under § 2680(h) because plaintiff's

11  injuries were based on faulty information in documents, not their negligent preparation).

12      Here, Plaintiff's asserts claims against the United States based on an alleged

13  failure to notify others regarding the severity of Arellano's condition, "illness, transfer to

14  hospital, … brain death" and "death …." SAC ¶¶ 151(e) (negligence), 161(e), 162

15  (NIED), 175 (IIED), 217 (wrongful death). These claims are thus barred by the

16  misrepresentation exception because "'the conduct upon which [each] claim is based'" is

17  alleged misrepresentation, deceit, and/or omission. *See Pauly*, 348 F.3d at 1151 (quoting

18  *Sabow*, 93 F.3d at 1456). Plaintiff expressly alleges the United States "actively" or

19  "intentionally conceal[ed]" information regarding Arellano's "illness," "condition and

20  death" as a basis for his NIED, IIED, and wrongful death claims. SAC ¶¶ 162, 175, 217.

21  Likewise, Plaintiff alleges the United States omitted information regarding Arellano's

22  "illness, transfer to hospital, and brain death" as a basis for his negligence and NIED

23  claims. SAC ¶¶ 151(e), 161(e). Accordingly, because "[b]y [Plaintiff's] own account, the

24  alleged misrepresentations [and omissions] are 'within the chain of causative events

25  upon which plaintiff['s] claim is founded'" they are "barred by the FTCA's

26  misrepresentation exception" and must be dismissed for lack of jurisdiction. *Esquivel v.*

27  *United States*, 21 F.4th 565, 578 (9th Cir. 2021) (quoting *Leaf v. United States*, 661 F.2d

28  740, 742 (9th Cir. 1981)); *id.* at 577 (affirming dismissal of "FTCA claims … grounded

in allegations that [a government employee] lied to [Plaintiff]"); *Abbey*, 2023 WL 218960, at *4 (N.D. Cal. Jan. 17, 2023) (dismissing "SAC *in toto*" for lack of jurisdiction pursuant to misrepresentation exception because "the SAC underscores the centrality of the government's ostensible misrepresentations and omissions to plaintiffs' claims").

**E.    Plaintiff's Wrongful Death Claim Must Be Dismissed Because It Is Derivative of His Other Failed Tort Theories.**

The Court previously held that Plaintiff's wrongful death claim in his FAC failed because it was derivative of his other defective claims. Dkt. 67 at 23. Because the SAC's claims against the United States fail again, as set forth above, Plaintiff's derivative wrongful death claim must also be dismissed again.

**IV.    CONCLUSION**

The United States respectfully requests that the Court dismiss the SAC's claims against the United States without leave to amend.

Dated: May 29, 2024            Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section


_/s/ Shaina C. St John_
SHAINA C. ST JOHN
Assistant United States Attorney

Attorneys for Defendant
the United States of America

**Certificate of Compliance under L.R. 11-6.2**

The undersigned, counsel of record for Defendant the United States of America certifies that this brief contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

29