1  Stacy Tolchin
2  *Email: Stacy@Tolchinimmigration.com*
   Megan Brewer
3  *Email: Megan@Tolchinimmigration.com*
   Law Offices of Stacy Tolchin
4  776 E. Green St., Suite 210
5  Pasadena, CA 91101
   Telephone: (213) 622-7450
6  Facsimile: (213) 622-7233
7
8  (*continued on next page*)

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 Martin VARGAS, individually and       | Case No. 5:23-cv-00380-JWH-SP
13 as Successor in Interest of the Estate |
14 of Martin Vargas Arellano,             | **PLAINTIFF'S OPPOSITION TO**
15          Plaintiff,                     | **DEFENDANT USA'S MOTION TO**
16                                         | **DISMISS SECOND AMENDED**
17        v.                               | **COMPLAINT**
18 UNITED STATES OF AMERICA; THE
   GEO GROUP; and WELLPATH, LLC.         | **[Unredacted Pages Filed Concurrently**
19                                         | **Under Seal]**
20          Defendants.                    |
21                                         | Hearing Date: May 10, 2024
22                                         | Hearing Time: 9:00 a.m.
23                                         | Ctrm: 9D
24
25                                         | Hon. John W. Holcomb
26                                         | United States District Judge
27
28

Khaled Alrabe (CA SBN #349899)
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
National Immigration Project of the National Lawyers Guild (NIPNLG)
1200 18th Street NW, Suite 700
Washington, DC 20036
Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq (CA SBN #224140)
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

2

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION ...................................................................................7

3

II.   RELEVANT FACTS ..............................................................................9

4

III.  ARGUMENT .........................................................................................9

5

    A.   The Government is Not Shielded from Liability By the Contractor

6

        Exception for Failing to Protect Arellano from COVID-19 or
        Providing Adequate Facilities and Care Because It Did Not Entirely

7

        Delegate its Duty of Care ..............................................................9

8

        1.   Edison's Step-One: California Law Imposes a Duty of Care on
            Private Individuals in the Government's Position ...........................10

9

        2.   Edison's Step-Two: the Government Retained Key Aspects of

10

            its Duty Through the Applicable Contracts and its Actions .............12

11

    B.   The Discretionary Function Exception Does Not Apply to Plaintiff's
        Negligence and NIED Claims Premised on the Government's Failure

12

        to Adhere to Its Own Mandatory Oversight Procedures ...........................16

13

    C.   Plaintiff's False Imprisonment Claim Should Not Be Dismissed
        Because Defendant Failed to Follow the Law When Refusing His

14

        Release ........................................................................................18

15

        1.   Arellano's Detention Was Without Lawful Privilege Because
            ICE Erroneously Believed it Did Not Have Authority to

16

            Release Him ................................................................................19

17

        2.   The Discretionary Function Exception Does Not Apply to the
            October 2020 Denial of Release ..........................................20

18

    D.   Plaintiff's Claims Based on Failure to Communicate Satisfy the

19

        Private Analog Requirement and Fall Outside the Misrepresentation
        Exception .....................................................................................23

20

    E.   Plaintiff's Wrongful Death Claim Should Not Be Dismissed ...................27

21

IV.   CONCLUSION ....................................................................................27

22

23

24

25

26

27

28

3

1
2

# TABLE OF AUTHORITIES

3

## **FEDERAL CASES**

4

*Aeros Aeronautical Sys. Corp. v. United States*, No. CV151712PSGPJWX,
  2015WL13638318 (C.D.Cal. Nov. 24, 2015) ........................................26

5
6

*Berkovitz v. United States*, 486 U.S. 531 (1988) ..................................16

7

*Block v. Neal*, 460 U.S. 289 (1983) ...................................................26

8

*Edison v. United States*, 822 F.3d 510 (9th Cir. 2016). ......................... passim

9

*Est. of Duran v. Chavez*, No. 2:14-02048-TLN-CKD, 2015WL8011685, (E.D.C
  al. Dec. 7, 2015) .....................................................................23, 24

10
11

*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ......................23

12

*Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020),
  *rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021)........................20, 21

13
14

*Franco-Gonzalez v. Holder*, No. 10-cv-02211 DMG (DTBX), 2013 WL 8115423
  (C.D.Cal. Apr. 23, 2013) ........................................................... 19

15

*Green v. United States*, 629 F.2d 581 (9th Cir. 1980) ..........................27

16

*Harvey v. United States*, No. 14 Civ. 1787 (PAC), 2017 WL 2954399 (S.D.N.Y.
  July 10, 2017) ......................................................................13

17

*Hinshaw v. United States*, 264 F. Supp. 3d 1026 (D.Ariz. 2017)...................27

18

*Jennings v. Rodriguez*, 583 U.S. 281 (2018). ...................................19

19
20

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208 (9th Cir.
  2001) ..................................................................................18

21

*Miller v. United States*, 992 F.3d 878, (9th Cir. 2021) .....................17, 21, 22

22

*Minneci v. Pollard*, 565 U.S. 118 (2012) ...........................................11

23

*Mt. Homes, Inc. v. United States*, 912 F.2d 352 (9th Cir. 1990). ...............27

24

*Mundy v. United States*, 983 F.2d 950 (9th Cir. 1993). ........................26

25

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) ..........................17

26

*Renteria v. United States*, 452 F. Supp.2d 910 (D. Ariz. 2006) ...............26

27

*Rhoden v. United States*, 55 F.3d 428 (9th Cir. 1995)..........................22

28

*Rodriguez v. Holder,* 2:07-cv-03239-TJH-RNB (C.D.Cal. Aug. 6, 2013)......................19

*Roman v. Wolf*, No. EDCV2000768TJHPVCX, 2020 WL 5797918 (C.D. Cal. Sept. 29, 2020), *aff'd in part, vacated in part, remanded*, 977 F.3d 935 (9th Cir. 2020)................................................................................................12, 14

*Singh v. Holder*, 771 F.3d 647 (9th Cir. 2014). ...........................................19, 20

*Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152 (9th Cir.), *opinion amended on reh'g sub nom. Snyder & Assocs. Aquisitions LLC v. United States*, 868 F.3d 1048 (9th Cir. 2017)...........................................26

