1  Stacy Tolchin
   *Email: Stacy@Tolchinimmigration.com*
2  Megan Brewer
3  *Email: Megan@Tolchinimmigration.com*
   Law Offices of Stacy Tolchin
4  776 E. Green St., Suite 210
5  Pasadena, CA 91101
   Telephone: (213) 622-7450
6  Facsimile: (213) 622-7233
7
8  Attorneys for Plaintiff
9  (*continued on next page*)

10

UNITED STATES DISTRICT COURT

11

FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| Martin VARGAS, individually and as Successor in Interest of the Estate of Martin Vargas Arellano, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC. <br><br> Defendants. | Case No. 5:23-cv-00380-JWH-SP <br><br> Honorable Sheri Pym <br><br> **DISCOVERY MOTION** <br><br> **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT THE GEO GROUP TO PROVIDE FURTHER RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES** <br><br> Hearing Date: April 30, 2024 <br> Hearing Time: 10:00 a.m. <br> Location: via court's posted Zoom webinar <br> Jury Pre-Trial Conference: November 22, 2024 <br> Jury Trial Date: December 9, 2024 <br> Discovery Cut-Off: July 26, 2024 |

Khaled Alrabe
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
National Immigration Project of the National Lawyers Guild (NIPNLG)
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff

## I. INTRODUCTION

Plaintiff submits this Supplemental Memorandum in support of Plaintiff's Motion to Compel Further Discovery Responses Against Defendant The GEO Group, Inc. ("GEO"), and to update the Court on the status of the Parties' discovery disputes. After Plaintiff filed the Parties' Joint Stipulation, GEO produced additional documents responsive to Plaintiff's requests. However, as discussed below, GEO continues to resist producing a number of key documents. Accordingly, the Court should order their production as set forth in Plaintiff's Proposed Order, Dkt. 68-4, and award Plaintiff's attorneys' fees under Fed. Rule Civ. P. 37(a)(5)(A).

## II. ARGUMENT

### A. GEO's Production of ESI Is Deficient, and Should Be Supplemented

GEO's production of ESI remains woefully deficient, and the Court should order it to supplement its production as set forth in Plaintiff's Proposed Order. *See* Dkt. 68-4. In its portion of the Joint Stipulation, GEO first admitted that it had failed to preserve responsive email communications between 2019 and 2021, and then claimed it had belatedly discovered that those "emails/ESI" had been "retained at the corporate level." Dkt. 68-1 at p. 16-17. However, despite claiming that the requested emails would be "produced as soon as possible to Plaintiff's counsel, on a rolling, basis beginning today," now six weeks later, GEO has failed to complete its production of these documents.

Critically missing from GEO's email production are emails from the period November 11, 2020 to December 10, 2020, the time period when Plaintiff's father Martin Vargas Arellano was exposed to and contracted Covid-19. Despite informing GEO a month ago that that these emails were missing, it has failed to produce them. *See* Supplemental Declaration of Laboni Hoq ("Supp Hoq Decl."), ¶4 at Exhibit ("Ex.") T.

Another readily apparent deficiency with GEO's email search is that failed to use all of the search terms and other parameters Plaintiff requested, which GEO agreed to do. *See* Dkt. 68-2 at 66 ("To be clear, I have not refused to produce any documents in GEO's

2

possession."). Instead, GEO appear to only have searched for Mr. Arellano's name and Alien registration number. *Id*. ¶2. Again, Plaintiff pointed this out to GEO a month ago, and GEO neither objected to Plaintiff's search parameters, denied it had limited its ESI search in this way, nor corrected this fundamental deficiency. *Id*.

GEO's excuses for failing to produce the highly relevant ESI and other outstanding discovery – including those referenced in the declaration of Susan E. Coleman, Dkt. 68-3 – lack merit, or any evidentiary support. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (affording "no weight" to attestations of counsel that lack "personal knowledge or that are based on "information and belief"). In addition, GEO improperly attempts to shift to Defendant USA its obligations to produce "documents about whether GEO has complied with its Statement of Work and other detention standards." Dkt. 68-1 at 19. GEO has an independent obligation to retain the requested records, and its failure to produce them is improper, particularly where USA has resisted producing them. *See* Supp. Hoq Decl. ¶¶5-6 & Ex. U. Further, GEO's boilerplate assertion that this discovery is "FAR beyond the relevant scope of this litigation," Dkt. 68-1 at p. 16, despite Plaintiff's negligence and detention standards claims, is nonsensical.

