UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | | |
|---|---|---|---|
| Kimberly I. Clerk | None | | None |
| Deputy Clerk | Court Reporter/Recorder | | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: | |
| None | | None | |

**Proceedings:** **(In Chambers) Order Granting in Large Part Plaintiff's Motion to Compel Defendant GEO Group's Further Responses [68, 89]**

# I. INTRODUCTION

On February 29, 2024, plaintiff Martin Vargas filed a motion to compel defendant The GEO Group to produce further responses to his requests for production of documents ("RFPs") and interrogatories and to pay sanctions. Docket no. 68. The parties' positions are set forth in a joint stipulation ("JS"). Plaintiff's arguments are supported by the declaration of his counsel Laboni Hoq ("Hoq Decl.") and exhibits. GEO's arguments are supported by the declaration of its counsel Susan E. Coleman ("Coleman Decl.") and exhibit.

Plaintiff filed a supplemental memorandum on April 16, 2024 ("P. Supp. Mem."), supported by the supplemental declaration of his counsel ("Hoq Supp. Decl.") and exhibits. Docket no. 85. GEO filed a supplemental memorandum the same day ("GEO Supp. Mem."), supported by the supplemental declaration of its counsel ("Coleman Supp. Decl.") and exhibits. Docket no. 87. On April 18, 2024, plaintiff filed an application to strike GEO's supplemental memorandum for being overlength. Docket no. 89. The next day, GEO filed a notice of non-opposition to plaintiff's application (docket no. 90), and on April 22, 2024, it filed a corrected supplemental memorandum (GEO Corrected Supp. Mem.) and exhibits (docket no. 91).[1]

---

[1] Accordingly, GEO's initial supplemental memorandum (docket no. 87) is stricken as requested, and GEO's corrected supplemental memorandum (docket no. 91) is considered in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

The court held a hearing on the motion on April 30, 2024. After considering the parties' written and oral arguments, and for the reasons discussed herein and stated at the hearing, the court now grants in large part plaintiff's motion.

## II. BACKGROUND

### A. General Background

Plaintiff Martin Vargas is the son of decedent Martin Vargas Arellano, who died after contracting COVID in U.S. Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto"). Second Amended Complaint ("SAC") ¶¶ 1-3. Defendant GEO was contracted to manage operations at Adelanto and subcontracted with defendant Wellpath to provide detainees health care. SAC ¶ 2.

Decedent tested positive for COVID on December 10, 2020. SAC ¶ 8. He was hospitalized for COVID symptoms on December 11, 2020, January 26, 2021, and February 17, 2021. SAC ¶¶ 121, 125, 127. On February 19, 2021, a Wellpath medical director sent an ICE medical coordinator an email stating that decedent was at risk of "sudden death" from "multiple ailments . . . in the wake of COVID-19 infection." SAC ¶ 129. ICE then initiated a plan to release decedent. SAC ¶ 130. Before any release occurred, on or about February 26, 2021, decedent suffered a stroke that caused brain death. SAC ¶ 132. On March 5, 2021, decedent was supposedly released on his own recognizance while in the hospital, although he was comatose and brain dead. SAC ¶ 133. His family was not informed of his medical condition or release. *Id.* Decedent died on March 8, 2021. SAC ¶ 134.

Decedent was a class member in two lawsuits that obligated ICE to slow the spread of COVID in detention facilities, including *Roman v. Wolf*, No. 5:20-cv-00768-THJ-PVC, in which ICE was ordered to reduce Adelanto's population by releasing certain groups of detainees at high risk of COVID. JS at 2. A special master appointed in that

---

its place. *See* docket no. 89 (granted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

case determined that decedent likely contracted COVID from a Wellpath medical provider who examined him on November 29, 2020.  SAC ¶ 8.

## B.  Discovery Background

On June 6, 2023, plaintiff served his first sets of RFPs (Nos. 1-23) and interrogatories (Nos. 1-10) on GEO.  Hoq Decl. ¶ 3.  GEO served its responses on August 10, 2023.  Hoq Decl. ¶ 4.  On October 19, 2023, the parties met and conferred about deficiencies in GEO's responses.  Hoq Decl. ¶ 9.  GEO stated it would correct the deficiencies within the month.  *Id.*

On October 30, 2023, plaintiff served his second sets of RFPs (Nos. 24-32) and interrogatories (Nos. 11-21) on GEO.  Hoq Decl. ¶ 5.  GEO served its responses on December 13, 2023.  Hoq Decl. ¶ 6.  On January 4 and 26, 2024, plaintiff sent GEO letters regarding deficiencies in its responses to both plaintiff's sets of RFPs and interrogatories, and requesting to meet and confer.  Hoq Decl. ¶¶ 11-12.

