# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARTIN VARGAS, as successor in interest of the estate of Martin Vargas Arellano,

      Plaintiff,

    v.

UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC,

      Defendants.

Case No. 5:23-cv-00380-JWH-SP

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF No. 80]**

Before the Court is the motion of Defendant United States of America to dismiss the operative Second Amended Complaint of Plaintiff Martin Vargas.[1] After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing,[3] the Court orders that the United States's instant Motion is **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## I. BACKGROUND

This case arises from the death of Martin Vargas Arellano, an immigration detainee who was in custody at the ICE Adelanto Processing Center. Plaintiff Vargas is Arellano's son. The parties are familiar with the facts and procedural posture of the case.

In his operative Second Amended Complaint, Vargas seeks damages against the United States—the appropriate defendant under the Federal Tort Claims Act (the "FTCA"). *See* 28 U.S.C. § 1346(b).[4] Specifically, Vargas asserts the following claims for relief against the United States:

- negligence pursuant to the FTCA (the first claim);
- negligent infliction of emotional distress ("NIED") pursuant to the FTCA (the second claim);
- intentional infliction of emotional distress ("IIED") pursuant to the FTCA (the third claim);

---

[1]    Def.'s Mot. to Dismiss (the "Motion") [ECF No. 80].

[2]    The Court considered the documents of record in this action, including the following papers: (1) Second Am. Complaint (the "Amended Complaint") [ECF No. 71]; (2) Motion; (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF Nos. 82 (redacted) & 83 (sealed, unredacted)]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 92].

[3]    *See* Min. Order for Hearing re: Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. [ECF No. 96].

[4]    Amended Complaint ¶ 19.

- false arrest/imprisonment pursuant to the FTCA (the fourth claim); and
- wrongful death (the eighth claim, which Vargas also asserts against Defendants The Geo Group and Wellpath, LLC).[5]

The Court previously ruled upon the United States's First Motion to Dismiss Vargas's First Amended Complaint.[6]  In that Order, the Court ruled—in relevant part—as follows:

- the Court dismissed Vargas's first, second, and third claims (for negligence, NIED, and IIED) to the extent that those claims were based upon ICE's failure to shield Arellano adequately from contracting COVID-19 and ICE's failure to provide facilities and care sufficient to meet Arellano's medical needs;
- the Court dismissed Vargas's first, second, and third claims to the extent that those claims were based upon ICE's failure to oversee facilities and staff properly;
- the Court dismissed Vargas's first, second, and third claims to the extent that those claims were based upon ICE's failure to release Arellano;
- the Court dismissed Vargas's first and second claims (for negligence and NIED) to the extent that those claims were based upon ICE's failure to disclose Arellano's health condition and hospitalization to his counsel; and
- the Court dismissed Vargas's eighth claim (for wrongful death) as derivative.[7]

---

[5]   *See generally id.*

[6]   Order Granting in Part and Den. in Part Def.'s Mot. to Dismiss (the "Order on First Motion to Dismiss") [ECF No. 67]; *see also* Def.'s Mot. to Dismiss Case (the "First Motion to Dismiss") [ECF No. 50].

[7]   Order on First Motion to Dismiss 23.

All dismissals were without prejudice and with leave to amend.[8]

## II.  LEGAL STANDARD

The Court recited the appropriate legal standard in its Order on the First Motion to Dismiss.[9]  The same standard applies to the instant Motion.

## III.  ANALYSIS

In its instant Motion, the United States argues that certain exceptions to the FTCA's waiver of sovereign immunity—specifically, the discretionary function exception, the independent contractor exception, the private analog requirement, and the misrepresentation exception—bar Vargas's FTCA and derivative claims.  The Court explores each in turn.

### A.    Discretionary Function Exception

As it did in its First Motion to Dismiss, here the United States argues that the discretionary function exception bars Vargas's FTCA claims for relief to the extent that those claims are based upon (1) ICE's failure to release Arellano; and (2) ICE's failure to oversee its facilities and staff properly.

#### 1.    Failure to Release Arellano

In its Order on the First Motion to Dismiss, the Court dismissed Vargas's FTCA claims to the extent that those claims were based upon ICE's failure to release Arellano because the earlier pleading "challenge[d] the United States's failure to release Arellano," but ICE was not required to release Arellano—pursuant to *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021), or any other authority—and Vargas "[did] not challenge the procedures by which the United States complied (or failed to comply) with *Fraihat*."[10]

---

[8]    *See generally id.*

[9]    *See id.*

[10]    *Id.* at 19.

