Stacy Tolchin (SBN 217431)
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer (SBN 268248)
*Email: Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

(*continued on next page*)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin VARGAS, individually and as Successor in Interest of the Estate of Martin Vargas Arellano,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA; THE GEO GROUP; and WELLPATH, LLC.<br><br>                          Defendants. | Case No. 5:23-cv-00380-JWH-SP<br><br>Honorable Sheri Pym<br><br>**DISCOVERY MOTION**<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT THE UNITED STATES TO PROVIDE FURTHER RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>**DECLARATION OF STACY TOLCHIN AND EXHIBITS THERETO AND DECLARATION OF SHAINA C. ST JOHN FILED CONCURRENTLY**<br><br>Hearing Date: October 29, 2024<br>Hearing Time: 10:00 A.M<br>Location: via court's posted Zoom webinar<br>Pre-Trial Conference: (Bench Trial): April 11, 2025<br>Bench Trial Date:  April 28, 2025<br>Discovery Cut-Off: November 1, 2024 |

1

Khaled Alrabe (SBN 349899)
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
1200 18th Street NW Suite 700
Washington, DC 20036Telephone: (202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq (SBN 224140)
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
South Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff Martin Vargas

# TABLE OF CONTENTS

I.    Introductory Statements ................................................................................. 4

    A.    Plaintiff's Introductory Statement ................................................. 4

    B.    The United States' Introductory Statement .................................... 6

II.    Joint Specification of Disputes ..................................................................... 7

    A.    RFP Nos. 22, 57 ............................................................................. 7

        1.    Plaintiff's Contentions and Points and Authorities ............ 8

        2.    USA's Contentions and Points and Authorities................. 13

        3.    Proposed Resolutions During the Rule 37-1 Conferences and
Related Correspondence ................................................... 17

    B.    RFP Nos. 2, 3, 19, 21, 22, 31, 32, 33, 35 ...................................... 18

        1.    Plaintiff's Contentions and Points and Authorities .......... 24

        2.    USA's Contentions and Points and Authorities................. 25

        3.    Proposed Resolutions During the Rule 37-1 Conferences and
Related Correspondence ................................................... 29

    C.    RFP No. 40 .................................................................................... 30

        1.    Plaintiff's Contentions and Points and Authorities .......... 30

        2.    USA's Contentions and Points and Authorities................. 32

        3.    Proposed Resolutions During the Rule 37-1 Conferences and
Related Correspondence ................................................... 37

I.    **Introductory Statements**

    A.                **Plaintiff's Introductory Statement**

*Factual Background of the Case*: Plaintiff Martin Vargas is the eldest son of Martin Vargas Arellano, who tragically died after contracting COVID-19 in U.S. Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto") due to repeated failings by Defendant USA and its contractors, the GEO Group ("GEO") and Wellpath, to abide by their duties of care. Dkt. 71 at ¶¶20-21.

Mr. Vargas Arellano immigrated to the U.S. when he was two. *Id*. at ¶72. On May 15, 2013, ICE placed him in immigration removal proceedings. *Id*. at ¶73. Because he suffered from serious mental illness, he was a member of a class of detainees in *Franco-Gonzalez v. Holder*, and was appointed a lawyer in immigration proceedings because he was not competent to represent himself. *Id*. at ¶75. In addition to having had severe psychiatric illness, he also suffered from chronic health conditions including high blood pressure, diabetes, cellulitis, and liver disease. *Id*. at ¶87.

From 2019 through the eve of his death on March 8, 2021, Mr. Vargas was in immigration custody at the Adelanto Detention Center. *Id*. at ¶ 4. In March 2020, following the COVID-19 outbreak, ICE issued a series of mandates requiring detention facilities to manage and limit the spread of COVID-19. *Id*. at ¶¶59. In addition, the Adelanto detention facility was subject to multiple class action lawsuits which imposed additional COVID-19-related obligations, including *Roman v. Wolf*, which was filed on April 13, 2020, and *Fraihat v. ICE*. *Id*. at ¶5, Ex. A. In both of these cases, the courts imposed on ICE procedures for the prompt release of medically vulnerable detainees like Mr. Vargas Arellano. *Id*. However, ICE delayed and then denied Vargas Arellano's release requests, including shortly before he contracted COVID-19 and died from it in March 2021. *Id*. at ¶92.

Because of Defendants failure to adequately abide by these and other operative COVID-19 mandates, on December 10, 2020, Mr. Vargas Arellano tested positive for COVID-19. *Id*. at ¶117. Between December 11, 2020 and February 27, 2021, he endured

persistent COVID-19 symptoms, was in and out of the Adelanto infirmary, and was repeatedly hospitalized. *Id.* at ¶¶ 120-128. On or about February 19, 2021, Wellpath medical professionals informed ICE that Mr. Vargas Arellano was at risk of "'sudden death' due to multiple ailments … in the wake of COVID-19 infection." *Id.* at ¶ 129. Only then did ICE initiate plans to release him. *Id.* However, by February 26, 2021, he suffered a stroke that caused brain death. *Id*. at ¶ 132. On March 5, 2021, Adelanto ICE staff released him from custody while he was in the hospital, where he passed away three days later on March 8, 2021. *Id*. ¶¶ 133-134.

On March 23, 2021, the *Roman* Court ordered the Special Master to investigate the circumstances leading to Mr. Vargas Arellano's Death. Ex. B. Shortly thereafter, on March 30, 2021, DHS's Office of the Principal Legal Advisor ("OPLA") issued ICE an email containing a broad "Preservation Notice" "in relation to the death of Martin Vargas Arellano, as it may potentially give rise to a claim for damages against the United States." Ex. C, at 1. It required ICE to retain "[a]t a minimum, all documents [including Electronically Stored Information (ESI)] related to Mr. Vargas Arellano's detention, medical care and hospitalizations, and any and all documents related to his death, or investigation and reports related to his death, or investigation and reports related thereto, must be preserved." *Id*. OPLA also asked ICE to distribute the March 30 letter to "all ICE employees whom you believe may have documents subject to this notice, as well as any other subordinates, tech support providers, and other personnel who may have possession of or control over information or evidence about this matter." *Id*. On April 1, 2021, Plaintiff issued GEO a document preservation letter related to this case, Ex. D, and filed his initial complaint on March 7, 2023. Dkt. 1.

**Summary of Discovery Disputes**: As also discussed in Plaintiff's concurrently filed Motion to Compel against Defendant GEO, in support of is negligence and detention standards claims, Plaintiff seeks information about whether Defendants complied with their obligations to minimize the spread of COVID-19 at Adelanto. Critical to these claims is video surveillance and an understanding of physical locations

where Mr. Vargas Arellano was housed and frequented at Adelanto, in order to determine whether Defendants were complying with their obligations.

For these reasons, Plaintiff seeks a Court Order requiring Defendant USA to produce (1) documents related to its document retention obligations in this case, and the related *Roman v Wolf* case; (2) any video surveillance of locations where Mr. Vargas Arellano frequented at Adelanto in November 2020 through February 2021, and (3) floor plans of the locations of the Adelanto Detention Center that Mr. Vargas Arellano frequented between November 2020 through February 2021, including his housing units including their associated common areas, bathrooms and dining facilities, the medical and psychiatric infirmary and any observation rooms where he was seen, and any hallways or thoroughfares through which he would have been escorted to and from the aforementioned locations.

**B.    The United States' Introductory Statement**

Plaintiff demands an order compelling the United States to produce three categories of materials allegedly relevant to Plaintiff's counsel's unsupported theory that GEO has spoliated video surveillance of Adelanto. All three requests must be denied for multiple reasons.

First, Plaintiff demands an order compelling the United States to produce its document retention policies relating to video surveillance and litigation hold related documents for this case and the *Roman* case. Plaintiff failed to meet L.R. 37-1's requirements of conferring on all issues raised in this motion to compel, and on that basis, his demand for an order compelling such documents must be denied. Nevertheless, Plaintiff is not entitled to an order compelling production of either category of documents. As to the former, the United States has already agreed to produce ICE's document retention policies, including those related to video surveillance. The record submitted in connection with this motion makes clear that Plaintiff *already has* the document retention policy applicable to video surveillance. The latter sought documents, the litigation hold documents, are squarely privileged and Plaintiff's demand must be

6

denied. Thus, there is nothing to compel because the United States has already agreed to produce and/or Plaintiff already has all of the documents in the first category to which he is entitled.

Second, Plaintiff demands that the Court order the United States to produce video surveillance of Adelanto for the September 2020 to March 2021 time period. Plaintiff is well aware, however, that these videos are in the possession of GEO, not the United States. The United States agreed to search for and produce any such videos that GEO provided to OIG and/or CRCL and which either agency retained. Accordingly, Plaintiff's second request must be denied.

