UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Clerk | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings:    (In Chambers) Order Denying in Large Part Defendant USA's Motion to Compel [142]**

## I.    INTRODUCTION

On October 1, 2024, defendant United States of America filed a motion to compel plaintiff Martin Vargas to serve complete answers to certain interrogatories, produce all documents responsive to certain requests for production ("RFPs"), and sit for an additional deposition.  Docket no. 142.  The parties' positions are set forth in a joint stipulation ("JS").  USA's arguments are supported by the declaration of its counsel Shaina C. St John ("St John Decl.") and exhibits.  Plaintiff's arguments are supported by the declaration of his counsel Stacy Tolchin ("Tolchin Decl.") and exhibits.  Defendant filed a supplemental memorandum ("D. Supp. Mem.") on October 15, 2024.

The court found a hearing on this motion would not be of assistance, and so vacated the hearing that was scheduled for October 29, 2024.  The court now denies in large part defendant USA's motion to compel for the reasons discussed below.

## II.    BACKGROUND

### A.    General Background

Plaintiff Martin Vargas is the son of decedent Martin Vargas Arellano, who died after contracting COVID in the custody of U.S. Immigration and Customs Enforcement ("ICE") – an agency of defendant United States of America – at the Adelanto ICE Processing Center ("Adelanto").  Second Amended Complaint ("SAC") ¶¶ 1-3, 143, 158,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

170, 182.  Defendant GEO Group was contracted to manage operations at Adelanto and subcontracted with defendant Wellpath, LLC to provide detainees health care.  SAC ¶ 2.

Decedent tested positive for COVID on December 10, 2020.  SAC ¶ 8.  He was hospitalized for COVID symptoms on December 11, 2020, January 26, 2021, and February 17, 2021.  SAC ¶¶ 121, 125, 127.  On February 19, 2021, a Wellpath medical director sent an ICE medical coordinator an email stating that decedent was at risk of "sudden death" from "multiple ailments . . . in the wake of COVID-19 infection."  SAC ¶ 129.  ICE then initiated a plan to release decedent.  SAC ¶ 130.  Before any release occurred, on or about February 26, 2021, decedent suffered a stroke that caused brain death.  SAC ¶ 132.  On March 5, 2021, decedent was released on his own recognizance while in the hospital, although he was comatose and brain dead.  SAC ¶ 133.  His family was not informed of his medical condition or release.  *Id.*  Decedent died on March 8, 2021.  SAC ¶ 134.

Decedent was a class member in two lawsuits to obligate ICE to slow the spread of COVID in detention facilities, including *Roman v. Wolf*, No. 5:20-cv-00768-THJ-PVC, in which ICE was ordered to reduce Adelanto's population by releasing certain groups of detainees at high risk of COVID.  SAC ¶ 5.  A special master appointed in that case determined that decedent likely contracted COVID from a Wellpath medical provider who examined him on November 29, 2020.  SAC ¶ 8.

## B.    **Relevant Discovery Background**

On March 18, 2024, plaintiff sent USA an update regarding attorneys' fees incurred up to that point in conjunction with a conditional settlement offer.  Tolchin Decl. ¶ 4.  Plaintiff intends to update USA on his attorneys' fees in conjunction with the settlement conference set for November 6, 2024.  *Id.*

On March 26, 2024, USA served its first sets of interrogatories (Nos. 1-17) and RFPs (Nos. 1-67) on plaintiff.  St John Decl. ¶ 2, Exs. 1-2.  Plaintiff served his responses to both the interrogatories and the RFPs on May 6, 2024.  *Id.* ¶ 3, Exs. 3-4.  USA's counsel St. John deposed plaintiff on June 6, 2024.  *Id.*  ¶ 11, Ex. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

USA sent plaintiff a meet and confer letter on July 18, 2024, raising concerns with plaintiff's responses to USA's first set interrogatories and RFPs. *Id.* ¶ 4. The parties agreed to meet and confer on July 29. *Id.* During the meet and confer session, plaintiff agreed to amend some of his interrogatory responses and requested that he be given until August 12 to do so. *Id.* ¶¶ 4-5. The parties also discussed how they would resolve a disagreement over whether plaintiff's counsel improperly instructed plaintiff at his deposition to refrain from answering questions regarding his conversations with attorney Margaret Hellerstein. *Id.* ¶ 5. This disagreement stemmed from USA's receipt on September 27, 2023 of a letter indicating a lack of privity between plaintiff and Hellerstein, the decedent's former attorney. *Id.* ¶ 12, Ex. 13. Plaintiff proposed the use of written questions to answer USA, but USA refused because plaintiff was available to testify and there was sufficient time remaining to depose him. *Id.* The day after their meeting, USA's counsel memorialized their discussions in an email. *Id.*, Ex. 6. Plaintiff responded on August 2, 2024. *Id.* ¶ 6, Ex. 7.

