UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Clerk | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order Denying Plaintiff's Motion for Sanctions Against GEO for Spoliation of Video Surveillance Evidence [152]**

## I.      INTRODUCTION

On October 8, 2024, plaintiff Martin Vargas filed a motion seeking, inter alia, evidentiary sanctions against defendant The GEO Group for its alleged spoilation of video surveillance evidence.[1]  Docket no. 152.  The parties' positions are set forth in a joint stipulation ("JS").  Plaintiff's arguments are supported by the declaration of his counsel Laboni Hoq ("Hoq Decl.") and exhibits.  GEO's arguments are supported by the declaration of its counsel Susan E. Coleman ("Coleman Decl.") and exhibits.

On October 15, 2024, plaintiff filed a supplemental memorandum ("P. Supp. Mem.") supported by another declaration of Hoq ("Supp. Hoq Decl.") and exhibit.  Docket no. 161.  Defendant also filed a supplemental memorandum ("D. Supp Mem.") that same day.  Docket no. 160.

The court held a hearing on the motion on October 29, 2024.  Two days after the hearing, plaintiff filed a notice of supplemental authority along with another Hoq declaration ("2d Supp. Hoq Decl.") and exhibits.  Docket no. 172.

After considering the parties' written and oral arguments, and for the reasons discussed herein, the court now denies plaintiff's motion for sanctions.

---

[1]      The court separately ruled on the portion of the motion that sought to compel further discovery responses.  *See* docket no. 179.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |


## II.    BACKGROUND

### A.    General Background

Plaintiff Martin Vargas is the son of decedent Martin Vargas Arellano, who died after contracting COVID in the custody of Immigration and Customs Enforcement ("ICE") – an agency of defendant United States of America – at the Adelanto ICE Processing Center ("Adelanto").  Second Amended Complaint ("SAC") ¶¶ 1-3, 143, 158, 170, 182.  Defendant GEO was contracted to manage operations at Adelanto and subcontracted with defendant Wellpath, LLC to provide detainees health care.  SAC ¶ 2.

Decedent tested positive for COVID on December 10, 2020.  SAC ¶ 8.  He was hospitalized for COVID symptoms on December 11, 2020, January 26, 2021, and February 17, 2021.  SAC ¶¶ 121, 125, 127.  On February 19, 2021, a Wellpath medical director sent an ICE medical coordinator an email stating that decedent was at risk of "sudden death" from "multiple ailments . . . in the wake of COVID-19 infection."  SAC ¶ 129.  ICE then initiated a plan to release decedent.  SAC ¶ 130.  Before any release occurred, on or about February 26, 2021, decedent suffered a stroke that caused brain death.  SAC ¶ 132.  On March 5, 2021, decedent was supposedly released on his own recognizance while in the hospital, although he was comatose and brain dead.  SAC ¶ 133.  His family was not informed of his medical condition or release.  *Id.*  Decedent died on March 8, 2021.  SAC ¶ 134.

On April 13, 2020, detainees at Adelanto filed a class action challenging their conditions of confinement due to the COVID-19 pandemic in *Roman v. Wolf*.  Hoq Decl. ¶ 12, Ex. J.  A special master was appointed in that case and determined decedent likely contracted COVID from a Wellpath medical provider who examined him on November 29, 2020.  *Id.* ¶ 13, Ex. K.  The Special Master produced his final report regarding Mr. Vargas Arellano's death on July 16, 2021.  *Id.* ¶ 22, Ex. T.

### B.    Relevant Discovery Background

On March 30, 2021, the Department of Homeland Security's Office of the Principal Legal Advisor ("OPLA") issued a litigation hold notice related to the *Roman*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

litigation to unspecified recipients at ICE.  Hoq Decl. ¶ 14, Ex. L.  GEO's counsel represents, on information and belief, this notice was never provided to GEO as part of the *Roman* litigation.  Coleman Decl. ¶ 16.  On April 16, 2021, ICE served its responses to the *Roman* plaintiff's fifth set of interrogatories.  Hoq Decl. ¶ 18, Ex. P.  The plaintiff in this case then sent a litigation hold letter to GEO on April 19, 2021, asking GEO to preserve evidence.  *Id.* ¶ 15, Ex. M.  Plaintiff later sent a notice of his intent to sue for medical malpractice to GEO on December 6, 2022.  Coleman Decl. ¶ 10, Ex. II.

