**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN VARGAS, individually and as Successor in Interest of the Estate of Martin Vargas Arellano,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, THE GEO GROUP, and WELLPATH L.L.C.,<br><br>Defendants. | Case No. 5:23-cv-00380-JWH-SP<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 270] AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 271]** |

Before the Court are two motions:

- the motion of Defendant GEO Group, Inc. for summary judgment on the claims for relief asserted by Plaintiff Martin Vargas;[1] and
- Vargas's motion for partial summary judgment on the elements of duty and breach in connection with his negligence claim.[2]

The Court conducted a hearing on the Motions in February 2026. After considering the papers filed in support and in opposition,[3] as well as the argument of counsel during the hearing, the Court **DENIES** GEO Group's Motion for summary judgment and **GRANTS in part** and **DENIES in part** Vargas's Motion for summary judgment, for the reasons explained below.

## I. BACKGROUND

### A. Facts

This case arises from the death of Martin Vargas Arellano, an immigration detainee who was in custody at the Immigration and Customs Enforcement ("ICE") Adelanto Processing Center when he passed away. Plaintiff Martin Vargas is Arellano's son.

#### 1. GEO Group's Responsibilities

From 2019 to 2021, GEO Group was under contract to provide housing services, guard and escort services, medical services, and space for ICE

---

[1] Def.'s Mot. for Summ. J. (the "GEO Group Motion") [ECF No. 271].

[2] Pl.'s Mot. for Partial Summ. J. (the "Vargas Motion") [ECF No. 270].

[3] The Court considered the documents of record in this action, including the following papers: (1) Third Am. Compl. (the "Amended Complaint") [ECF No. 238]; (2) GEO Group Motion; (3) Vargas Motion; (4) Pl.'s Opp'n to the GEO Group Motion (the "GEO Group Opposition") [ECF No. 284]; (5) Def.'s Opp'n to the Vargas Motion (the "Vargas Opposition") [ECF No. 283]; (6) Def.'s Reply in Supp. of the GEO Group Motion (the "GEO Group Reply") [ECF No. 286]; and (7) Pl.'s Reply in Supp. of the Vargas Motion (the "Vargas Reply") [ECF No. 285].

employees at the Adelanto facility.[4] GEO Group's responsibilities included sub-contracting for the provision of medical care for the detainees.[5] Pursuant to its contract with ICE, GEO Group committed to meet various quality standards, including ICE's Performance Based National Detention Standards and those promulgated by the American Correctional Association.[6] GEO Group was also required to abide by ICE Pandemic Response Requirements (the "PRR") and Centers for Disease Control ("CDC") guidance governing staff screening.[7] To meet those standards, the contract required GEO Group, among other things, to establish its own written policies,[8] to coordinate with local health authorities,[9] and to submit to periodic audits performed by the Department of Homeland Security.[10]

Specifically, the PRR required GEO Group to screen every staff member who entered the Adelanto facility for COVID-19.[11] The PRR screening procedures required GEO Group to deny entrance to any staff member who displayed or reported having COVID-19 symptoms, such as an elevated temperature.[12] With respect to asymptomatic staff members who had been exposed to COVID-19, CDC guidance provided that entry was permissible if

---

[4] Joint Statement of Undisputed Fact and Genuine Disputes (the "Joint Statement") [ECF Nos. 270-1 (sealed) & 282 (unsealed)] No. 333.

[5] *Id.* at No. 335.

[6] *Id.* at Nos. 336 & 341.

[7] *Id.* at Nos. 76-79, 82-84, & 100.

[8] *Id.* at No. 337.

[9] *Id.* at Nos. 175, 343, & 363.

[10] *Id.* at No. 359.

[11] *Id.* at Nos. 76-78.

[12] *Id.* at Nos. 80 & 82.

that staff member's presence was "necessary to preserve the function of critical infrastructure workplaces."[13]

Additionally, GEO Group was required to comply with a court-ordered preliminary injunction that directed it to undertake certain mitigation activities at the Adelanto facility, including COVID-19 testing, population reduction, personal protection equipment ("PPE") use, and social distancing. *See Roman v. Wolf*, 2020 WL 5797918, at *6-*7 (C.D. Cal. Sept. 29, 2020).

**2. Arellano's Medical Conditions and Death**

Arellano—a noncitizen with chronic physical and mental illness[14]—was detained in the Adelanto facility in 2020 during the COVID-19 pandemic. On December 11, 2020, Arellano displayed symptoms of COVID-19, and he was transferred to the emergency department at Victor Valley Medical Center.[15] Arellano had taken a COVID-19 test the previous day, and on December 13, 2020, that test returned a positive result and Arellano was definitively diagnosed with COVID-19.[16] Arellano subsequently suffered medical complications and maladies, including COVID-19-related pneumonia,[17] hospitalization for COVID-19,[18] a fall in the Adelanto infirmary,[19] a hemicraniectomy to relieve

---

[13] *Id.* at No. 126.