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007) ...................................22

*Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008)..............................23

*United States v. Goubert*, 499 U.S. 315 (1991) .............................................17

*United States v. Olson*, 546 U.S. 43 (2005)...................................................23

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) ............23

*Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992)...............23

*Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005)............................18

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) ............................................24

*Young v. United States*, 769 F.3d 1047 (9th Cir. 2014).................................21

**STATE CASES**

*Aguirre-Alvarez v. Regents of Univ. of California*, 67 Cal. App. 4th 1058 (1998).........24

*Davila v. County of Los Angeles*, 50 Cal. App. 4th 137 (1996) .......................................24

*Giraldo v. Dep't of Corr. & Rehab.,* 168 Cal. App. 4th 231 (2008).........................10, 11

*Golick v. State of California*, 82 Cal. App. 5th 1127 (2022)............................................11

*Tarasoff v. Regents of University of California*, 17 Cal. 3d 425 (1976).........................12

**STATUTES**

28 U.S.C. §2674..............................................................................................23

28 U.S.C. §2680(h).....................................................................................26, 27

8 U.S.C. §1226(c) ............................................................................... passim

5

8 U.S.C. §1226(e) ...............................................................................................20

California Government Code §27471 ............................................................24, 25

California Health and Safety Code (CA H&S) §§7104..............................24, 25

California Health and Safety Code §1418.8(c)..................................................25

California Penal Code §5022.........................................................................24, 25

California Probate Code §4712 ...........................................................................25

Civ. Code, §1714 ................................................................................................12

**REGULATIONS**

California Code of Regulations Title 15 §3999.417(f)................................24, 25

**FEDERAL RULES**

Fed. R. Civ. P. 12 (b)(1) ....................................................................................15

Fed. R. Civ. P. 12 (b)(6) ......................................................................................8

Fed. R. Civ. P. 23(b)(2) ......................................................................................22

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.     INTRODUCTION

3     Plaintiff's father, Martin Vargas Arellano ("Arellano"), suffered a tragic and

4 avoidable death after contracting COVID-19 in U.S. Immigration and Customs

5 Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto") due

6 to repeated failings by Defendant USA ("Defendant"). Defendant was aware Arellano

7 was at high risk of serious illness and death if he were to contract COVID-19 due to his

8 age and multiple chronic conditions including liver disease, cellulitis, diabetes, high

9 blood pressure, and severe psychiatric illness.

10     ICE failed in its duty to adequately protect Arellano from COVID-19, failed to

11 follow custody redetermination mandates when it refused his release on October 29,

12 2020, and actively concealed Arellano's grave medical condition and subsequent death

13 from his legal representative and family. Plaintiff brings negligence, negligent infliction

14 of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"),

15 false imprisonment, and wrongful death claims under the Federal Tort Claims Act

16 ("FTCA") against Defendant. SAC ¶¶139-187.

17     Defendant is wrong that Plaintiff's claims are jurisdictionally barred by the FTCA

18 and are not adequately pled.

19     *First*, the FTCA's independent contractor bar is inapplicable to Plaintiff's

20 negligence, NIED, and IIED claims based on Defendant's failure to adequately shield

21 Arellano from COVID-19.[1] Plaintiff challenges ICE's own actions – not the independent

22 contractors' – that violate binding directives and constitute torts for which there are

23 several private analogs under California law. ICE failed to exercise duties not delegated

24

25

_____

26     [1] Defendant no longer challenges these claims, SAC ¶¶151(c), 161(c), 174, under
the discretionary function exception. The Court already rejected this argument. *See* ECF

27 #67, at 15-18.

28

7

to Co-Defendant GEO, including ensuring an adequate level of COVID-19 testing and social distancing at the facility and implementing mandatory oversight procedures with respect to applicable COVID-19 related detention standards.

*Second*, the discretionary function exception under the FTCA does not apply to Plaintiff's negligence and NIED claims based on Defendant's failure to implement oversight procedures mandated by Defendant's own COVID-19 policies. Plaintiff is not challenging the *adequacy* of Defendant's oversight or supervision of Co-Defendant GEO, but rather ICE actions that violate legal mandates the agency has no discretion to disregard.

*Third*, the discretionary function exception does not bar Plaintiff's false imprisonment claims. Defendant's refusal to release Arellano under the belief that he was subject to mandatory detention, 8 U.S.C. §1226(c), rendered Arellano's detention to be without lawful privilege. Further, Defendant's October 29, 2020 denial of release under *Fraihat* violated legally mandated release procedures. The government has no discretion to violate legal mandates.

*Finally*, Plaintiff's claims regarding Defendant's failure to communicate about Arellano's transfer to the hospital, grave medical condition, and death satisfy the FTCA's private analog requirement because California law imposes liability on private individuals for claims under like circumstances.[2] Moreover, Plaintiff's claims are not barred by the misrepresentation exception to FTCA liability as the essence of Plaintiff's negligence, NIED, IIED, and wrongful death claims concern the circumstances leading to Arellano's death and not any misrepresentation by Defendant. The misrepresentation exception is also inapplicable because the injury he suffered is not commercial.

As such, Defendant's Motion to Dismiss must be denied.

---

[2] Defendant no longer asserts a 12(b)(6) failure to state a claim challenge to this claim.

1

## II.   RELEVANT FACTS

The Court stated the relevant facts related to Arellano's immigration history, ICE's response to the COVID-19 pandemic, the *Roman* and *Fraihat* court orders, Arellano's contraction of COVID-19, his continued detention, and subsequent illness and death in its February 21, 2024 order on Defendant's First Motion to Dismiss. ECF #67, at 2-8. Plaintiff adopts those facts here, and cites additional relevant facts set forth in the SAC, and attached to the concurrently filed declaration of Khaled Alrabe ("Alrabe Decl.").

## III.   ARGUMENT

The Court sets forth the applicable standards for Defendant's motion to dismiss and Plaintiff's opposition in its February 21, 2024 Order. ECF #67, at 9-11.