**B.     GEO Should be Sanctioned for its Spoliation of Surveillance Videos**

Because the record is clear that GEO should have but failed to preserve unrecoverable ESI, and Plaintiff was prejudiced by this destruction, the Court should levy sanctions against GEO as set forth in Plaintiff's Proposed Order. *See* Fed. R. Civ. P. 37(e)(1); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) (upholding adverse inference sanctions for spoliation). In the Joint Stipulation, GEO admits that it has destroyed relevant video surveillance video tapes responsive to Plaintiff's requests. Dkt. 68-1 at p. 16 (acknowledging that the video tapes could show "PPE or other masks were not worn" in support of Plaintiff's negligence and detention standards claims, while admitting that GEO's preservation of these tapes "did not occur.") GEO's defiant position that it had no obligation to preserve these highly relevant

3

documents is not supported by *any* evidence in the record.[1] GEO's counsel even admits that its destruction of tapes likely occurred outside the authority of any "specific policy." Dkt. 68-3. Instead, their destruction occurred *in contravention of* GEO's existing records retention policy, which makes no exception for video surveillance tapes. *See* Dkt. 68-2 at Ex. H (identifying "Video Footage" among the list of documents GEO was required to collect relating to the instant litigation); Ex I (Records Retention Policy).

### C. GEO Should Be Ordered To Produce Unredacted Testing and Contact Tracing Information

GEO should be ordered to produce unredacted versions of all Covid-19 testing and contact tracing information in its possession, custody and control. Plaintiff's requests for this information as to all individuals at Adelanto – including Defendants' staff and detainees – is of undisputed relevance to this case. However, GEO waited until after Plaintiff served it with his portion of the Joint Stipulation to produce improperly redacted information, omitting names and other identifying information. *See* Supp. Hoq Decl. ¶4, Ex. T. These redactions make it impossible to determine – together with other requested discovery discussed below – whether the individuals who tested positive for Covid-19 were responsible for exposing Mr. Vargas Arellano to Covid-19. The protective order in the case allows GEO to produce the redacted information without compromising privacy rights, and Plaintiff has offered to meet and confer about additional protections if need be, but GEO has refused to respond. *Id*. at Ex. T, p. 2.

Regarding GEO's refusal to produce testing and contact tracing information for individuals other than its staff, GEO objects on the baseless grounds that being required to do so "for other entities" would be "unreasonable." Dkt. 68-1 at p. 32. Even if this were a valid basis to deny this discovery, which it is not, GEO never stated that it does not have

---

[1] GEO improperly relies on the finding by the Special Master in *Roman v. Wolf* that Mr. Vargas Arellano likely contracted Covid-19 from a Wellpath nurse in order to evade its discovery obligations. The finding of the Special Master is not dispositive in this litigation, and as set forth in the Second Amended Complaint, Dkt. 71 at ¶¶108-122, there is ample evidence that Mr. Vargas Arellano could have contracted Covid-19 from other sources linked to GEO's negligence and failure to abide by detention standards.

4

possession, custody or control of it. Nor could it so claim. Regardless of whether GEO was a party to the *Roman v. Wolf* litigation which required USA's compilation of testing and contact tracing information, GEO was the hub of this information, acting as the middleman who was contractually obligated to compile and relay it as needed. Dkt. 68-2 at ¶¶31-32, 35 Exs. O (ICE Performance Work Statement), Q (GEO Understanding of Performance Work Standards) & R (Valdez Dep. at p. 109).

### D. GEO Should Be Ordered to Produce Information Related to Covid-19 Positive Individuals Who had Close Contact with Mr. Arellano

GEO has never objected to the relevance of information about individuals at Adelanto who had close contacts with Mr. Arellano, which together with the above-referenced testing and contact tracing documents would reveal whether they were the source of his exposure to Covid-19. Indeed, GEO produced partial responses to requests that sought this information. *See, e.g.* Dkt. 68-1 at p. 34 (GEO's response to Interrogatory No. 11, identifying GEO staff with close contacts with Mr. Arellano). The Court should require GEO to produce complete responses, including amended and supplemented responses to Rog. Nos. 11, 12, 14 and RFP Nos. 24, 29 and 30.

### E. GEO Should be Ordered to Produce Documents Related to Defendants' Compliance with Covid-19 Policies and Practices

The Court should also order GEO to produce the following sets of documents related to Defendants' compliance with Covid-19 policies and practices, most of which GEO has agreed to produce, but has failed to do. Supp. Hoq Decl. ¶4 at Ex. T.

*Facility Entrance - Employee Wellness Screening Tool*: GEO agreed to produce completed versions of these documents for the period August 1, 2020 to December 31, 2020, but to date has failed to do so. *Id*.