The parties met and conferred on February 9, 2024 but did not come to any agreements.  Hoq Decl. ¶ 14.  Plaintiff now seeks an order compelling GEO to supplement its responses to his RFPs and interrogatories and to pay sanctions.

## III. DISCUSSION

### A.  RFP Nos. 11-18, 28; Interrogatory No. 21

#### 1.  Emails and ESI

RFP Nos. 11-18 request documents related to communications regarding decedent's detention conditions, medical conditions, and custody determinations.  JS at 6-8.  GEO responded by asserting objections, referring plaintiff to decedent's medical and detainee files, which were already produced, and stating that it has not retained emails from 2019-21.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

In the joint stipulation, plaintiff argues that GEO's failure to retain emails from 2019-21 responsive to his requests constituted spoliation and that an adverse inference sanction should be imposed. JS at 10-15, 25. GEO responded that it has learned that at least some responsive emails and ESI were "retained at the corporate level, and .PST files have been downloaded to Logikull for review." JS at 16. The parties indicated in their supplemental memoranda and confirmed at the hearing that GEO produced some ESI since the filing of plaintiff's motion, including emails. *See* P. Supp. Mem. at 2-3; GEO Corrected Supp. Mem at 1-2.

Plaintiff maintains that despite the supplemental production, certain emails from November 11, 2020 to December 10, 2020 remain missing. GEO represented that production is ongoing and that the missing emails may be among the ESI that GEO is still reviewing. Plaintiff also noted at the hearing that it appeared that the only search term GEO was using was the decedent's name, rather than the broader search criteria to which the parties had previously agreed. As such, he requested GEO be ordered to identify the search parameters it used to conduct its search. He stated that if GEO would conduct a search with plaintiff's requested parameters, he would not seek an adverse inference sanction at this time. The court agrees this is reasonable and warranted.

Accordingly, GEO is ordered to produce responsive emails and ESI. GEO's supplemental response must specify the exact search terms used to conduct its search. If plaintiff finds that the search terms used were inadequate to retrieve responsive documents, the parties must meet and confer about what search terms would be adequate.

    **2.**    **Video Surveillance**

RFP No. 28 and Interrogatory No. 21 request documents and information about the COVID status and PPE use of individuals who came into contact with decedent. JS at 9. GEO responded that it only had contact tracing information for its own employees, and that it could not provide information about their PPE use without reviewing surveillance video, which was not retained. JS at 9-10.

Plaintiff argues the lost video surveillance would have shown the extent to which defendants were complying with ordered precautions against the spread of COVID. He

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

further argues that GEO's failure to preserve the video constitutes spoliation and that the court should order an adverse inference sanction.  JS at 10-15, 25.  Plaintiff argues GEO had a duty to preserve the video for four reasons.  First, the "Performance Work Standards" of GEO's contract with USA to operate Adelanto required that "[a]ll records related to contract performance shall be retained in a retrievable format for three years."  JS at 12; Hoq Decl., Ex. O at 21.  According to GEO's "Understanding of the Performance Work Statement," it understood that "[a]ll records regarding the performance of the Center will be retained in a retrievable format for three years."  Hoq Decl., Ex. P at 14.  Second, plaintiff argues GEO had a separate obligation to preserve the video in light of multiple lawsuits challenging ICE's failure to adequately protect detainees from COVID.  JS at 12.  He notes the Roman case was filed on April 13, 2020, and GEO sought to intervene multiple times, starting in June 2021.  *Id.*  He argues GEO should have been preserving records since the filing of that case at the latest.  JS at 13.  Third, plaintiff argues that GEO had an obligation to preserve the video pursuant to its own document retention policy.  JS at 13, 15; *see* Hoq. Decl. Ex. J at 5-6 (unredacted versions filed under seal at Docket no. 69).  Fourth, plaintiff highlights that GEO received a document preservation letter from plaintiff on April 19, 2021.  JS at 14; Hoq Decl., Ex. G.