-4-

In his current pleading, Vargas similarly does not assert that ICE was required to release Arellano.  Indeed, Vargas concedes that under *Fraihat*, ICE had the discretion to release Arellano or not.[11]  Vargas does not assert a claim for relief for violation of procedural due process for ICE's alleged failure to follow the procedures prescribed by *Fraihat*.  Accordingly, the discretionary function exception continues to apply.  To the extent that Vargas's FTCA claims are based upon ICE's failure to release Arellano, the United States's instant Motion is **GRANTED**.  Because Vargas has twice amended his pleading, including once in response to this Court's previous order, those claims are **DISMISSED without leave to amend**.

### 2.    Oversight of Facilities and Staff

In its Order on the First Motion to Dismiss, the Court ruled that Vargas's FTCA claims survived with respect to ICE's alleged failure to provide medically sufficient facilities and care because Vargas had adequately alleged that ICE had failed to comply with its own mandatory policies.  In contrast, the Court dismissed Vargas's claims to the extent that they were based upon ICE's failure to oversee facilities and staff properly.  With respect to those claims, though, the Court's reasoning did not focus on ICE's failure to abide by its own policies.  Rather, the Court relied upon *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000), to conclude "that it is well established that issues of employee supervision 'fall squarely within the discretionary function exception.'"[12]

Vargas has amended his pleading to aver—like he did with his failure-to-provide-care claims—that ICE failed to comply with its own mandatory policies with respect to its oversight of its facilities and staff, such that the discretionary

---

[11]    *See* Opposition 19:8-9 (acknowledging that ICE had the authority to release Arellano).

[12]    Order on First Motion to Dismiss 14 (quoting *Nurse*, 226 F.3d at 1001).

function exception does not apply.  Specifically, Vargas alleges that "ICE did not comply with its mandatory oversight obligations and took no corrective action—under the PBNDS, PRR, or its contract with GEO—against GEO's failure to follow [ICE's PBNDS] standards during the height of the COVID-19 pandemic."[13]  The Court concludes that Vargas has adequately corrected the deficiency in his earlier pleading with respect to that issue.  As Vargas argues, "[t]he Ninth Circuit has 'generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not.'"[14]  "'The Government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected policy decisions.'"[15]

The United States argues that Vargas's claims related to ICE's alleged failure to oversee its contractors properly are barred by the FTCA because Vargas "has failed to establish any mandatory and specific requirements on the United States's oversight of GEO or Wellpath."[16]  For that proposition, the United States cites two unpublished, non-binding cases:  *Shinotsuka v. Fed. Corr. Inst. Terminal Island*, 2023 WL 6812759 (C.D. Cal. Sept. 14, 2023), and *Murillo v. United States Dep't of Just.*, 2022 WL 16745333 (D. Ariz. Nov. 7, 2022).[17]  Each of those cases concluded that the plaintiff had failed to cite mandatory

---

[13]     Amended Complaint ¶ 65; *see also id.* ¶ 64.

[14]     Opposition 18:2-6 (quoting *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)) (emphasis in original).

[15]     *Id.* at 18:8-10 (quoting *Marlys Bear Med. v. U.S.* ex rel. *Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001)).

[16]     Motion 20:26-28; *see also* Reply 10:11-12 ("[Vargas] fails to identify any mandatory oversight procedures, nor allege how they were violated in a manner that plausibly caused Arellano's death.").

[17]     *See* Motion 20:28-22:1.

authority requiring the government to undertake the specific COVID-19 protective conduct that the plaintiff alleged it had failed to do.  And during the hearing on its Motion, the United States invited the Court's attention to another unpublished, non-binding case—*Ahn v. GEO Grp., Inc.*, 2024 WL 1258428 (E.D. Cal. Mar. 25, 2024), which the United States cites in its Reply but not its Motion—for a similar proposition, although that case dealt with the government's alleged failure to abide by its own mental health screening requirements for an inmate who ultimately committed suicide.[18]  Each of the cases the United States cites is distinguishable because none entails the court-imposed COVID-19-specific policies that Vargas confronts here.  Additionally, as the Court discusses in more detail below,[19] the district court in *Roman v. Wolf*, Case No. 5:20-cv-00768-TJH (PVCx) (C.D. Cal.), imposed certain requirements upon ICE, and Vargas plausibly alleges that ICE failed to comply with them.

Therefore, the Court **DENIES** the United States's Motion to the extent that Vargas's FTCA claims are based upon ICE's failure to oversee its facilities and staff properly.

**B.      Independent Contractor Exception**

As it did in its First Motion to Dismiss, the United States now argues that the independent contractor exception bars Vargas's FTCA claims to the extent that those claims are based upon the allegations that ICE (1) failed to shield Arellano adequately from contracting COVID-19; and (2) failed to provide facilities and care sufficient to meet Arellano's medical needs.[20]

---

[18]      *See generally* Reply.