Third, Plaintiff demands that the Court order the United States to disclose the layout of an operating detention facility, but does not explain why disclosure of such highly sensitive information is necessary. Such disclosure poses a tangible threat to the safety and security of the facility, as the *Roman* court itself noted, especially here, which involves a single wrongful death case. And while the *Roman* court ultimately found that the relevance of the Adelanto schematics to the class-wide injunctive relief sought by all Adelanto detainees in the midst of a global pandemic justified their disclosure, Plaintiff has not made and cannot make such a showing here. Even if the layout documents were relevant to Plaintiff's claims (which they are not) any such relevance is dwarfed by the legitimate safety and security risk posed by their disclosure.

Accordingly, for the reasons explained herein, Plaintiff's motion must be denied.

## II.    Joint Specification of Disputes

### A.    RFP Nos. 22, 57

**RFP No. 22:** All DOCUMENTS RELATING TO any DOCUMENT retention policy YOU maintain, including but not limited to any instruction YOU issued to preserve DOCUMENTS related to this case.

**Response to RFP No. 22:** Defendant objects that Request for Production No. 22 is vague and ambiguous with respect to the terms "relating to," "retention policy," "maintain," "instruction," "issued," "preserve," and "related to this case." Defendant

further objections to Request for Production No. 22 as overbroad, not proportionate to the needs of the case, and as calling for information protected by the attorney work product doctrine, and/or attorney-client privilege.

Subject to and without waiving the foregoing objections, Defendant respond as follows: Defendant will produce responsive non-privileged documents.

**RFP No. 57:** All DOCUMENTS RELATED TO any litigation hold, DOCUMENT preservation notice, or direction to cease routine or scheduled destruction of DOCUMENTS in response to the anticipated or pending ROMAN litigation.

**Response to RFP No. 57:** The United States objects that Request for Production No. 57 is vague and ambiguous with respect to the terms "RELATED TO," "litigation hold," "DOCUMENT preservation notice," "direction to cease routine ... destruction of DOCUMENTS," "direction to cease ... scheduled destruction of DOCUMENTS," "in response to the anticipated ... ROMAN litigation," and "in response to the ... pending ROMAN litigation." The United States objects that Request for Production No. 57 is overbroad, vague, and ambiguous with respect to scope and time and is unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS RELATED TO" any oral or written direction regarding preservation of documents for a different case. The United States also objects to Request for Production No. 57 to the extent that it requires the United States to obtain documentation from a third party. The United States further objects to Request for Production No. 57 to the extent it seeks documents or communications protected by the attorney-client privilege and/or attorney work product doctrine.

## 1.    Plaintiff's Contentions and Points and Authorities

Plaintiff is entitled to any document retention instructions, particularly as applicable to preservation of video surveillance, that USA issued related to this case and the *Roman* case, whose subject matter overlaps with this case. In its first set of RFPs, Plaintiff asked USA to produce USA's document retention policies applicable to this case. Tolchin Dec. Ex. E, at 10. In response, though USA lodged a number of boilerplate objections, it stated that it "will produce responsive non-privileged documents." *Id*. Ex. F, at 21. However, to date, USA has failed to do so. Similarly, RFP No. 57 seeks any document preservation instructions related to the *Roman* litigation. *Id*. Ex. G at 9. However, in response to this RFP, USA objected and also refused to produce any responsive documents. *Id*. Ex. H, at

15.

These documents are relevant to this case given GEO's admitted destruction of video surveillance, and the propriety of that destruction given the highly probative value of video surveillance to a number of issues in this case. *See* Dkt. 98 ("The court agrees that GEO must provide []verification of its video surveillance policy" and "orders GEO to produce evidence of [that policy]."). Among them are how and by who Mr. Vargas Arellano was exposed to COVID-19 and whether Defendants met their standards of care they owed to him in relation to taking the necessary precautions to protect him from contracting COVID-19 and providing him the appropriate care to assist his recovery from it.

Among the specific documents Plaintiff seeks is the version of the document retention policy applicable to "video surveillance" in effect at times relevant to this case, including the 2020-2021 time period. Prior to the Parties' Parties Rule 37-1 conference, Plaintiff sent USA two letters – on September 12 and 20, 2024 – referencing a series of discovery requests, including RFP Nos. 22 and 57, seeking "video surveillance tapes for Adelanto, and information regarding the maintenance and retention of these video tapes, from at least September 2020 through March 2021." Tolchin Dec. Exs. I, K.

At the Parties' September 23, 2024 Rule 37-1 conference regarding these RFPs, USA refused to engage on whether it had an obligation to produce its document retention policies as they relate to preservation of video surveillance, taking the omnibus position as to all of the discovery requests at issue that USA "never had" any videos related to the case, *id.* Ex. M, an apparent reference to the fact that GEO and not USA maintained the video surveillance at Adelanto. *See id*. Ex. N, at 1 (USA states to Plaintiff: "as we have repeatedly explained, you would have to check with GEO as to whether it retained videos"). However, this position is contradicted by the language of the contract between USA and GEO, which makes clear that regardless of whether GEO is tasked with retaining all documents related to contract performance "[a]ll records will remain the property of

1    the U.S. Government." *Id.* Ex. O, at USA008316.[1]

2        Regardless of USA's incredulous position that it never had any videos related to

3    this case, this is no reason to refuse to produce the document retention policies (including

4    those related to retention of video surveillance) at issue here. In its final meet and confer

5    letter on this issue, USA wrongly claims that "[Plaintiff's] September 12 letter did not

6    identify putatively deficient document productions." *Id.* Ex. N, at 2. In fact, Plaintiff's

7    September 12, 2024 letter informed USA that it apparently had not produced "all relevant

8    record retention policies." *Id.* at Ex. I, at 2. Further, in response to USA's request for

9    clarification about the remedy Plaintiff would seek for this omission in any motion to

10   compel, to the extent that letter was not clear (which Plaintiff disagreed), Plaintiff's

11   September 20, 2024 letter made clear that he would be seeking disclosure of the document

12   retention policies under Fed. R. Civ. P. 37(a)(5). *Id.* Ex. K, at 1. Moreover, in Plaintiff's

13   September 12, 2024 letter, Plaintiff specifically referenced a December 6, 2023 version of

14   ICE's video surveillance retention policy specifically, and attached a copy of it, to

15   demonstrate the types of documents Plaintiff sought in response to these RFP Nos. 22 and

16   57. *Id.* Ex. I, at 27.

17       That USA should have documents related to its document retention policies related

18   to this case is further confirmed by a March 30, 2023 OPLA email issued to ICE, asking

19   that it preserve a broad range of documents related to the death of Mr. Vargas Arellano,

20   without exclusion of video surveillance. *Id.* Ex. C.  However, USA has failed to produce

21   any documents showing ICE ERO staff at Adelanto received this instruction to preserve

22   such responsive documents, which they should have. First, the OPLA email states in the

23   first line "YOU must click this hyperlink in order to confirm receipt of this Preservation

24   Notice: click here." *Id.* at 1. USA must search OPLA's files to obtain documentation of

25   any receipt of this OPLA Preservation Notice by anyone at ICE, GEO and Wellpath, and

26

27

---

[1] As also referenced in the concurrently filed Motion against GEO, video surveillance constitutes "documents related to contract performance" as specified in the operative contract between USA and GEO. *Id.* at USA008316

1    produce those documents to Plaintiff. Importantly, in support of the likelihood that the
2    OPLA Preservation Notice was sent to GEO and Wellpath, the OPLA email admonished
3    its recipients to send the Preservation Notice to "all ICE employees whom you believe
4    may have documents subject to this notice, as well as any other subordinates, tech support
5    providers, and other personnel who may have possession of or control over information or
6    evidence about this matter." *Id.* As such, relevant Adelanto ICE ERO staff would surely
7    have sent the email to GEO who undisputedly maintains video surveillance and other
8    relevant documents related to operations at Adelanto.

9        Finally, regarding RFP No. 57, specifically seeking USA's document preservation
10    instructions issued in connection with the *Roman* case, each of Plaintiff's September 12,
11    20, and 24, 2024 letters addressed USA's unjustified objections to producing the requested
12    documents, which USA has failed to overcome. First, USA objected to producing
13    documents in response to this request "to the extent that it requires the United States to
14    obtain documentation from a third party." *Id.* H, at 15. As the Parties discussed at the
15    September 23, 2024 Rule 37-1 conference, USA appears to be taking the position, as it did
16    with a number of its RFA responses, that it has not duty to respond to this request because
17    USA was not a party to the *Roman* litigation. In response, Plaintiff explained why USA is
18    wrong about this position, including because the federal agency officials sued in *Roman*
19    were acting in their official capacity as part of agencies of the USA. Tolchin Dec. at ¶ 16.