On August 12, 2024, plaintiff amended his responses to USA's Interrogatory Nos. 7 and 10-12, as well as USA's RFP Nos. 19, 20, 22, 23, and 32. *Id.* ¶ 7, Exs. 8-9. USA then informed plaintiff it would move to compel on all issues not addressed by plaintiff's amended responses. *Id.* ¶ 7.

On August 27, 2024, USA sent a letter to plaintiff concerning alleged deficiencies in plaintiff's responses to USA's Interrogatory Nos. 14-15. *Id.* ¶ 8, Ex. 10. The parties met and conferred about this issue on September 6 and plaintiff agreed to provided amended responses. *Id.* ¶ 8. Shortly thereafter, on September 10, 2024, plaintiff served amended responses to Interrogatory Nos. 14 and 15. *Id.* ¶ 9, Ex. 11; Tolchin Decl. ¶ 5, Ex. B. After reviewing the responses, USA sent an email to plaintiff informing him that his amended responses did not cure the deficiencies USA previously noted and thus it would be moving to compel on those issues as well. St John Decl. ¶ 10, Ex. 14. Plaintiff notes he is unable to fully respond to USA's interrogatories because discovery, including a Rule 30(b)(6) deposition of the USA's designated officer, has not yet been completed. Tolchin Decl. ¶ 3, Ex. A. Plaintiff contends he will supplement his discovery responses once the discovery process is completed. *Id.* ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

Defendant now seeks an order compelling plaintiff to: (1) serve complete answers to Interrogatory Nos. 11, 12, 14, and 15; (2) produce all documents responsive to RFP Nos. 22, 23, 28, and 29; and (3) sit for an additional deposition to answer questions related to his communications with Hellerstein.  The discovery cutoff is November 1, 2024.  Docket no. 115.

## III.   DISCUSSION

### A.   Plaintiff Must Supplement His Amended Responses to USA's Interrogatory Nos. 14 and 15 to the Extent He Receives New Information

USA argues plaintiff should be compelled to provide complete amended responses to its Interrogatory Nos.14 and 15 because his earlier responses: (1) failed to identify violations of specific duties and explain their causal connections to plaintiff's injuries; (2) were incomplete; and (3) failed to identify documents to support his negligence claims. JS at 25-27.  Plaintiff argues his amended responses sufficiently respond to USA's interrogatories since they contain detailed explanations of his negligence claims and cite relevant documents in support of his claims.  JS at 37-39.  Plaintiff also states he plans to supplement his discovery responses "upon the completion of discovery."  Tolchin Decl. ¶ 7.

At the outset, it is unclear to the court why USA claims plaintiff's amended responses to Interrogatory Nos. 14 and 15 are substantially unchanged from the original responses and lack citations to documents.  JS at 27.  Both the copy of plaintiff's amended response to Interrogatory No. 14 included in the joint stipulation (JS at 11-19) and the copy attached as USA's exhibit show plaintiff cited relevant evidence, including emails, documents, and deposition transcripts.  Plaintiff's amended response to Interrogatory No. 15 also cites to specific evidence.  *See* JS at 21.  Even a cursory comparison of plaintiff's original response to Interrogatory No. 14, which is just under two pages, to plaintiff's amended response, which is just under eight, shows plaintiff added substantial new information to his amended response, not just "incomprehensible[] statements" as USA contends.  *Compare* JS at 9-11 *with* JS at 11-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |


Next, USA contends plaintiff's amended responses are insufficient because they fail to assert "specific contentions" as to how plaintiff was harmed and instead rely on "a litany of vague, general, and conclusory assertions." D. Supp. Mem. at 1.  To the contrary, plaintiff's supplemental responses appear to provide the specific contentions USA requests.  For example, plaintiff states, "Agents of the United States violated applicable duties of care owed to Martin Vargas Arellano by failing to follow all required protocols, practices, policies, procedures and court- mandated orders to adequately shield him from contracting COVID-19" and then immediately goes on to cite the referenced standards.  *See* JS at 13.  While not all of the information contained in plaintiff's amended responses appears strictly on point, his amended responses fairly answer USA's interrogatories.

Finally, USA contends plaintiff's amended responses indicate they are incomplete.  JS at 27; D. Supp. Mem. at 1.  Plaintiff responds that he intends to supplement his responses "upon the completion of discovery." JS at 38; Tolchin Decl. ¶ 7.  This is reasonable since plaintiff has been waiting for defendants to fulfill their discovery obligations.  Plaintiff must serve additional supplemental responses to USA's Interrogatory Nos. 14 and 15 when and if pertinent new information comes to light.