On June 7, 2024, Barry Belt, the Security Threat Group Intelligence Officer at Adelanto ICE Processing Center, executed a sworn declaration concerning GEO's video surveillance retention policy at Adelanto in response to this court's May 20, 2024 order.  Hoq Decl., Ex. N; Coleman Decl. ¶ 11.  Belt stated GEO's system store surveillance video for approximately 90 days before it begins recording over the oldest data.  Hoq Decl., Ex. N ¶ 3.

On August 15, 2024, plaintiff sent GEO a request via email to meet and confer on a variety of topics.  Hoq Decl., Ex. F.  The parties met and conferred via Zoom on August 28, 2024.  *Id*; Coleman Decl. ¶ 22.  GEO's counsel had previously made a request to record the Zoom conference because plaintiff's counsel spoke quickly, but this request was denied.  Coleman Decl. ¶ 22.  Afterwards, GEO's counsel sent an email to memorialize the topics they covered during the meet and confer session.  *Id.* ¶ 23; Hoq Decl., Ex. G.  On September 12, 2024, plaintiff's counsel sent GEO another request to meet and confer.  Hoq Decl., Ex. H.  The parties met and conferred, and plaintiff's attorney sent an email confirming the topics the parties discussed during the meeting.  *Id.*, Ex. I.

Plaintiff now seeks an order imposing evidentiary sanctions against GEO for spoliation of video surveillance evidence at Adelanto, as well as monetary sanctions for attorney time spent on this motion.

## III.   <u>DISCUSSION</u>

Plaintiff alleges GEO spoliated video surveillance evidence from Adelanto because GEO failed to preserve video surveillance after it was obligated to preserve the evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

JS at 20.  Plaintiff requests evidentiary sanctions in the form of a permissive adverse inference instruction, as well as the payment of plaintiff's attorneys' fees for the time spent drafting the instant motion to compel.  JS at 34-35.  GEO argues no spoliation occurred because it could not have known the surveillance video needed to be preserved and it lacked the intent to spoliate.  JS at 36-37.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence."  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625 (C.D. Cal. 2013) (internal quotation marks omitted).  Federal Rule of Civil Procedure 37(e) authorizes the court to sanction a party for losing or destroying electronically stored information ("ESI") that it had a duty to preserve.  Fed. R. Civ. P. 37(e).[2]  The rule provides that a court may issue sanctions where the following requirements are met: (1) ESI "that should have been preserved in the anticipation or conduct of litigation is lost," (2) the ESI is lost "because a party failed to take reasonable steps to preserve it," and (3) the ESI "cannot be restored or replaced through additional discovery."  *Id.*  Where these requirements are met, and upon finding prejudice to another party from the loss of the ESI, section (e)(1) allows a court to "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  If the court finds additionally that "the party acted with the intent to deprive another party of the information's use in the litigation," under section (e)(2) it may:

(A)    presume that the lost information was unfavorable to the party;
(B)    instruct the jury that it may or must presume the information was unfavorable to the party; or
(C)    dismiss the action or enter a default judgment.

---

[2]    "Rule 37(e) was completely revised in 2015 and sets the standards for sanctions arising from the spoliation of ESI."  *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 334 (D. Ariz. 2022).  Rule 37(e) "provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on inherent authority."  *Id.* at 335 (citing Rule 37(e) advisory committee note to 2015 amendment).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

Fed. R. Civ. P. 37(e)(2).  The relevant standard of proof for spoliation sanctions in the Ninth Circuit is a preponderance of the evidence.  *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015).

**A.      Rule 37(e) Threshold Requirements**

Here, the parties only appear to dispute the first of the three prongs of Rule 37(e)'s threshold requirements, since both the second and third prongs would be satisfied if GEO had a duty to preserve.  *See* JS at 36-37.  The second prong is satisfied because GEO failed to suspend its automatic deletion of video evidence after 90 days.  *See* JS at 31; *see also Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 3d 976, 991 (N.D. Cal. 2012) (once a duty to preserve is established, an entity is "required to suspend any existing policies related to delating or destroying files and preserve all relevant documents related to the litigation.") (citation omitted).  The third prong is similarly satisfied because video surveillance at Adelanto was only maintained for 90 days before deletion, unless downloaded by staff.  Hoq Decl., Ex. N, U at 10.  The video "was not retained by the Adelanto Facility."  Coleman Decl. ¶ 9.  Because no backup of the video exists, the evidence cannot be restored or replaced.