[14] *Id.* at Nos. 522 & 523.

[15] *Id.* at Nos. 47-49.

[16] *Id.* at Nos. 46, 51, & 458.

[17] *Id.* at Nos. 50, 54, 57, & 64.

[18] *Id.* at No. 59.

[19] *Id.* at No. 67.

intracranial pressure,[20] and a stroke.[21] Arellano died on March 8, 2021.[22] According to Arellano's death certificate, the conditions leading to his death were stroke, brain edema, and aspiration pneumonia.[23]

Shortly before Arellano contracted COVID-19, he was in close proximity to many GEO Group employees and subcontractors, some of whom displayed symptoms of COVID-19 or tested positive for COVID-19.[24] Through this lawsuit, Vargas alleges that GEO Group failed to abide by the required standards and guidelines, and, thus, GEO Group caused Arellano to contract COVID-19 and caused his death.

**B. Procedural History**

Vargas commenced this case in March 2023.[25] Vargas initially included the United States, GEO Group, and Wellpath L.L.C. as Defendants, but in February 2025 the parties stipulated to dismiss the United States.[26] GEO Group and Wellpath Liquidating Trust[27] remain as Defendants. Vargas filed the operative Amended Complaint in May 2025,[28] and Vargas and GEO Group filed their respective Motions in November 2025.

---

20 *Id.* at Nos. 329 & 330.

21 *Id.* at No. 74.

22 *Id.* at Nos. 75 & 324.

23 *Id.* at Nos. 326-328.

24 *Id.* at Nos. 142, 395-404, & 512-515. While the parties dispute the specifics of the interactions and the extent of the proximity, it is undisputed that some GEO Group employees and subcontractors who worked at the facilities where Arellano was housed displayed symptoms of, or tested positive for, COVID-19.

25 Compl. [ECF No. 1].

26 Joint Stip. to Dismiss Def. United States of America [ECF No. 201].

27 *See* Ord. Granting Joint Req. to Substitute Party [ECF No. 291].

28 *See* Amended Complaint.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party needs to prove only that there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make that showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

# III. ANALYSIS

## A. The GEO Group Motion

### 1. PREP Act Immunity

GEO Group argues that it is immune from liability under the Public Readiness and Emergency Preparedness Act (the "PREP Act"). The PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d.

"On March 17, 2020, the Secretary [of Health and Human Services] issued a declaration announcing that COVID-19 'constitutes a public health emergency' and that 'immunity as prescribed in the PREP Act' was 'in effect' for the 'manufacture, testing, development, distribution, administration, and use of' covered countermeasures. The Secretary broadly defined 'covered countermeasures' to include 'any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19.'" *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024) (citing Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15201-02 (Mar. 17, 2020)). "Administration" covers both the "physical provision of the countermeasures to recipients" and "activities and decisions directly relating to management and operation of countermeasure programs." *Id.* at 1301 (citation modified). In other words, PREP Act immunity for COVID-19 arises from the direct administration of covered countermeasures and policy-level decisions regarding covered countermeasure programs.

The issue here is whether the acts for which Vargas seeks to hold GEO Group liable are policy-level decisions related to the administration of covered countermeasures. The Court concludes that they are not.

GEO Group itself recognizes that Vargas alleges "negligent enforcement of COVID-19 mitigation efforts."[29] Vargas does not allege that Arellano contracted COVID-19 ***despite*** GEO Group's affirmative implementation of countermeasures; rather, Vargas asserts that GEO Group failed to comply with applicable countermeasures and, thus, caused Arellano's death.

The PREP Act does not immunize the ***negligent*** administration of covered countermeasures—it covers affirmative decisions related to the administration of covered countermeasures. *See Est. of McCalebb v. AG Lynwood, LLC*, 2021 WL 911951, at *5 (C.D. Cal. Mar. 1, 2021) (concluding that the PREP Act did not apply to confer subject matter jurisdiction because the case involved "claims of negligence . . . rather than conscious decision-making about covered countermeasures"). In contrast, in *Maney*, the Ninth Circuit held that the ***affirmative*** decision to prioritize distributing COVID-19 vaccines to corrections officers and others, over inmates, was covered by the PREP Act, and, therefore, it immunized those decisionmakers. *See Maney*, 91 F.4th at 1300. Vargas's claims arise from alleged negligence, not the "administration" of any covered countermeasure, so GEO Group is not covered by the PREP Act.