### A.   The Government is Not Shielded from Liability By the Contractor Exception for Failing to Protect Arellano from COVID-19 or Providing Adequate Facilities and Care Because It Did Not Entirely Delegate its Duty of Care

Despite the Court's finding that Plaintiff is not seeking to hold the Government vicariously liable for acts and omissions of its contractors, *see* ECF #67 at 12 n.54, Defendant again erroneously characterizes Plaintiff's negligence, NIED, and IIED claims as vicarious liability claims under the contractor exception. *See* ECF #80 at 24. Plaintiff's allegations concern ICE's *own* failures to exercise duties not delegated to its contractor, including the level, degree and frequency of COVID-19 testing at the facility, the adequacy of efforts to ensure appropriate social distancing, and its own requirement to implement procedures to ensure contractor compliance with COVID-19 precautions. *See* SAC ¶¶145-6.

The Court explained that the Ninth Circuit's three-step inquiry under *Edison v. United States* is the relevant analysis. *See* ECF #67, at 12. First, a court must look to whether state law imposes a duty of care on a private individual in a similar situation. *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016). Second, where such a duty

exists, the court must conduct a fact-specific inquiry into the contract and the parties' actions to determine if the government retained any portion of this duty. *Id*. "[O]nly upon a finding that the government delegated its *entire* duty of care may the court dismiss the claim for lack of jurisdiction. *Id*. at 518 (emphasis in original). Third, "even if it appears that the government delegated all of its duties to the independent contractor, [the court must] ask whether California law imposed any nondelegable duties on the government."[3] *Id*.

This Court held Plaintiff failed at step one, because he did not address whether California law would impose the relevant duty of care on private persons and Plaintiff did "not direct the Court's attention to any analogy here." ECF #67, at 23–24. Plaintiff amended the complaint to directly address the Court's concerns. SAC ¶¶147-151.

> *1.* <u>Edison's Step-One: California Law Imposes a Duty of Care on Private Individuals in the Government's Position</u>

Plaintiff's SAC raises two duties of care under California law applicable to private individuals similarly situated to the Government here.

First, California recognizes a "special relationship" between jailer and prisoner requiring jailers to protect prisoners against "unreasonable risk of physical harm." *Giraldo v. Dep't of Corr. & Rehab.,* 168 Cal. App. 4th 231 (2008). This duty is premised on the principle that "prisoners are vulnerable" and are "deprived of the normal opportunity to protect [themselves] from harm inflicted by others." *Id*. 250-51. The Ninth Circuit has recognized that in the context of FTCA claims against private detention facilities, this special duty extends not just to protection against acts by others, but to detention conditions, such as environmental hazards. *See Edison*, 822 F.3d at 521–22.

Significantly, as Plaintiff notes in the SAC, ¶148, the Supreme Court has

---

[3] The Court need not reach this third prong because Defendant does not contest that it did not delegate the entirety of its duty and maintained an active decision-making role on Adelanto health issues. In any case, Plaintiff does not raise *nondelegable* duties.

recognized that California law applies this duty of care not just to the government, but specifically to private individuals, like private detention facility operators. *See Minneci v. Pollard*, 565 U.S. 118, 128 (2012)("California courts have specifically applied [this special duty] to jailers, *including private operators of prisons*.")(emphasis added).[4] In *Edison*, the Ninth Circuit imposed this special duty on the government in an FTCA case involving the outbreak of an infectious disease at a GEO-operated facility. *Edison*, 822 F.3d at 523. The Court held that the plaintiff-prisoners' claims against the government's failure to protect them from the outbreak violated the *government's* duty of care as a jailer in that GEO operated facility.[5] *Id*. This is the case here.

    Second, and independently, California's standard duty of care under tort law also applies here. It recognizes that "[a]s a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'" *Golick v. State of California*, 82 Cal. App. 5th 1127, 1138 (2022)(quoting *Tarasoff v. Regents of University of California*, 17

---

    [4] Defendant acknowledges this addition to the SAC but does not challenge it under step one of *Edison*. ECF #80 at 24 n.7. Rather, Defendant merely asserts that this should not change the Court's order because this duty was delegated to the contractor. *Id*. Whether the duty was delegated is a question under step two of *Edison* that this court has not yet addressed.

    [5] *Edison* looked to two independent duties of care with respect to this claim, the government as a landowner and the government as a jailer, and held that under California law both duties impose independent obligations on the government to protect vulnerable prisoners from disease. *Edison*, 822 F.3d at 523 ("the [government] had a duty, as a landowner *and jailer*, to protect vulnerable prisoners in its charge from foreseeable harm, because prisoners unable to control the particulars of their daily lives are 'deprived of the normal opportunity to protect [themselves] from harm'")(quoting *Giraldo*, 168 Cal. App. 4th at 250 )(emphasis added).

Cal. 3d 425, 434–435 (1976). *See also* Civ. Code §1714. *See* SAC ¶150.

2. *Edison's Step-Two: the Government Retained Key Aspects of its Duty Through the Applicable Contracts and its Actions*

Once a duty of care is established, a court must then "look to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable." *Edison*, 822 F.3d at 519. In *Edison*, the court found that while the United States had delegated by contract the general duty to oversee healthcare to GEO, "it's actions make clear that it chose to retain" specific duties related to prevention and treatment of the outbreak. *Id*. at 523. Specifically, where the United States exercises unilateral control over actions or where the contract with the private detention operator does not delegate control, the government retains its duty of care with respect to those matters. *Id*. Here, as in *Edison*, the government retained several duties relevant to Plaintiff's claims.

First, ICE's actions during the Adelanto COVID-19 outbreak demonstrate that it retained key duties related to shielding Arellano from the virus and ensuring the facility's adequacy for individuals at high-risk of death. In May 2020, after GEO informed ICE's Assistant Field Office Director, Gabriel Valdez, that Adelanto was ready to conduct universal COVID-19 testing, "Valdez *ordered the GEO Group* to not conduct the universal testing of detainees." *Roman v. Wolf*, No. EDCV2000768TJHPVCX, 2020 WL 5797918, at *2 (C.D. Cal. Sept. 29, 2020), *aff'd in part, vacated in part, remanded*, 977 F.3d 935 (9th Cir. 2020)(emphasis added). Additionally, in the *Roman* litigation, Valdez attested "that he was *the only person* involved in determining" the number of detained people who could be safely held at Adelanto. *Id.*, at *4 (emphasis added); SAC ¶43. In both situations, as in *Edison*, "although the United States delegated the general duty to oversee healthcare at [the facility] to GEO/MTC, its actions make clear that it chose to retain the specific duty" to ensure adequate COVID-19 precautions at Adelanto such as testing and social distancing. *Edison*, 822 F.3d at 523.