*Daily Movement Sheets*: GEO agreed to produce any of these documents that reference Mr. Vargas Arellano. *Id*. While GEO has produced a tracker sheet identifying Mr. Vargas Arellano's movement in and out of the Adelanto facility and the infirmary, this is not a substitute for the Daily Movement Sheets, or similar documents GEO

5

maintains that contain information about Mr. Arellano's movement *within* the Adelanto facility. *See* Dkt. 69-1 at p. 35; Supp. Hoq Decl. ¶4 at Ex. T, p. 3; ¶7 at Ex. V.

*Adelanto ICE Processing Center – Supervisor Shift Summaries*: GEO committed to producing these documents for the period June 1, 2020 to December 31, 2021. Dkt. 68-2 (Exs. C, E). While it has produced a number of these documents, certain critical documents appear missing, including during the December 2020 time period, Supp. Hoq Decl. at ¶8, which it should produce and verify its production is complete.

*Deposition transcripts of GEO witnesses taken in the Roman litigation*: GEO does not object to production of these transcripts, but it continues to take the unsupported position that it does not have access to them. Dkt. 68-3 at ¶13.

### F. GEO Should Be Ordered to Produce All Relevant Medical Records

GEO has yet to verify whether the medical records it produced for Mr. Arellano is complete, and there is evidence that GEO has additional documents it has yet to produce. Specifically, GEO was involved in compiling Mr. Arellano's medical file for DHS's Office of Civil Rights and Civil Liberties, which Plaintiff has asked it to produce, without response from GEO. Supp. Hoq Decl. ¶4 at Ex. T.

### G. GEO Should Be Ordered to Pay Plaintiff's Attorneys' Fees for Successfully Filing This Motion

Plaintiff is entitled to his reasonable attorneys' fees in the amount of $20,000, in part because GEO waited until after the filing of the Joint Stipulation to produce responsive documents. Supp. Hoq Decl. ¶5; Fed. R. Civ. P. 37(a)(5)(A). Further, as discussed, GEO has failed to fully comply with is discovery obligations, warranting fees.

The fees Plaintiff seeks are reasonable, because they account for only a fraction of the time Plaintiff spent prosecuting this motion. *Id*. ¶9. Furthermore, the hourly rate Plaintiff seeks is factually and legally supported. Supp. Hoq Decl. ¶10, Ex. U.

### III. CONCLUSION

For these reasons, the Court should grant Plaintiff's Motion in its entirety.

| | | |
|---|---|---|
| 1 | Dated: April 16, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By: //s// Laboni Hoq |
| | | LABONI HOQ |
| 4 | | |
| 5 | | Laboni A. Hoq |
| | | *Email:* laboni@hoqlaw.com |
| 6 | | Hoq Law APC |
| | | P.O. Box 753 |
| 7 | | Pasadena, CA  91030 |
| 8 | | Telephone: (213) 973-9004 |
| 9 | | Stacy Tolchin |
| 10 | | *Email:Stacy@Tolchinimmigration.com* |
| | | Megan Brewer |
| 11 | | *Email:* |
| 12 | | *Megan@Tolchinimmigration.com* |
| | | Law Offices of Stacy Tolchin |
| 13 | | 776 E. Green St., Suite 210 |
| 14 | | Pasadena, CA 91101 |
| | | Telephone: (213) 622-7450 |
| 15 | | Facsimile: (213) 622-7233 |
| 16 | | |
| 17 | | Khaled Alrabe |
| | | *Email:* khaled@nipnlg.org |
| 18 | | Matthew Vogel (admitted *pro hac vice*) |
| | | *Email:* matt@nipnlg.org |
| 19 | | Amber Qureshi (admitted *pro hac vice*) |
| 20 | | *Email:* amber@nipnlg.org |
| | | 1200 18th Street NW Suite 700 |
| 21 | | Washington, DC 20036Telephone: |
| 22 | | (202) 470-2082 |
| | | Facsimile: (617) 227-5495 |
| 23 | | |
| 24 | | Attorneys for Plaintiff |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Martin Vargas, certifies that this brief contains 1,757, which complies with the word limit of L.R. 11-6.1.

Dated: April 16, 2024

By:  //s// *Laboni Hoq*
LABONI HOQ

Laboni A. Hoq
*Email:* laboni@hoqlaw.com
Hoq Law APC
P.O. Box 753
Pasadena, CA  91030
Telephone: (213) 973-9004

Stacy Tolchin
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer
*Email: Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
1200 18th Street NW Suite 700
Washington, DC 20036Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Attorneys for Plaintiff
MARTIN VARGAS