In response, GEO states that if video is not specifically pulled to be saved, for example, after the use of force or a riot, the hard drives are recorded over.  JS at 17.  It argues that "[t]o save months of surveillance video – based on the possibility that someone might later allege PPE or other masks were not worn, for example – is unreasonable and did not occur."  *Id.*

The court is not convinced that the filing of the Roman case reasonably put GEO on notice that it had a responsibility to begin preserving all video surveillance available from throughout the Adelanto facility.  Nor is it clear that video surveillance from the facility constitutes "records regarding the performance of the Center" in the context of GEO's contract with USA.  And while plaintiff's 2021 preservation letter includes video recordings among the evidence to be preserved, by the time the letter was received, the relevant video had long been recorded over.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

    As plaintiff notes, GEO's document retention policy would appear to apply to the retention of video surveillance since no exception is specified. But GEO explains in its filings and stated at the hearing that unless video is specifically pulled following a specific incident, it is recorded over within the week. Plaintiff argues that GEO has not produced any evidence of this policy, either in a declaration from a GEO employee or in a written statement of the policy. The court agrees that GEO must provide such verification of its video surveillance policy. Accordingly, while the court will not recommend an adverse inference sanction at this time, it orders GEO to produce evidence of its video surveillance policy.

**B.**    <u>RFP No. 2</u>

    RFP No. 2 requests documents related to investigations into decedent's death, policy changes resulting from his death, and any statements made by GEO, Wellpath, or USA related to his death. JS at 19. GEO responded by asserting objections and stating that no responsive documents exist; "Decedent was stable when he was transferred to the hospital, and he died at the hospital." *Id.*

    GEO previously produced a document dated January 20, 2023 entitled "Death Response Plan." JS at 20. Plaintiff states that he asked GEO to produce prior versions of this plan that were in operation at times relevant to the case, but that GEO failed to produce any such documents. *Id.* Defendant responds that on February 16, 2024 it produced another version, and it has no problem producing even further versions. JS at 21.

    Plaintiff further notes that the special master in the Roman case investigated the facts and circumstances around decedent's death and required corrective action in response to the findings. JS at 20. Plaintiff argues that even if GEO was not formally involved in the inquiry, as the USA's onsite contractor at Adelanto, GEO was likely involved in USA's response to the investigation. *Id.* Accordingly, plaintiff argues, GEO should be ordered to search for documents in its custody and control related to the Roman special master inquiry. *Id.* GEO responds that any documents related to that inquiry and ICE's response to it would be in ICE's custody and control, as GEO was not party to the Roman litigation. JS at 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

GEO is not required to produce documents that do not exist, or that are not in its custody or control. But the court agrees that it reasonable that GEO would have documents related to the Roman special master inquiry and defendants' response to it, even if these documents may also be in ICE's possession. Accordingly, GEO is ordered to make a thorough, good faith search for any documents responsive to RFP No. 2, including documents related to the special master inquiry. If after conducting a thorough search it still finds no responsive documents, it must verify this, which it did not do in its original responses.

**C.     RFP No. 1**

RFP No. 1 requests documents related to any medical conditions decedent suffered in GEO's care, including communications about his conditions and treatment. JS at 22. GEO responded by asserting objections and referring plaintiff to decedent's medical file, which was previously produced. *Id.*

GEO argues that it obtained decedent's medical records from Wellpath and provided them to plaintiff, and that GEO does not independently maintain or organize these records. JS at 25. Plaintiff argues the medical file GEO produced is missing medical records from the time period ICE contends that decedent contracted COVID, in particular, records from decedent's infirmary stay between November 28, 2020 and December 1, 2020. JS at 24. But GEO states it produced the infirmary records from that time period on February 16, 2024. JS at 25.

Plaintiff also notes that GEO was involved in compiling decedent's medical file for DHS's Office of Civil Rights and Civil Liberties, and has not responded to plaintiff's request to produce that file. P. Supp. Mem. at 6. Plaintiff argues that as such, GEO should be ordered to verify whether the medical records GEO has produced in response to this RFP are complete. *Id.* The court agrees. GEO is therefore ordered to make a thorough, good faith search for any documents responsive to RFP No. 1. If after conducting a thorough search it still finds no responsive documents that have not already been produced, it must verify this.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

**D.  RFP No. 4**

RFP No. 4 requests documents related to the performance of staff who interacted with decedent around the time he contracted COVID, including training records, performance reviews, and disciplinary records.  JS at 26.  GEO responded by asserting objections and stating: "Reviews, evaluations, training and other personnel records for Wellpath staff would be in Wellpath's custody and control and are not in GEO's custody and control.  Defendant has no knowledge of any disciplinary or corrective action taken against staff as a result of their interaction with decedent."  JS at 26-27.