[19]      *See infra* Part III.B.

[20]      *See* Motion 23:13-26:13.

In its Order on the First Motion to Dismiss, the Court agreed with the United States's argument and dismissed those claims.  The Court applied the three-part test set forth in *Edison v. United States*, 822 F.3d 510, 513 (9th Cir. 2016), and concluded that the independent contractor exception barred those claims.  The *Edison* test requires the Court (1) to analyze whether the applicable state law would impose a duty of care on a private individual in a similar situation; (2) if it would, then to "look[] to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable"; and (3) even if it appears that the government delegated all of its duties to the independent contractor, to ask whether the applicable state law imposed any nondelegable duties on the government.  *See Edison*, 822 F.3d at 519.

Specifically, the Court determined that, in his First Amended Complaint, Vargas "fail[ed] at the first step" because "[w]hile Vargas cite[d] cases that recognize a special relationship between jailers and prisoners, he d[id] not address whether California law would impose the duty of care alleged here on a ***private person*** in a similar situation."[21]  Vargas argues that he "amended the complaint to directly address the Court's concerns"; specifically, by adding Paragraphs 147 through 151 in the current Amended Complaint.[22]

With respect to the first *Edison* prong, Vargas analogizes to "California's standard duty of care under tort law," which "recognizes that '[a]s a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct

---

[21]    Order on First Motion to Dismiss 13 (citing the analogy in *Edison* between the government's duty to warn prisoners about cocci and a private landowner's duty under California law to act reasonably in the management of his or her property) (emphasis in original).

[22]    Opposition 10:10-11.

unreasonably dangerous.'"[23]  That duty of care, which is imposed upon private persons, combined with the authority that Vargas cites—which "recognizes a 'special relationship' between jailer [including contractors] and prisoner that gives rise to a duty of care that requires jailers to protect prisoners against 'unreasonable risk of physical harm'"[24]—convinces the Court that Vargas has satisfied the first prong.

With respect to the second *Edison* prong, Vargas argues that ICE retained—and breached—its duty of care "related to shielding Arellano from the virus and ensuring the facility's adequacy for individuals at high-risk of death."[25]  For that proposition, Vargas points to allegations regarding the direct role that ICE's Assistant Field Office Director, Gabriel Valdez, allegedly played in implementing COVID-19 protocols at Adelanto.[26]  In its instant Motion, the United States does not engage with these allegations.  Vargas also argues that "ICE has a direct and undelegated duty under the detention contract to adhere to its own monitoring and compliance policies and procedures," including:

- monitoring, assessing, recording, and reporting on the technical performance, including compliance with the PBNDS standards, of GEO on a day-to-day basis;
- ensuring that medical care at Adelanto meets detention standards; and

---

[23]     *Id.* at 11:10-14 (quoting *Golick v. State of California*, 82 Cal. App. 5th 1127, 1138 (2022)) (internal quotations omitted).

[24]     Amended Complaint ¶ 147 (quoting *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 248 (2008)).

[25]     Opposition 12:15-16.

[26]     *Id.* at 12:16-27.

- conducting bi-weekly spot checks and issuing Contract Discrepancy Reports (CDRs) for noncompliance.[27]

The United States argues that Vargas cannot prove his underlying tort claim because "Adelanto's testing and social distancing requirements were already controlled by the *Roman* Court's orders."[28]  But, as the United States appears to concede, the *Roman* court ordered ICE to act—*i.e.*, it imposed certain duties upon ICE—with respect to COVID measures.[29]  And the Court concludes that Vargas plausibly alleges that the United States breached those duties with respect to Arellano.  Determining the veracity of the *Roman* court's finding that ICE was in compliance and assessing the impact of that finding on this case are not appropriate at this stage.

Therefore, the Court **DENIES** the Motion with respect to Vargas's FTCA claims to the extent that those claims are based upon the allegations that ICE (1) failed to shield Arellano adequately from contracting COVID-19; and (2) failed to provide facilities and care sufficient to meet Arellano's medical needs.

---

[27]     *Id.* at 12:28-13:10 (citing Amended Complaint ¶ 64 for the list of ICE's allegedly non-delegable duties).

[28]     Motion 25:22-23.

[29]     *See id.* at 25:23-24 ("In September 2020, the *Roman* district court ordered ICE to begin weekly testing for COVID-19 for all detainees.") (internal quotations omitted).  At the hearing, the United States also argued that its assertion of *Ahn* applies to prove the independent contractor exception for the same reason that it applies to the discretionary function exception.  However, as the Court concluded with respect to the discretionary function exception, *Ahn* is distinguishable, and it does not support the United States's position.  *See supra* Part III.A.2.