20        Specifically, *Roman* was not a lawsuit filed against government officials acting in
21    their individual capacities, but rather in their official capacities, and a suit "against a
22    governmental officer in his official capacity is equivalent to a suit against the
23    governmental entity itself." *Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2001). To be
24    clear, the *Roman* litigation was filed against the following Defendants: "Chad F. WOLF,
25    Acting Secretary, U.S. Department of Homeland Security; Tony H. Pham, Senior Official
26    Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; David
27    Marin, Director of the Los Angeles Field Office, Enforcement and Removal Operations,
      U.S. Immigration and Customs Enforcement; James Janecka, Warden, Adelanto ICE

Processing Center" as a class action seeking declaratory, injunctive, and habeas relief. *Hernandez Roman v. Wolf*, 829 F. App'x 165 (9th Cir. 2020). Tolchin Dec. Ex. A. Moreover, as Defendant USA is aware, the only defendant that may be named in an FTCA case is the USA. 28 U.S.C. § 2679(a); *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *Shelton v. United States Customs Service*, 565 F.2d 1140, 1141 (9th Cir.1977). Hence, neither ICE nor the government officials listed in *Roman* could have been named in this lawsuit.[2] As such, objecting to Plaintiff's RFP No. 57 on the grounds that the USA was not a party to Roman and would therefore need to seek information from a "third party" is contrary to precedent and frivolous.

In its last letter on this matter, the United States confirms the well-established case law that suing the United States in its official capacity is equivalent to suing the United States in the FTCA context but asserts that this "does not make them the same in every legal context." Tolchin Dec. Exh. N, at 1. The letter goes on to demonstrate the differences between the FTCA and official capacity cases by highlighting the various jurisdictional limitations of habeas corpus and other claims against Federal Officers in their official capacity. None of this bears on the central point here: when a Federal official is sued in their official capacity, the United States is considered the real party to the case for discovery purposes, and almost every purpose other than jurisdiction. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985)("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, *in all respects other than name*, to be treated as a suit against the entity. It is *not* a suit against the official personally, *for the real party in interest is the entity*.")(emphasis added).

Notwithstanding USA's above claim that it is not obligated to produce documents

---

[2] Caselaw is clear that an FTCA suit challenging the actions of federal officials employed by the U.S. government is properly filed against the United States. 28 U.S.C. § 2679(b); *Rodriguez v. United States*, 542 F.3d 704, 708 (9th Cir. 2008); *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995); *Brandes v. United States*, 783 F.2d 895, 897 (9th Cir. 1986). The only exception to this rule is when a suit is filed against a government official in their individual, as opposed to official capacity. *Hayes v. Rojas*, No. 120CV01820NONEJLT, 2021 WL 5356471, at *5 (E.D. Cal. Nov. 17, 2021). However, that is not the case in *Roman*.

in response to RFP 37, it further makes the disingenuous claim belied by the record that Plaintiff's September 12 or 24, 2024 letters do not "identif[y] or explain[]" what Plaintiff is asking for. Tolchin Dec. Exh. N, at 2. RFP 57 is both clear on its face that it seeks "All DOCUMENTS RELATED TO any litigation hold, DOCUMENT preservation notice, or direction to cease routine or scheduled destruction of DOCUMENTS in response to the anticipated or pending ROMAN litigation." *Id.* Ex. G, at 9. As Plaintiff explained in its September 20, 2024 letter "[t]his request is relevant to USA's failure to produce documents that should have been preserved in anticipation of and during the *Roman* litigation. These documents are also relevant here, including video surveillance related to the claims, defenses and issues in this case… USA refused to produce documents responsive to RFP No. 57 based on unsubstantiated objections, and also failed to produce an appropriate privilege log. Unless USA agrees to produce the outstanding information … Plaintiff will file a motion to compel production of the documents…under Fed. R. Civ. P. 37(a)(3)(B)(iv), 37(a)(4), and 37(a)(5)(A)." *Id.* Ex. K, at 2-3.

### 2.    USA's Contentions and Points and Authorities

Plaintiff's first demand is for an order compelling production of both document-retention policies and litigation holds. Plaintiff claims both categories of documents are relevant to GEO's retention of video surveillance footage of Adelanto. Plaintiff's demand must be denied for multiple reasons.

#### a.    Plaintiff Failed to Meet and Confer Regarding His Demand for Document Retention Policies and Litigation Hold Related Documents.

Plaintiff did not meet and confer regarding this issue before filing the instant motion as required by L.R. 37. While Plaintiff's counsel's September 12 letter referenced RFPs Nos. 22 and 57 in passing, it did not state that Plaintiff was challenging the United States' productions in response to such discovery. *See* Tolchin Ex. I at 2. Indeed, in Plaintiff counsel's subsequent letter, in which counsel purportedly attempted to clarify what requests would be at issue in Plaintiff's forthcoming motion to compel, counsel did not identify RFP No. 22 or 57 as among the litany of discovery requests that

1  Plaintiff intended to move to compel. *See id.* Ex. K at 1 ("As clearly set forth in our

2  [September 12] letter, we would seek court remedies for [the United States' responses

3  to]: … 'Requests for Admissions … Numbers 1 18, 28, 29, [and] 31'" and "'(RFP) Nos.

4  2, 3, 19, 21, 31, 32, 33, 34, 35, 36, 47, and 48, Interrogatory No. 21, and RFA Nos. 23,

5  24, 25, 26, 29, and 31.").

6       Moreover, while the parties did discuss the RFPs tangentially during the

7  September 23 conference, Plaintiff's assertions regarding the substance of that

8  discussion are fabricated. In fact, Plaintiff noted that the United States had agreed to

9  produce non-privileged documents in response to RFP No. 22 but did not further address

10  that RFP or the United States' response to it. Declaration of Shaina C. St John ("St John

11  Decl.") ¶ 2. Thereafter, the parties discussed RFP No. 57, which sought litigation holds

12  and related documents for the *Roman* litigation. *Id.* Plaintiff's counsel acknowledged that

13  the United States was not a party to the *Roman* litigation, but asserted that it should be

14  considered to be the same as the *Roman* Respondents. *Id.* The United States explained

15  that authority held to the contrary and that its response to RFP No. 57 was complete and

16  accurate such that no further response was necessary. *Id.* Plaintiff's assertion that during

17  the conference the United States claimed it had no obligation to respond to RFP No. 57

18  is therefore false (*id.*) as well as at odds with the record Plaintiff submits in connection

19  with this motion which demonstrates that the United States responded to RFP No. 57 on

20  September 3. Tolchin Ex. H at 14-15; *see also* Tolchin Ex. N at 1-2. Following the meet-

21  and-confer, the United States sent Plaintiff a letter citing the relevant authority and

22  explaining the difference between a suit brought against an official for prospective relief

23  regarding an action taken in her official capacity (such as the *Roman* class action) and an

24  FTCA case brought against the United States alleging tort liability (such as this case) and

25  why they were not inherently the same. *See* Tolchin Ex. N at 1-2. It also explained that,

26  because the *Roman* Respondents were <u>not</u> the same as the United States, the United

27  States' response to RFP No. 57 is complete and accurate. *Id.* at 2-3. Plaintiff did not

respond to this letter. St John Decl. ¶ 3.

Accordingly, Plaintiff failed to meet the L.R. 37 conference requirements regarding either inquiry before pursuing Court intervention, and his challenge as to these documents should be denied.

### b. Demand for an Order Compelling Production of ICE's Document Retention Policies Applicable to Video Surveillance Is Moot.

To the extent Plaintiff demands an order compelling production of ICE's document retention policies applicable to video surveillance, he is demanding production of documents the United States has already agreed to provide and that Plaintiff already has. Plaintiff admits, as he must, that the United States agreed to produce non-privileged documents responsive to RFP No. 22, which includes ICE's document retention policy regarding video surveillance because they are a matter of public record.[3] *See supra*; Tolchin Ex. F at 20-21. Moreover, Plaintiff's evidence in support of this motion establishes that Plaintiff *already has* a copy of the ICE document retention policy applicable to video surveillance.[4] Tolchin Ex. I at 27-33. Therefore, Plaintiff's demand is moot.

### c. Plaintiff's Demand for Litigation Hold Related Documents Must Be Denied Because It Seeks Privileged Information That Is Not Discoverable.

Plaintiff's demand for an order compelling production of the United States' litigation holds and related documents must be denied because such documents are squarely privileged and not discoverable. *See Thomas v. Cricket Wireless*, 2020 WL 7344742, at *2 (N.D. Cal. Dec. 14, 2020) ("litigation holds like the ones [plaintiffs] seek here are normally considered privileged and generally are not discoverable."); *accord PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 4088201, at *3-4 (N.D. Cal. Aug. 19, 2014) (denying motion to compel production of defendant's "litigation hold notices

---

[3] This policy is a matter of public record available on the internet. *See* https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-homeland-security/rg-0567/daa-0567-2023-0002_sf115.pdf.

[4] Notwithstanding the fact that the sought document retention policy is a matter of public record and already in Plaintiff's possession, the United States agrees to produce a Bates-stamped copy of the policy.

issued in this case, or documents and information sufficient to identify the content of [defendant's] litigation hold notices" and concluding that "the litigation hold notice itself is protected as attorney-client communications and/or work product"); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) (denying motion to compel production of "documents concerning Defendants' efforts to 'maintain, search for and preserve all documents' and things related to this action" because "Defendants are correct that preservation notices, if prepared by counsel and directed to the client, are protected by the attorney-client privilege.").