**B.      The Parties' Disputes Concerning USA's Interrogatories Nos. 11-12 and RFPs Nos. 22-23 Are Largely Moot**

Initially, USA moved the court to compel plaintiff to produce amended responses to its Interrogatory Nos. 11 and 12 and produce all documents responsive to its RFPs Nos. 22 and 23.  JS at 31.  The interrogatories inquire into the calculation of plaintiff's economic and non-economic damages.  JS at 7-9.  The RFPs request tax information from plaintiff.  JS at 21-22.  With regard to plaintiff's economic damages and tax information, USA later conceded "there appears to be no dispute remaining" following plaintiff's amended responses that he is not seeking economic damages.  D. Supp. Mem. at 1.  Accordingly, these issues are moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

With respect to plaintiff's non-economic damages, plaintiff claims no computation of such damages is necessary, and the $2 million award he is seeking will be proven through testimony at trial. JS at 9, 40-41. Plaintiff also stated he anticipated producing an expert report which would address plaintiff's damages by the expert witness deadline of October 4, 2024. JS at 41. USA indicated it received no such report. D. Supp. Mem. at 2. The court reminds plaintiff "if he is going to suggest a specific amount to the jury for emotional distress damages and fails to provide [d]efendant with a calculation of that amount as required by Rule 26(a)(1)(A)(iii), [p]laintiff may be foreclosed from suggesting that specific amount for emotional distress damages to the jury at trial." *First v. Kia of El Cajon*, 2010 WL 3069215, at *2 (S.D. Cal. Aug. 4, 2010) (citation omitted); *see also E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639-40 (E.D. Wash. 2011). As such, absent production of an expert report, plaintiff must supplement his response to Interrogatory No. 12 or face potential restrictions at trial.

**C.    Discovery Related to Plaintiff's Attorney Fees Is Not Warranted at This Time**

USA next asks the court to compel plaintiff's production of all documents relevant to his fee claims under the Equal Access to Justice Act ("EAJA"). JS at 32. Plaintiff argues defendant's motion is premature in that "claims under EAJA only become relevant once there is a final disposition of the case . . . ." JS at 42. The court agrees USA's motion is premature on this issue.

Plaintiff seeks attorney fees from USA under the EAJA, 28 U.S.C. § 2412(b).[1] *See* SAC at 43. The relevant section of the EAJA allows a court to award attorney fees "to the prevailing party in any civil action brought by or against the United States . . ." 28 U.S.C. § 2412(b). USA is therefore requesting information that may ultimately be

---

[1]    Based on the parties' joint stipulation and supplemental briefing, it is not entirely clear to the court on which section of the EAJA plaintiff bases his theory of recovery for attorney fees. USA indicates plaintiff bases his claim on 28 U.S.C. § 2412(b). *See* JS at 32. Plaintiff's second amended complaint also references 28 U.S.C. § 2412(b) as part of his prayer for relief. *See* SAC at 43. Accordingly, the court will assume § 2412(b) forms the basis of plaintiff's claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

irrelevant to the case since plaintiff's victory is not guaranteed.  Other courts that have examined this issue of granting pretrial discovery for "potential award[s] of attorneys' fees . . . have almost universally held that when a statute provides attorneys' fees for a prevailing party, fee arrangements and expenses are not discoverable until liability is established."  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 310 (D. Nev. 2019) (citation and internal quotation marks omitted) (collecting cases).   Seeing as USA's liability has not yet been established in this case, USA's motion with respect to plaintiff's attorney fees is premature.

The court therefore denies USA's motion to compel plaintiff to provide evidence of his claimed attorneys' fees in response to RFP Nos. 28 and 29.

### D.	**Plaintiff's Conversations With Attorney Hellerstein Are Protected by the Attorney-Client Privilege**

Lastly, USA argues plaintiff's counsel improperly instructed plaintiff not to answer questions related to his conversations with attorney Margaret Hellerstein at his deposition, and consequently moves the court to order plaintiff to sit for an additional deposition.  JS at 33-36.  Plaintiff argues his conversations with Hellerstein are protected from disclosure by the attorney-client privilege.  JS at 43-45.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures."  *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted).  The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

The Ninth Circuit has stated both: (1) that "because [the attorney-client privilege] impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v. Investments/Indicators, Research and Management, Inc.*, 647 F.2d at 24; and (2) that "where the attorney-client privilege is concerned, hard cases should be resolved in favor of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

privilege, not in favor of disclosure" because "[a]n uncertain privilege, or one which purports to be certain but results in wildly varying applications by the courts, is little better than no privilege at all." *United States v. Mett*, 178 F.3d 1058, 10[6]5 (9th Cir. 1999) (citations and quotations omitted).

*Intex Recreation Corp. v. Bestway (USA), Inc.*, 2023 WL 6193018, at *2 (C.D. Cal. Sept. 8, 2023).