As for the first prong, plaintiff argues GEO was subject to "multiple overlapping requirements" to preserve video surveillance video related to Mr. Vargas Arellano.  JS at 20.  First, plaintiff argues the video should have been preserved as set forth in the standards issued by the National Archives and Records Administration ("NARA").  JS at 24.  NARA requires ICE and its contractors to preserve audio/video surveillance recordings that have evidentiary value for three years.  Hoq Decl., Ex. O.  NARA defines evidentiary value as anything "that may be material or have probative or exculpatory value, may have bearing on any criminal, administrative, civil, or other legal proceeding, or have a high likelihood to become evident in an evidentiary proceeding."[3]  *Id.*  Plaintiff

---

[3]      In plaintiff's notice of supplemental authority filed after the hearing, plaintiff for the first time argues that, between July 2020 and September 2021, GEO had a duty to preserve all video surveillance, even video records without evidentiary value, pursuant to a NARA directive issued in July 2020, which was required to be delivered to ICE detention facilities by February 2021.  There are three problems with this argument.  First, the court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

argues that when Mr. Vargas Arellano tested positive for COVID-19 and was subsequently transported to the hospital on December 11, 2020, these events triggered GEO's video preservation obligations under the NARA policy. JS at 24. Plaintiff also argues a February 16, 2021 incident in which Mr. Vargas Arellano "woke up in a puddle of blood" and "had a large bruise" should have also triggered the NARA retention policy. JS at 25.

Second, plaintiff argues GEO was put on notice by a March 30, 2021 preservation notice issued by OPLA to preserve "information and evidence" related to Mr. Vargas

---

did not grant plaintiff permission to file supplemental briefing after the hearing. Although alerting the court to a new and relevant legal decision would have been proper, here the supplemental authority cited was a 2023 decision from the United States District Court for the District of Columbia. Second, although plaintiff cites a decision not cited in prior briefing – *American Civil Liberties Union Foundation of Florida v. U.S. Immigration and Customs Enforcement*, 2023 WL 6461053 (D.D.C. Aug. 31, 2023) – it does not cite the decision for a new or controlling legal holding. Rather, plaintiff cites the decision for that court's factual finding with respect to the July 2020 NARA directive. The *ACLU* court made this finding based on an exhibit filed in that case. *See id.* at *2. But neither that nor any other exhibit has been filed in this case that would allow this court to make a similar determination as to the pertinent NARA policy in effect with respect to the facts of this case. Instead, plaintiff has filed a NARA schedule from September 2021 regarding non-evidentiary video recordings that gives no hint of the July 2020 directive discussed in *ACLU*. *See* 2d Supp. Hoq. Decl., Ex. EE. The court therefore has no evidentiary basis to accept plaintiff's new argument, nor could the court fairly do so based on the limited information about the NARA directive that may be gleaned from the *ACLU* decision. Third, even if the court did have a basis to find such a policy existed, it would be irrelevant to plaintiff's argument here. Plaintiff seeks sanctions under Rule 37(e), which concerns failures to preserve ESI "in the anticipation or conduct of litigation." The purported July 2020 NARA directive plaintiff cites concerns a duty to preserve without respect to litigation or evidentiary value. As such, failure to preserve in compliance with the directive may call for an enforcement action as alleged in the *ACLU* case, but it cannot support sanctions under Rule 37(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

Arellano's illness and death. JS at 25; *see* Hoq Decl., Ex. L. The notice informed its recipients that they must preserve ESI and all documents related to Mr. Vargas Arellano's detention, medical care, and death. *See* Hoq Decl., Ex. L. Plaintiff argues this notice obligated ICE to direct GEO to preserve all video surveillance of Mr. Vargas Arellano back to January 1, 2021. JS at 26. Defendant argues there is no evidence GEO ever received OPLA's preservation notice, since it was only ever sent to ICE employees. JS at 37. Defendant also argues the notice never explicitly used the word "video." *Id.*