The Court also concludes that GEO Group has not identified any causal connection between a covered countermeasure and Vargas's claims. "[D]istrict courts in the Ninth Circuit have held that infection control measures are not 'covered countermeasures' under the PREP Act." *Garcia v. Welltower OpCo Grp. LLC*, 2023 WL 8047821, at *5 (C.D. Cal. Nov. 15, 2023) (collecting cases). The Court agrees with those district courts and concludes that the standards,

---

[29] GEO Group Motion 16:8-9.

policies, and guidelines are not themselves covered countermeasures. COVID-19 vaccines, COVID-19 tests, and the PPE involved in infection control measures may qualify as covered countermeasures. However, Vargas's theory of the case does not rely upon a causal connection between the administration of any of those countermeasures and Arellano's death. "It is not enough that some countermeasure's use could be described as relating to the events underpinning the claim in some broad sense." *Hampton v. California*, 83 F.4th 754, 764 (9th Cir. 2023).

Accordingly, the Court concludes that PREP Act immunity does not apply to bar Vargas's claims against GEO Group.[30]

**2. Negligence Causation**

GEO Group asserts that the Court should enter summary judgment in its favor with respect to Vargas's negligence-based claims because there are no facts from which a jury could find a causal connection between GEO Group's alleged breach and Arellano's injury. Vargas responds that because it is undisputed that (1) GEO Group was responsible for staffing and screening at the facility in which Arellano contracted COVID-19; and (2) at least two infected GEO Group employees were in the medical unit around the time of the Arellano's infection, a reasonable finder of fact could find causation.[31] The Court agrees with Vargas.

---

30 PREP Act immunity is an affirmative defense, but GEO Group did not plead that defense in its Answer. *See* Def.'s Answer [ECF No. 32]. Accordingly, the Court concludes that even if the PREP Act did apply, GEO Group waived that affirmative defense, and Vargas suffered prejudice because it could not conduct appropriate discovery in 2023, when GEO Group filed its answer. *See In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007) ("[A] defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense." (citing Fed. R. Civ. P. 8(a) & (c))).

31 GEO Group Opposition 19:14-20:4.

Under California law, Vargas need not establish that GEO Group's conduct was the sole cause of Arellano's injury. Instead, it is enough if GEO Group's acts were a substantial factor in causing his injury. *See Vickers v. United States*, 228 F.3d 944, 954 (9th Cir. 2000) ("[I]f the question whether 'the actor's conduct [was] a substantial factor in bringing about the plaintiff's harm' is 'open to reasonable difference of opinion,' summary judgment [i]s improper." (quoting *Constance B. v. State of California*, 178 Cal. App. 3d 200, 210 (1986))). Here, there are sufficient facts that a reasonable jury could conclude that GEO Group's acts were a substantial factor in bringing about Vargas's injury.[32]

GEO Group also argues that Arellano's stroke was "inevitable,"[33] but that too is a disputed question of fact for the jury to decide. Accordingly, the Court **DENIES** GEO Group's Motion with respect to causation.

**3. Retroactivity of Cal. Gov't Code § 7320**

GEO Group contends that Vargas's claim under Cal. Gov't Code § 7320 is barred by California's presumption against retroactivity. That statute took effect on January 1, 2021, and Vargas contracted COVID-19 on or before December 10, 2020. Under California law, there is a presumption against retroactivity; however, that presumption does not apply when the statute does not create a new cause of action. *See USS-Posco Indus. v. Case*, 244 Cal. App. 4th 197, 217, 221 (2016).

Subdivision (c) of the statute provides that "[i]f a private detention facility operator, or agent of a private detention facility, or person acting on behalf of a detention facility operator, commits a tortious action which violates

---

[32] *See, e.g.*, Joint Statement Nos. 33, 36-53, 87-90, 142, 209-230, 395-404, & 512-515.

[33] GEO Group Motion 19:16-17.

subdivision (a), an individual who has been injured by that tortious action may bring a civil action for relief. In civil actions brought pursuant to this section, the court, in its discretion, may award the prevailing plaintiff reasonable attorney's fees and costs, including expert witness fees." Cal. Gov't Code § 7320(c). Subdivision (a) provides that "[a]ny private detention facility operator shall comply with, and adhere to, the detention standards of care and confinement agreed upon in the facility's contract for operations." *Id.* at § 7320(a).

Because subdivision (c) requires a "tortious action" and subdivision (a) grounds the cause of action in contract, it does not create a new cause of action or new liability—the effect of the statute is merely to shift fees. And because California law establishes that such procedural statutes are not subject to the presumption against retroactivity, *see USS-Posco Indus.*, 244 Cal. App. 4th at 217, 221, Vargas's claim under Cal. Gov't Code § 7320 is not barred by the presumption against retroactivity.