Second, ICE has a direct and undelegated duty under the detention contract to

12

adhere to its own monitoring and compliance policies and procedures. *See* SAC ¶64 (ICE is responsible for monitoring, assessing, recording, and reporting on the technical performance, including compliance with the PBNDS standards, of GEO on a day-to-day basis; the contract requires the Field Medical Coordinator to ensure medical care at the facility meets detention standards; the COVID-19 PRRs established compliance measures requiring ICE to conduct bi-weekly spot checks at ICE detention facilities like Adelanto and issue Contract Discrepancy Reports (CDRs) for noncompliance at dedicated ICE detention facilities governed by a Quality Assurance Surveillance Plan, such as Adelanto.) Plaintiff alleges that ICE simply did not adhere to its own duties here, such as conducting bi-weekly spot checks. *See* SAC ¶65.

While GEO and Wellpath staff also harmed Plaintiff, his FTCA claims directly concern only ICE's *own* failures to exercise its undelegated duties towards Arellano and its duty to adhere to its own compliance measures to oversee contractors. *See Harvey v. United States*, No. 14 Civ. 1787 (PAC), 2017 WL 2954399, at *6 (S.D.N.Y. July 10, 2017)("[T]he independent contractor exception…does not permit federal employees to abdicate their responsibility for undelegated duties. Federal ICE agents owed Harvey a duty of care separate from any duty OCCF owed Harvey. Thus, any negligence in their conduct is covered by the FTCA."). Defendant has not demonstrated that it "delegated its *entire* duty of care" to its contractors and it therefore has not met the *Edison* standard. 822 F.3d at 518 (emphasis in original).

Defendant's motion raises only two objections. First, Defendant repeats that the United States is not liable for the actions of its contractors. ECF #80, at 24-25. As described above, and as this Court recognized, Plaintiff is not seeking to hold the United States vicariously accountable for the acts of GEO, but for its own conduct. ECF #67, at 12 n.54.

Second, unable to squarely address Plaintiff's allegations that ICE's own egregious conduct led to the COVID-19 outbreak at the facility, Defendant argues that

by the time Arellano contracted COVID-19, the Adelanto facility was already in compliance with the *Roman* court's social distancing and saturation testing requirements. ECF #80, at 25. This argument fails for several reasons.

First, even assuming *arguendo* that Defendant was in compliance with the *Roman* court's orders by on or about November 29, 2020, when USA contends Arellano contracted COVID-19, SAC ¶110, this does not absolve ICE of its failures that caused the outbreak that resulted in Mr. Arellano's infection. Plaintiff's allegations about how Arellano contracted COVID-19 are specifically tied to the persistent outbreak that began in September, was caused by ICE's direct actions, and that ICE failed to contain until at least after Arellano tested positive for COVID-19 on or about December 10, 2020. *Id*. ¶117. Among ICE's actions contributing to this persistent outbreak were its unilateral decision to bar universal COVID-19 testing at the facility between May and late September 2020, and its failure to impose adequate testing and social distancing measures for at least several months thereafter. *See*, SAC ¶¶13, 43-44. ██████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████ In fact, it was the severity of this outbreak that prompted the *Roman* court to issue the precautions it did in late September. *See Roman*, 2020 WL 5797918, at *6. When it was clear ICE's response to the outbreak remained deficient, on December 3, 2020 the Roman court order ICE to explain why it had failed to initiate saturation testing of all Adelanto detainees. SAC ¶106.

Second, contrary to Defendant's assertion, in the *Roman* litigation, it was the *government* and not GEO that was responsible for conditions at the facility with respect to COVID-19. GEO was not a defendant in the *Roman* case, and that court denied GEO's motion to intervene and motion to modify the preliminary injunction. *See Roman*, Dkt.#1207. The government retained significant duties related to COVID-19 prevention

1   and mitigation because it was the party charged with complying with the *Roman* order.

2       Third, whether Defendant complied with the *Roman* court's testing and social

3   distancing mandates at the time Arellano contracted COVID-19 is a disputed factual

4   issue, making it an inappropriate basis for dismissal. *See Edison*, 822 F.3d at 517(noting

5   that in evaluating a Rule 12(b)(1) factual attack, "any factual disputes [] must be

6   resolved in favor of Plaintiffs."). ████████████████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   There is also evidence that USA knew the Adelanto facility was not complying with

10  testing and social distancing mandates, including at least one instance involving Arellano

11  himself. *See* SAC ¶¶106, 114. Despite this evidence, Defendant is now factually

12  disputing whether ICE's actions proximately caused Arellano's COVID-19 infection,

13  which makes dismissal at this stage inappropriate.

14      Fourth, despite Defendant's claims, it does not appear that the Government was in

15  compliance with the *Roman* court's orders after the September 29, 2020 Order, the

16  October 15, 2020 Order, or even the alleged November 18, 2020 Special Master Report.[6]

17  On December 3, 2020, around the time Arellano contracted COVID-19, the Court in

18  *Roman* issued an order requiring the Government to "file a status report by Noon on

19  December 4, 2020, explaining why it has not yet initiated saturation testing of all

20  detainees and staff members at Adelanto, and why the Court should not order the

21  immediate testing of all Adelanto detainees and staff members for COVID-19." *See*

22  *Roman*, Dkt. #846; SAC ¶107.

23      In sum, the contractor exception does not apply because Defendant's *own* conduct

24

25      [6] Defendant cites to a November 18, 2020 Special Master Report from the *Roman*
26  docket, Dkt. 818, ECF #80, at 25. This Report is subject to the *Roman* court's protective
    order, and as such Plaintiff has no way of accessing it. Defendant also has not submitted
27  it to the Court or Plaintiff in connection with the instant motion.

28

over matters undelegated to contractors breached both the jailer's special duty and the standard duty of care by placing Arellano at an unreasonable risk of physical harm and by engaging in foreseeable and unreasonably dangerous conduct. *See*, *e.g.*, SAC ¶43–44, 105-107, 114 (referencing the government's arbitrary blocking of universal COVID-19 testing at Adelanto for months; the government's callous disregard for the reasonable safety of detainees through a determination that detained people could maintain sufficient social distancing based on the unscientific opinion of a single non-expert ICE officer; the government's continued failure to test all detainees – including Arellano – and staff at the required intervals at Adelanto in violation of the *Roman* court's order; documented instances in which Defendant was aware Mr. Arellano was not social distancing relative to other detainees, including just before he contracted COVID-19).

### B. The Discretionary Function Exception Does Not Apply to Plaintiff's Negligence and NIED Claims Premised on the Government's Failure to Adhere to Its Own Mandatory Oversight Procedures

The Court held that Plaintiff's FAC claims based on the government's failure to "properly oversee facilities and staff" fall squarely within the discretionary function exception.[7] ECF #67 at 14. Accordingly, Plaintiff amended the complaint to focus not on the propriety of the government's oversight or supervision but rather on the government's failure to follow its own mandatory policies related to oversight. *See* SAC ¶¶151(d),161(d).

As this Court has explained, the application of the discretionary function exception is a two-step inquiry. ECF #67, at 14. First, courts must ask whether the challenged conduct involved "an element of judgement or choice." *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). Second, "if the conduct involves some element of choice, then the Court must evaluate whether the conduct implements social, economic,

---

[7] This Court has held that the discretionary function exception is not applicable to Plaintiff's negligence and NIED claims tied to the government's failure to provide medically sufficient facilities and care to Arellano, ECF #67, at 15-18, which  Defendant does not dispute.

or political policy considerations." ECF #67, at 14.

When an agency violates its own mandatory policies, there is no judgment or choice as a matter of law, ending the inquiry at step one. *Miller v. United States*, 992 F.3d 878, 885–86 (9th Cir. 2021). Where "an applicable federal statute, regulation, or policy specifically prescribes a course of action,' then the 'requirement of judgment or choice is not satisfied,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *United States v. Goubert*, 499 U.S. 315, 332 (1991)). In other words, "governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).

In this case, ICE did not comply with its own regulations mandating COVID-19-specific compliance measures that the agency itself, not the contractor, must implement. *See* SAC ¶64-65. For example, beginning on July 28, 2020, the COVID-19 PRR (Version 3.0) mandated "to ensure that detention facilities comply with the detention requirements set forth in the ERO PRR, ICE *will* conduct bi-weekly spot checks[8] at over 72-hour ICE detention facilities during the COVID-19 pandemic." Alrabe Decl., Exh. F, at 99 (emphasis added). The policy required ICE to issue a Contract Discrepancy Report (CDR) for facilities operating under a Quality Assurance Surveillance Plan, such as Adelanto, that are not in compliance with the PRR. *Id*. This exact policy was renewed in PRR Version 4.0 issued on September 4, 2020. Alrabe Decl., Exh. E, at 70. It was renewed in PRR Version 5.0 on October 27, 2020, on a monthly rather than a bi-weekly basis. Alrabe Decl., Exh. D, at 35.

ICE did not comply with its mandatory duty under the PRRs to conduct bi-weekly

---

[8] According to Version 5.0 of the PRR, "A spot check is an in-person visit to a detention facility by an ICE Detention Service Manager (DSM) or Detention Standards Compliance Officer (DSCO) for the purpose of assessing whether the facility is complying with the requirements of the ERO PRR. DSMs and DSCOs review policies, logs and records; observe facility operations; speak with facility staff and detainees; and complete a standardized form to note observations and findings." Alrabe Decl., Exh. D, at 35.

or monthly spot checks in Adelanto.[9] *See* SAC ¶64-65. This was the primary method the government took upon itself to ensure compliance with the PRR. The Ninth Circuit has "generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)(emphasis in original). Plaintiff here is not challenging the PRR or the efficacy of this compliance mechanism but rather the government's non-compliance with the policy. "The Government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected policy decisions." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001).

Contrary to Defendant's argument that Plaintiff failed to plausibly allege how these violations harmed Arellano, the SAC makes clear that the contractors were in violation of the PRR at the time of the outbreak. *See*, *e.g.*, SAC ¶¶25, 60, 65, 108 (referencing the PRR requirement to screen all detention facility and staff for temperature and COVID-19 symptoms, PRR requirement to conduct twice daily temperature and verbal screenings for high-risk detainees, and contractors' failure to comply with these standards). Had ICE conducted the mandated spot checks, it would have been required to issue a CDR for failure to comply with the PRR, which could have redressed these violations. Alrabe Decl., Exh. F, at 99.

### C. Plaintiff's False Imprisonment Claim Should Not Be Dismissed Because Defendant Failed to Follow the Law When Refusing His Release

The Court has rejected Defendant's argument that ICE did not have the authority to release Arellano due to the mandatory custody provision at 8 U.S.C. §1226(c). ECF #67, at 18-19. The Court noted that regardless of whether Arellano was subject to §1226(c), there was still authority to release him under *Fraihat. Id.* In response,

---

[9] Plaintiff has specifically requested evidence of spot-checks in compliance with the PRR from Defendant USA and from Defendant GEO in discovery. No defendant has produced those documents.

18

Defendant attempts to reframe its position, asserting Plaintiff has not alleged any legal violations and the FTCA's discretionary function applies. ECF #80 at 17, 22.

As discussed below, while release in general may be discretionary in certain circumstances, the discretionary function exception is inapplicable where a legal mandate is violated. Defendant violated legal mandates when it erroneously believed it lacked authority to release Arellano based on §1226(c), and when it violated *Fraihat*'s mandatory procedures.

       1.    <u>*Arellano's Detention Was Without Lawful Privilege Because ICE*</u>
<u>*Erroneously Believed it Did Not Have Authority to Release Him*</u>

In response to the Court's denial of Defendant's Motion to Dismiss the FAC on the grounds that ICE lacked legal authority to release Arellano due to §1226(c), Defendant abandons this argument. However, because Defendant's denial of Arellano's request for *Fraihat* release on October 29, 2020 was based on this legal error, SAC ¶183; Alrabe Decl., Exh. B at 10; Exh. C at 25. That alone renders Arellano's detention without lawful privilege such that the Court should not dismiss Plaintiff's false imprisonment claim. *Singh v. Holder*, 771 F.3d 647, 653 (9th Cir. 2014).

Defendant pivots to the irrelevant argument that Plaintiff has failed to show unlawful detention because he has failed to identify any violation of *Rodriguez v. Holder,* 2:07-cv-03239-TJH-RNB (C.D.Cal. Aug. 6, 2013) or *Franco-Gonzalez v. Holder,* No. 10-cv-02211 DMG (DTBX), 2013 WL 8115423 (C.D.Cal. Apr. 23, 2013). ECF #80, at 22. While those decisions require a bond hearing before an immigration judge as a remedy, Plaintiff does not rely on those cases for relief here. Rather, he relies on those cases because they establish that §1226(c) was not the applicable statute of detention after 180 days of confinement, rendering the refusal to release Arellano based on §1226(c) unlawful at that time. *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018).

Further, as the Court noted in its February 21, 2024 order, *Fraihat* provided for release *regardless* of whether §1226(c) applied. ECF #67, at 18-19.) Hence, even if Arellano was subject to §1226(c) he was imprisoned without lawful privilege.

Moreover, *Fraihat* did not require a bond hearing before an immigration judge. It required ICE to make its own independent determination of release. *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021). Hence, it is irrelevant that Arellano had bond hearings. ECF #80, at 22.[10] Plaintiff maintains it is the October 2020 *Fraihat* refusal that rendered his detention to be without lawful privilege.

An agency's erroneous belief that it lacks authority to make a determination renders the determination unlawful. For instance, in *Singh*, the Ninth Circuit addressed a removal case where the Board of Immigration Appeals held that it lacked authority to *sua sponte* reopen a removal order. 771 F.3d at 653. The government argued the error was harmless because the ultimate decision to reopen was within its discretionary authority. However, the court nevertheless found that the decision was unlawful because the jurisdictional decision was erroneous, even if the underlying decision was discretionary. *Id.* at 653. This same reasoning applies. By refusing to consider release based on their erroneous classification of Arellano under §1226(c), ICE detained him without lawful privilege. Based on this ground alone, Plaintiff has set forth a claim for false arrest/imprisonment.

### 2. *The Discretionary Function Exception Does Not Apply to the October 2020 Denial of Release*

Plaintiff's false imprisonment claim is not barred under the discretionary function exception. As acknowledged by this Court, ICE was not legally precluded from releasing Arellano because, even if mandatory custody applied, *Fraihat* still provided legal procedures for release of class members subject to §1226(c). ECF #67, at 18-19.

---

[10] It therefore also does not matter if the immigration judge bond determinations were appealed because *Fraihat* mandated ICE to consider release and had nothing to do with the immigration judge. Nor does 8 U.S.C. §1226(e) apply here, as Plaintiff does not challenge the discretionary refusal to release Arellano. He challenges the finding that ICE lacked authority to release and the failure to follow the *Fraihat* mandate.

Contrary to Defendant's assertions, ECF #80, at 17-19, it *lacked the discretion* to *refuse* to comply with *Fraihat's* mandate that only in *rare cases* should a class member continue to be detained if they are not subject to mandatory detention, and that if ICE continued to detain them, it was required to provide an individualized determination justifying its decision. *Fraihat*, 2020 WL 6541994, at *12. *See* SAC ¶90. The *Fraihat* order required redetermination hearings within one week. *Id.*[11] Arellano's *Fraihat* review took more than three weeks. *See* SAC ¶93. Defendant's failure to abide by these judicial mandates rendered Arellano's detention without lawful privilege, giving rise to Plaintiff's false imprisonment claim.

Under the discretionary function exception, conduct is only discretionary where the action is a "matter of choice for the acting employee." *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014). However, "governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse*, 226 F.3d at 1002. Further, even if the action is a discretionary one, the government must show the decision was based on social, economic, or public policy; it "must be, by its nature, susceptible to policy analysis." *Miller,* 163 F.3d at 593.

ICE violated the binding *Fraihat* order in at least three ways. First, Arellano received his *Fraihat* review on October 29, 2020, in violation of the October 7, 2020 *Fraihat* order which required consideration in less than one week, absent "rare cases." 2020WL6541994, at *12. *See* SAC ¶182-187. Second, in that untimely review, ICE acknowledged Arellano was a *Fraihat* class member. Alrabe Decl., Exh. A, at 7. However, ICE issued a "blanket" and "cursory" release denial stating only that he was a "threat to public safety." SAC ¶93. ICE did not identify why Arellano was a threat and did not justify why he should be among the "rare cases" who should remain detained.

---

[11] On October 27, the PRR was also amended to reflect this mandate: "[o]nly in rare cases should a *Fraihat* subclass member not subject to mandatory detention remain detained, and … a justification for continued detention is required." Alrabe Decl., Exh. D.

*Fraihat*'s legal mandate required a presumption of Arellano's release or a non-cursory justification for refusing release, and ICE's failure to follow the Order cannot be insulated by the discretionary function exception. Third, even assuming there was an element of choice to ICE's legally erroneous conclusion that Arellano was subject to mandatory detention, ICE's decision to refuse to release him on that basis takes Plaintiff's claim out of the realm of "social, economic, or public policy" considerations required by the discretionary function exception. *Miller,* 163 F.3d at 593. Although the *Fraihat* denial itself did not contain his custody classification, ICE determined that Arellano was a "threat to public safety" due to an aggravated felony conviction, classifying him as detained under §1226(c), and holding him to a higher standard than he should have been subject to as a *Franco* and *Rodriguez* class member. Defendant argues as much in its previous Motion. ECF #50 at 15-16. *See also* Alrabe Decl., Exh. B at 10; Exh. C at 25 (showing ICE classified Arellano as subject to §1226(c)). Defendant has not provided any evidence to support its contention that this decision was "susceptible to such balancing" required by the discretionary function exception. *Miller,* 163 F.3d at 593. Moreover, at the very least it creates a "factual dispute[] [that] must be resolved in favor of [Arellano]." *Edison*, 822 F.3d at 517.

Last, Defendant argues that *Fraihat* was a certified class action under Federal Rule of Civil Procedure 23(b)(2) and therefore there was no "individual release order." ECF #80, at 17. But Defendant misconstrues Plaintiff's argument. Plaintiff does not argue that *Fraihat* required his release from custody. Rather, he argues that *Fraihat* required adherence to the Court's legal mandate in consideration of release, and the failure to abide by that mandate was not within ICE's discretion. *See e.g. Tekle v. United States*, 511 F.3d 839, 854 (9th Cir.2007)(arrest was without lawful privilege when it violated state law requiring probable cause); *Rhoden v. United States*, 55 F.3d 428, 432 (9th Cir. 1995)(detention was without lawful privilege if it violated legal mandate regarding reasonableness of duration of detention). ICE detained Arellano without

1  lawful privilege when it failed to make an individualized custody decision that complied
2  with *Fraihat's* 1) one-week determination requirement; 2) presumption of release for
3  non-mandatory detention cases; and 3) bar against blanket and cursory denials. The
4  October 29, 2020 *Fraihat* denial of release fails to comply with legally mandated
5  procedures rendering Arellano's detention without legal justification. The discretionary
6  function does not apply to violations of legal mandates. *Terbush v. United States*, 516
7  F.3d 1125, 1129 (9th Cir.2008).

8  It also does not matter that the *Fraihat* injunction was later vacated by the Ninth
9  Circuit. 16 F.4th 613, 646-7 (9th Cir. 2021). The injunction was binding at the time of
10  the October 29, 2020 denial of release and remained binding until dissolved. *United*
11  *States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947).

### D.  Plaintiff's Claims Based on Failure to Communicate Satisfy the Private Analog Requirement and Fall Outside the Misrepresentation Exception

14  In its prior Order, the Court held that Plaintiff failed to establish a private person
15  analog regarding portions of Plaintiff's claims relating to Defendant's failure to disclose
16  Arellano's health condition and hospitalization to his counsel. ECF #67, at 19–20. As the
17  Court recognized, "the Ninth Circuit requires only that the court 'find the most
18  reasonable analogy' to private tortious conduct." ECF #67, at 20 (citation omitted). The
19  private analog under 28 U.S.C. §2674 "do[es] not restrict a court's inquiry to the same
20  circumstances, but require[s] it to look further afield." *United States v. Olson*, 546 U.S.
21  43, 46 (2005). The Court noted that Plaintiff "comes close to showing a 'persuasive
22  analogy with private conduct'" by citing *Est. of Duran v. Chavez*, No. 2:14-02048-TLN-
23  CKD, 2015WL8011685, at *11 (E.D. Cal. Dec. 7, 2015). ECF# 67, at 20 (*citing Westbay*
24  *Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir.1992)).[12] However, the Court

---

26  [12] In its Order, this Court cited *Westbay Steel* for the proposition that the private
27  analog requirement requires "a persuasive analogy." ECF #67, at 20. However, since
   *Westbay Steel*, the Supreme Court has reversed the Ninth Circuit's "narrow"
28  *(footnote cont'd on next page)*

1    stated that Plaintiff failed to explain why liability imposed upon California coroners

2    presents "like circumstances" to those raised here. *Id*. Plaintiff provides this explanation

3    in here, and in the SAC. *See* SAC ¶¶137-138, 151(e), 161(e).

4           In *Duran*, the decedent had a history of mental illness and passed away while

5    incarcerated due to the alleged tortious conduct of correctional facility staff. *Duran*,

6    2015 WL 8011685, at *2-5. The plaintiffs claimed that neither the correctional facility

7    nor the coroner "made an attempt to locate [the decedent's] next of kin." *Id*. at *5. The

8    court held that California Government Code §27471 and California Health and Safety

9    Code (CA H&S) §§7104, 7104.1 "collectively 'impose upon the coroner a duty to act

10    with reasonable diligence in attempting to identify a body placed in his custody and then

11    to attempt with reasonable diligence to locate some family member.'" *Id*. at *12 (citing

12    *Davila v. County of Los Angeles*, 50 Cal. App. 4th 137, 143 (1996); *see Aguirre-Alvarez*

13    *v. Regents of Univ. of California*, 67 Cal. App. 4th 1058, 1067(1998)(noting CAH&S

14    §7104(a) "require[s] the hospital to make some inquiry about the decedent's family").

15           In addition to this duty placed on coroners, *Duran* noted that California law

16    "imposes a duty on the prison to make reasonable attempts to notify next of kin upon the

17    death of an inmate." *Duran*, 2015WL8011685, at *11. Specifically, California Penal

18    Code §5022 requires that prisons "obtain from the prisoner the name and last known

19    address and telephone number of any person or persons *who shall be notified in the event*

20    *of the prisoner's death or serious illness or serious injury*." Moreover, California Code

21    of Regulations Title 15 §3999.417(f) requires prison staff to "attempt to notify

22    individual(s) listed on the Notification in Case of Inmate Death, Serious Injury, or

23

---

24    interpretation of the private analog requirement in *Olson*, 546 U.S. at 46. The Court in

25    *Olson* instructed that instead of holding that there is no private analog for mine

26    inspections, "[t]he Ninth Circuit should have looked for a similar analogy" because

     "similar 'good Samaritan' analogies exist for the conduct at issue here." *Id*. at 47. The

27    Ninth Circuit has since held that "[a]nalogy not identity of circumstance is key." *Xue Lu*

     *v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010). Nevertheless, even assuming *Westbay*

28    *Steel*'s holding is still good law, Plaintiff has shown a persuasive analogy here.

Serious Illness as the person(s) to be notified of the death, in person, or, if personal contact is not practical, by telephone."

Finally, California Probate Code §4712 requires health care facilities to allow a surrogate to make health care decisions for a patient where the patients lacks such capacity.[13] Where the patient does not have "a legally recognized health care decisionmaker," the health care decisionmaker may choose a surrogate who must be an adult "who has demonstrated special care and concern for the patient, is familiar with the patient's personal values and beliefs to the extent known, and is reasonably available and willing to serve" California Probate Code §4712(b); *see also* California Health and Safety Code §1418.8(c) (imposing a similar requirement on long-term health facilities).

Here, Plaintiff challenges Defendant's "fail[ure] to act with reasonable diligence to communicate with [Arellano's] designated representative and next of kin regarding his illness, transfer to hospital, and brain death." *See* SAC ¶¶137-138, 151(e), 161(e). California Government Code §27471 and CAH&S §§7104, 7104.1 impose a similar duty on coroners (and hospitals) to take reasonable steps to locate and notify next of kin in case of death. Likewise, CAPC §5022 and California Code of Regulations Title 15 §3999.417(f) provide a reasonable analogy in the prison context and California Probate Code §4712 and CAH&S §1418.8(c) provide for private analogs under like circumstances covering healthcare facilities treating patients who lack capacity to make medical decisions. Importantly, ICE's obligation to notify next of kin is well-documented. *See* SAC ¶¶137-138; Alrabe Decl., Exh. J, ICE's Directive 11003.5 on Notification, Review, and Reporting Requirements for Detainee Deaths, and ███

---

[13] An immigration judge found Arellano lacked the mental capacity to represent himself in his removal proceedings. SAC ¶75. Regardless of whether Arellano had mental capacity to make health care decisions for himself prior to his COVID-19 illness, Arellano's health deteriorated significantly in the days following his COVID-19 illness and at the very least, he lacked such capacity once he suffered a stroke which caused brain death. SAC ¶¶129–134.

1    ████████████████████████████████████████████████████████

2    ████████████   Therefore, Plaintiff's claims satisfy the private analog requirement.

3    Defendant also challenges this subset of Plaintiff's negligence, NIED, IIED, and

4    wrongful death claims based on the misrepresentation exception to FTCA liability under

5    28 U.S.C. §2680(h). ECF #80, at 26–29 (citing SAC ¶¶151(e) (negligence), 161(e), 162

6    (NIED), 175 (IIED), 217 (wrongful death)). This exception does not apply to Plaintiff's

7    claims. The Supreme Court has held that where the misrepresentations alleged are "not

8    essential" to an otherwise actionable claim, the exception will not bar that claim. *Block v.*

9    *Neal*, 460 U.S. 289, 296–98 (1983); *see Aeros Aeronautical Sys. Corp. v. United State*s,

10   No. CV151712PSGPJWX, 2015WL13638318, at *3 (C.D. Cal. Nov. 24, 2015)("Cases

11   find negligence claims to be misrepresentation claims in disguise when misstatements

12   are essential to the plaintiff's claims"). "Any 'partial overlap' between plaintiffs' claims

13   and a potential misrepresentation claim does not bring the former within the scope of

14   §2680(h)'s exception." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d

15   1152, 1160 (9th Cir.), *opinion amended on reh'g sub nom. Snyder & Assocs. Aquisitions*

16   *LLC v. United States*, 868 F.3d 1048 (9th Cir. 2017). The United States remains "liable

17   for injuries resulting from negligence in performance of operational tasks even though

18   misrepresentations are collaterally involved." *Mundy v. United States*, 983 F.2d 950,

19   952–53 (9th Cir. 1993).

20   Defendant cannot seriously contend that the "essence" of Plaintiff's negligence,

21   NIED, IIED, and wrongful death claims is Defendant's failure to notify Arellano's next

22   of kin and representative about his illness, transfer to the hospital, and brain death.

23   Rather, the "gravamen" of Plaintiff's suit is the circumstances leading to Arellano's

24   tragic and avoidable death, not any misrepresentations that followed. *See Renteria v.*

25   *United States*, 452 F. Supp.2d 910, 915 (D. Ariz. 2006)("in determining whether a claim

26   is barred by the §2680(h) misrepresentation exception, this Court must look beyond the

27   language in which the complaint is couched and consider the "essence" or "gravamen"

28

26

of the suit"). Plaintiff's claims arise from Defendants' duty to exercise due care to shield Arellano from contracting COVID-19 and failure to comply with several legally mandated procedures. Plaintiff has sufficiently alleged injuries he "suffered independently of [any] reliance on [the misrepresentation]." *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990).

Defendant's argument fails for another reason. The Ninth Circuit has held that §2680(h) applies "where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation by government." *Green v. United States*, 629 F.2d 581, 585 (9th Cir. 1980). And "[w]here the plaintiffs' injuries were not commercial, . . . courts have generally ruled that the exception does not preclude claims based on the government's failure to inform." *Id.*; *see Hinshaw v. United States*, 264 F. Supp. 3d 1026, 1035 (D.Ariz. 2017) ("if a failure to communicate results in personal injury, it is classified as a tort of negligence, not a tort of misrepresentation."). Here, Plaintiff's claims do not arise from any commercial decisions based on false or inadequate information. Therefore, the misrepresentation exception does not bar Plaintiff's claims.

### E.   Plaintiff's Wrongful Death Claim Should Not Be Dismissed

Defendant does not raise any independent reason why Plaintiff's wrongful death claim must be dismissed. ECF#80, at 29. Because Plaintiff's other claims should survive, Plaintiff's wrongful death claim should also proceed.

## IV.   CONCLUSION

For the above reasons, the Court should deny Defendant's Motion to Dismiss.

27

Dated: April 12, 2024

Respectfully submitted,

Law Offices of Stacy Tolchin

S/ Stacy Tolchin
Stacy Tolchin
Email: *Stacy@Tolchinimmigration.com*
Megan Brewer
Email: *Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe
Email: *khaled@nipnlg.org*
Matthew Vogel (admitted pro hac vice)
Email: *matt@nipnlg.org*
Amber Qureshi (admitted pro hac vice)
Email: *amber@nipnlg.org*
National Immigration Project of the National
Lawyers Guild (NIPNLG)
1200 18th Street NW, Suite 700
Washington, DC 20036
Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq
Email: *laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
Pasadena, CA 91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

**Certificate of Compliance under L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1 and the

_x_ complies with the word limit of L.R. 11-6.1.
__ complies with the word limit set by court order dated.

Dated: April 12, 2024

S/ Stacy Tolchin
Stacy Tolchin
Email: *Stacy@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233