Plaintiff notes that at the parties' October 19, 2023 meet and confer session, GEO acknowledged deficiencies in its response and agreed to search for write ups of staff who failed to follow protocol.  JS at 27.  GEO now states it has confirmed that no staff who interacted with decedent were written up, and that it will supplement its response to reflect this information.  *Id.*  As it appears GEO has not yet provided verified supplemental responses to that effect, GEO is ordered to do so.

**E.  RFP Nos. 24-28; Interrogatory Nos. 5, 12, 17**

RFP Nos. 25-28 and Interrogatory Nos. 5 and 17 request documents and information regarding testing and contact tracing at Adelanto, particularly as it relates to how decedent contracted COVID.  JS at 28-30.  In response, GEO asserted objections and stated that while the receiver's report in the Roman case indicated decedent contracted COVID from a Wellpath employee, GEO was not party to that litigation and has no access to the information.  *Id.*  Nonetheless, it stated it would provide all documents related to contact tracing in its custody and control.  *Id.*

Interrogatory No. 12 requests the names of all individuals at Adelanto who tested positive for COVID between November 4, 2020 and December 14, 2020, and RFP No. 24 requests documents identifying the same group for a similar time period.  JS at 35-36. GEO responded that while it did not have responsive information for USA or Wellpath employees, it requested information regarding its own employees who tested positive during the timeframe and would provide the list and any responsive documents when obtained.  JS at 35-36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

GEO states it has produced documents related to screening, positive tests, and contact tracing of its employees, and that these documents use random identifiers instead of names due to HIPAA issues. JS at 32, 38; *see also* GEO Corrected Supp. Mem. at 4. Plaintiff argues that GEO should produce an unredacted version of this document. *See* JS at 31, 37. Plaintiff contends he needs the information in order to show how decedent contracted COVID and to prove his allegations that defendants' policies made such transmission much more likely to occur. At the hearing, GEO pointed to the special master's finding in the Roman case that decedent contracted COVID after coming into contact with a Wellpath nurse. Plaintiff responded that the finding is not binding here and that he seeks to conduct his own investigation. Plaintiff further noted that any unredacted information about GEO employees would be subject to the protective order in this case. The court agrees the protective order here should be sufficient to alleviate privacy concerns regarding the contact tracing documents related to employees.

GEO argues further that it does not have responsive information or documents pertaining to non-GEO employees. JS at 32, 38. Plaintiff disputes this, noting that the "Master Service Agreement" GEO entered into with Wellpath gives GEO access to Wellpath's records related to its duties under the agreement, including as they relate to Wellpath personnel. JS at 31, 37. Plaintiff also notes that defendant USA produced records in discovery bearing GEO bates stamps, some of which appear to contain contact tracing information for possible Wellpath nurses between August and December 2020. JS at 31. Plaintiff seems to suggest that these records show GEO does have access to some records pertaining to Wellpath employees. At the hearing, GEO stated that it has less access to Wellpath documents now that the contract between them has terminated. But having less access than GEO did before does not relieve it of its obligation to conduct a search and produce any resulting documents.

Accordingly, GEO is ordered to make a thorough, good faith search for any documents and information in its possession or that it otherwise has the ability to access that are responsive to RFP Nos. 25-28 and Interrogatory Nos. 5 and 17, including documents pertaining to non-GEO employees. If after conducting a thorough search it still finds no responsive documents or information, it must verify this. GEO is also ordered to produce unredacted testing and contact tracing documents in its custody and control.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

### F.      RFP Nos. 29-30

RFP Nos. 29 and 30 request documents identifying the PPE that individuals at Adelanto were required to wear, and the PPE actually worn, for the time frame November 4, 2020 to December 10, 2020. JS at 36. GEO responded that while it did not have responsive information for USA or Wellpath employees, it requested and would provide responsive documents in its custody and control. *Id.*

Plaintiff notes that despite GEO's statement that it would produce PPE-related information for its own staff, it never did so. JS at 37. GEO's response states: "the actual use of PPE by GEO staff is not logged; however, policies produced herein indicate GEO staff were required to wear masks. Medical staff interacting closely with detainees were required to wear full PPE (mask, gloves, gown)." JS at 38. But GEO's responses contained in the joint stipulation here do not relieve it of its obligation to serve sufficient responses to plaintiff's discovery requests. If after conducting a thorough search for responsive information GEO found no responsive documents to turn over, it must verify this in supplemental responses; otherwise, it must produce them.

### G.      Interrogatory No. 11

Interrogatory No. 11 asks GEO to identify the first and last names of the officers who signed a document that was attached as Exhibit A, related to plaintiff's need to determine the individuals who had close contact with decedent and who also tested positive for COVID. JS at 34. In response, GEO provided a list of names based on the handwriting. *Id.* GEO also stated that it requested the names be reviewed by a supervisor and compared to a staff roster and that the full names would be provided once confirmed and received. *Id.*

Plaintiff indicates that GEO has not supplemented its responses to this request, despite stating it would do so. JS at 37. GEO does not address the request in the joint stipulation. *See* JS at 38. GEO is therefore ordered to supplement its response to Interrogatory No. 11, as it said it would.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

### H.  Interrogatory No. 14

Interrogatory No. 14 requests that GEO describe the decedent's housing conditions from November 4, 2020 to December 10, 2020, including: (1) where he was housed, the size of his housing units, and whether he had cellmates; (2) where he ate meals and whether he did so within six feet of others; (3) where he took showers and whether he did so within six feet of others; and (4) where he accessed legal or educational materials and whether he did so within six feet of others.  JS at 35.  GEO responded that it requested and would provide decedent's housing history.  *Id.*  It further stated that the size of each housing unit would require a separate determination upon receipt of the housing history.  *Id.*  It also stated that it could not determine where precisely decedent showered, ate, and read, as detainees have some freedom in choosing those specific locations.  *Id.*

Plaintiff states that GEO agreed to produce information about decedent's housing conditions during this time period, but that four months later it still has not supplemented and amended its responses.  JS at 37.  Certain of decedent's housing records that remain in dispute are discussed in the section below.

Regarding the other components of Interrogatory No. 14, GEO states that such information cannot be ascertained.  JS at 38.  GEO already stated as much in its original responses, and plaintiff does not provide any basis for an inference that the information is in fact ascertainable by GEO.  As such, the court declines to order a supplemental response to Interrogatory No. 14.

### I.  RFP Nos. 19, 21

RFP No. 19 requests documents relating to detention standards and GEO's compliance with such standards; complaints against GEO, USA, and Wellpath for violating the standards; training provided related to the standards; and any disciplinary action taken related to the standards.  JS at 8.  RFP No. 21 requests documents relating to complaints about detention standards at Adelanto from January 2020 to the present.  *Id.*  GEO responded by asserting objections, referring plaintiff to decedent's medical and detainee files, which were already produced, and stating that it has not retained emails from 2019-21.  JS at 8-9.  It also stated that "[t]o the extent Plaintiff seeks documents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

related to other detainees and training/discipline for persons unrelated to decedent's care, this request is vastly overbroad and not reasonably related to the discovery of admissible evidence." *Id.*

Plaintiff states that in its January 4, 2024 meet and confer letter, he identified a number of responsive documents that were missing from GEO's production. JS at 39. Specifically: (1) supervisor shift summaries; (2) employee wellness screening tools; (3) decedent's daily movement sheets; (4) deposition testimony of GEO employees taken in the Roman case; and (5) all COVID reporting from Adelanto that GEO, Wellpath, or USA provided any government agency in the year 2020, including positive test results. JS at 40.

Regarding the supervisor shift summaries, GEO states it has completed copying them for the time period sought and they will be produced as soon as they are provided by corporate counsel to defense counsel. JS at 41-42. GEO is ordered to produce these records if it has not already. Regarding COVID reporting from Adelanto, these records are discussed above. *See supra*, § E.

GEO further states it already produced decedent's daily movement records and housing. *Id.* At the hearing, plaintiff reiterated that while GEO has produced some housing records, decedent's daily movement sheets remain missing. As opposed to the records that have already been produced, which document decedent's movements from inside to outside the facility, the daily movement sheets document decedent's internal movements within Adelanto. GEO is ordered to produce decedent's daily movement sheets. If GEO needs clarification about what specific records are being requested, it should confer with plaintiff and review the sample daily movement sheet plaintiff stated he received from defendant USA.

Finally, GEO argues it does not have access to the deposition transcripts from *Roman v. Wolf*, even for its own employees. JS at 42. Plaintiff notes that Wellpath was able to obtain and produce transcripts, despite not having been a party to the litigation, which indicates GEO could do the same. JS at 40. As discussed at the hearing, Wellpath obtained deposition transcripts by contacting the court reporter in the case. GEO stated that if it could determine the appropriate court reporter's name, it would do the same.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

Accordingly, GEO is ordered to make a good faith effort to contact the court reporter with access to the transcripts and to produce any transcripts responsive to RFP Nos. 19 and 21.

### J.     RFP Nos. 8, 9

RFP Nos. 8 and 9 request documents relating to contracts between ICE and GEO and/or Wellpath regarding GEO's operation of Adelanto. JS at 42. GEO responded with objections and stated: "A copy of the contract between ICE and GEO was provided with the USA's Motion to Dismiss. [DKT 50-2.] The contract between GEO and Wellpath is hereby produced." JS at 42-43.

Plaintiff argues that at the parties' October 19, 2023 meet and confer session, GEO acknowledged deficiencies in its responses to RFP Nos. 8 and 9 and agreed to do the following:

- Regarding its contracts with Wellpath, GEO agreed to verify whether the contracts that Wellpath produced in this litigation constitutes all documents responsive to RFP No. 9;
- Regarding its contracts with USA, GEO agreed to produce certain portions of the contracts USA failed to include in its Motion to Dismiss filing, including the following:
    - (1) the Quality Assurance Surveillance Plan (QASP), listed as Attachment 2 to the contract;
    - (2) all Contract Discrepancy Reports (CDR);
    - (3) all Quality Assurance Surveillance Forms (QASF) for the relevant time period.
    - (4) From the ERO Covid-19 Pandemic Response Requirements (PRR) [GEO 00372-399]:
        - (a) all annual inspection reports, and
        - (b) all evidence of bi-weekly spot checks as required under the PRR at the Adelanto facility.

JS at 43. GEO responds that it "has been valiantly trying to obtain these documents, and has no objection to producing them if they are in GEO's custody or control; however, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

information requested should be limited to relevant time periods and pertinent information." JS at 44. It specifically argues that inspection reports and evidence of bi-weekly spot checks should be limited to 2020-21, and that contract discrepancy reports and QASF reports should be related to COVID protocols. *Id.*

It is not clear why, if GEO does not object to the production of these documents subject to the limitations it proposes, GEO has not already produced them or met and conferred with plaintiff about the suggested limitations, especially since it promised to do so at the parties' October 19 conference. Accordingly, GEO is ordered to produce supplemental responses to RFP Nos. 8 and 9.

**K.      Sanctions**

In his supplemental memorandum, plaintiff requested sanctions against GEO in the amount of $20,000 for the attorney's fees incurred in filing this motion. P. Supp. Mem. at 6. Rule 37(a)(5) provides that the prevailing party on a discovery motion is entitled to an award of its reasonable expenses incurred in bringing or opposing the motion, including attorney's fees, except no payment should be ordered if: (1) the motion was filed before the moving party made a good faith effort to resolve the dispute; (2) the losing party's position was substantially justified; or (3) other circumstances make award of expenses unjust. Fed. R. Civ. P. 37(a)(5).

Plaintiff argues that GEO should pay sanctions because it waited until the filing of the joint stipulation to produce responsive documents and because it has failed to fully comply with its discovery obligations. P. Supp. Mem. at 6. GEO argues no sanctions are warranted because its counsel is working on the case alone and has been bombarded with discovery requests without compromise. Coleman Decl. ¶ 18. Though the court appreciates plaintiff's frustration that GEO did not produce supplemental responses until after his joint stipulation was filed, any delays on GEO's part do not seem to have been made in bad faith. Further, plaintiff did not fully prevail on this motion and there were legitimate disputes as to certain of the issues on which plaintiff did prevail. As such, the court declines to award sanctions at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00380-JWH-SP | Date | May 20, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

## IV. ORDER

      For these reasons, the court grants in large part plaintiff's motion to compel (docket no. 68), as set forth above. GEO is ordered to conduct the searches described above and produce supplemental responses and documents as set forth above by June 7, 2024, unless otherwise agreed by plaintiff.