## C. Private Analog Requirement

The United States argues that the private analog requirement bars Vargas's FTCA claims (and his derivative wrongful death claim) to the extent that those claims are based upon the United States's alleged failure to communicate Arellano's health status.[30]

The United States had previously asserted the same private-analog-requirement argument.[31]  In its Order on the First Motion to Dismiss, the Court concluded that Vargas "c[ame] close" to meeting the private analog requirement by citing to *Est. of Duran v. Chavez*, 2015 WL 8011685, at \*12 (E.D. Cal. Dec. 7, 2015), but that Vargas did not sufficiently expand upon the analogy.[32]  Vargas now provides an extensive explanation of the analogy,[33] and the Court concludes that he meets the private analog requirement.

## D. Misrepresentation Exception

The United States also argues that the misrepresentation exception bars Vargas's FTCA claims (and his derivative wrongful death claim) to the extent that those claims are based upon the United States's alleged failure to communicate Arellano's health status.[34]  The United States asserts the misrepresentation exception in this Motion for the first time.  The FTCA provides an exception for "[a]ny claim arising out of . . . misrepresentation [or] deceit . . . ."  28 U.S.C. § 2680(h).  "28 U.S.C. § 2680(h) prohibits claims against the government arising out of negligent, as well as intentional, misrepresentation," but "[t]he prohibition applies only to the misrepresentation

---

[30]     Motion 26:14-29:5.

[31]     *See* First Motion to Dismiss.

[32]     Order on First Motion to Dismiss 20.

[33]     Opposition 23:14-26:2.

[34]     Motion 26:14-29:5.

portion of the lawsuit." *United States v. Fowler*, 913 F.2d 1382, 1387 (9th Cir. 1990) (citing *Block v. Neal*, 460 U.S. 289, 295 (1983)).  It "bar[s] negligence actions which focus . . . on the Government's failure to use due care in communicating information," but not negligence actions that focus "on the Government's breach of a different duty." *Block*, 460 U.S. at 297.  The United States appropriately asserts that the exception is no longer limited to claims for economic loss from misrepresentations in commercial decisions.  *See, e.g.*, *Kim v. United States*, 940 F.3d 484, 493 (9th Cir. 2019); *Doe v. Holy See*, 557 F.3d 1066, 1084 n.10 (9th Cir. 2009) (*per curiam*); *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003).

Vargas is correct that the bulk of his FTCA claims (and his derivative wrongful death claim) addresses "the Government's breach of a different duty," but to the extent that those claims focus on ICE's "failure to use due care in communicating information" with respect to Arellano's health information and status, the Motion is **GRANTED**.  Because Vargas has twice amended his pleading, including once in response to the Court's previous order, those claims are **DISMISSED without leave to amend**.  To the extent that Vargas's claims do not focus on ICE's failure to communicate and are not otherwise barred by the other doctrines detailed in this Order, the Motion is **DENIED**.

### E.     Wrongful Death Claim

Both parties agree that Vargas's wrongful death claim is derivative of his other claims.[35]  Therefore, his wrongful death claim will follow his FTCA claims in disposition:  to the extent that it is based upon ICE's alleged failure to release Arellano or to communicate Arellano's health status, Vargas's eighth claim is

---

[35]     *Id.* at 29:6-11 & 27:17-20.

**DISMISSED without leave to amend**.  But, otherwise, with respect to the eighth claim, the instant Motion is **DENIED**.

## F.    Evidentiary Objections

The United States also raises certain evidentiary objections to attachments that Vargas included with his Opposition.[36]  As Vargas states, Defendants' instant Motion is a factual challenge pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows the Court to review materials outside the pleadings.[37]  Therefore, the United States's Objections are **OVERRULED**.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    The United States's evidentiary Objections are **OVERRULED**.

2.    To the extent that Vargas's first, second, third, fourth, and eighth claims for relief are based upon ICE's alleged failure to release Arellano or to communicate Arellano's health status, the Motion is **GRANTED** and those claims are **DISMISSED without leave to amend**.

3.    Otherwise, the Motion is **DENIED**.

4.    The United States is **DIRECTED** to file its Answer to Vargas's Amended Complaint no later than August 30, 2024.

**IT IS SO ORDERED.**

Dated:_____August 13, 2024_____

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[36]    Def.'s Objs. to Pl.'s Evid. Submitted in Opp'n to the Motion [ECF No. 92-1].

[37]    Pl.'s Resp. to Def.'s Objections [ECF No. 95]; *see also* Order on First Motion to Dismiss 9 (stating the rule for Rule 12(b)(1) factual challenges).