    *d.*    **Plaintiff's Demand for Litigation Hold Related Documents Must Be Denied Because It Seeks Documents Relating to Another Party's Litigation Hold in Another Case.**

In addition to being privileged, Plaintiff demands that the United States produce documents relating to another party's litigation hold in another matter (RFP No. 57). While Plaintiff argues that the *Roman* Respondents are effectively the same as the United States, in doing so he admits (as he must) that they are not, in fact, the same. A suit which is brought against an official for prospective relief regarding an action taken in her official capacity, is not considered to be a suit against the sovereign if the plaintiff maintains that the official has performed acts that are unconstitutional or beyond her statutory authority (as alleged in *Roman*). *See Pollack v. Hogan*, 703 F.3d 117, 119-20 (D.C. Cir. 2012) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) (explaining that actions that transgress constitutional or statutory limitations are deemed individual and not sovereign actions); *accord Dugan v. Rank*, 372 U.S. 609 (1963).[5] Conversely, it is well-established that the United States has never waived its sovereign immunity for tort liability arising from unconstitutional actions by federal officers, whether they are sued in their official capacity or otherwise, and so it may never be sued in tort for such constitutional violations. *See Pesnell v. United States,* 64 F.

---

[5] That is why, for example, immigration cases commonly sue directors or officers in their official capacity, alleging that they lack constitutional or statutory authority for their challenged actions, and seek injunctive or declaratory relief in that regard. *See Adams v. United States*, 420 F.3d 1049, 1054 (9th Cir. 2005).

App'x 73, 74–75 (9th Cir. 2003). Indeed, an inmate/detainee seeking release through a habeas petition from allegedly unconstitutional confinement cannot sue the "United States," or any federal officer or director in his/her official capacity, but must sue by name the specific respondent officer who actually has immediate custody over the petitioner; failure to do so divests the district court of jurisdiction over such an action. *Doe v. Garland*, 109 F.4th 1188, 1194–97 (9th Cir. 2024) (A district court lacks jurisdiction where a Petitioner challenges his "physical confinement" but fails "to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."); *id.* at 1194-95 (petitioner's "failure to name the Facility Administrator [as a Respondent] renders the district court's exercise of jurisdiction [over a habeas petition] erroneous.").[6]

Accordingly, as the United States has agreed to produce and Plaintiff admits that he already has all non-privileged documents responsive to RFP No. 22 and 57, his demand for an order compelling production is moot. Moreover, his demand for an order compelling production of privileged documents allegedly responsive to these requests must be denied.

### 3. Proposed Resolutions During the Rule 37-1 Conferences and Related Correspondence

#### a. Plaintiff's Proposed Resolution and Request for Relief

Plaintiff proposes that USA should be required to search for and produce documents responsive to RFP Nos. 22 and 57, including but not limited to the following documents: (1) All ICE document retention policies applicable to ICE, GEO and Wellpath's operations at Adelanto in the period 2020 and 2021;

(2) All ICE document retention policies specific to preservation of video surveillance and

---

[6] Plaintiff's cited authority does not hold to the contrary. While *Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2011) stated that "[a] suit 'against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself,'" it involved allegations of wrongful retaliation by Idaho state prison officers. The question there was whether there was a sufficient causal nexus between such retaliatory acts by prison officers and the higher-level named defendants for purposes of issuing injunctive relief against them in their official capacities.

applicable to ICE, GEO and Wellpath's operations at Adelanto in the period 2020 and 2021;

(3) All litigation hold, document preservation and/or document retention notices, instructions, and/or directions related to this case, and documents referencing all ICE, GEO and Wellpath staff who received copies of these notices, instructions and/or direction;

(4) All litigation hold, document preservation and/or document retention notices, instructions, and/or directions related to the *Roman* litigation, and documents referencing all ICE, GEO and Wellpath staff who received copies of these notices, instructions and/or direction;

(5) The March 30, 2021 OPLA email issuing a "Preservation Notice" related to the death of Mr. Vargas Arellano, and documents referencing all ICE, GEO and Wellpath staff who received copies of this Preservation Notice.

### b.    USA's Proposed Resolution

Having failed to meet the pre-filing requirements of L.R 37-1, Plaintiff's first request for relief should be denied in full. Moreover, even if Plaintiff had fulfilled his meet-and-confer obligations (which he did not), he admits that the United States has agreed to produce and/or he already has in his possession all non-privileged responsive documents to which he is entitled. His demand for an order compelling the United States to produce privileged documents relating to the United States' litigation holds is improper and must be denied. Accordingly, the Court should deny Plaintiff's demand for an order compelling production in response to RFPs Nos. 22 and 57.

### B.    RFP Nos. 2, 3, 19, 21, 22, 31, 32, 33, 35

**<u>RFP No. 2</u>**: All DOCUMENTS RELATING TO the death of VARGAS-ARELLANO, including but not limited to COMMUNICATIONS between YOU and any other PERSON RELATED TO his death; any investigation into his death; any Office of Professional Responsibility reports RELATED TO his death; any action items, corrective action plans, or policy changes resulting from or RELATED TO his death; and statements from any PERSON, including but not limited to YOU, GEO or WELLPATH RELATED TO his death.

**Response to RFP No. 2**: Defendant objects that Request for Production No. 2 is vague and ambiguous with respect to the terms "[a]ll DOCUMENTS RELATING TO the death of VARGAS- ARELLANO." Defendant objects that Request for Production No. 2 is also overbroad, vague, and ambiguous. Additionally, Request for Production No. 2 is unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS" and "COMMUNICATIONS" "RELATING TO" the stated subject matters. Defendant further objects to Request for Production No. 2 to the extent it seeks documents outside of Defendant's custody or control that Plaintiff has equal or greater access to than Defendant. Defendant also objects to Request for Production No. 2 to the extent that it requires Defendant to obtain information that is not in Defendant's possession, custody, or control from a third party, including but not limited to Defendants GEO and/or Wellpath. Defendant further objects to Request for Production No. 2 to the extent it seeks documents or communications protected by attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Defendant respond as follows: Defendant will produce relevant, non-privileged responsive documents within its possession, custody, and control.

**RFP No. 3**: All DOCUMENTS including COMMUNICATIONS RELATING TO the medical treatment standards, including duties of care, owed to detainees at ADELANTO and any changes thereto from 2015 to the present, including but not limited to YOUR policies, practices, protocols, guidelines, rules, training materials, instructional materials, syllabi, curricula, reporting, post orders, and staffing levels RELATING TO the medical treatment standards; and any warnings, reprimands and/or disciplinary action taken against any PERSON related to violation of those medical treatment standards.

**Response to RFP No. 3**: Defendant objects that Request for Production No. 3 is vague and ambiguous and overbroad in asking for all documents relating to medical treatment standards for any conditions at Adelanto. Request for Production No. 3 is also overbroad and unduly burdensome as it seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS" and "COMMUNICATIONS" "from 2015 to the present" "RELATING TO" the stated subject matters, when Mr. Arellano was released from custody in 2014, placed in ICE custody again in April 2019, and died on March 8, 2021 (see FAC ¶¶ 3, 62-63) and because it seeks documents and information relating to any policies, practices, protocols, guidelines, rules, training materials, instructional materials, syllabi, curricula, reporting, post orders, and staffing levels relating to any medical treatment standards, and because it seeks documents and information relating to any warnings, reprimands and

disciplinary action taken against any person for violation of any medical treatment standards, and not just any such warnings, reprimands, or disciplinary action taken against persons relating to violation of relevant medical standards at Adelanto. Defendant further objects to Request for Production No. 3 to the extent it seeks documents outside of Defendant's custody or control that Plaintiff has equal or greater access to than Defendant. Defendant also objects to Request for Production No. 3 to the extent that it requires Defendant to obtain information that is not in Defendant's possession, custody, or control from a third party, including but not limited to Defendants GEO and/or Wellpath. Defendant further objects to Request for Production No. 3 to the extent it seeks documents or communications protected by attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Defendant respond as follows: Defendant will produce relevant, non-privileged responsive documents within its possession, custody, and control.

**RFP No. 19:** All DOCUMENTS including COMMUNICATIONS RELATING TO DETENTION STANDARDS, including but not limited to compliance with those DETENTION STANDARDS; all complaints lodged against YOU, GEO or WELLPATH for violating the DETENTION STANDARDS; any training provide to any PERSON, including YOU, GEO and/or WELLPATH, RELATED TO the DETENTION STANDARDS; and any warnings, reprimands and disciplinary action taken against any PERSON related to the DETENTION STANDARDS.

**Response to RFP No. 19**: Defendant objects that Request for Production No. 19 is vague and ambiguous with respect to the terms "relating to," "detention standards," "compliance," "complaints," "lodged against," "violating," "training," "warnings," "reprimands," and "disciplinary action." Request for Production No. 19 is also overbroad, vague, and ambiguous with respect to scope and time and is unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS including ANY COMMUNICATIONS" between any persons or entities without limitation relating to the stated subject matters at any time with respect to any detention facility and is not limited in any way to a time period relevant to Mr. Arellano's most recent detention, contraction of COVID-19, or death, or the Adelanto detention facility. Defendant further objects to Request for Production No. 19 to the extent that it requires Defendant to obtain information that is not in Defendant's possession, custody, or control from a third party. Defendant further objects to Request for Production No. 19 to the extent it seeks documents or communications protected by the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or attorney work product doctrine.

Subject to and without waiving the foregoing objections, Defendant respond as follows: Defendant will produce relevant, non-privileged responsive documents within its possession, custody, and control.

**RFP No. 21:** All DOCUMENTS RELATING TO any complaints about detention conditions at ADELANTO from January 2020 to the present, including COMMUNICATIONS about those complaints, investigations into those complaints, and any reports of those investigations.

**Response to RFP No. 21:** Defendant objects that Request for Production No. 21 is vague and ambiguous with respect to the terms "relating to," "complaints," "detention conditions," "investigations into [the subject] complaints," and "reports of [the subject] investigations." Request for Production No. 21 is also overbroad, vague, and ambiguous with respect to scope and time and is unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS RELATING TO any complaints" made by any person or entity about any other person or entity on any matter whatsoever at a large facility with thousands of people. Defendant further objects to Request for Production No. 21 to the extent it seeks documents outside of Defendant's custody or control that Plaintiff has equal or greater access to than Defendant, including information from Plaintiff himself. Defendant further objects to Request for Production No. 21 to the extent that it requires Defendant to obtain information that is not in Defendant's possession, custody, or control from a third party, including but not limited to Defendants GEO and/or Wellpath. Defendant further objects to Request for Production No. 21 to the extent it seeks documents or communications protected by the Privacy Act, attorney-client privilege, law enforcement privilege, deliberative process privilege, attorney work product doctrine, and/or any statutory or legal basis precluding disclosure.

Subject to and without waiving the foregoing objections, Defendant respond as follows: Defendant will not and cannot produce all documents related to every complaint on any subject that any person ever made regarding conditions at the Adelanto facility from January 1, 2020 to the present. The request is overbroad, unduly burdensome, and not reasonably drafted to address the issues involved in this case.

**RFP No. 22:** All DOCUMENTS RELATING TO any DOCUMENT retention policy YOU maintain, including but not limited to any instruction YOU issued to preserve DOCUMENTS related to this case.

**RFP No. 31:** All DOCUMENTS RELATING TO any contract tracing YOU or any other PERSON, including GEO and WELLPATH, conducted to assess how any

individual physically present at ADELANTO could have contracted Covid-19, including but not limited to any policies, practices, protocols, guidelines, rules, training materials, instructional materials, syllabi, curricula, reporting, and other DOCUMENTS including but not limited to COMMUNICATIONS RELATING TO contract tracing.

**Response to RFP No. 31:** Defendant objects that Request for Production No. 31 is vague and ambiguous with respect to the terms "relating to," "conducted," "assess how," "could have contracted." Request for Production No. 31 is overbroad, vague, and ambiguous with respect to scope and time and is unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS" and "COMMUNICATIONS" relating to all contact tracing[7] conducted at Adelanto for "any individual," rather than being tailored to contact tracing that would apply to Martin Vargas Arellano's contracting of COVID-19 and the Plaintiff's claim regarding it. Defendant also objects to Request for Production No. 31 to the extent that it requires Defendant to obtain information from a third party, including Defendants GEO and/or Wellpath. Defendant further objects to Request for Production No. 31 to the extent it seeks documents or communications protected by the attorney-client privilege and/or attorney work product doctrine.

Without waiving and subject to the aforementioned objections, the United States responds as follows: Defendant will produce relevant, non-privileged responsive documents within its possession, custody, and control.

**RFP No. 32**: All DOCUMENTS, including COMMUNICATIONS, RELATING TO any contract tracing conducted by any PERSON, including YOU, GEO and WELLPATH, to assess how VARGAS ARELLANO contracted Covid-19 on or about December 10, 2020.

**Response to RFP No. 32**: Defendant objects that Request for Production No. 32 is vague and ambiguous with respect to the phrase "relating to." Defendant also objects to Request for Production No. 32 to the extent that it requires Defendant to obtain information from a third party, including Defendants GEO and/or Wellpath. Defendant further objects to Request for Production No. 32 to the extent it seeks documents or communications protected by the attorney-client privilege and/or attorney work product doctrine.

Without waiving and subject to the aforementioned objections, the United States responds as follows: Defendant will produce relevant, non-privileged responsive

---

[7] Plaintiff's Request for Production seeks documents relating to "contract tracing" rather than "contact tracing," which Defendant understands to be a typographical error. If that understanding is incorrect, please let Defendant know.

1    documents within its possession, custody, and control.[8]

2    **RFP No. 33**: All DOCUMENTS, including COMMUNICATIONS, RELATING TO
3    any contact tracing of the individuals, both staff and detainees, who tested positive for
      Covid-19 who are referenced in the documents titled "APC Daily Housing and Covid-19
4    Status Report" and "COVID-19 – Breakdown Saturation Testing" submitted in Roman
5    v. Wolf, attached as Exhibit A.

6    **Response to RFP No. 33**: Defendant objects that Request for Production No. 33 is
7    vague and ambiguous with respect to the terms "relating to" and "referenced." Request
      for Production No. 33 is also overbroad, unduly burdensome, and seeks information and
8    documentation that is irrelevant and not proportional to the needs of the case insofar as it
9    seeks all documents "relating to" all contact tracing conducted at Adelanto for "any
      individual" who tested positive for Covid-19. Defendant also objects to Request for
10   Production No. 33 to the extent that it requires Defendant to obtain information from a
11   third party, including Defendants GEO and/or Wellpath. Defendant objects to Request
      for Production No. 33 to the extent that it calls for documents for which disclosure is
12   prohibited by the Privacy Act, 5 U.S.C. § 552a, et seq.

13
14   Without waiving and subject to the aforementioned objections, the United States
      responds as follows: Defendant refers Plaintiff to Defendant's response to Request for
15   Production No. 32.

16   **RFP No. 35**: All DOCUMENTS that IDENTIFY what Personal Protective Equipment
17   ("PPE") YOU or any other PERSON, including GEO or WELLPATH, required anyone
      physically present at ADELANTO to wear, including USA staff, GEO staff,
18   WELLPATH staff, and detainees, to prevent the spread of Covid-19 from November 4,
19   2020 to December 10, 2020.

20   **Response to RFP No. 35:** Defendant objects that Request for Production No. 35 is
21   vague and ambiguous with respect to the terms "IDENTIFY,"5 "Personal Protective
      Equipment ('PPE')," "required," "anyone," "physically present," "wear," "prevent the
22   spread of Covid-19 from November 4, 2020 to December 10, 2020." Request for
23   Production No. 35 is also overbroad and unduly burdensome and seeks information and
      documentation that is irrelevant and not proportional to the needs of the case. Request
24   for Production No. 35 is also objectionable to the extent it is an interrogatory phrased as
25   a document request, rather than being directed at existing specific documents. Defendant
26   also objects to Request for Production No. 35 to the extent that it requires Defendant to
      obtain information from a third party, including Defendants GEO and/or Wellpath.
27

---

[8] *See* n.[7], *supra*.

Without waiving and subject to the aforementioned objections, the United States responds as follows: Defendant is still investigating and will produce any relevant, nonprivileged responsive documents within its possession, custody, and control.

### 1.    Plaintiff's Contentions and Points and Authorities

In response to these RFPs, Plaintiff seeks video surveillance tapes for Adelanto from at least September 2020 through March 2021 related to the claims in this case, including but not limited to all video surveillance capturing Mr. Vargas Arellano.[9] As discussed, this video is highly relevant to how Mr. Vargas Arellano contracted COVID-19, the level of care he received as he was attempting to recover from it, and whether Adelanto staff were in compliance with COVID-19 mandates in effect at the time.

Despite USA's claim that it "never had" this video surveillance, Plaintiff specifically asked that USA follow up with DHS's Office of Inspector General, and DHS's Office of Civil Rights and Civil Liberties, both of which conducted investigations into Defendants' compliance with COVID-19 mandates at times relevant to this case. Tolchin Dec. Exs. I, at 3. With respect to OIG, Dkt. 123-1 (pages 251 and 257), its investigation report references review of surveillance video, and USA agreed to ask OIG to provide that video if available. In addition, regarding CRCL, Dkt. 132 (sealed), contains the CRCL expert reports, which reference that the experts participated in "virtual" Adelanto "facility tours." Dkt. 132 at 57, 81, 98, 115, 125. Plaintiff asked that USA inquire with CRCL if those tours were recorded by video, and if so produce responsive portions of them. In addition, while Plaintiff's review of the unredacted portions of the expert reports did not specifically mention that the experts reviewed Adelanto surveillance video as part of their preparation for or during the investigation, given that so much of the reports are redacted, Plaintiff asked that USA inquire with CRCL whether the investigation file contains any

---

[9] As referenced in Plaintiff's September 12, 2024 letter, Plaintiff seeks video surveillance from location including, but not limited to the W5B housing unit, WMed, psych infirmary, medical infirmary, medical observation rooms, or anywhere else that Mr, Vargas Arellano would have been located during his time in Adelanto from November 2020 to February 2021. Tolchin Dec. Ex. I, at 3.

such videos and to the extent they do and are responsive to Plaintiff's above-referenced RFPs, that USA produce them to Plaintiff.

In response, USA represented that it is "looking into whether OIG and/or CRCL ever had any video surveillance tapes for Adelanto and, if so, whether such videos were retained. To the extent any such video surveillance footage of Adelanto exists, was retained by these entities, and relates to the relevant time period, then we will produce them." *Id.* Ex. N, at 2-3. Despite USA's "agreement to produce any such relevant videos that exist and were retained," it has failed to identify when it would get back to Plaintiff on this issue, let alone identify a date certain when it would produce any videos.  As such, a court order requiring USA to do so is necessary.

## 2.     USA's Contentions and Points and Authorities

Plaintiff's demand for an order compelling the United States to produce video surveillance of Adelanto for the September 2020 to March 2021 time period must be denied for two independent reasons. First, because Plaintiff seeks an order from this Court compelling production of videos in response to requests that do not reasonably seek them, it must be denied. Second, even if Plaintiff had served discovery seeking such videos, Plaintiff's request must be denied as moot because the United States has already agreed to search for and produce any such videos that existed and have been retained by OIG and/or CRCL.

> *a.*     **Plaintiff's Demand for an Order Compelling Production of Video Surveillance of Adelanto Must Be Denied Because Such Documents Are Not Sought by His Discovery Requests.**

As they have done repeatedly before, Plaintiff's counsel points to the same battery of grossly overbroad discovery requests they have relied on throughout discovery as encompassing any documents Plaintiff's counsel deems relevant to their most recent theory. This time, they claim that these RFPs seek and mandate production of video surveillance of Adelanto for the September 2020 to March 2021 time period. But pursuant to Plaintiff's own characterization of the requests, they seek no such thing.

1       Plaintiff previously told this Court that RFPs Nos. 19, 21-22, 31 and 35 justified a

2  new sprawling ESI search encompassing nineteen (19) categories of terms—none of

3  which was "video" or "surveillance." *See* Dkt. 111-1 at 28-29. To support his ESI search

4  demand, Plaintiff claimed that these "RFPs … seek information … such as 'defendants'

5  failure to adhere to their own policies … detention standards at the Adelanto facility …

6  and staff present at the facility in the month Mr. … Arellano contracted COVID-19.'" *Id.*

7  at 22-23; *see also id.* at 23-24 (asserting RFPs Nos. 19 and 21 sought documents relating

8  to "detention standards" and "[unidentified] policies and practice [SIC]," respectively,

9  that were "tied to the U[nited States'] duty of care towards all detainees at Adelanto and

10  its role in operating the Adelanto facility.").

11       Likewise, when asking this Court to compel production of materials related to

12  CRCL's investigation of Adelanto, Plaintiff claimed RFPs Nos. 2, 19, 21, and 35 sought

13  documents related to that investigation and/or certain of its findings—not GEO's video

14  surveillance footage of Adelanto. To support this claim, Plaintiff asserted RFP No. 2

15  sought documents "relat[ing] to Mr. … Arellano, including his 'death'" (Dkt. 131-1 at

16  19), "RFP Nos 19 and 21 seek documents related to 'compliance with detention

17  standards,' 'complaints about detention conditions,' and any 'investigations into those

18  complaints, and any reports of those investigations'" (*id.* at 20), and "RFP No[]. 35 …

19  relate[s] to rules regarding wearing appropriate 'Personal Protective Equipment ('PPE')'

20  at Adelanto." *Id.* at 20.

21       In neither of his prior motions to compel did Plaintiff ever claim that any of these

22  RFPs in any way sought video surveillance.

23       Furthermore, review of the RFPs' plain language makes clear that none of these

24  requests seeks the videos Plaintiff now demands. Conspicuously absent from RFPs Nos.

25  2, 3, 19, 21, 22, 31, 32, 33, or 35, are the words "video" or "surveillance." Nor do the

26  requests reasonably describe anything resembling video surveillance. *See e.g.* RFP No. 3

27  (seeking documents and communications relating to the medical treatment standards and

duties of care owed to Adelanto detainees since 2015); RFP No. 21 (seeking all

26

documents and communications relating to complaints about detention conditions at Adelanto since January 2020); RFP No. 22 (seeking all documents relating to the United States' document retention policy). And while the RFPs demand the United States produce all documents "related to" various vague subjects, that is not a reasonably particular description of the category of materials sought as required by Rule 34(b). *See L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 395 (C.D. Cal. 2022) ("The test for reasonable particularity [under Rule 34(b)] is whether the request places a party upon reasonable notice of what is called for and what is not.") (internal quotation marks and citations omitted); *Lopez v. Chertoff*, 2009 WL 1575214, at * 2 (E.D. Cal. 2009) (Lew, J.) (denying motion to compel: "The use of the words 'relating to' and 'referring to' are overly broad because Defendant does not have reasonable notice of what is called for and what is not."); *accord Goose Pond AG, Inc. v. Duarte Nursery*, 2020 WL 4607279 at * 2 (E.D. Cal. 2020).

Accordingly, pursuant to Plaintiff's own prior descriptions and the plain language of the requests at issue, the video surveillance is not reasonably sought by Plaintiff's RFPs Nos. 2, 3, 19, 21, 22, 31, 32, 33, or 35, and Plaintiff's demand for an order compelling their production in response thereto must be denied.

### *b.* **Plaintiff's Demand for an Order Compelling Video Surveillance of Adelanto Is Moot.**

Even if one of the plethora of requests Plaintiff cites in the instant motion had sought video surveillance of Adelanto (it does not), Plaintiff's demand must be denied because he seeks materials that either do not exist or is otherwise moot because the United States has already agreed to and is in the process of obtaining and producing any such videos that existed and were retained by OIG and/or CRCL in connection with their investigations of Adelanto.

Plaintiff admits that the United States already informed them that GEO, not the United States, had possession of the video surveillance of Adelanto. *See* Tolchin Ex. N at 2 ("as we have repeatedly explained, you would have to check with GEO as to whether it

retained videos"). GEO has also made this clear to Plaintiff throughout discovery. In fact, GEO previously provided Plaintiff with a declaration explaining that GEO's "video system permits approximately 90 days of surveillance video to be recorded … before it begins recording over the oldest data in the hard drive" and that, absent "a request to retrieve the video" following occurrence of an incident "such as an assault, a use of force, or a medical emergency[,] …. the hard drive is automatically recorded over after approximately 90 days." St John Ex. 2 ¶¶ 3-4 (Declaration of B. Belt of GEO). Thus, Plaintiff is aware that pursuant to GEO's standard practice, even as of "April 1, 2021 [when] Plaintiff issued GEO a document preservation letter," (Plaintiff Stip. § I.A) any video surveillance relating to the November 2020 time period during which he contracted COVID-19 would have already been recorded over.[10] Plaintiff's demand that the Court compel the United States to produce videos that he knows both are in the possession of another party, and that cannot and do not exist is unwarranted. *See Voskanyan v. Unknown*, 2018 WL 6164257, at *1 (C.D. Cal. Mar. 21, 2018) (denying motion to compel production of video in light of testimony that the "[j]ail adhered to a one-year retention policy for video surveillance, and that the relevant video evidence ha[d] therefore been destroyed" when the party became aware of the video's relevance); *Mitchell v. Haviland*, 2013 WL 5587404, at *7 (E.D. Cal. Oct. 10, 2013) (denying motion to compel video recordings where party attested it did not have because "[t]he court cannot order production of a video recording that does not exist").

The only Adelanto surveillance videos from the September 2020 to March 2021 time period that *may* exist are any that GEO provided to OIG and/or CRCL in the course of their investigations. Plaintiff admits and submits evidence to this Court establishing that the United States already has agreed to search for and produce any such videos that

---

[10] In fact, according to Plaintiff, there would only have been *at most* 40 days of video surveillance that existed as of that date during which Arellano was at Adelanto. *See* Second Amended Complaint (Dkt. 1) ¶¶ 125-126 (alleging Arellano was hospitalized on January 26, 2021 – February 4, 2021), ¶ 127 (alleging Arellano was hospitalized on February 17, 2021 and did not return to Adelanto).

may exist and were retained by OIG and/or CRCL. Tolchin Ex. M at 2; *id.* Ex. N at 1. Because the United States is already in the process of obtaining and producing any such videos,[11] his demand for an order compelling the United States to do so is moot. Accordingly, the United States respectfully requests that the Court deny Plaintiff's demand for an order compelling production of the videos that the United States may possess as moot.

### 3. Proposed Resolutions During the Rule 37-1 Conferences and Related Correspondence

#### a. Plaintiff's Proposed Resolution and Request for Relief

Plaintiff proposed that by November 1, 2024, USA shall produce all video surveillance in its possession, custody or control responsive to Plaintiff's RFP Nos. 2, 3, 19, 21, 22, 31, 32, 33, 35, including but not limited to any video surveillance in the possession of DHS OIG and DHS CRCL.

#### b. USA's Proposed Resolution

Because Plaintiff demands an order compelling production of documents not responsive to his discovery requests, his demand must be denied. Moreover, even if the sought videos were responsive to Plaintiff's discovery requests, his demand must nonetheless be denied as moot because the United States has already agreed to search for

---

[11] Plaintiff gripes about the timing of the United States' production of these videos. *See* Plaintiff Stip. § II.B.1. But Plaintiff only first asked about videos retained by OIG and/or CRCL during the September 23, 2024, meet-and-confer and the United States immediately agreed to search for and produce any such videos, to the extent they exist. St John Decl. ¶ 2; *see also* Tolchin Ex. M (Averring that during the September 23 meet-and-confer Plaintiff's counsel "specifically asked [the United States] about any copies of videos that may have been saved in connection with two investigations DHS OIG and DHS CRCL conducted into Adelanto related to its COVID-19 policies and practices."); *id.* Ex. N ("[A]s discussed on September 23, we are looking into whether OIG and/or CRCL ever had any video surveillance tapes for Adelanto and, if so, whether such videos were retained. To the extent any such video surveillance footage of Adelanto exists, was retained by these entities, and relates to the relevant time period, then we will produce them."). While Plaintiff's counsel's September 12, 2024, letter sought information regarding CRCL's and OIG's potential viewing or preservation of video surveillance in the course of their investigations, it did not identify those videos as a target for Plaintiff's intended motion. *See* Tolchin Ex. I at 3 ("Plaintiff requests the following information" regarding CRCL's and OIG's practices with respect to viewing and preserving video surveillance as a part of their investigation.").

and produce any videos that may still exist in OIG's and CRCL's possession.

## C.    RFP No. 40

**RFP No. 40:** All DOCUMENTS reflecting the floor plan and configuration of the locations at ADELANTO frequented by VARGAS ARELLANO as they existed between September 2020 to March 2021, including but not limited to all housing units he was assigned including W5B, WMED, WMED OBSERVATION, any other locations constituting the ADELANTO infirmary, recreation areas, dining halls, and shower facilities.

**Response to RFP No. 40:** The United States objects that Request for Production No. 40 is vague and ambiguous with respect to the terms "reflecting," "floor plan and configuration," "locations at ADELANTO frequented by VARGAS ARELLANO," "as they existed between September 2020 to March 2021," "constituting," "recreation areas," "dining halls," and "shower facilities." The United States objects that Request for Production No. 40 is overbroad, unduly burdensome and seeks information and documentation that is irrelevant and not proportional to the needs of the case to the extent it seeks "All DOCUMENTS" that "reflect[] the floor plan and configuration" of the identified and vaguely referenced locations at Adelanto. The United States objects that Request for Production No. 40 seeks documentation based on information not known to the United States, but would rather be known by Defendant GEO, such as every location that Arellano might have gone. The United States objects that Request for Production No. 40 seeks information protected from disclosure by the law enforcement privilege.

Due to these objections and to the high sensitivity of floor plans of a secured detention facility, which are not normally produced in civil litigation because of the security risks, the United States will not produce exhaustive floor maps of the facility.

### 1.    Plaintiff's Contentions and Points and Authorities

In response to RFP No. 4 seeking Adelanto floor plans relevant to this case, USA has failed to engage in a Rule 37-1 meet and confer with Plaintiff related to this issue. Tolchin Dec. Ex. K; ¶¶18, 20. Moreover, USA's written objections to producing this information lack merit, such that the Court should order USA to produce the requested documents.

Adelanto floor plans reflecting the configuration of the locations frequented by Mr. Vargas Arellano as they existed between September 2020 to March 2021, are particularly

relevant here in light of Defendants' failure to produce responsive video surveillance, as discussed above. Among the reasons is that Plaintiff is entitled to the floor plans to assess whether Defendant's decisions regarding where Mr. Vargas Arellano was housed, the conditions of that housing, whether it was appropriate for his needs, and whether it was adequate to minimize his exposure to COVID-19. The floor plans area also necessary to question witnesses regarding the proximity of staff and detainees to one another in particular locations, including the infirmary where several detainees contracted COVID-19 around the same time as Mr. Vargas Arellano, to assess the capability of adequate social distancing consistent with COVID-10 mandates, and what accommodations were made, if any to ensure applicable mandates were met.

In response to Plaintiff's request for Adelanto floor plans, USA made a number of unsubstantiated objections, including that the documents are more readily available to GEO and are protected by the "law enforcement privilege." As to USA's reference to GEO as the proper source of the information, Plaintiff asked for the same information from GEO who has resisted producing it claiming it needs USA's permission to do so. Tolchin Dec. ¶22. Indeed, as discussed above, even if the floor plans are maintained by GEO, they are "the property of [USA]." *Id.* Ex. O, at USA008316.

As to USA's invocation of the "law enforcement privilege," it fails to substantiate why Adelanto floor plans would come within its "qualified" protection, which USA bears the burden to prove. *Novoa v. Geo Grp., Inc.*, No. 517CV02514JGBSHKX, 2020 WL 6694317, at *5 (C.D. Cal. Oct. 8, 2020). "[T]he law enforcement privilege protects against disclosures that would reveal confidential sources, law enforcement techniques, and the identities of witnesses and law enforcement personnel. It also safeguards the privacy of those involved in a criminal investigation and otherwise prevents interference with a criminal investigation." *Id*. Defendant USA provides no argument for why the floor plans fall within this exception given the stipulated protective order in this case. Importantly, in the *Roman* case, the court rejected Respondent's claim that the "schematics" of Adelanto – including "the layout of Adelanto, its dimensions, and where detainees can be found" –

was protected by the law enforcement privilege, and ordered them produced subject to additional protections. *Roman v. Wolf*, No. EDCV200768TJHPVC, 2020 WL 6588399, at *3 (C.D. Cal. July 16, 2020), modified on reconsideration, No. EDCV200768TJHPVC, 2020 WL 6586313 (C.D. Cal. July 27, 2020).

### 2. USA's Contentions and Points and Authorities

#### a. The Absence of Video Surveillance Does Not Justify Plaintiff's Demand for Adelanto Floor Plans.

Plaintiff claims that he is entitled to an order compelling the United States to produce the schematics of the Adelanto facility because no party has produced the video footage of Adelanto that Plaintiff desires, but this is a red herring. As explained above, GEO's common practice would not have retained any video surveillance footage from the time period during which Arellano contracted COVID-19. *See* § II.B.2 *supra*. The absence of that footage does not therefore justify Plaintiff's demand for detailed specifications of the layout of the entire Adelanto facility. Nor would such video surveillance, if it did exist, provide a detailed layout of the Adelanto facility, but instead would merely capture snapshots of portions of the Adelanto facility. Thus, Plaintiff's claim that he must be provided the Adelanto layout as a fungible substitute for video surveillance footage is illogical and unjustified.

#### b. Disclosure of Adelanto's Layout Harms ICE's Obligation to Enforce Immigration Laws and Undermines the Safe and Secure Operation of Adelanto.

Even if the Adelanto floor plans were relevant to Plaintiff's claims (they are not, *see infra*), that minimal relevance is far outweighed by the threat to the safety and security of the detention facility that disclosure would cause. *Ford v. Wildey*, 2014 WL 4354600, at *1 (E.D. Cal. Sept. 2, 2014) ("[W]here otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur."). Disclosure of the floor plans of an operating detention facility, such as Adelanto, poses a legitimate safety and security threat, which

outweighs any minute relevance of such documents. *See Ross v. Horton*, 630 F. App'x
727, 728 (9th Cir. 2016) (affirming district court denial of plaintiff's "motion to compel.
Production of the requested blueprints [of a prison because production thereof] posed a
legitimate security threat to the prison …."); *Manriquez v. Huchins*, 2011 WL 3290165,
at *20 (E.D. Cal. July 27, 2011) ("While the Court recognizes that the blue prints could
be relevant and potentially admissible at trial, the security risk that would be created by
giving inmates blue prints to the prison greatly outweighs any potential benefit that
Plaintiff would receive by obtaining the requested documents."); *Houston v. Eldridge*,
2018 WL 1317756, at *2 (E.D. Cal. Mar. 14, 2018) (denying motion to compel
production of photographs of incident at state prison because "allowing plaintiff to
possess the photos could endanger the safety of inmates and staff"); *Smith v. Rodriguez*,
2015 WL 5813641, at *15 (E.D. Cal. Sept. 30, 2015) ("the court finds that defendant's
interest in prison safety outweighs plaintiff's marginal, if any, need for a map of" a
portion of a prison).

      "'To determine whether the information sought is privileged, courts must weigh
the potential benefits of disclosure against the potential disadvantages. If the latter is
greater, the privilege bars discovery.'" *Sanchez v. City of Santa Ana*, 936 F.2d 1027,
1033-34 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on
denial of reh'g* (May 24, 1991). District courts in the Ninth Circuit have used the ten-
factor test from *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), to guide this
inquiry. *See, e.g.*, *Wagafe v. Trump*, 334 F.R.D. 619 (W.D. Wash. 2020). Under that test,
courts consider:

> (1) the extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information; (2) the
> impact upon persons who have given information of having their identities
> disclosed; (3) the degree to which governmental self evaluation and
> consequent program improvement will be chilled by disclosure; (4) whether
> the information sought is factual data or evaluative summary; (5) whether
> the party seeking discovery is an actual or potential defendant in any
> criminal proceeding either pending or reasonably likely to follow from the
> incident in question; (6) whether the police investigation has been
> completed; (7) whether any interdepartmental disciplinary proceedings have
> arisen or may arise from the investigation; (8) whether the plaintiff's suit is

non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser*, 59 F.R.D. at 344. While these factors govern the inquiry, the ultimate focus of the inquiry is based on the harm to law enforcement efforts that may result from public disclosure. *Al Otro Lado v. Wolf*, 2020 WL 3487823, at *3 (S.D. Cal. June 26, 2020).

Here, Plaintiff fails to discuss these factors, let alone show that they favor disclosure. In fact, they tip sharply in favor of denying Plaintiff's request.[12]

The third factor weighs heavily in the respondents' favor because it would chill the government program of immigration detention, as mandated by Congress. Respondents are tasked with the detention and eventual removal of aliens, including large classes of aliens with criminal records or national security concerns. 8 U.S.C. §§ 1226, 1231. Providing documentation about the layout of all places where people may be detained at Adelanto exposes the facility's security operations and places the staff, detainees, and public at risk.[13] The information requested exposes Adelanto's layout and floorplans designed to promote operational security, secure entrances and exits, and determine the most effective positioning of staff, control centers, and controlled access points. Its disclosure would presents a significant risk to operational security, including risk of harm to detainees, facility staff, and the public, facilitate the introduction of contraband into Adelanto, facilitate detainee escape,[14] and invite extensive study to potentially exploit any perceived weaknesses.[15]

---

[12] Factors 1, 2 5, 6, and 7, are not implicated in this case because they mainly relate to ongoing investigations.

[13] The United States will offer a declaration in support of its forthcoming Supplemental Brief from ICE explaining that allowing Plaintiff or his counsel to obtain floor plans of the operating Adelanto facility would jeopardize institutional safety and security of the facility.

[14] There have been documented escape attempts at immigration detention facilities. *See* St John ¶¶ 7-8.

[15] For example, in one highly publicized incident a man placed explosives and launched incendiary devices at a detention facility. St John Decl. ¶ 5. And Adelanto has been the

*(footnote cont'd on next page)*

The fourth and ninth factors weigh in the United States' favor because the information required can be provided in evaluative summary through declarations and photographs authorized for public filing with the Court. This minimizes the need for providing factual data in the form of the Adelanto layout that would harm detention operations and place the staff, detainees, and the public at risk.

The eighth factor concededly weighs in favor of Plaintiff to the extent that the Court has allowed the subset of Plaintiff's claims to proceed in this matter.

The last factor also weighs in the United States' favor. While information regarding conditions at Adelanto is relevant to Plaintiff's claims, information regarding the specific and miniscule detail about Adelanto's layout of every place a detainee may be found is not relevant, important, or necessary to Plaintiff's case.

Here Plaintiff has failed to engage with the applicable balancing test, let alone establish that any of the factors favor disclosure. Because the factors weigh heavily in favor of the United States, the Court should deny Plaintiff's demand for an order compelling disclosure of the Adelanto layout.

   *c.*   **Plaintiff's Demand for the Adelanto Layout Is Neither Relevant Nor Proportional to His Tort Claims.**

Furthermore, the sought Adelanto floor plans are neither relevant nor proportional to Plaintiff's tort claims actually pled in this case. In determining whether a request is proportional, the Court "should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018).

While Plaintiff claims he needs the Adelanto floor plans to "assess … decisions regarding where Mr. … Arellano was housed, the conditions of that housing, whether it

---

site of a violent protest that jeopardized the security of the facility, resulted in property damage, and injured a GEO employee who was hit by a rock thrown by a protester. *Id.* ¶ 6.

was appropriate for his needs, and whether it was adequate to minimize his exposure to COVID-19," none of these issues relate to any duty owed by any defendant to Arellano that Plaintiff contends was violated. Indeed, early on in this matter—when Plaintiff's claims were *much broader* than they are now consequent from the Court's Order dismissing most of his claims (Dkt. 122)—the United States expressly informed Plaintiff that it would not produce the Adelanto floor plans specifically because "such documents are both not relevant to Plaintiff's claims in this lawsuit and, as recognized by the *Roman* Court, extremely sensitive in nature." St John Ex. 1 at 5. Plaintiff never challenged this.

Moreover, as explained further *infra*, the burden and risks on Adelanto operations to provide a document showing Adelanto's layout is dangerous to Adelanto operations, excessive, lacks proportionality, and is unduly burdensome. *See, e.g.*, *Gilmore v. Lockard*, 2017 WL 678278, at *4 (E.D. Cal. Feb. 16, 2017) ("the Court recognizes the potential dangers associated with inmates possessing photographs and diagrams of a particular prison" and "finds that the Defendants' interest in prison safety and security outweighs Plaintiff's marginal, if any, disadvantage from not being able to view these photographs and diagrams"); *Scott v. Palmer*, 2015 WL 1637781, at *4 (E.D. Cal. Apr. 13, 2015) (denying motion to compel production of prison layout because "Plaintiff's need for documents, diagrams, or photographs as evidence on this point is … so minimal that it outweighs neither the burden and expense associated with [obtaining the documents] … nor the security risk associated with the possession of such physical prison layout details by inmates"); *Allen v. Eckard*, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019) (denying motion to compel, floor plan or diagram of cell block because "disclosure of this kind of document poses a great security risk that outweighs any potential relevance to the plaintiff's case").

To try and justify his herculean request, Plaintiff points to the fact that the *Roman* court ordered that the Adelanto schematics be produced and brashly claims that the "subject matter overlaps with this case." Plaintiff. Stip. § II.A.1. But *Roman* is a class action addressing the conditions of the hundreds of different Adelanto detainees that

sought injunctive relief regarding those conditions, whereas this is a wrongful death case seeking monetary tort damages for the death of a singular former detainee. Moreover, when ordering production of the layout documents the *Roman* court "acknowledge[d] the legitimacy of Respondents' concerns about the sensitivity of the information in the Adelanto schematics" and admonished that *only* "*in the particular circumstances of [t]his case, [did the] Petitioners' need for the Adelanto schematics outweighs Respondents' apprehensions about dissemination of the information.*" *Roman v. Wolf*, 2020 WL 6586313, at *4 (C.D. Cal. July 27, 2020). Thus, the *Roman* court's decision bolsters the fact that any relevance to Plaintiff's claims is dwarfed by the safety and security risk inherent in the disclosure of the layout of the still-operating Adelanto detention facility.

Accordingly, because Plaintiff has failed to demonstrate the relevance of the Adelanto floor plans to his tort claims, and his request for the plans are far outweighed by the legitimate threat to safety and security if such documents are disclosed, Plaintiff's demand must be denied.

### 3.    Proposed Resolutions During the Rule 37-1 Conferences and Related Correspondence

#### a.    Plaintiff's Proposed Resolution and Request for Relief

Plaintiff proposes that USA produce all documents responsive to RFP No. 40 subject to the appropriate confidentiality designation provided for in the Protective Order in this case, or the enhanced protection set forth in the *Roman* case.

#### b.    USA's Proposed Resolution

Plaintiff's demand for an order compelling production of Adelanto layouts must be denied, as the sought information is not relevant to his claims and any minimal relevance that may exist is grossly disproportionate to the legitimate security and safety risks such disclosure would expose to the Adelanto facility.

Respectfully submitted,

Dated: September 30, 2024                    /s/Stacy Tolchin

Stacy Tolchin (SBN 217431)
*Email: Stacy@Tolchinimmigration.com*
Megan Brewer (SBN 268248)
*Email:*
*Megan@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe (SBN 349899)
*Email: khaled@nipnlg.org*
Matthew Vogel (admitted *pro hac vice*)
*Email: matt@nipnlg.org*
Amber Qureshi (admitted *pro hac vice*)
*Email: amber@nipnlg.org*
1200 18th Street NW Suite 700
Washington, DC 20036Telephone:
(202) 470-2082
Facsimile: (617) 227-5495

Laboni A. Hoq (SBN 224140)
*Email: laboni@hoqlaw.com*
Hoq Law APC
P.O. Box 753
South Pasadena, CA  91030
Telephone: (213) 973-9004

Attorneys for Plaintiff Martin Vargas

1    Dated: October 7, 2024

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section

*/s/ Shaina C. St John*
SHAINA C. ST JOHN
Assistant United States Attorney
Attorneys for Defendant
the United States of America