"'[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication.'" *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *Ruehle*, 583 F.3d at 607)). Confidential communications between a client and an attorney are protected from disclosure:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). Communications are not privileged unless they included legal advice or were made for the purpose of assisting counsel in rendering legal advice. *See In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (finding privilege applied where communications "were made for the purpose of facilitating the rendition of legal services").

It appears the parties only seriously dispute prongs 1, 5, and 8 of the Ninth Circuit test. Upon careful examination of the parties' arguments with respect to those prongs, the court concludes plaintiff's conversation with Hellerstein was privileged.

First, the information contained in the record reasonably suggests plaintiff sought legal advice from Hellerstein. At plaintiff's June 6, 2024 deposition, his attorney stated plaintiff spoke with Hellerstein "for the purpose of retaining legal counsel" and to "facilitat[e] a representation" for plaintiff. St John Decl., Ex. 12 at 3. Another of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

plaintiff's attorneys later clarified plaintiff's conversation with Hellerstein was "for purposes of exploring litigation regarding his father's death." *Id.*, Ex. 7 at 2. Seeing as Hellerstein was the attorney of plaintiff's deceased father, it appears entirely plausible plaintiff sought legal advice about how he should proceed following his father's death. Even if the conversation was purely for the purpose of obtaining a referral, such a conversation can constitute legal advice. *See Bleau v. Beauclair*, 2007 WL 2344926, at *2 (D. Idaho Aug. 14, 2007).

USA's reliance on *Snyder v. Alight Sols., LLC*, 2021 WL 6103185 (C.D. Cal. Dec. 8, 2021), is misplaced. In *Synder*, at plaintiff's deposition, plaintiff refused to answer how she met her attorney based on attorney-client privilege. *Id.* at *1. The court ultimately found the question was not protected by attorney-client privilege. *Id.* at *4. USA cites a portion of the *Snyder* opinion which implies that communications about referrals are not privileged. *Id.*; D. Supp. Mem. at 5. But in the very next sentence, the *Snyder* Court clarifies it is stating that communications about referrals are not *always* privileged, in that conversations with a "non-lawyer neighbor, friend or cousin…seek[ing] help retaining a lawyer" are not protected by the attorney-client privilege. *Snyder*, 2021 WL 6103185, at *4. Seeing as plaintiff was communicating with Hellerstein, an attorney, the quoted portion is inapposite.

Turning to the fifth factor, the parties dispute whether plaintiff was ever Hellerstein's client. USA repeatedly claims Hellerstein was not plaintiff's counsel at any time. JS at 33, 36. But under federal law "communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) (citation omitted); *see also Bolding v. Banner Bank*, 2021 WL 1530998, at *2 (W.D. Wash. Apr. 19, 2021); *Schmidt v. City of Pasadena*, 2024 WL 650424, at *9 (C.D. Cal. Jan. 22, 2024). Accordingly, the fact that plaintiff did not ultimately retain Hellerstein as his counsel does not mean the attorney-client privilege failed to attach to their conversation.

Lastly, the parties dispute whether plaintiff waived the attorney-client privilege as to the conversation with Hellerstein. First, USA argues plaintiff waived the privilege by "disavowing any attorney-client privity between himself and Ms. Hellerstein." D. Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 1, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America, et al. | | |

Mem. at 5.  USA misconstrues plaintiff's statement.  In the letter at issue, plaintiff simply states, "Ms. Hellerstein was not in privity with either Mr. Vargas Arellano or his son Plaintiff Martin Vargas at the time of her deposition, or at any time thereafter . . . ."  St John Decl., Ex. 13 at 2.  Plaintiff does not claim the parties were never in privity, but rather that they were not in privity at or after the time of Hellerstein's deposition on May 6, 2021.  Given plaintiff ultimately did not retain Hellerstein as counsel, it is entirely possible for plaintiff and Hellerstein to have a privileged conversation on March 26, 2021 and then not be in privity by May 6, 2021.  USA also argues plaintiff's counsel's offer to have plaintiff respond to written questions is "inconsistent" with the attorney-client privilege.  *Id.*  But a mere offer to respond to USA's written questions, presumably with his counsel's assistance to make sure no privileged information is disclosed, does not constitute a waiver of the attorney-client privilege since no confidential information has been disclosed.  *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 190 F.R.D. 667 (D. Or. 2000).

In sum, plaintiff's conversation with Hellerstein fairly falls within the attorney-client privilege.[2]  The court therefore denies USA's motion to compel plaintiff to sit for an additional deposition.

## IV. ORDER

For the foregoing reasons, the court denies in large part defendant USA's motion to compel (docket no. 142), as set forth above.

---

[2]    It is also unclear to the court why testimony related to plaintiff's conversation with Hellerstein is relevant to the case so as to warrant reopening plaintiff's deposition.  USA states the conversation is relevant to both his claimed damages and plaintiff's "causal relation to the *Roman* class action" but fails to offer any explanation as to how.  JS at 3.