Third, plaintiff argues GEO was put on notice by plaintiff's litigation hold letter dated April 19, 2021, which called for GEO to preserve evidence relevant to potential litigation related to Mr. Vargas Arrellano's death. JS at 26; *see* Hoq Decl., Ex. M. Had GEO immediately begun preserving video, it could have been preserved back to January 20, 2021. GEO argues plaintiff's April 2021 letter "did not put GEO on notice of the specific nature of the claims Plaintiff intended to make against GEO." JS at 37. GEO notes the initial letter referred to "negligence, wrongful death and 'other claims,'" which did not put GEO "on notice that video of detainees and staff walking around would have been of evidentiary value in the upcoming litigation." *Id.* Plaintiff contends GEO's duty to preserve ESI is not contingent on notice of the exact claims of the case and that its obligation extends to the "subject matter" of the action, which in this case would be Mr. Vargas Arellano. P. Supp. Mem at 1.

Finally, plaintiff argues GEO should have been preserving video of Adelanto since the commencement of the *Roman v. Wolf* litigation on April 13, 2020. *Id.* Plaintiff claims GEO should have instituted a litigation hold, even though it was not a party to *Roman,* because it reasonably anticipated litigation due to its attempt to intervene in the *Roman* case in June 2020. P. Supp. Mem. at 2. At the hearing, plaintiff clarified that his position is that GEO was obligated to preserve all video surveillance records of the entire Adelanto facility.

GEO maintains that none of the arguments plaintiff puts forward explain how GEO was reasonably expected to know to preserve all video of Adelanto from at least early January 2021 until Mr. Vargas's death. JS at 36-37. GEO argues "[v]ideo of staff and detainees walking around is generally not considered to be of evidentiary value." JS at 37. GEO states it could not reasonably anticipate plaintiff's "theory of liability rested on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

overall surveillance video of movement within Adelanto by random staff members, random detainees, and Mr. Vargas laying on his bed within the infirmary." JS at 13. Because these video recordings were not of "obvious evidentiary value," GEO asserts it did not know to preserve them for use in future litigation.

The issue of whether GEO had a duty to preserve the video surveillance footage of Mr. Vargas Arellano is a somewhat close one. At a minimum, the NARA policy and plaintiff's litigation hold letter required GEO to preserve video surveillance records that might reasonably be considered potentially relevant. And given plaintiff's theory of this case, it is understandable why plaintiff would want video surveillance records showing staff who may or may not have been complying with COVID policies at the times in question. Yet the fact that plaintiff now wants these recordings does not mean it should have been apparent to GEO when it received plaintiff's preservation notice in the spring of 2021 that such recordings were potential evidence in the threatened litigation, much less that GEO should have realized it even earlier.

Had this case involved an assault or other discrete incident, the need to preserve video of the incident would have been obvious. Here, there is no discrete incident. Mr. Vargas Arellano contracted COVID and later died outside the facility. Although video may show interactions among people, it would not definitively show the moment of contracting COVID. The parties dispute the degree to which GEO knew that Mr. Vargas Arellano hit his head in February 2021, but even if GEO did know, the connection between that incident and this litigation is not clear. Certainly the better practice would have been for GEO to preserve video of Mr. Vargas Arellano from the second half of February 2021, but to say GEO had a legal obligation to preserve video that at best would appear to have only tangential evidentiary value is more of a reach. As for video of staff and inmates moving around generally, there was no reason GEO should have anticipated this would have any evidentiary value. Plaintiff's argument that GEO had a duty to preserve all surveillance video records from the entire Adelanto facility in anticipant of litigation is unreasonable.

On balance, and considering what GEO knew about this potential litigation at the relevant times, the court finds GEO did not have a duty to preserve video surveillance records in anticipation of this litigation. But even if GEO did have such an obligation as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

to at least some of the video records, the evidentiary sanctions plaintiff seeks are not warranted for the reasons that follow.

## B.       Intent to Deprive Plaintiff of Video Surveillance

Plaintiff requests a permissive adverse inference jury instruction that GEO destroyed video surveillance at Adelanto in spite of its obligation to preserve it, and that the jury may infer the video was unfavorable to GEO.  JS at 38.  Plaintiff argues this court could impose such a sanction based on either "Rule 37(e)(1)'s 'prejudice' or (e)(2)'s 'intent to deprive'" standard, citing *Porter v. City & County of San Francisco*, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018), and *Earp v. Davis*, 881 F.3d 1135 (9th Cir. 2018).  JS at 34-35.  However, the Ninth Circuit has recently foreclosed the possibility of relying of Rule 37(e)(1) for this type of sanction.  *See Gregory v. State of Montana*, 118 F.4th 1069, 1078-80 (9th Cir. 2024).  In *Gregory*, the Ninth Circuit clarified that "certain types of severe sanctions . . . may be imposed '*only* upon finding that the party [who caused the loss] acted with the *intent* to deprive another party of the information's use in the litigation.'"  *Id.* at 1078 (citing Fed. R. Civ. P. 37(e)(2)).  The court noted the severe sanctions subject to Rule 37(e)(2)'s more demanding standard include permissive or mandatory presumptions that information was unfavorable to the party that caused the loss.  *Id.*  Thus, for plaintiff to obtain a permissive adverse inference instruction, plaintiff must show GEO "acted with the intent to deprive" plaintiff of the use of Adelanto's video surveillance in this litigation.  Fed. R. Civ. P. 37(e)(2).

Plaintiff argues it can show intent because GEO "likely [made] an informed decision not to preserve" the video evidence.  JS at 33.  Plaintiff points to evidence he contends suggests GEO reviewed surveillance tape of Mr. Vargas Arellano as part of the *Roman* litigation but destroyed it afterwards.  This evidence consists of an interrogatory response by ICE in the *Roman* litigation stating Mr. Vargas Arellano's only known contact with a COVID-positive person was with a Wellpath employee, and an email indicating this information was provided to ICE by a GEO administrator.  *See* Hoq Decl., Ex. P. at 4, Ex. Q.  Plaintiff surmises that the GEO administrator was "likely relying on video surveillance" to obtain such information (JS at 33); however, such surmise appears to be based on pure speculation.  Mr. Vargas Arellano's contact with the Wellpath employee could have been traced any number of ways, including through his medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

charts. Plaintiff's speculative accusation that GEO destroyed video evidence after reviewing it and knowing of its relevance is reckless at best, and at least borders on the frivolous.

Plaintiff also points to the fact GEO allowed video to be automatically deleted after it received plaintiff's litigation hold letter in April 2021. JS at 33-34. But as discussed above, to find that GEO should have concluded from this letter that it had an obligation to preserve video surveillance records based on what it knew about the anticipated litigation at the time is a stretch. GEO argues the preservation requests and litigation hold letters were so "broad, sweeping an [sic] non-specific" that GEO was not put on notice the video needed to be preserved. JS at 38. GEO states its "understandable lack of awareness" of the value of the video to plaintiff's case rather than any direct intent to deprive plaintiff of the video contributed the automatic deletion of the video. JS at 13, 38.

The court finds that, at a minimum, plaintiff has failed to show that when GEO did not take steps to preserve the video evidence it was acting (or not acting) with the intent to deprive plaintiff of the use of the video in litigation. Plaintiff argues intent may be inferred, and so it may, but here the only facts plaintiff can point to for such an inference are GEO's repeated failures to take steps to preserve the video evidence in the face of: NARA's requirement to preserve video with evidentiary value; the OPLA preservation notice GEO may or may not have received; plaintiff's litigation hold letter; and the fact of the *Roman* litigation. But in each of these instances, in order for the court to infer intent, it would need to find that GEO recognized the video surveillance records had potential evidentiary value. On the facts of this case, there is no basis for the court to find that GEO must have recognized the evidentiary value of the video records, and nor is there any direct or circumstantial evidence suggesting GEO or any of its employees ever made a deliberate choice to delete the video. Without this evidence of intent, plaintiff fails to meet his burden.

Accordingly, the court denies plaintiff's motion for sanctions for spoliation of evidence and for associated attorneys' fees, and so will not recommend to the District Judge that plaintiff be granted a permissive adverse inference instruction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 5:23-cv-00380-JWH-SPx | Date | November 26, 2024 |
|---|---|---|---|
| Title | Martin Vargas v. United States of America et al. | | |

## IV. <u>ORDER</u>

For the foregoing reasons, the court DENIES plaintiff's motion for sanctions for spoliation of video surveillance evidence (docket no. 152).