GEO Group replies to Vargas's response by referencing the legislative history of the statute and contending that the "statute was obviously not created as a fee shifting vehicle, even if it did allow for recovery of attorney fees and costs by a prevailing plaintiff."[34] But an argument about the statute's purpose does not disturb the Court's conclusion that the ***effect*** of the statute was not to create new rights or liabilities. Accordingly, the Court **DENIES** GEO Group's Motion with respect to Vargas's claim under Cal. Gov't Code § 7320.

**4. Wrongful Death Damages**

GEO Group maintains that Vargas cannot establish wrongful death damages because his only damages are for grief and sorrow, which are not recoverable under a wrongful death theory. "A plaintiff in a wrongful death action is entitled to recover damages for his or her pecuniary loss, 'which may

---

[34] GEO Group Reply 9:3-5.

include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship.' However, the plaintiff may not recover for the grief or sorrow attendant upon the death of a loved one, or for his or her sad emotions and for the sentimental value of the loss." *Fernandez v. Jimenez*, 40 Cal. App. 5th 482, 489 (2019) (citing *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 783, 793 (2003)).

Vargas seeks damages for the loss of the pecuniary value of Arellano's society and companionship, and there are sufficient facts in the record to create a genuine dispute regarding Vargas's entitlement to such damages.[35] Accordingly, the Court **DENIES** GEO Group's Motion with respect to Vargas's wrongful death claim.

**5. Punitive Damages**

Finally, GEO Group asserts that Vargas's request for punitive damages must fail because there are insufficient facts to support a finding that any of GEO Group's officers, directors, or managing agents authorized or ratified conduct constituting oppression, fraud, or malice. To succeed on a motion for summary judgment with respect to punitive damages, the moving party "has the initial burden of production to make a *prima facie* showing of the nonexistence of any triable issue of material fact." *Sullivan v. Ashley Furniture Indus., Inc.*, 2022 WL 9680392, at *13 (C.D. Cal. Oct. 13, 2022). Here, GEO Group fails to carry that burden, and the Court concludes that genuine disputes of material facts remain as to punitive damages. For instance, the facts regarding the actions of the facility administrator, James Janecka,[36] are sufficient to create a genuine

---

[35] *See* Joint Statement Nos. 291-296 & 459-461.

[36] *Id.* at Nos. 13, 77, 80, 162, 163, 508, & 517.

dispute regarding Vargas's entitlement to punitive damages. Accordingly, the Court **DENIES** GEO Group's Motion with respect to punitive damages.

**B. The Vargas Motion**

Vargas argues in his Motion that the Court should grant summary judgment in his favor on the issues of duty and breach on his negligence claims. GEO Group concedes that it owed Arellano "a duty—under its contract with [ICE]—to provide for the safety and security of individuals detained by ICE and in GEO's custody pending immigration removal proceedings."[37] Accordingly, the Court **GRANTS** Vargas's Motion with respect to whether GEO Group owed Arellano a duty of care.

With respect to breach, however, the Court concludes that triable issues preclude summary judgment in Vargas's favor. Vargas argues that because GEO Group repeatedly violated mandatory COVID safeguards—including failing to conduct proper COVID-19 staff screening and allowing exposed, symptomatic, and quarantined staff members to enter facilities—no reasonable jury could conclude that GEO Group met its duty of care to Vargas.[38] GEO Group responds that a reasonable jury could conclude that GEO Group's promulgation and implementation of COVID-19-related customs and policies were compliant with its duty to Arellano. The Court agrees with GEO Group. Whether GEO Group's actions breached the duty that it owed to Arellano is a question for the jury. The undisputed facts that GEO Group allowed symptomatic staff members into the Adelanto facility at least 47 times[39] and that at least one asymptomatic staff member had close contact with Arellano[40] are

---

[37] Vargas Opposition 6:11-14.

[38] Vargas Motion 19:1-22.

[39] Vargas Opposition 12:24-13:2.

[40] *Id.* at 15:6-9.

not sufficient to establish breach at the summary judgment stage. Accordingly, the Court **DENIES** Vargas's Motion with respect to breach.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. GEO Group's Motion for summary judgment [ECF No. 271] is **DENIED**.

2. Vargas's Motion for partial summary judgment [ECF No. 270] is **GRANTED in part** and **DENIED in part**. Specifically:

   a. Vargas's Motion is **GRANTED** to the extent that Vargas seeks an adjudication that GEO Group owed a duty of care to Arellano; and

   b. Vargas's Motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: August 17, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE